United States District Court
Northern District of Texas
Amarillo Division

| | |
|---|---|
| SPECTRUM WT, BARRETT BRIGHT, AND LAUREN STOVALL, <br>    *Plaintiffs*, <br> v. <br> WALTER WENDLER, in his individual capacity and his official capacity as the President of West Texas A&M University, CHRISTOPHER THOMAS, in his official capacity as Vice President for Student Affairs at West Texas A&M University, JOHN SHARP, in his official capacity as Chancellor of the Texas A&M University System, ROBERT L. ALBRITTON, JAMES R. BROOKS, JAY GRAHAM, MICHAEL A. HERNANDEZ III, TIM LEACH, BILL MAHOMES, ELAINE MENDOZA, MICHAEL J. PLANK, CLIFF THOMAS, AND DEMETRIUS L. HARRELL, JR., in their official capacities as members of the Board of Regents of the Texas A&M University System, <br>    *Defendants*. | Case 2:23-cv-00048-Z |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS AND RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

Table of Contents ............................................................................................. ii

Table of Authorities ........................................................................................ iii

Summary ............................................................................................................1

Standard of Review ......................................................................................... 2

   A.  Preliminary Injunction.............................................................................. 2

   B.  Rule 12(b)(1) ............................................................................................. 2

Arguments & Authorities ...............................................................................3

   A.  This Court lacks jurisdiction over Plaintiffs' claims ...............................3

      1.  Plaintiffs lack standing ........................................................................3

        i.  Plaintiffs lack a concrete and particularized injury .........................3

        ii. Plaintiffs lack an injury traceable to A&M System
           Defendants or Thomas ......................................................................5

        iii.Defendants cannot redress Plaintiffs' purported injuries .............................7

      2.  Sovereign immunity bars Plaintiffs' claims ........................................ 8

      3.  Plaintiffs' lawsuit is not ripe ............................................................... 9

      4.  Plaintiffs' claims are moot ..................................................................10

   B.  Any relief should be appropriately limited ...........................................10

Prayer ...............................................................................................................11

Certificate of Service ......................................................................................11

## TABLE OF AUTHORITIES

**Cases**                                                                                 **Page(s)**

*Acosta v. Univ. of Tex. at El Paso*,
    No. 3:06-cv-408, 2007 WL 9701442 (W.D. Tex. Apr. 11, 2007) .................................... 9

*Agency Procs. (SCRAP)*,
    412 U.S. 669 (1973) .......................................................................................................... 5

*Air Evac EMS Inc. v. Tex. Dep't of Ins., Div. of Workers' Comp.*,
    851 F.3d 507 (5th Cir. 2017) ........................................................................................... 10

*Allen v. Wright*,
    468 U.S. 737 (1984) .......................................................................................................... 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................................... 5, 6

*California v. Texas*,
    141 S. Ct. 2104 (2021) ...................................................................................................... 8

*Cent. & S.W. Servs., Inc. v. EPA*,
    220 F.3d 683 (5th Cir. 2000) ........................................................................................... 10

*City of Austin v. Paxton*,
    943 F.3d 993 (5th Cir. 2019) ........................................................................................... 10

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) .................................................................................................. 4, 5, 7

*Collins v. Yellen*,
    141 S. Ct. 1761 (2021) ...................................................................................................... 6

*Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*,
    704 F.3d 413 (5th Cir. 2013) ........................................................................................... 11

*E.T. v. Paxton*,
    19 F.4th 760 (5th Cir. 2021) .............................................................................................. 8

*Edelman v. Jordan*,
    415 U.S. 651 (1974) .......................................................................................................... 9

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) .......................................................................................................... 4

*Gill v. Whitford*,
  138 S. Ct. 1916 (2018)................................................................12

*Hafer v. Melo*,
  502 U.S. 21 (1991) .......................................................................9

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013).......................................................................4

*Home Builders Ass'n of Miss. v. City of Madison, Miss.*,
  143 F.3d 1006 (5th Cr. 1998).......................................................3

*Howery v. Allstate Ins. Co.*,
  243 F.3d 912 (5th Cir. 2001) .......................................................3

*Jordan v. Fisher*,
  823 F.3d 805 (5th Cir. 2016) .......................................................3

*K.P. v. LeBlanc*,
  729 F.3d 427 (5th Cir. 2013) .......................................................9

*La. Env't Action Network v. EPA*,
  382 F.3d 575 (5th Cir. 2004) .....................................................11

*Lake Charles Diesel, Inc. v. Gen. Motors Corp.*,
  328 F.3d 192 (5th Cir. 2003) .......................................................3

*Liverpool, N.Y. & Phil. S.S. Co. v. Comm'rs of Emigration*,
  113 U.S. 33 (1885).........................................................................6

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .......................................................................4

*Madsen v. Women's Health Ctr., Inc.*,
  512 U.S. 753 (1994) .....................................................................11

*McCarthy ex rel. Travis v. Hawkins*,
  381 F.3d 407 (5th Cir. 2004).......................................................9

*Middle S. Energy, Inc. v. City of New Orleans*,
  800 F.2d 488 (5th Cir. 1986).....................................................10

*Morris v. Livingston*,
  739 F.3d 740 (5th Cir. 2014).....................................................10

*Munaf v. Geren*,
  553 U.S. 674 (2008) .......................................................................2

*Murphy v. Hunt*,
    455 U.S. 478 (1982) (per curiam .................................................................... 11

*Okpalobi v. Foster*,
    244 F.3d 405 (5th Cir. 2001) .......................................................................... 3

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984) ........................................................................................ 9

*Pierce v. Tex. Dep't of Crim. Just.*,
    37 F. 3d 1146 (5th Cir. 1994) ........................................................................ 6

*Prestage Farms, Inc. v. Bd. of Sup'rs of Noxubee Cnty., Miss.*,
    205 F.3d 265 (5th Cir. 2000) ........................................................................ 10

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001) .......................................................................... 3

*Sepulvado v. Jindal*,
    729 F.3d 413 (5th Cir. 2013) .......................................................................... 3

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ........................................................................................ 4

*Stockman v. Fed. Election Comm'n*,
    138 F.3d 144 (5th Cir. 1998) .......................................................................... 3

*Tex. A&M Univ. Sys. v. Koseoglu*,
    233 S.W.3d 835 (Tex. 2007) ........................................................................... 9

*Tex. All. for Retired Ams. v. Scott*,
    28 F.4th 669 (5th Cir. 2022) ........................................................................... 8

*Texas v. United States*,
    523 U.S. 296 (1998) ...................................................................................... 11

*Thomas v. Union Carbide Ag. Prods. Co.*,
    473 U.S. 568 (1985) ...................................................................................... 11

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ................................................................................... 4

*United Transp. Union v. Foster*,
    205 F.3d 851 (5th Cir. 2000) ........................................................................ 10

*Warth v. Seldin*,
    422 U.S. 490 (1975) ...................................................................................... 10

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ................................................................................ 4, 8

*Whole Woman's Health v. Jackson*,
    142 S. Ct. 522 (2021) ................................................................................. 4

*Will v. Mich. Dep't of State Police*,
    491 U.S. 58 (1989) ..................................................................................... 9

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ....................................................................................... 2

**Rules**

Fed. R. Civ. P. 12(h)(3) ...................................................................................... 3

Approximately eleven months from the date of this filing, Plaintiffs want to host a drag show at West Texas A&M University. They now move this Court to preliminarily enjoin Defendants from taking any action that would interfere with that event—or any other event they may hold on-campus. Plaintiffs' claims against A&M System Chancellor Sharp, A&M System Regents Albritton, Brooks, Graham, Leach, Mahomes, Mendoza, Plank, Thomas, and Harrell (together, the "A&M System Defendants"), and the Vice President of Student Affairs for West Texas A&M University, Chris Thomas ("Thomas"), must be dismissed because Plaintiffs lack standing; their claims are not ripe; and their causes of action are barred by sovereign immunity. Plaintiffs' claims against the A&M System Defendants and Thomas must be dismissed, and their Motion for Preliminary Injunction should be denied because they are unlikely to succeed on the merits of their claims.

### Summary

Plaintiffs bring Section 1983 claims against the A&M System Defendants and Thomas stemming from West Texas A&M President Walter Wendler's decision to cancel Plaintiffs' March 2023 on-campus drag show and the statement he issued related to that decision. Dkt. 28 at 3, 25. Plaintiffs' shotgun pleading approach fails to include any facts showing any participation, involvement, or other connection to Wendler's decision to cancel the March 2023 drag show or any other upcoming campus events. Since Wendler's decision, Plaintiffs have submitted multiple requests for room reservations and to host events, none of which have been denied. *See* Exh. A (Declaration of C. Thomas). Plaintiffs' contention that they face a "concrete threat" against hosting events on campus is not based on any statement or decision made by the A&M System Defendants or Thomas, and Plaintiffs' manufactured threats of injury by these defendants are insufficient to confer them with Article III standing. Dkt. 31 at 9.

<u>STANDARD OF REVIEW</u>

**A.    *Preliminary Injunction***

"A preliminary injunction is an extraordinary and drastic remedy" that should "never [be] awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citation omitted). Plaintiffs may obtain this "extraordinary remedy" only "upon a clear showing" that they are "entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Plaintiffs must show (1) "a substantial threat of irreparable injury," (2) "a substantial likelihood of success on the merits," (3) "that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted," and (4) "that the grant of an injunction will not disserve the public interest." *Jordan v. Fisher*, 823 F.3d 805, 809 (5th Cir. 2016) (quoting *Sepulvado v. Jindal*, 729 F.3d 413, 417 (5th Cir. 2013)). Plaintiffs must "clearly carr[y] the burden of persuasion on all four requirements." *Id.* (citation omitted); *see also, e.g.*, *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 203 (5th Cir. 2003).

**B.    *Rule 12(b)(1)***

Rule 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. "Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). Accordingly, "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cr. 1998) (citation omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *see also Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

<u>ARGUMENTS & AUTHORITIES</u>

**A.** ***This Court lacks jurisdiction over Plaintiffs' claims.***

Plaintiffs' claims are jurisdictionally barred. The Court should dismiss for lack of jurisdiction without opining on any other issues Plaintiffs raise. *See Okpalobi v. Foster*, 244 F.3d 405, 409 (5th Cir. 2001) (en banc).

**1.   <u>Plaintiffs lack standing.</u>**

Standing requires a plaintiff to "prove that he has suffered a concrete and particularized [injury in fact] that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). A plaintiff must clearly allege facts demonstrating each element of Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) ("[P]laintiffs bear the burden of pleading and proving concrete facts showing that the defendant's actual action has caused the substantial risk of harm."); *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (plaintiff "must clearly and specifically set forth [sufficient] facts"). Not every dispute is entitled to judicial review. "Under Article III, federal courts do not adjudicate hypothetical or abstract disputes," as federal courts "do not possess a roving commission to publicly opine on every legal question." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Put another way, "federal courts do not issue advisory opinions." *Id.* Plaintiffs do not allege facts that "clearly and specifically" demonstrate they satisfy each element of Article III standing. *Whitmore*, 495 U.S. at 155. That alone requires dismissal.

**i.   <u>Plaintiffs lack a concrete and particularized injury.</u>**

Plaintiffs must show a concrete and particularized injury-in-fact. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as

physical harm, monetary harm, or various intangible harms. . . ." *TransUnion*, 141 S. Ct. at 2200 (citing *Spokeo*, 578 U.S. at 340–41). The Supreme Court "has always required proof of a more concrete injury and compliance with traditional rules of equitable practice" regardless of the constitutional interest at stake. *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 538 (2021). And "pleadings must be something more than an ingenious academic exercise in the conceivable." *United States v. Students Challenging Regul. Agency Procs. (SCRAP)*, 412 U.S. 669, 688 (1973). Instead, a "plaintiff must allege that he has been or will in fact perceptibly harmed by the challenged . . . action, not that he can imagine circumstances in which he could be affected by the . . . action." *Id.* at 688–89.

Here, Plaintiffs seek preliminary and permanent injunctive relief enjoining the A&M System Defendants and Thomas from "enforcing President Wendler's prohibition on 'drag shows.'" Dkt. 28 at 48; *see also* Dkt. 30 at 1–2. But because vicarious liability does not apply to Section 1983 claims, Plaintiffs "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). And whether the A&M System Defendants and Thomas may "enforce" Wendler's statement or may cancel or disapprove Plaintiffs' activities in the future is purely speculative. *See* Dkt. 30 at 2. Plaintiffs point to no facts demonstrating the A&M System Defendants or Thomas intend to take any action to disallow or cancel Plaintiffs' events. *See generally* Dkt. 28, Dkt. 31.

Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. As long as Plaintiffs bear no probable, imminent risk of the A&M System Defendants or Thomas disallowing their events in the way they hypothesize, their reactions deriving from "subjective fear" do "not give rise to standing." *Id.* at 418. While Plaintiffs believe that Wendler's statement "subjects student expression to university review to figure out whether it falls within [Wendler's] personal view of 'inappropriate,'" Plaintiffs allege no facts demonstrating that either the A&M System Defendants or Thomas intend

to undertake such an analysis. Dkt. 31 at 26. Plaintiffs' imaginations about ways the A&M System Defendants and Thomas might "enforce" President Wendler's statement do not confer standing. *See, e.g.*, Dkt. 28 at 32; Dkt. 31 at 8. Federal courts' jurisdiction is limited to actual controversies; they do not "anticipate a question of constitutional law in advance of the necessity of deciding it." *Liverpool, N.Y. & Phil. S.S. Co. v. Comm'rs of Emigration*, 113 U.S. 33, 39 (1885).

### ii. Plaintiffs lack an injury traceable to A&M System Defendants or Thomas.

Plaintiffs allege no facts—in either their Amended Complaint or Amended Motion for Preliminary Injunction—that tie the A&M System Defendants or Thomas to any alleged harm. *See generally* Dkt. 28, 31. At most, Plaintiffs allege that Thomas communicated the President's decision to cancel the March 2023 drag show to them 30-minutes before Wendler issued it publicly, Dkt. 28 at ¶ 105, and that the A&M System Defendants have not "disavowed" Wendler's statement, Dkt. 28 at ¶¶ 18–22, 120; Dkt. 31 at 13. But vicarious liability does not apply to Section 1983 claims. *Iqbal*, 556 U.S. at 663; *Pierce v. Tex. Dep't of Crim. Just.,* 37 F. 3d 1146, 1150 (5th Cir. 1994). Thomas does not have authority to overrule the President; Thomas reports to the President. *See* Exh. A at ¶¶ 3–5. And without some allegation that the A&M System Defendants have threatened to cancel Plaintiffs' events, any injury from Wendler's statement is traceable only to President Wendler. *Cf. Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021) (holding that plaintiffs' purported injuries must "be traced to 'allegedly unlawful conduct' *of the defendant*") (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984) (emphasis added)). Plaintiffs acknowledge as much: "But for *Wendler*'s action, [Plaintiffs] would hold and perform in drag shows and similar events in university spaces designated for student expression." Dkt. 31 at 7 (emphasis added). Plaintiffs repeatedly describe their harm as traceable to "*President Wendler's prohibition*" and posit that university policy otherwise permits and protects Plaintiffs' events. Dkt. 28 at 36 (emphasis added); Dkt. 31 at 9,13 ("Wendler defied West

Texas A&M policy, and . . . deprive[d] them of the benefits the campus expression policy confers . . . .")

Neither the A&M System Defendants nor Thomas need disavow Wendler's statement to vitiate Plaintiffs' claims because Plaintiffs' speculation about whether any future event may be cancelled cannot support their standing—much less a preliminary injunction. Plaintiffs cannot trace any injury imposed by Wendler to the A&M System Defendants, nor can they point to any power of the A&M System Defendants or Thomas to overrule the President or require him to rescind his statement.

Plaintiffs' subjective fear that West Texas A&M may cancel or disallow some other event in the future falls short. *See* Dkt. 28 at ¶¶ 137–38; Dkt. 31 at 9. Plaintiffs allege no facts demonstrating that any of the A&M System Defendants or Thomas are imminently likely to take steps to cancel Plaintiffs' events. *See generally* Dkt. 28, 31. Plaintiffs have been allowed to reserve and use West Texas A&M facilities for other events and activities since President Wendler cancelled their March 2023 drag show, and Plaintiffs have not alleged any facts demonstrating that they will not be allowed to hold any other events on campus. *See generally* Dkt. 28, 31; *see also* Exh. A at ¶ 11 (testifying that he is "not aware of any reason" that Plaintiffs' "upcoming events will not be permitted to be held on-campus"). Because Plaintiffs are seeking prospective relief, their injury "must be certainly impending to constitute injury in fact"—"[a]llegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409 (quotations omitted). Plaintiffs identify no such threat.

Plaintiffs' contention that they are "chilled" from exercising their First Amendment rights is belied by their own pleadings. Dkt. 28 at 32–33; Dkt. 31 at 14. They acknowledge they have already planned multiple events for the upcoming school year, including "'Queer Movie Night,' which Spectrum holds several times annually," the first of which is scheduled for Halloween 2023, and another drag show scheduled for March 22, 2024. Dkt. 31 at 14–15. Plaintiffs' pleadings contain no facts describing any actions taken against the events they have already planned for the upcoming academic year. Since the

cancellation, Plaintiffs have held other events and been allowed to reserve and use West Texas A&M facilities. Exh. A at ¶ 7. While Plaintiffs allege they fear that each of their future events "is in imminent peril," absent from Plaintiffs' allegations are facts that would permit a reasonable person to infer that either the A&M System Defendants or Thomas intend to disallow Plaintiffs' on-campus activities. *Id.* at 15. Plaintiffs' allegations of future harm are based on sheer speculation and thus insufficient to support standing. *Cf. Whitmore*, 495 U.S. at 155–156 ("A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing."). Plaintiffs' claims against Defendants should be dismissed.

iii.    Defendants cannot redress Plaintiffs' purported injuries.

A plaintiff has standing to sue a defendant only if the defendant can redress the plaintiff's alleged harm—that is, if the harm the plaintiff alleged can be remediated by a judgment rendered against the defendant. *See E.T. v. Paxton*, 19 F.4th 760, 766 (5th Cir. 2021); *see also Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672–73 (5th Cir. 2022). Plaintiffs cannot meet that standard against the A&M System Defendants or Thomas because none of them individually have the power to remediate Plaintiffs' alleged harm. "Remedies . . . operate with respect to specific parties." *California v. Texas*, 141 S. Ct. 2104, 2115 (2021) (quotation omitted). Thomas does not have authority to overrule the President's actions, so he cannot redress any injury Plaintiffs incurred by the President's decision or the publication of his statement. *See* Exh. A at ¶ 2–5. The Board of Regents cannot redress Plaintiffs' injuries because it does not have "any direct oversight or involvement in the day-to-day operations, activities, or programs" of West Texas A&M and does not possess "general 'veto power' over the daily decisions of university presidents within the A&M System." *See* Exh. B (Declaration of W. Hamilton) at ¶ 8. And because none of the members of the Board of Regents has authority to act alone, no individual member of the Board of Regents can remediate any alleged injury. Exh. B at ¶ 9. ("No individual regent has the authority to direct A&M System or component university

employees to take any particular action."). Plaintiffs' claims against the A&M System Defendants and Thomas should be dismissed because they cannot redress Plaintiffs' injuries.

### 2. Sovereign immunity bars Plaintiffs' claims.

Absent a waiver of immunity, sovereign immunity bars suit against states in federal court, regardless of the remedy sought. *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984); *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974) ("[T]his Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State") (internal citations omitted). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "Suits against state officials in their official capacity [] should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

Section 1983 does not abrogate sovereign immunity. *Will*, 491 U.S. at 67. Nor has Texas voluntarily waived sovereign immunity for Section 1983 claims. *See Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007). The Declaratory Judgment Act does not waive sovereign immunity either. *E.g. Acosta v. Univ. of Tex. at El Paso*, No. 3:06-cv-408, 2007 WL 9701442, at *2 (W.D. Tex. Apr. 11, 2007) ("A litigant cannot circumvent [sovereign immunity] by pleading a claim under the Declaratory Judgment Act."). As a preliminary matter, then, all Section 1983 claims or request for declaratory relief against each of the A&M System Defendants and Thomas in their official capacities is barred by sovereign immunity unless an exception applies. *See McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) (citation omitted). And the most commonly relied upon such exception, the one available under *Ex parte Young*, does not apply here.

Under the *Ex parte Young* exception, sovereign immunity is no bar when the suit "seeks prospective, injunctive relief from a state actor, in [his] official capacity, based on an alleged ongoing violation of the federal constitution" or other federal law. *K.P. v.*

*LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013); *see also McCarthy*, 381 F.3d at 413–14. But the state official being sued "must have some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *City of Austin v. Paxton*, 943 F.3d 993, 997–98 (5th Cir. 2019) (cleaned up); *see also Air Evac EMS Inc. v. Tex. Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 517 (5th Cir. 2017); *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014). This analysis has significant overlap with the redressability and traceability standing analyses. *See City of Austin*, 943 F.3d at 1003. For the same reasons Plaintiffs lack standing against the A&M System Defendants and Thomas, their claims against the A&M System Defendants and Thomas remain barred by sovereign immunity.

### 3.  <u>Plaintiffs' lawsuit is not ripe.</u>

Plaintiffs' lawsuit has not "matured sufficiently to warrant judicial intervention" because Plaintiffs' injury is premised on a fear of injury that has not yet materialized. *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975).

Under Article III, federal courts are confined to adjudicating "cases" and "controversies." *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000). The doctrine of ripeness "separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review." *Id.* This generally requires "a substantial controversy of sufficient immediacy and reality between parties having adverse legal interests." *Middle S. Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986).

"[E]ven where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness." *Cent. & S.W. Servs., Inc. v. EPA*, 220 F.3d 683, 690 (5th Cir. 2000). Ripeness and standing "often intersect because the question of whether a plaintiff has suffered an adequate harm is integral to both." *Prestage Farms, Inc. v. Bd. of Sup'rs of Noxubee Cnty., Miss.*, 205 F.3d 265, 268 n.7 (5th Cir. 2000).

Plaintiffs' claim that "the Board of Regents and Chancellor Sharp evidence an intent to let [President Wendler's] unconstitutional prohibition against student groups holding drag shows in campus forums continue" "rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Dkt. 28 at ¶ 185; *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Ag. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). Plaintiffs' purported harm is entirely hypothetical; they point to no facts demonstrating that the A&M System Defendants or Thomas intend to disallow Plaintiffs' future events. Accordingly, Plaintiffs cannot establish that their claims are sufficiently ripe to merit judicial intervention.

### 4. **Plaintiffs' claims are moot.**

To the extent Plaintiffs seek relief against the A&M System Defendants or Thomas with respect to the March 2023 drag show, their claims are moot. "Mootness applies when intervening circumstances render the court no longer capable of providing meaningful relief to the plaintiff." *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013). The date for that show has passed, and Plaintiffs held the event off-campus. Dkt. 28 at 25. As a result, the injunctive and declaratory relief Plaintiffs seek against the A&M System Defendants and Thomas would no longer provide meaningful relief, even if it ever could in the first place. Thus, Plaintiffs' claims are moot. "[A] claim becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *La. Env't Action Network v. EPA*, 382 F.3d 575, 581 (5th Cir. 2004) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)).

### B. *Any relief should be appropriately limited.*

If the Court disagrees with Defendants' arguments, any relief should be no broader than necessary to remedy any irreparable harm demonstrated by Plaintiffs. "[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994)

(citation omitted). "A plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018). Neither the A&M System Defendants nor Thomas are necessary parties to any injunctive relief—and Plaintiffs certainly have not pled that an injunction against Wendler would be insufficient to provide full relief. Accordingly, any injunctive relief the Court awards should not run to the A&M System Defendants or Thomas.

### PRAYER

For these reasons, Defendants respectfully request the Court deny Plaintiffs' Motion for Preliminary Injunction and dismiss Plaintiffs' claims against the A&M System Defendants and Thomas.

Dated May 5, 2023.                          Respectfully submitted.

KEN PAXTON                                  CHRISTOPHER D. HILTON
Attorney General of Texas                   Chief, General Litigation Division

BRENT WEBSTER                               */s/ Amy S. Hilton*
First Assistant Attorney General            _____

GRANT DORFMAN                               AMY S. HILTON
Deputy First Assistant Attorney General     Assistant Attorney General
                                            State Bar No. 24097834
SHAWN COWLES                                amy.hilton@oag.texas.gov
Deputy Attorney General for Civil
Litigation                                  Office of the Attorney General
                                            General Litigation Division
                                            P.O. Box 12548, Capitol Station
                                            Austin, TX 78711-2548
                                            (512) 463-2120

                                            **Counsel for Defendants**

### *Certificate of Service*

I certify that on May 5, 2023, this brief was served on all counsel of record by electronic filing.

*/s/ Amy S. Hilton*
_____
AMY S. HILTON