UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| SPECTRUM WT, *et al.*, §<br>　　*Plaintiffs*, §<br>§<br>v. §<br>§<br>WALTER WENDLER, *et al.*, §<br>　　*Defendants.* § | CIVIL ACTION NO. 2:23-CV-048-Z |

**DEFENDANT WENDLER'S RESPONSE TO
PLAINTIFFS' SECOND NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiffs filed a Second Notice of Supplemental Authority to discuss *Southern Utah Drag Stars v. City of St. George*, No. 4:23-cv-00044, 2023 WL 4053395 (D. Utah June 16, 2023). ECF 54. Plaintiffs assert that the court in that case held "that a municipality violated the First Amendment by imposing a moratorium on special events permits that targeted drag shows," "that drag shows are among the forms of 'live entertainment, such as musical and dramatic works,' protected by the First Amendment" (quoting *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65 (1981)), and "that drag shows are a 'medium of expression, containing political and social messages regarding (among other messages) self-expression, gender stereotypes and roles, and LGBTQIA+ identity.'" ECF 54 at 1–2. Plaintiffs say that these points "relate[] to Plaintiffs' argument that drag is an art form, and also a mode of political and social expression, protected by the First Amendment."

In fact, the Utah court barely discussed whether drag shows, categorically, are expressive conduct to which the First Amendment applies. In that case, after the city received an application for a special event permit for a drag show, it adopted an ordinance to prohibit the processing of

1

special event applications, but exempted certain recurring events. *Southern Utah Drag Stars* at *4. It also enforced, for the first time, a preexisting ordinance prohibiting the advertising of special events without first obtaining a permit, and denied the plaintiffs' request for a special event permit because they advertised the show before obtaining the permit, while failing to similarly deny requests from several other violators. *Id*. at *5–10. The city then denied the application.

The Utah court ruled that the advertising prohibition and the six-month moratorium were overbroad, *id*. at *13–16, that the advertising prohibition was unconstitutionally vague, *id*. at *16–17, that the advertising prohibition and six-month moratorium were unconstitutional prior restraints, *id*. at *17-19, that the plaintiffs' planned drag show was free speech, *id*. at *20, and that the City's actions failed to satisfy strict scrutiny or intermediate scrutiny, *id*. at *20–25.

The Utah Court stated that the city had advanced "thin arguments" that the drag show was not free speech—arguments that "do not merit discussion" *Id*. at *12, *20. Indeed, the court did not discuss the city's argument. Its argument was that the plaintiffs did not prove that their drag show was inherently expressive conduct because plaintiffs' "ideas are not conveyed through the drag performance itself, but must be explained by the performer." Exhibit 1 at 22-24 (citing *Rumsfeld v. Forum for Acad. And Institutional Rights, Inc.*, 547 U.S. 47, 65, 66 (2006). Defendant Wendler makes a similar argument, but goes into far greater detail than the Utah city did. ECF 35 at 8–13, ECF 52 at 5–6. Under *FAIR*, drag shows are not automatically, categorically, inherently expressive conduct.

The court held that drag shows are automatically, categorically, inherently expressive conduct for three reasons, none of which hold water. First, the court asserted, "'[s]peech' includes 'expressive conduct' and live entertainment, such as musical and dramatic works." *Southern Utah*

*Drag Stars* at *20 (citing *Texas v. Johnson*, 491 U.S. 397 (1989) and *Schad*). Plaintiffs in this case made a similar argument in their response in opposition to Defendants' motions to dismiss. ECF 45 at 17, 25. In his reply, Defendant Wendler demonstrated that it is incorrect that "live entertainment, such as musical and dramatic arts" are automatically, categorically, speech. ECF 52 at 1–5. For instance, the *Schad* court did not so hold. Instead, it struck down an ordinance prohibiting all entertainment in a certain area because it prohibited lots of entertainment that contained protected First Amendment activity—not because all entertainment (such as nude dancing) *is* First Amendment activity. *Id*. at 4.

Second, the Utah court noted that two drag performers submitted declarations "explain[ing] that drag 'is an art form, a source of entertainment, and a form of activism' and conveys a 'valuable political message to convey that individuals with gender presentation and identities outside the majoritarian norm are welcome in public places.'" *Southern Utah Drag Stars* at *20. But as Defendant Wendler has explained, the Supreme Court has rejected "the view that conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *FAIR*, 547 U.S. at 65–66 (cleaned up) (ECF 35 at 9) and has held that if "[t]he expressive component [of alleged inherently expressive conduct] is not created by the conduct itself but by the speech that accompanies it," then the conduct is not protected speech. *Id*. at 66 (ECF 35 at 10). Yet the Utah court erroneously found drag shows to be, categorically, "speech" based on the explanatory speech in the declarations.

Moreover, it is simply not a universal truth that every single drag show "conveys a 'valuable political message to convey that individuals with gender presentation and identities outside the majoritarian norm are welcome in public places.'" For instance, the 1943 movie scene cited in

3

Plaintiffs' complaint (ECF 37-4) conveys no such message. Drag shows simply do not automatically, inherently convey any particular message.

Third, the Utah court cited *Norma Kristie, Inc. v. City of Oklahoma City*, 572 F. Supp. 88 (W.D. Okla. 1983) and *Friends of Georges, Inc. v. Mulroy*, No. 2:23-cv-2163, 2023 WL 3790583 (W.D. Tenn. June 2, 2023) for the proposition:

> Given current political events and discussions, drag shows of a nature like the planned Allies Drag Show are indisputably protected speech and are a medium of expression, containing political and social messages regarding (among other messages) self-expression, gender stereotypes and roles, and LGBTQIA+ identity.

*Southern Utah Drag Stars* at *20. Defendant Wendler has already addressed these opinions. Neither establishes that drag shows are automatically, categorically protected by the First Amendment. ECF 35 at 18–19; ECF 52 at 8, 9–10.

Moreover, the Utah court's failure to find additional precedent further demonstrates that, should this Court find that the First Amendment applies, Defendants Wendler is entitled to qualified immunity. Three cases, one from 1983 and two handed down after the events at issue in this case do not establish a "robust" "out-of-circuit consensus" that would put President Wendler on notice of clearly established law giving drag shows First Amendment protection. *Morrow v. Meachum*, 917 F.3d 870, 879 (5th Cir. 2019). And, again, it is simply untrue that every single drag performance inherently conveys the messages identified by the Utah court.

Additionally, as the Utah court pointed out at the start of its opinion, the Utah case concerned a public space. *Southern Utah Drag Stars* at *1. This case concerns space for student events in a university, in a public education context, where the Fifth Circuit's "lewd, indecent or offensive speech and conduct" exception applies, even if this Court were to find that drag shows are protected by the First Amendment. ECF 35 at 13–15; ECF 52 at 6–7.

Dated: June 22, 2023.            Respectfully submitted,

JOHN SCOTT
Provisional Attorney General

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

RALPH MOLINA
Deputy Attorney General for Legal Strategy

LEIF A. OLSON
Chief, Special Litigation Division

 /s/ *Charles K. Eldred*
CHARLES K. ELDRED
Special Counsel for Legal Strategy
State Bar No. 00793681

MUNERA AL-FUHAID
Special Counsel
Special Litigation Division

DAVID BRYANT
Special Counsel
Special Litigation Division

Office of the Attorney General of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1706 • fax (512) 320-0167
charles.eldred@oag.texas.gov

ATTORNEYS FOR DEFENDANT WENDLER

## CERTIFICATE OF SERVICE

      I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on June 22, 2023.

                                              */s/ Charles K. Eldred*
                                              Charles K. Eldred