# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

SPECTRUM WT, *et al.*,

    Plaintiffs,

    v.

WALTER WENDLER, IN HIS INDIVIDUAL
CAPACITY AND HIS OFFICIAL CAPACITY
AS THE PRESIDENT OF WEST TEXAS
A&M UNIVERSITY, *ET AL.*,

    Defendants.

Case No.: 2:23-cv-00048

Hon. Matthew J. Kacsmaryk

**PLAINTIFFS' BRIEF IN OPPOSITION
TO DEFENDANTS' PRIORITY MOTION
TO DISMISS FOR LACK OF SUBJECT
MATTER JURISDICTION**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................1

II.   BACKGROUND ................................................................................................2

III.  ARGUMENT ....................................................................................................5

    A.    Spectrum WT Has Standing to Sue in Its Own Right................................5

        1.    Under Rule 17(b)(3), student organizations like Spectrum WT have
           capacity to sue for deprivation of constitutional rights............................ 5

        2.    The ongoing drag show ban shows Spectrum WT satisfies Article
           III's injury-in-fact requirement. ................................................................ 6

        3.    The concrete threat to Spectrum WT's First Amendment rights also
           shows an Article III injury. ....................................................................... 7

    B.    Spectrum WT Has Standing to Sue on Behalf of Its Members. ............................8

    C.    Plaintiff Bright Has Standing for the Prospective Relief Claims. ........................10

    D.    Defendants' Ongoing Ban on Protected Expression Is Neither Moot Nor
        Unripe. ..........................................................................................................11

    E.    Plaintiffs Do Not Dispute Defendants' Arguments on Stovall............................12

    F.    If Necessary, the Court Should Grant Leave to Amend. .......................................12

IV.   CONCLUSION.................................................................................................13

# TABLE OF AUTHORITIES

## <u>Cases</u>

*303 Creative LLC v. Elenis*,
    600 U.S. 570 (2023) ............................................................................................... 10

*Associated Students of Univ. of Cal. at Riverside v. Kleindienst*,
    60 F.R.D. 65 (C.D. Cal. 1973) ................................................................................ 5

*Babbitt v. Farm Workers*,
    442 U.S. 289 (1979) ............................................................................................... 7

*Ctr. for Bio-Ethical Reform, Inc. v. Black*,
    234 F. Supp. 3d 423 (W.D.N.Y. 2017) ............................................................... 5, 6

*Freedom From Religion Found. v. Abbott*,
    955 F.3d 417 (5th Cir. 2020) ............................................................................... 11

*Get Outdoors II, LLC v. City of San Diego*,
    506 F.3d 886 (9th Cir. 2007) ................................................................................. 7

*Healy v. James*,
    408 U.S. 169 (1972) ............................................................................................... 6

*Lion Health Servs., Inc. v. Sebelius*,
    635 F.3d 693 (5th Cir. 2011) ................................................................................. 9

*OCA-Greater Houston v. Texas*,
    867 F.3d 604 (5th Cir. 2017 .................................................................................. 6

*Spectrum WT v. Wendler*,
    No. 23-10994, 2025 WL 2388306 (5th Cir. Aug. 18, 2025) ............................. 4, 8

*Speech First, Inc. v. Fenves*,
    979 F.3d 319 (5th Cir. 2020) ...................................................................... 7, 8, 9, 11

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    600 U.S. 181 (2023) ............................................................................................... 8

*Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*,
    778 F.3d 502 (5th Cir. 2015) ................................................................................. 4

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) .......................................................................................... 7, 12

*Tex. Bankers Ass'n v. Off. of the Comptroller*,
    728 F. Supp. 3d 412 (N.D. Tex. 2024) ................................................................ 10

*Three Expo Events, LLC v. City of Dallas*,
    907 F.3d 333 (5th Cir. 2018) ........................................................................... 6

*Verizon Emp. Benefits Comm. v. Spiliotis*,
    No. 3:06-CV-2078-B, 2007 WL 9717275 (N.D. Tex. Aug. 9, 2007) ................................ 6

*Westfield High Sch. L.I.F.E. Club v. City of Westfield*,
    249 F. Supp. 2d 98 (D. Mass. 2003) ........................................................... 6, 9

## **Rules**

Fed. R. Civ. P. 15(a)(2) ................................................................................... 13

Fed. R. Civ. P. 16(b)(4) ................................................................................... 13

Fed. R. Civ. P. 17(a)(3) ................................................................................... 12

Fed. R. Civ. P. 17(b)(3) ..................................................................................... 6

Fed. R. Civ. P. 17(b)(3)(A) ............................................................................... 5

## I.    INTRODUCTION

Two-and-a-half years after Spectrum WT and its officers sued to stop West Texas A&M University President Walter Wendler's viewpoint- and content-based ban on campus drag performances, this case and controversy remains ripe for prospective relief. President Wendler has twice blocked Spectrum WT's drag performances at Legacy Hall. And he confirmed that until a court enjoins his ban, he will keep enforcing it. Even after a Fifth Circuit panel last month held that Wendler's ban likely violates the First Amendment, he has not relented.

Instead, Defendants Wendler and Christopher Thomas now move to dismiss for lack of subject matter jurisdiction. But their motion misses the mark. The allegations and evidence establish that Spectrum WT, its members, and its former president Barrett Bright still cannot stage a drag performance in Legacy Hall even though they intend to and even though the university has long opened Legacy Hall to students and the public alike for expressive activities. But they cannot because of President Wender's ban that has hung over the campus stage for years—a ban he will enforce until a court says he cannot. That enduring harm no doubt meets Article III's injury-in-fact requirement. By the same token, Spectrum WT and Bright's intent to perform on the campus stage but for President Wendler's ban means their claims for injunctive and declaratory relief are far from moot or unripe.

If anything, the Court should grant Spectrum WT and Bright leave to amend their complaint to add any allegations that arose after the Court closed the case pending appeal in May 2024. But the Court should not dismiss this case and leave public university students without judicial review for an ongoing prior restraint that continues to stifle their First Amendment rights at a public university. The Court should deny Defendants' motion to dismiss.

1

## II.    BACKGROUND

***Spectrum WT tries to host a drag performance on campus. But President Wendler makes clear he will not allow it until a court rules he must.***

Spectrum WT is a recognized student organization at West Texas A&M, with a mission of providing support and acceptance for the LGTBQ+ community on campus and beyond. (ECF 28, First Amended Verified Complaint ("FAC") ¶¶ 10–12; App. Ex. 1, Fanelli Decl. ¶¶ 5–6.) Legacy Hall is a large auditorium with a stage at the university's JBK Student Center. (ECF 28, FAC ¶ 33.) For years, the university has held Legacy Hall open to a host of expression from students and the public alike, including for concerts, magic shows, and pageants. (*Id.* ¶¶ 34, 37–40.) And the JBK Student Center has hosted past student drag shows, with university approval. (*Id.* ¶ 41.)

In January 2023, Spectrum WT applied to hold PG-13 drag show for charity at Legacy Hall on March 31, 2023, to further the group's mission and to express support for the campus LGTBQ+ community. (*Id.* ¶¶ 13, 52–56, 84–101.) University staff issued a "Tentative Confirmation" for the show. (*Id.* ¶¶ 89–91.)

Yet on March 20, 2023, President Wendler emailed students, faculty, and staff announcing that West Texas A&M "will not host a drag show on campus." (*Id.* ¶ 105 & Ex. A.) Wendler branded drag performance as "a slapstick sideshow" that has "become[] harassment" because, in his view, it is "sexism." (*Id.* ¶ 108 & Ex. A.) And he derided drag shows as "mocking" and "demeaning." (*Id.* ¶ 105 & Ex. A.) Despite Wendler's claims, West Texas A&M received no complaints that the drag show would harass anybody. (*Id.* ¶ 111; *see also* ECF 79, Thomas Answer ¶ 111 (admitting that Defendant "Thomas had not received any formal or informal complaints from students or staff that a drag show would constitute harassment of any individual or group.").)

Soon after, Spectrum WT and two of its officers, Barrett Bright and Lauren Stovall, sued to preliminarily and permanently enjoin President Wendler's drag performance ban for violating

the First Amendment's bars on prior restraints, content-based restrictions in campus public forums, and viewpoint discrimination. (ECF 1.) They also sought declaratory relief and damages against President Wendler. (*Id.*) Defendants moved to dismiss the lawsuit under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF 34, 38.) In their motions, Defendants did not challenge Spectrum WT's capacity to sue as an unincorporated association. (*See* ECF 35, 39.)

On September 21, 2023, the Court granted Defendants' Rule 12(b)(6) motion to dismiss Plaintiffs' damages claim and denied Plaintiffs' motion for a preliminary injunction. (ECF 59.) The Court denied the Rule 12(b)(1) motion to dismiss as to Defendants Wendler and Thomas. (*Id.*) Plaintiffs timely appealed the preliminary-injunction denial to the Fifth Circuit. (ECF 61.)

Just after Wendler cancelled their March 2023 show, Spectrum WT and its members again requested to stage a PG-13 drag performance at Legacy Hall on March 22, 2024. (ECF 83-1, Decl. of B. Bright ¶¶ 17–22, 29.) Campus staff again issued a "Tentative Confirmation" for the show. (*Id.* ¶ 23.) So to preserve their First Amendment right to hold the March 2024 show, Plaintiffs sought an injunction pending appeal against President Wendler enforcing his drag show ban. (ECF 82; *see also* ECF 114, Appellants' Mot. Inj. Pending Appeal, *Spectrum WT v. Wendler*, __F.4th__, 2025 WL 2388306 (5th Cir. Aug. 18, 2025).) After the Supreme Court declined to enter an emergency injunction on March 15, 2024, President Wendler sent another campus wide email, announcing he was denying Spectrum WT's application for the March 22, 2024 drag performance. In his email, Wendler declared, "when the court makes a final decision, it will be implemented." (App. Ex. 2, Bright Decl., Ex. A.)

The Court closed this case pending appeal on May 4, 2024, stating it "will reopen this case upon resolution of Plaintiffs' appeal." (ECF 98.)

*A Fifth Circuit panel rules in Plaintiffs' favor. Defendants move to dismiss again. And Plaintiffs still intend to perform at Legacy Hall.*

On August 18, 2025, a Fifth Circuit panel reversed the denial of Plaintiffs' preliminary injunction motion, holding that President Wendler's ongoing drag show ban likely violates the First Amendment and issuing judgment in Plaintiffs' favor. *Spectrum WT v. Wendler*, No. 23-10994, 2025 WL 2388306, at \*20, \*27 (5th Cir. Aug. 18, 2025). The Fifth Circuit is withholding mandate. Still, President Wendler has given no indication he is rescinding his ban.

Shortly after the Fifth Circuit issued its decision, this Court ordered the parties to attend a September 10 status conference. (ECF 104.) On September 5, Wendler and Thomas moved to dismiss the remaining claims for lack of subject matter jurisdiction. (ECF 105.) They submitted two declarations with their motion—one from Defendant Thomas regarding Spectrum WT's intent to hold a drag show at Legacy Hall and one from the university registrar stating that Plaintiff Stovall is no longer attending West Texas A&M and that Plaintiff Bright has graduated.[1]

But make no mistake: As soon as a court enjoins President Wendler's ban (or the ban is otherwise lifted), Spectrum WT intends to hold a drag performance at Legacy Hall—as it always has. (ECF 28, FAC ¶¶ 83, 127; App. Ex. 1, Fanelli Decl. ¶¶ 12–13.) So too do its members, some of whom will perform in the show. (App. Ex. 1, Fanelli Decl. ¶¶ 12–13.) And even though Bright has graduated, he intends to perform in that show, showing support for the group for which he served as president and the campus community to which he belongs as a recent graduate. (App. Ex. 2, Bright Decl. ¶¶ 16–17.)

---

[1] (ECF 107.) Because Defendants have submitted declarations, they are mounting a factual attack on subject matter jurisdiction, and Plaintiffs are entitled to submit evidence in response. *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (citations omitted). They have done so. *E.g.*, Appendix Exs. 1–2.

## III.     ARGUMENT

### A.     Spectrum WT Has Standing to Sue in Its Own Right.

Because Spectrum WT "alleges loss of the ability to express its message in the way it preferred due to the content- and viewpoint-hostility of defendants, it has alleged an injury-in-fact … that is traceable to defendants, redress[a]ble, and … sufficient to confer organizational standing." *Ctr. for Bio-Ethical Reform, Inc. v. Black*, 234 F. Supp. 3d 423, 432 (W.D.N.Y. 2017) (holding unincorporated pro-life student association had Article III standing). Defendants' argument that Spectrum WT and its members are suffering no injury-in-fact ducks the focal point of Spectrum WT's claims: A ban barring Spectrum WT and its members from a campus public forum—all because President Wendler disapproves of their expression—will hang over their head until a court enjoins it. That satisfies Article III under any measure.

### 1.     Under Rule 17(b)(3), student organizations like Spectrum WT have capacity to sue for deprivation of constitutional rights.

Under Federal Rule of Civil Procedure 17(b)(3), Spectrum WT has capacity to sue even if it is not, as Defendants assert, "a corporation, limited partnership, partnership, or other legal entity with capacity to sue under the laws of Texas." (ECF 106, Defs. Mot. to Dismiss at 6.) Rule 17(b)(3), which Defendants ignore, states that an "unincorporated association … may sue … in its common name to enforce a substantive right existing under the United States Constitution or laws." Fed. R. Civ. P. 17(b)(3)(A). Suing to enforce a substantive First Amendment right is exactly what Spectrum WT is doing. And, as a registered student group "prosecuting a common objective," Spectrum WT "constitutes an unincorporated association within the meaning of Rule 17(b)." *Associated Students of Univ. of Cal. at Riverside v. Kleindienst*, 60 F.R.D. 65, 67–68 (C.D. Cal. 1973) (upholding capacity of unincorporated university student group to sue for First Amendment violation); *see also Verizon Emp. Benefits Comm. v. Spiliotis*, No. 3:06-CV-2078-B,

2007 WL 9717275, at *2–3 (N.D. Tex. Aug. 9, 2007) (explaining why an unincorporated association had standing to sue). *See generally Healy v. James*, 408 U.S. 169 (1972) (upholding a group of university students' First Amendment challenge to denial of official recognition).

If courts followed Defendants' reasoning, student groups nationwide would be unable to sue over constitutional violations. From political advocacy groups to religious fellowships, universities could infringe student groups' and their members' First Amendment rights at will, knowing they could not fight back. And national organizations would have to choose between paying to incorporate every campus affiliate or abandoning campus outreach, jeopardizing their missions. But both Rule 17(b)(3) and courts reject those outcomes. *E.g.*, Fed. R. Civ. P. 17(b)(3); *Ctr. for Bio-Ethical Reform*, 234 F. Supp. 3d at 432; *Westfield High Sch. L.I.F.E. Club v. City of Westfield*, 249 F. Supp. 2d 98, 108–09 (D. Mass. 2003) (denying motion to dismiss unincorporated Christian student club's First Amendment claims). This Court should do the same.

> 2.    The ongoing drag show ban shows Spectrum WT satisfies Article III's injury-in-fact requirement.

Not only does Spectrum WT have capacity to sue for a constitutional violation, but it has standing to sue on its own behalf. A group has "organizational standing" if it "meets the same standing test that applies to individuals." *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017) (citation omitted). Spectrum WT easily satisfies that test.

When a plaintiff sues for a First Amendment violation based on public officials denying the plaintiff use of a public forum, standing "is not a complicated case … but a very simple one." *Three Expo Events, LLC v. City of Dallas*, 907 F.3d 333, 341–42 (5th Cir. 2018) (reversing dismissal for lack of standing). That is why standing is "very simple" here: Defendants are denying Spectrum WT access to public forums on campus (a) based on the content of Plaintiff's expression and (b) because they dislike Spectrum WT's and its members' messaging. (ECF 28, FAC ¶¶ 134,

137–38, 203 & Ex. A.) Making standing even simpler, Spectrum WT's allegations show their injury flows from an entrenched prior restraint on protected expression, and "the threat of the prior restraint itself constitutes the injury-in-fact." *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 895 (9th Cir. 2007). (*See also* ECF 28, FAC ¶¶ 193–219 (detailing prior restraint).) And given that President Wendler and Vice President Thomas have twice enforced a standardless, viewpoint-based prior restraint to bar Spectrum WT from performing at Legacy Hall, the threat is very real that both would again block any drag performance Spectrum WT intends to stage. Here, "[p]ast enforcement of speech-related policies" should "assure standing." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 336 (5th Cir. 2020), as revised (Oct. 30, 2020).

3.    The concrete threat to Spectrum WT's First Amendment rights also shows an Article III injury.

The acts Defendants have taken underscore a threatened injury that also satisfies Article III. For threatened enforcement to create an Article III injury, a plaintiff must allege three things: (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest"; (2) that the "intended future conduct is arguably proscribed by the statute"; and (3) that "the threat of future enforcement is substantial." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161–64 (2014) (cleaned up); *see also Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979) (holding an organization can show a future injury if it intends "to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by" a regulation). Spectrum WT meets all three elements.

First, Spectrum WT has every intent to stage a drag performance in Legacy Hall, and as their past efforts show, they can and will take all steps to complete the university's reservation process. (App. Ex. 1, Fanelli Decl. ¶¶ 12–13; ECF 28, FAC ¶¶ 52–61, 82, 85–100 130, 161; ECF 83-1 Decl. of B. Bright ¶¶ 17–22, 29.) And as the Fifth Circuit panel recently held, Spectrum's

7

intended performance is First Amendment-protected expression in a public forum. *Spectrum WT*, 2025 WL2388306 at *7. Second, President Wendler's drag-performance ban proscribes Plaintiffs' "intended future conduct." (*See* ECF 28-1.) And third, Wendler has left no doubt that he will enforce his drag ban again unless a court enjoins it. (App. Ex. 2, Bright Decl. ¶¶ 10–12, 14, Ex. A; ECF 28, FAC ¶¶ 119, 120, 158, Ex. A.) Thus, the threat that Defendants will censor Spectrum WT's intended drag show is "substantial."

### B.    Spectrum WT Has Standing to Sue on Behalf of Its Members.

Spectrum WT also has standing because it is suing to protect the First Amendment rights of its members. *See, e.g., Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.,* 600 U.S. 181, 200–01 (2023) (holding a student organization had standing "when it filed suit" to protect constitutional rights of its harmed members). For a student group to satisfy "associational standing," it must show "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Speech First,* 979 F.3d at 330 (citations omitted). Spectrum WT meets those elements.

As Spectrum WT's allegations explain, it is also suing on behalf of its members. It alleges that "President Wendler's actions have chilled the expression of individual members of Spectrum WT as they relate to drag, sexual orientation, and gender identity" and are causing them irreparable harm. (ECF 28, FAC ¶¶ 4, 228.) For challenges to the future enforcement of a speech restriction under the First Amendment, "chilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement." *Speech First*, 979 F.3d at 330–31 (citations omitted).

Spectrum WT's allegations also detail how the group's members have a right to use Legacy Hall for expressive activities and how Spectrum WT is suing to stop President Wendler's drag ban

from infringing that right. (*E.g.*, ECF 28, FAC ¶¶ 3, 10–11, 51, 132–133, 189, 214.) And just as they did when Spectrum WT first sued, several of its members intend to perform should Spectrum WT be able to stage a future drag show at Legacy Hall. (App. Ex. 1, Fanelli Decl. ¶¶ 12–13.) In short, Spectrum WT's members face the same Article III injuries to the current and intended exercises of their First Amendment detailed earlier: They cannot perform at Legacy Hall now, and Defendants will again thwart any attempt to perform at Legacy Hall.[2]

Because Spectrum WT's members can show the injury-in-fact required for Article III standing, they "would otherwise have standing to sue in their own right." *Speech First*, 979 F.3d at 330. No one contests that "the interests" of Spectrum WT's members that "it seeks to protect are germane to the organization's purpose." *Id.* The group is suing to ensure it and its members can express themselves in a way that advances its mission. (ECF 28, FAC ¶¶ 11, 74; App. Ex. 1, Fanelli Dec. ¶¶ 6–7, 19.)

Finally, "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Speech First*, 979 F.3d at 330. An injunction against President Wendler's ban will restore the First Amendment rights of Spectrum WT's members just as it will Spectrum WT's own rights, and Defendants point to no authority holding otherwise.

Nor does associational standing disappear just because Bright and Stovall are no longer Spectrum WT student members, no matter what Defendants insist. (*See* ECF 106 at 7.) Rather, student clubs like Spectrum WT are "keenly and exclusively suited to protecting the interests of its future members," even "long after the individually-named student plaintiffs have graduated." *Westfield High Sch. L.I.F.E. Club*, 249 F. Supp. 2d at 108–09 (holding unincorporated student

---

[2] Worse still, Spectrum WT's members help fund Legacy Hall by paying student fees for the JBK Student Center, which houses Legacy Hall. (*E.g.*, ECF 28, FAC ¶¶ 132–33.) By depriving them of using the space they fund, the drag show ban only deepens the members' Article III injuries. *See, e.g.*, *Lion Health Servs., Inc. v. Sebelius*, 635 F.3d 693, 698–99 (5th Cir. 2011) (financial harm can establish injury-in-fact).

association had standing). It matters not if those "future members" are not named plaintiffs: The Fifth Circuit has rejected the view that an organization must name a member to establish standing. *E.g., Tex. Bankers Ass'n v. Off. of the Comptroller*, 728 F. Supp. 3d 412, 419 (N.D. Tex. 2024). In any case, Plaintiffs need only move under Rule 17(a)(3) to substitute current Spectrum WT President Johnathan Fanelli for former President Bright. They intend to do so promptly.

For these reasons, the Court should deny Defendants' motion to dismiss Spectrum WT's claims for prospective relief.

**C.    Plaintiff Bright Has Standing for the Prospective Relief Claims.**

Although Bright has graduated from West Texas A&M, he intends to participate in a future Spectrum WT drag show at Legacy Hall if one is permitted—and Spectrum WT has invited him to do so. (App. Ex. 2, Bright Decl. ¶¶ 16–17; App. Ex. 1, Fanelli Decl. ¶ 15.) Nothing about Legacy Hall or the JBK Student Center's policies or practices would prevent Bright from joining Spectrum WT's performance. By contrast, West Texas A&M has long permitted student groups, their invitees, and the public alike to use Legacy Hall and similar Student Center spaces for past drag shows and other expressive activities. (ECF 26, FAC ¶¶ 40–41; ECF 80, Wendler Answer ¶¶ 40–41 (admitting the allegations in paragraphs 40–41 of the First Amended Verified Complaint).)

Thus, Bright has shown "an intention to engage in a course of conduct arguably affected with a constitutional interest" and one against which President Wendler will enforce his drag show ban. That satisfies Bright's Article III injury requirement, and the Court should deny Defendants' motion to dismiss his claims for prospective relief. *Cf. 303 Creative LLC v. Elenis*, 600 U.S. 570, 580, 583 (2023) (acknowledging a website designer's standing to bring a First Amendment challenge to a state anti-discrimination policy even though she had "yet to carry out her plans" to start the venture the policy threatened).

10

### D.    Defendants' Ongoing Ban on Protected Expression Is Neither Moot Nor Unripe.

The Court should reject Defendants' mootness argument because President Wendler's ban on drag performances at Legacy Hall and all other campus expressive spaces has kept Spectrum WT, its members, and Bright from exercising their First Amendment rights on the campus stage—and the ban will persist until a court enjoins it, as President Wendler's March 24, 2024 campus-wide email proves. The ongoing drag show ban is the epitome of an ongoing and immediate case or controversy over a restriction on First Amendment freedoms. *Freedom From Religion Found. v. Abbott,* 955 F.3d 417, 425 (5th Cir. 2020) (Mootness occurs only "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome" (quoting *Already, LLC v. Nike, Inc.,* 568 U.S. 85, 91 (2013))).

The Fifth Circuit's decision in *Speech First* makes clear why this case is not moot. There, the appeals court explained that when the University of Texas amended anti-harassment policies after a group challenged them under the First Amendment, it did not moot the challenge, because the university could not show by "an absolute certainty" that it would not reinstate the former policies. 979 F.3d at 329. If a university's voluntary cessation of speech-restrictive policies did not moot a First Amendment challenge, there is nothing moot about Plaintiffs' First Amendment challenge to a ban on expression that President Wendler has stood behind for 30 months. *See Freedom From Religion Found.*, 955 F.3d at 425 (rejecting mootness argument over a nonprofit's First Amendment claim challenging the Governor's edict to reject the group's future applications to display artwork in the Texas Capitol).

Defendants' ripeness arguments fail, too. They suggest that because "there are no drag shows for which anyone (including Spectrum WT) has reserved or applied to reserve Legacy Hall," any claim over a "hypothetical" drag show is unripe. (ECF 106 at 7.) But as Spectrum WT's Article

11

III injuries show, there is nothing "hypothetical" about its intent—and that of its members—to host a drag performance in Legacy Hall. For that reason alone, the Court need not consider ripeness. As the Supreme Court explained, the ripeness question is "in some tension" with "the principle that a federal court's obligation to hear and decide cases" presenting an Article III injury "is virtually unflagging." *Driehaus*, 573 U.S. at 167 (citation omitted) (cleaned up). And of course, as Defendants' cancellation of Spectrum WT's past two applications to host a drag show at Legacy Hall show, another application before a court enjoins Wendler's ban would be futile.

The "hardship" factor for ripeness underscores why Defendants' are wrong. *See id.* When public university students have a prior restraint hanging over their protected expression, "denying prompt judicial review would impose a substantial hardship" on them, "forcing them to choose between refraining from [protected] speech on the one hand, or engaging in that speech and risking" exile from campus, financial harm, and injury to their organizational mission. *Id.* at 167–68. Plaintiffs face that hardship here.

### E.     Plaintiffs Do Not Dispute Defendants' Arguments on Stovall.

Stovall is no longer enrolled at West Texas A&M, and Plaintiffs have no basis to dispute Defendants' arguments as to Stovall's standing for prospective relief.[3] On the other hand, Stovall reserves the right to appeal the dismissal of Stovall's damages claim against President Wendler upon final judgment. (*See* ECF 59, Mem. Op. and Order.)

### F.     If Necessary, the Court Should Grant Leave to Amend.

Plaintiffs' Verified First Amended Complaint established an ongoing First Amendment case and controversy for which Spectrum WT and Bright have standing to seek injunctive and declaratory relief. The declarations Plaintiffs have submitted only reaffirm the existence of a live

---

[3] As with a motion to substitute for Bright, Spectrum WT's current vice president could substitute in for Stovall under Rule 17(a)(3) .

controversy, and one which continues to harm the First Amendment rights of Spectrum WT, its members, and Bright. *See* App., Exs. 1–2.

Of course, as it is with most student group cases, some of Spectrum WT's members have departed, and others, like current President Fanelli, have filled their shoes. Thus, if the Court deems it necessary to cement subject matter jurisdiction, the Court should grant Plaintiffs leave to amend their complaint to reflect the updated information included in the attached declarations. A "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). And that is especially so when the court has yet to issue a scheduling order, as is true here. *See* Fed. R. Civ. P. 16(b)(4) (allowing that a scheduling order, which usually includes deadlines for amending pleadings, "may be modified only for good cause and with the judge's consent").

## IV.    CONCLUSION

For all these reasons, the Court should deny Defendants' motion to dismiss under Rule 12(b)(1).

Respectfully submitted,

/s/ JT Morris
JT Morris
TX Bar No. 24094444
Conor T. Fitzpatrick*
MI Bar No. P78981
Foundation for Individual
    Rights and Expression
700 Pennsylvania Ave., SE
Ste. 340
Washington, DC 20003
Tel: (215) 717-3473
Fax: (267) 573-3073
jt.morris@thefire.org
conor.fitzpatrick@thefire.org

Adam B. Steinbaugh*
PA Bar No. 326475
Jeffrey D. Zeman*

Pa. Bar No. 328570
Foundation for Individual
   Rights and Expression
510 Walnut St.; Ste. 900
Philadelphia, PA 19106
Tel: (215) 717-3473
Fax: (267) 573-3073
adam@thefire.org
jeff.zeman@thefire.org

* Admitted *Pro Hac Vice*

Counsel for Plaintiffs

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 8, 2025, a true and correct copy of the foregoing document was transmitted via using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

/s/ JT Morris
JT Morris
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION