**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | |
|---|---|
| SPECTRUM WT, *et al.*,<br><br>                    Plaintiffs,<br><br>         v.<br><br>WALTER WENDLER, in his individual capacity and his official capacity as the President of West Texas A&M University, *et al.*,<br><br>                    Defendants. | Case No.: 2:23-cv-00048<br><br>**PLAINTIFFS' PRE-CONFERENCE SUBMISSION** |

      Plaintiffs file this submission ahead of the September 10, 2025 status conference set by the Court's August 26, 2025 Order. (ECF 104.)

**I.     Preliminary Statement**

      Plaintiffs are prepared to participate fully in the September 10 status conference. Out of an abundance of caution, however, Plaintiffs object to holding an evidentiary hearing on September 10, if that is what the Court's August 26 Order contemplates.

      No motion is pending for which an evidentiary hearing is warranted. And while the Court has power to control its docket and proceedings, the procedural posture of this case—the lack of a pending motion relevant to the issues identified in the Court's Order, the lack of discovery, and the risk that decisions on the substantive merits will interfere with the status of the appeal pending at the Fifth Circuit—counsel against holding an evidentiary hearing at this juncture.

      First, the Court has asked the parties to present argument and evidence, but these issues do not relate to a motion pending before the Court, which closed this action in May 2024, pending resolution of Plaintiffs' appeal. (ECF 98.) No party has moved for summary judgment—indeed, the Court has not yet issued a scheduling order, as the parties requested in January 2024. (ECF 81;

*see also* Fed. R. Civ. P. 16(b)(1)–(2).) Because there is no pending motion, the parameters of an evidentiary hearing—including the parties' burdens of proof—remain ambiguous, impeding the parties' ability to adequately prepare for a hearing.

Second, of the four issues identified by the Court's Order setting the status conference, three request information about the "rules, regulations, policies, customs, and practices" for use of Legacy Hall and university administrators' evaluations of requests to use that space. (ECF 104, PgID #1165–66.) As the Fifth Circuit's recent opinion shows, those issues all impact the forum analysis, a mixed question of law and fact that remains within the Fifth Circuit's purview. *Spectrum WT v. Wendler*, ___ F.4th ___, 2025 WL 2388306, *9 (5th Cir., Aug. 18, 2025). (*See also* ECF 104, August 26, 2025 Order, PgID #1163 (noting Fifth Circuit is withholding mandate).) To that end, an evidentiary hearing on forum analysis risks "alter[ing] the status of the case as it rests before the court of appeals." *Coastal Corp. v. Texas E. Corp.*, 869 F.2d 817, 820 (5th Cir. 1989).

What's more, while Plaintiffs can meet the preliminary injunction burden with public documents about Legacy Hall's policies and usage, *Spectrum WT*, 2025 WL 2388306, *8–9, most information about Legacy Hall's policies and practices—and, notably, their application—is necessarily in Defendants' possession, custody, and control inasmuch as they operate and regulate the space. *See infra* pp. 4–6 (identifying subjects of necessary discovery). In anticipation of the September 10 status conference, the parties exchanged exhibit lists, and Defendants' is notably devoid of information pertaining to the actual use of Legacy Hall in practice. The parties have not completed discovery on that issue (or others), and the Court has not yet entered a discovery deadline. As explained more below, permitting discovery before an evidentiary hearing or similar proceeding on the merits, including one untethered to any motion, would meet the Federal Rules'

mandate that the Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1; *see also Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir. 1973) ("The discovery provisions of the Federal Rules of Civil Procedure allow the parties to develop fully and crystalize concise factual issues for trial. Properly used, they prevent prejudicial surprises and conserve precious judicial energies.").

## II.     Status of Plaintiffs

Plaintiff Spectrum WT remains a registered student organization in good standing at West Texas A&M University ("West Texas A&M") and still desires to stage a drag performance at Legacy Hall. As Plaintiffs' opposition to Defendants' Sept. 5, 2025, priority motion to dismiss details (ECF 110), Spectrum WT's injunctive and declaratory relief claims do not depend on the independent claims of Plaintiffs Bright or Stovall. Spectrum WT's current officers will attest that but for Wendler's edict banning drag shows, the student organization would again seek to host a PG-13 drag show. (*See also* ECF 28, First Amended Verified Complaint ("FAC"). ¶¶ 127, 134, 136, 161, 186 (alleging an ongoing intent to stage a drag performance at West Texas A&M). If and when the Fifth Circuit's mandate issues, Spectrum WT will begin the process of applying to hold a PG-13 drag show this school year. Thus, Spectrum WT's claims for injunctive and declaratory relief to allow the organization to hold a drag show remain pending.

Although Plaintiff Bright has graduated and Plaintiff Stovall is no longer enrolled at the university, Bright intends to perform at Spectrum WT's next drag performance. ECF 111, App. Ex. 2, Bright Decl. ¶¶ 16–17. Accordingly, Bright still faces a constitutional injury for which he can pursue prospective relief. Further, because Bright and Stovall still have a right to appeal the

3

dismissal of their damages claims upon final judgment (*see* ECF 59), they remain as plaintiffs, but acknowledge Stovall can no longer pursue prospective relief.

**III.    Discovery Should Take Place Before Any Proceeding on the Merits.**

The Court's August 26 Order instructs the parties to "state their readiness to proceed to trial on the merits." Before the parties proceed to trial on the merits—or more appropriately, summary judgment—they should have an opportunity to conduct discovery, as not only the parties but this Court has recognized. Before the Court closed the case pending resolution of the appeal, the parties held a Rule 26(f) conference, submitted a Rule 26(f) report, and exchanged initial disclosures. In the report, the parties agreed "discovery will be needed related to the claims and defenses in this lawsuit." (ECF 81, PgID #1032.) Likewise, the Court stated that certain aspects of this case, including "the relevant forum" for Plaintiffs' planned expression, "remain fact-intensive and underdeveloped." (ECF 63, PgID #928.) To that end, the Court should enter a scheduling order under Rule 16(b) containing discovery and dispositive motion deadlines before taking up the merits. *See* Fed. R. Civ. P. 16(b) (a district court "must" enter a scheduling order "within the earlier of 90 days after any defendant has been served with the complaint or 60 days after any defendant has appeared," "unless the judge finds good cause for delay").

The parties are entitled to conduct discovery before this case proceeds to summary judgment or another proceeding on the merits. "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1945). So the Federal Rules permit parties an opportunity to conduct discovery to develop their claims. Fed. R. Civ. P. 26; *see also Rigsby v. State Farm Fire & Cas. Co.,* 794 F.3d 457, 468 (5th Cir. 2015)

(explaining "we have reversed in circumstances where a district court inappropriately denied a party adequate discovery.").

Information on the past and present uses of Legacy Hall is critical to a forum analysis, which turns on both "policy and practice," among other factors. *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802–03 (1985); *see also Hays Cnty. Guardian v. Supple*, 969 F.2d 111, 117–18 (5th Cir. 1992) (holding a forum's classification evaluates policy as "indicated by its *consistent* practice, not each exceptional regulation that departs from the consistent practice" (emphasis in original)). Although Plaintiffs have been able to glean some information relevant to policies and practices relevant to Legacy Hall's use from the West Texas A&M website and other public websites (*see infra* pp. 7–8), Defendants are in possession of the bulk of relevant information. That includes, for example, applications for uses of the space, the administration's evaluation of those applications, and the university's response to any student or public complaints about the content of speech. And that includes information about the university's consideration of Spectrum WT's applications, in order to determine whether Defendant Wendler's prohibition on drag performances is an "exceptional regulation that departs from" the university's prior practices. *Hays Cnty. Guardian*, 969 F.2d at 117–18.

Third party discovery may also prove necessary. For instance, two former West Texas A&M employees—Amberly Winningham and Julie Eatley—are very likely to have information about uses of Legacy Hall, Spectrum WT's applications to host its performance in that campus space, and President Wendler's decision to cancel drag performances on campus. Defendants' initial disclosures also identify third parties, like JBK Student Center Staff Director Shawn Fouts and WTAMU Assistant VP for Risk Management Richard Smith, as having relevant information.

In sum, Plaintiffs need discovery on Legacy Hall policies and practices, consistent with the scope of discovery the Federal Rules allow.

As another example, Plaintiffs need discovery to explore and resolve Defendants' conflicting answers to the Amended Complaint. For example, President Wendler denied that "Spectrum WT's intended use of Legacy Hall [i]s consistent with Legacy Hall's past uses and the uses for which West Texas A&M makes the space available." (*See* ECF 28, FAC ¶ 56; ECF 80, Wendler Answer, ¶ 56.) He similarly denied that Spectrum WT's event "would not have been disruptive to the operations or educational functions of West Texas A&M." (ECF 28, FAC, ¶ 57; ECF 80, Wendler Answer ¶ 57.)  So Plaintiffs are entitled to discovery, for instance, into why Wendler contends Spectrum WT's planned performance was inconsistent with prior usage of Legacy Hall and why he thinks it would have disrupted West Texas A&M's educational functions. The need for that discovery is especially great because Defendants appear to disagree on the issue, with Vice President Thomas "admit[ting] that a Friday evening event was unlikely to disrupt West Texas A&M's educational functions." (ECF 79, Thomas Answer ¶ 57.)

Likewise, Plaintiffs need discovery to resolve President Wendler's and Vice President Thomas's disagreement over whether Spectrum WT communicated to the administration that it intended to host the drag show as a "PG-13 event." Vice President Thomas "admits that the proposed event was described by Plaintiffs as PG-13," but President Wendler denied the allegation. (*Compare* ECF 79, Thomas Answer ¶ 78 *with* ECF 80, Wendler Answer ¶ 78.) Likewise, Vice President Thomas admitted that he "had not received any formal or informal complaints from students or staff that a drag show would constitute harassment of any individual or group," but President Wendler denied the allegation. (*See* ECF 79, Thomas Answer ¶ 111; ECF 80, Wendler Answer ¶ 111.)

Given these unexplored and disputed fact issues, the Federal Rules entitle the parties to conduct discovery before the case proceeds to trial, summary judgment, or any other proceeding on the merits. Fed. R. Civ. P. 26. Plaintiffs are prepared to promptly complete the discovery they need.

Plaintiffs respectfully request the Court enter a Rule 16(b) order, setting a schedule for discovery and dispositive motion briefing.

## IV. Summary of Relevant Evidence

The Court's August 26 order instructs the parties to "present … evidence" at the September 10 status conference related to "rules, regulations, policies, customs, and practices" about Legacy Hall uses and facility requests to use Legacy Hall. (ECF 104, PgID #1165–66.) To reiterate, most of this information is in Defendants' possession, custody, and control, making discovery over these issues indispensable.

Still, Plaintiffs have been able to obtain some evidence from public documents and is prepared to offer it at the September 10 status conference, should the Court deem it necessary.[1] To assist the Court, Plaintiffs offer this summary of what it intends to offer.

- Documents showing that for years, West Texas A&M has by policy and practice opened Legacy Hall to an extensive array of expressive activities—and the university continues to do so. These include drag shows (Exs. 21–25), musical performances (Exs. 26, 30, 31, 34, 39, 40), beauty and scholarship pageants (Exs. 19–20), religious services and events (Exs. 27, 39), political speakers (Exs. 28–29), a Halloween celebration (Ex. 36), a hypnotist (Ex. 35) a showing of an R-rated horror film containing nudity (Exs. 37, 38), and fashion shows like the "Jingle and Mingle Holiday Style Show" (Exs. 43–45) and "Models and Mimosas Style Show" (Ex. 46). These uses are consistent with the university's policies and public promotion of Legacy Hall's suitability for performances of all types (Ex. 2, ¶¶ 29–34, 36–42, 45–50; Ex. 3 ¶¶ 29–34, 36–37, 39, 48; Ex. 4 at 1; Ex. 5 at §§ 1.1, 1.2, 1.3 & Definitions 2, 3; Ex. 6 at 47–48 §§ 2.18.M, 2.18.N; Ex. 12 at §§ 1.1, 1.2,

---

[1] The parties exchanged exhibit lists (Pls.' List attached as Ex. A) and confirmed to each other that neither party objects to the other's exhibits. Because the parties have not conducted discovery, the parties provided their exhibits to each other.

7

- 1.3 & Definitions 2, 3; Ex. 13 at 4; Ex. 14 at 1; Ex. 15 at 1; Ex. 16 at 1–2; Ex. 18 at 1).

- Documents showing that for years West Texas A&M has opened—and continues to open—Legacy Hall to student groups (*e.g.*, Exs. 19–20, 23–26, 28, 30, 34) and the public alike (*e.g.*, Exs. 18 at 1, 27, 32–33, 39, 41, 43–46) for hosting events, including the expressive activities listed above.

- President Wendler's Answer (ECF 80), which admits that the university has approved student groups and the public alike to use Legacy Hall and the rest of the JBK Student Center for a range of events, including some of the expressive activities listed above (*e.g.*, *id.* ¶¶ 31–40).

- The Texas A&M University System and West Texas A&M "Expressive Activity on Campus" policies, which (a) prohibit the university from acting against a student group or denying them a benefit based on their expressive activities or viewpoint, and (b) guarantee students the right "to engage in expressive activities on campus," defining "campus" as "all land and buildings owned or leased by the university." (Exs. 5, 12.)

- The current (Ex. 6) and past two versions (Exs. 7–8) of the West Texas A&M student handbook, which have policies for student expressive activity on campus (including reserving campus spaces) and prohibited conduct. (*See* Ex. 6 at 45–49; Ex. 7 at 26; Ex. 8 at 22.)

- The West Texas A&M "Facility Use Request Procedure" policy, which outlines the process for using campus spaces like Legacy Hall. (Ex. 4.)

- University emails and documents concerning West Texas A&M approving Spectrum WT's reservation of Legacy Hall for its spring 2023 drag performance. (Exs. 48–50.)

- President Wendler's emails explaining his reasons for banning drag performances at West Texas A&M. (Exs. 10–11.)

- Spectrum WT's status as a recognized student organization in good standing (which Defendants do not dispute) and its plans for future use of Legacy Hall for drag performances (*e.g.*, ECF 111, App. Ex. 1, Fanelli Decl. ¶¶ 5, 12–15, 19, Ex. 2, Bright Decl. ¶¶ 15–17).

### V. Statement on intervening authority.

The Court's August 26 Order also instructs the parties to "present arguments and evidence on … any intervening legislation or jurisprudence regarding Defendants' authority to exclude minors from sexualized material or content—including 'accessing material that is obscene only to

8

minors." (ECF 104, PgID #1166.) Again, to assist the Court, Plaintiffs provide a summary of their arguments here:

    1.    *Free Speech Coalition, Inc. v. Paxton*, 145 S. Ct. 2291 (2025): This decision upheld the constitutionality of Texas' age verification statute for access to online material that is obscene as to minors but constitutionally protected for adults. As the decision made clear explicitly, it applies *only* to material obscene as to minors. *Free Speech Coal.*, 145 S. Ct. at 2308 n. 7. In fact, the majority decision expressly excludes material like "a PG-13 or R-rated movie" from its scope. *Id.*

    *Free Speech Coalition* is thus irrelevant here. In his May 2023 motion to dismiss, President Wendler conceded that obscenity "is not an issue in the present case." (ECF 35 at 18.) Nor could it be—Spectrum WT's drag performance is PG-13, content which *Free Speech Coalition* deliberately excludes from its scope. (ECF 28, FAC ¶¶ 76-78; *see also* ECF 79, Thomas Answer ¶¶ 76, 78 ("[A]dmit[ting] that the proposed event was described by Plaintiffs as 'PG-13.'")). In short, the parties agree this case has nothing to do with obscenity, eliminating any impact *Free Speech Coalition* could have here. *See United States v. Sineneng-Smith,* 590 U.S. 371, 375–76 (2020) (explaining the party-presentation principle and vacating an appeal court's judgment based on a question the parties never raised).

    2.    *United States v. Skrmetti*, 145 S. Ct. 1816 (2025): In *Skrmetti*, the Supreme Court rejected an Equal Protection Clause challenge to a Tennessee law prohibiting certain medical procedures for minors. 145 S. Ct. at 1837. The decision does not involve any issues related to the First Amendment, stage performances (including drag performances), public forum analysis, or the authority of public university administrators to regulate a student group's expression. *Skrmetti* has no bearing on this case.

3. <u>S.B. 12, 89th Leg. (Tex. 2025)</u>: SB 12 regulates K-12 public school districts and charter schools, amending parts of the Texas Education Code regulating only local school districts and charter schools. *See, e.g.,* S.B. 12, 89th Leg. at § 1.007 ("public elementary or secondary school"); § 11.005 (repeatedly regulating "school district"); Subchapter I (same). It does not apply to public universities like West Texas A&M. And even if Section 1.009's "Infringement of Parental Rights Prohibited"—which lacks any enforcement mechanism—applies to West Texas A&M because it is a "state governmental entity," it does not apply to a registered student group at the university. In all cases, a ticketed performance on a university campus, not sponsored by the university, especially if a minor can attend *only* with a parent or adult guardian, is not an infringement of parental rights by a state actor. *See, e.g.*, *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786, 805 (2011) (invalidating a California statute restricting the sale of violent video games to minors in part because "as a means of assisting concerned parents it is seriously overinclusive because it abridges the First Amendment rights of young people whose parents … think violent video games are a harmless pastime.")

Dated: September 8, 2025

                      Respectfully submitted,

                      /s/ JT Morris
                      JT Morris
                      TX Bar No. 24094444
                      Conor T. Fitzpatrick*
                      MI Bar No. P78981
                      Foundation for Individual Rights
                         and Expression
                      700 Pennsylvania Ave., SE; Ste. 340
                      Washington, DC 20003
                      Tel: (215) 717-3473
                      Fax: (267) 573-3073
                      jt.morris@thefire.org
                      conor.fitzpatrick@thefire.org

Adam B. Steinbaugh*
CA Bar No. 304829
Jeffrey D. Zeman*
MI Bar No. P76610
Foundation for Individual Rights
    and Expression
510 Walnut St.; Ste. 900
Philadelphia, PA 19106
Tel: (215) 717-3473
Fax: (267) 573-3073
adam@thefire.org
jeff.zeman@thefire.org

* Admitted *Pro Hac Vice*

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2025, I served the foregoing document by e-mail to the following:

>David Bryant
>David.Bryant@oag.texas.gov
>
>Munera Al-Fuhaid
>Munera.Al-Fuhaid@oag.texas.gov
>
>Zachary Berg
>Zachary.Berg@oag.texas.gov

Date:   September 8, 2025                                  /s/ JT Morris
                                                           JT Morris
                                                           FOUNDATION FOR INDIVIDUAL
                                                              RIGHTS AND EXPRESSION