IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| SPECTRUM WT, *et al.*, | |
| Plaintiffs, | |
| v. | 2:23-CV-048-Z |
| WALTER WENDLER, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion to Dismiss ("Motion"), filed September 5, 2025. ECF No. 105. Plaintiffs responded on September 8, 2025. ECF No. 109. Defendants replied on September 11, 2025. ECF No. 115. The Motion is now ripe. Having reviewed the Motion, briefing, and relevant law, the Motion is **GRANTED in part** and **DENIED in part**.

**BACKGROUND**

Plaintiffs are a registered student organization ("Spectrum WT") at West Texas A&M University and two of Spectrum WT's officers. ECF No. 28 at 4–6. Plaintiffs sued West Texas A&M President Walter Wendler and other Texas A&M System officials (collectively, "Defendants") after President Wendler canceled a scheduled drag show on West Texas A&M's campus in Canyon, Texas. *See id.* at 1–2, 22–23. Plaintiffs alleged that the cancelation violated their First Amendment rights and asked this Court to enjoin Defendants from canceling the show. *See id.* at 32–33.

With the date of the drag show approaching, Plaintiffs went ahead with the show, choosing to hold it off campus instead. *See* ECF No. 28 at 25. Next, Plaintiffs planned another drag show for March 2024 and filed their First Amended Complaint ("Complaint"), in which they asked the Court to enjoin Defendants from canceling the March 2024 show. That

Complaint, which remains the operative pleading in this case, alleged four causes of action. *See* ECF No. 28. The first three causes of action were for injunctive and declaratory relief pursuant to the First Amendment and 42 U.S.C. Section 1983. *See id.* Plaintiffs sought this relief against all Defendants in their official capacities—meaning against (1) Dr. Walter Wendler, President of West Texas A&M University; (2) Dr. Christopher Thomas, Vice President of the Division of Student Affairs at West Texas A&M University; (3) John Sharp, then-Chancellor of the Texas A&M University System; and (4) ten named members of the Texas A&M University System Board of Regents (the "Board Defendants"). *See* ECF No. 28 at 30–47. The fourth cause of action, which sought damages pursuant to the First Amendment and 42 U.S.C. Section 1983, was asserted only against President Wendler in his individual capacity. *Id.*

On September 21, 2023, this Court denied preliminary injunctive relief and dismissed Plaintiffs' claims against the Board Defendants for lack of standing. *See* ECF No. 59; *Spectrum WT v. Wendler*, 693 F. Supp. 3d 689 (N.D. Tex. 2023), *aff'd in part, rev'd in part and remanded*, No. 23-10994, --- F.4th ----, 2025 WL 2388306 (5th Cir. Aug. 18, 2025). Plaintiffs filed an interlocutory appeal of this denial under 28 U.S.C. Section 1292(a)(1). *See* ECF No. 61 at 1. Nearly two years later, on August 18, 2025, a divided panel of the Fifth Circuit affirmed in part and reversed in part. *See Spectrum WT*, 2025 WL 2388306. The panel reversed this Court's denial of the preliminary injunction, dismissed Plaintiffs' claims against Chancellor Sharp for lack of standing, and remanded the case for entry of a preliminary injunction against President Wendler and Dr. Thomas. *See Spectrum WT*, 2025 WL 2388306, at *13. Judge Ho dissented. *See id.*, at *13–18. Then, by order dated August 19, 2025, the Fifth Circuit held the mandate. *See Spectrum WT v. Wendler*, No. 23-10994 (5th Cir. August 19, 2025) (order withholding mandate).

2

Most recently, this Court held a Status Conference on September 10, 2025. The primary purpose of the Status Conference was to ascertain which of the parties and four original causes of action remain in the case. The parties and Court agreed that the Court's September 2023 Memorandum Opinion and Order effectively dismissed Plaintiffs' fourth cause of action, the damages claim against President Wendler. *See also* ECF No. 63 (denying Plaintiffs' motion for partial judgment and finding that this Court "grant[ed] President Wendler's Motion to Dismiss" as to Plaintiffs' damages claim). The remaining claims in this case, then, are Plaintiffs' first, second, and third causes of action, which seek injunctive and declaratory relief against President Wendler and Dr. Thomas in their official capacities. The remaining claims and defendants have been dismissed.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may seek dismissal of an action for "lack of subject-matter jurisdiction." "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994)). The plaintiff "at all times bears the burden of demonstrating that subject matter jurisdiction exists." *Santerre v. Agip Petroleum Co.*, 45 F. Supp. 2d 558, 565 (S.D. Tex. 1999) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). This means plaintiffs must make "clear, distinct, and precise affirmative jurisdictional allegations" in pleadings, or else federal courts may not assert jurisdiction. *SXSW, L.L.C. v. Fed. Ins. Co.*, 83 F.4th 405, 407 (5th Cir. 2023) (quoting *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988)). This is because federal courts "presume[] that a cause lies outside [their] limited jurisdiction." *Kokkonen*, 511 U.S. at 377.

Courts must consider jurisdictional challenges "before addressing any attack on the merits." *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012); *see also Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court shoulder consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."). And when a party moves to dismiss a case under Rule 12(b)(1), a court may dismiss for lack of subject-matter jurisdiction on any of three bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the records; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986). If a court finds that dismissal is warranted, any pending interlocutory appeal is moot. *See, e.g.*, *Satanic Temple, Inc. v. Texas Health & Hum. Serv. Comm'n*, 79 F.4th 512, 513–14 (5th Cir. 2023) (dismissing sua sponte an appeal from denial of a preliminary injunction after the district court dismissed the underlying case); *Koppula v. Jaddou*, 72 F.4th 83, 84 (5th Cir. 2023) ("A denial of permanent relief moots the appeal from a denial of preliminary relief.").

**ANALYSIS**

The remaining Defendants in this case, President Wendler and Dr. Thomas, argue that the Court should dismiss "(a) the remaining claims of Plaintiffs Barrett Bright and Lauren Stovall in this action and (b) this action as to all parties and claims, for mootness, lack of standing, lack of ripeness, and lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure." ECF No. 106 at 6. The Court will address each of Defendants' arguments in turn.

**I. Standing**

To have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

4

redressed by a favorable judicial decision." *La Union Del Pueblo Entero v. Abbott*, No. 24-50826, --- F.4th ----, 2025 WL 2489464, at *4 (5th Cir. Aug. 29, 2025) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "An injury in fact is 'an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up)). "The second and third requirements, causation and redressability, are usually 'flip sides of the same coin.'" *Diamond Alt. Energy, LLC v. Env't Prot. Agency*, 606 U.S. ----, 145 S. Ct. 2121, 2133 (2025) (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024)). "Causation requires the plaintiff to show 'that the injury was likely caused by the defendant,' and redressability requires the plaintiff to demonstrate 'that the injury would likely be redressed by judicial relief.'" *Id.* (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)).

"An organization 'may have standing either by showing it can sue on behalf of its members (associational standing) or sue in its own right (organizational standing).'" *La Union*, 2025 WL 2489464, at *4 (quoting *Texas State LULAC v. Elfant*, 52 F.4th 248, 253 (5th Cir. 2022) (internal quotation marks omitted)). Associational standing is "derivative of the standing of the association's members, requiring that [1] they have standing and [2] that the interests the association seeks to protect be germane to its purpose." *Id.* (quoting *OCA-Greater Hou. v. Texas,* 867 F.3d 604, 610 (5th Cir. 2017)). In other words, a group has associational standing "only if . . . at least one of its members would have standing to sue in his own right." *Munsell v. Dep't of Agric.*, 509 F.3d 572, 584 (D.C. Cir. 2007) (quoting *GrassRoots Recycling Network, Inc. v. EPA*, 429 F.3d 1109, 1111 (D.C. Cir. 2005) (internal quotation marks omitted)). By contrast, "[o]rganizations suing on their own behalf 'must satisfy the usual standards for injury in fact, causation, and redressability that apply to

5

individuals.'" *La Union*, 2025 WL 2489464, at *4 (quoting *All. for Hippocratic Med.*, 602 U.S. at 393–94).

### A. Individuals' Standing

At the time this suit was filed more than two years ago, Plaintiffs Barrett Bright and Lauren Stovall were officers in Spectrum WT. *See* ECF No. 110 at 6–7. Defendants state that on "August 27, 2025, President Wendler determined from the Registrar at West Texas A&M University, Diane Brice, that Plaintiff Barrett Bright had graduated from West Texas A&M University in May 2024 and is no longer enrolled as a student at West Texas A&M University in any capacity." ECF No. 106 at 9. President Wendler also determined from the Registrar that "Plaintiff Lauren Stovall is not enrolled at West Texas A&M University in any capacity." *Id.* Today, then, neither Stovall nor Bright are enrolled at West Texas A&M or remain student-members of Spectrum WT. Defendants contend this means their claims "are now moot." ECF No. 106 at 11.

First, Stovall. Defendants argue that her departure from West Texas A&M means she should be dismissed from this case. *See* ECF No. 106 at 10–11. Plaintiffs admit they "have no basis to dispute Defendants' arguments as to Stovall's standing for prospective relief," though they do write that "Stovall reserves the right to appeal the dismissal" of her damages claim upon final judgment. ECF No. 110 at 16. The Court accordingly finds that Stovall lacks standing to remain in this case.

Unlike Stovall, Plaintiffs claim that Bright has standing to pursue prospective relief because, although he has graduated from West Texas A&M, he "intends to participate in a future Spectrum WT drag show at Legacy Hall if one is permitted—and Spectrum WT has invited him to do so." ECF No. 110 at 14. Plaintiffs argue that this demonstrates "an intention

to engage in a course of conduct arguably affected with a constitutional interest" and therefore preserves Bright's standing to sue.[1] ECF No. 110 at 14.

This argument fails. Article III requires that the alleged injury be "'concrete and particularized' and 'actual or imminent.'" *Crane v. Johnson*, 783 F.3d 244, 254 (5th Cir. 2015) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Courts contrast this requirement with merely "conjectural or hypothetical" injuries, which do not confer standing. *Id.* In *Lujan*, the Supreme Court found that a plaintiff's injury was too conjectural to challenge proposed cuts to government funding for Nile crocodile habitats where she alleged only that she had "traveled to Egypt" once in the past and "intend[ed] to do so again" in the future. 504 U.S. at 563. Similarly, in *Clapper v. Amnesty International*, the Court held that an alleged injury must be "certainly impending" rather than a "speculative chain of possibilities" to confer standing. 568 U.S. 398, 414 (2013). And again in *Summers v. Earth Island Institute*, the Court reiterated that "speculation does not suffice" to establish standing. 555 U.S. 488, 499 (2009).

The "burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Shah v. Univ. of Tex. Sw. Med. Sch.*, 129 F. Supp. 3d 480, 489 (N.D. Tex. 2015) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam)). Here, as in *Lujan*, Bright has not demonstrated "concrete plans" to perform in the drag show if and when it takes place. 504 U.S. at 564. He has instead alleged only "'some day' intentions"— not enough under *Lujan*. *Id.* And as in *Clapper*, Bright has alleged only a "speculative chain of possibilities": He presently intends to perform in an as-yet-unscheduled drag show that

---

[1] Defendants also argue that Supreme Court and Fifth Circuit precedent holds that when "a student seeks injunctive and/or declaratory relief against a school or university, his or her claims become moot when the student is no longer enrolled." ECF No. 106 at 10 (collecting cases). Plaintiffs do not contest that argument and instead rely solely on Bright's intent to perform in a future drag show to establish standing. *See, e.g.*, ECF No. 110 at 14. The Court therefore declines to address that line of argument here.

may take place in Legacy Hall at some point in the future. 568 U.S. at 414. Even if the show ultimately goes forward, he may change his mind and decide not to perform after all. This is not enough to show Article III standing.

Separately, it is a bedrock principle of standing doctrine—so obvious that it is easy to overlook—that "a plaintiff must show that he or she suffered 'an invasion of a *legally protected interest.*'" *Spokeo*, 578 U.S. at 339 (emphasis added); *see also, e.g.*, *Pederson v. La. State Univ.*, 213 F.3d 858, 870–71 (5th Cir. 2000) ("[I]njury in fact is the 'invasion of a legally protected interest.'") (quoting *Northeastern Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 663 (1993)); *NAACP v. Tindell*, 95 F.4th 212, 216 (5th Cir. 2024) (rejecting plaintiffs' standing arguments because they "utterly fail[ed] to demonstrate that they . . . ha[d] any legally protected interest"). By definition, courts have no power to adjudicate interests the law does not recognize as legally protected. Bright has not shown that, as a non-student and non-member of Spectrum WT, he possesses such an interest in performing in a future drag show held in Legacy Hall. The Court accordingly **GRANTS** Defendants' Motion as to individual Plaintiffs Lauren Stovall and Barrett Bright.

### B. Spectrum WT's Standing

Defendants argue that Plaintiffs' Complaint does not allege that Spectrum WT is "a corporation, limited partnership, partnership, or other legal entity with capacity to sue under the laws of Texas." ECF No. 106 at 11. They also contend that because "Spectrum WT did not allege" that it had "either organizational or associational standing" to sue, its claims must be dismissed. *Id.* For their part, Plaintiffs concede that Spectrum WT is a "registered student group" and "unincorporated association," not an independent legal entity. ECF No. 110 at 7, 9. Defendants do not dispute that characterization.

Defendants are half right. Though they do not cite to the rule directly, they are right that Federal Rule of Civil Procedure 17 generally asks courts to follow state law in assessing

8

"[c]apacity to sue and be sued" in federal court. FED. R. CIV. P. 17(b). But they are wrong that unincorporated associations such as Spectrum WT do not have the capacity to sue and be sued under Texas law. Texas Rule of Civil Procedure 28 provides:

> Any partnership, unincorporated association, private corporation, or individual doing business under an assumed name may sue or be sued in its partnership, assumed or common name for the purpose of enforcing for or against it a substantive right, but on a motion by any party or on the court's own motion the true name may be substituted.

TEX. R. CIV. P. 28. Texas courts interpreting this rule have held that an unincorporated association is nothing more than "a voluntary group of persons, without a charter, formed by mutual consent for purposes of promoting a common enterprise." *Hutchins v. Grace Tabernacle United Pentecostal Church*, 804 S.W.2d 598, 599 (Tex. App.—Houston [1st Dist.] 1991, no writ); *see also, e.g.*, *Gonzales v. Am. Postal Workers Union, AFL-CIO*, 948 S.W.2d 794, 798 (Tex. App.—San Antonio 1997, writ denied) (similar) (quoting *Cox v. Thee Evergreen Church*, 836 S.W.2d 167, 169 (Tex. 1992)); *cf. Waddill v. Phi Gamma Delta Fraternity Lambda Tau Chapter Tex. Tech Univ.*, 114 S.W.3d 136, 141 (Tex. App.—Austin 2003, no pet.) (finding that "the fact that [a campus fraternity] may have a chapter charter from the international fraternity, a constitution, and by-laws does not prevent it from being an unincorporated association" under Texas law) (footnote and citation omitted). Though no Texas court considering Rule 28 appears to have directly held that university student groups like Spectrum WT meet this definition, Spectrum clearly does here: It is a voluntary association of students formed for the purpose of "providing support and acceptance for the LGBTQ+ community on [West Texas A&M's] campus and beyond." ECF No. 110 at 6. Texas law, then, permits Spectrum to sue and be sued to enforce its substantive rights.

And Defendants are wrong to suggest that, even if Spectrum WT did not have the capacity to sue under Texas law, courts' analysis stops there. An entity that cannot sue under state law may still be able to sue in federal court. This is because the general rule found in

9

Rule 17 provides for an exception: For all parties other than individuals and corporations, "capacity to sue or be sued is determined . . . by the law of the state where the court is located, *except that* . . . an unincorporated association with no" capacity to sue under state law "may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws." FED. R. CIV. P. 17(b)(3)(A) (emphasis added); *see also Roby v. Corp. of Lloyd's*, 796 F. Supp. 103, 110 (S.D.N.Y. 1992), aff'd, 996 F.2d 1353 (2d Cir. 1993) ("Rule 17(b) . . . provid[es] that partnerships or other unincorporated associations which have no capacity under state law to sue or be sued may nevertheless sue or be sued in their common name in federal court.").

Spectrum WT clearly is suing "to enforce a substantive right existing under the United States Constitution"—namely, their First Amendment right to freedom of speech. FED. R. CIV. P. 17(b)(3)(A). As noted above, however, organizations like Spectrum WT must still "satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals.'" *La Union*, 2025 WL 2489464, at *4 (quoting *All. for Hippocratic Med.*, 602 U.S. at 393–94).

Spectrum can do so here. First, Defendants contend that Spectrum WT's claims must be dismissed because Plaintiffs failed to specifically "allege . . . that [Spectrum] had either organizational standing or associational standing in this case." ECF No. 106 at 11. But to adopt that approach would be to "impos[e] a higher burden on organizations seeking to establish standing" than Article III imposes on individuals. *OCA-Greater Hou.*, 867 F.3d at 612; *see also id.* ("[I]n determining whether an organization has organizational standing, 'we conduct the same inquiry as in the case of an individual.'"). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" for

10

individuals to establish standing. *Lujan*, 504 U.S. at 561. It is not necessary for individuals to say *why* they have standing. The same holds true for organizations.

Second, Spectrum WT can satisfy the traditional three-pronged standing test for the same reasons the Court noted in its September 2023 Memorandum Opinion and Order. *See* ECF No. 59. There, this Court found that Spectrum WT alleged an "ongoing harm" sufficient to show an Article III injury-in-fact because President Wendler's email canceling Spectrum's drag show "unequivocally declares the university 'will not' host a drag show because a harmless drag show is '[n]ot possible.'" *Spectrum WT*, 693 F. Supp. 3d at 709 (quoting ECF No. 28-1 at 2, 4). Though Defendants quibble with Plaintiffs' characterization of President Wendler's conduct as an ongoing "ban," ECF No. 115 at 4, the Court finds that, absent the injunction Plaintiffs seek, President Wendler likely would cancel any similar drag show Plaintiffs apply to hold in Legacy Hall.[2] Accordingly, Spectrum WT can satisfy the injury prong of the standing test. Causation and redressability are similarly straightforward. President Wendler's alleged ban on on-campus drag shows is plainly the cause of Spectrum WT's injury; the injunction they seek plainly would remedy it. Spectrum therefore has organizational standing to sue President Wendler and Dr. Thomas.[3]

---

[2] Plaintiffs also allege, and Defendants do not dispute, that after the U.S. Supreme Court declined to enter an emergency injunction before the March 2024 drag show, President Wendler again sent a campus-wide email canceling that show. *See* ECF No. 110 at 7. In that email, President Wendler wrote that "when the court makes a final decision, it will be implemented." *See id.* (citations omitted). This provides further support for Plaintiffs' argument that President Wendler is likely to cancel future drag shows.

[3] Because the Court finds that Spectrum WT has organizational standing, it is not necessary to address whether Spectrum may also have associational standing. And in any event, the Supreme Court has indicated that associational standing is increasingly disfavored. *See, e.g.*, *All. for Hippocratic Med.*, 602 U.S. at 399 (Thomas, J., concurring) (arguing that associational standing conflicts with traditional standing doctrine for several reasons, including because "Article III does not allow a plaintiff to seek to vindicate someone else's injuries").

11

## II. Ripeness and Mootness

Defendants also argue that Plaintiffs' claims should be dismissed for "lack of ripeness." ECF No. 106 at 6, 13; *see also* ECF No. 115 at 5 (arguing that the many "currently unknown factors" relevant to approval of a future drag show "make any claims in this case for prospective injunctive or declaratory relief not ripe at this time"). Alternatively, they argue that Spectrum's "claims for injunctive or declaratory relief as to the 2023 or 2024 proposed drag shows [are] moot" because the time to hold those shows has passed. ECF No. 115 at 4.

Article III's case or controversy requirement, in addition to requiring that a party have standing to sue, also "mandates that a claim must not become moot prior to the court's decision on the merits." *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 766 (6th Cir. 2019). While "the doctrine of standing is distinguishable from that of mootness," *Pederson*, 213 F.3d at 869, the Supreme Court has described mootness as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (quoting Henry P. Monaghan, *Constitutional Adjudication: The Who and When*, 82 YALE L.J. 1363, 1384 (1973)). "The burden of demonstrating mootness is a heavy one." *Schlissel*, 939 F.3d at 767 (quoting *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979)). And mootness's flip side is lack of ripeness. *See, e.g.*, Note, *Standing to Sue for Members of Congress*, 83 YALE L.J. 1665, 1674 n.38 (1974) (defining ripeness as "the converse of mootness").

As the Court has already noted, Plaintiff Spectrum WT's claimed injury is not confined to the cancelation of past shows. Its injury is the fact that any similar drag show Spectrum applies to host on campus is likely to be canceled as well. This is sufficient to avoid a challenge

based on mootness. *See, e.g., Speech First, Inc. v. Fenves*, 979 F.3d 319, 329 (5th Cir. 2020) (holding that a First Amendment challenge was not moot because university president did not prove to "an absolute certainty that the original provisions . . . will not be reinstituted").[4] It is also enough to overcome an attack based on lack of ripeness, depending on how one conceptualizes Spectrum's injury. Taking Defendants' arguments at face value, this case would be moot if the injury alleged were only the cancelation of past shows; it would be not yet ripe if the injury concerned only an "unscheduled hypothetical future drag show." ECF No. 115 at 4. But the injury here is still ongoing. This is case is therefore neither moot nor not yet ripe.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion is **GRANTED** as to individual Plaintiffs Lauren Stovall and Barrett Bright and **DENIED** as to Plaintiff Spectrum WT.

**SO ORDERED**.

September 23, 2025.

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

---

[4] *Speech First* supports Spectrum WT's position in another way as well. That case concerned a university's voluntary cessation, through the elimination of all relevant language in the university's Use Policy and Residence Hall Manual, of the policies the plaintiffs had originally challenged. *See* 979 F.3d at 327–28. The case was not moot even though the university president there stated that he "ha[d] no plans to, and will not, reenact the former policies." *Id.* at 328. Here, President Wendler has so far not amended West Texas A&M policy or indicated that he will not cancel future on-campus drag shows.