# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

SPECTRUM WT,

              Plaintiff,

    v.

WALTER WENDLER, *et al.*,

              Defendants.

Case No.: 2:23-cv-00048-Z

Hon. Matthew J. Kacsmaryk

**PLAINTIFF'S MOTION AND BRIEF IN SUPPORT OF MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES AND THE PRODUCTION OF DOCUMENTS**

---

JT MORRIS
TX Bar No. 24094444
CONOR T. FITZPATRICK*
MI Bar No. P78981
FOUNDATION FOR INDIVIDUAL RIGHTS
   AND EXPRESSION
700 Pennsylvania Ave., SE; Ste. 340
Washington, DC 20003
Tel: (215) 717-3473
Fax: (267) 573-3073
jt.morris@thefire.org
conor.fitzpatrick@thefire.org

ADAM B. STEINBAUGH*
CA Bar No. 304829
JEFFREY D. ZEMAN*
MI Bar No. P76610
FOUNDATION FOR INDIVIDUAL RIGHTS
   AND EXPRESSION
510 Walnut St.; Ste. 900
Philadelphia, PA 19106
Tel: (215) 717-3473
Fax: (267) 573-3073
adam@thefire.org
jeff.zeman@thefire.org

      * Admitted *Pro Hac Vice*

*Counsel for Plaintiff*

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ....................................................... 3

    President Wendler has imposed a continuing, years-long prior restraint on student drag shows at a public university. ............................... 3

    After the Fifth Circuit panel concludes a preliminary injunction is warranted, this Court reopens the case and initiates an accelerated discovery window. .............................................................................. 4

    Plaintiff's discovery efforts—including written discovery, notices of depositions, and third-party subpoenas—before the imminent close of discovery. ....................................................................................... 5

LEGAL STANDARD ............................................................................................ 6

ARGUMENT ...................................................................................................... 8

    I.    The Court should compel amended responses to the Requests for Production, an adequate search for records, a privilege log, and completion of production by November 26. ............................. 8

        A.    Defendants' pledge to provide records on a rolling basis will severely prejudice Plaintiff's rights and hinder this Court's ability to try the case. ............................................................. 8

        B.    Because Defendants' "diligent" records searches are demonstrably inadequate, the Court should order a second search. ................................................................................. 10

        C.    Defendants cannot justify their use of boilerplate objections to individual Requests for Production. ..................... 12

        D.    Defendants' cramped definition of "relevant" defies the permissible scope of discovery. .................................................. 13

        E.    The Court should compel Defendants to produce a privilege log. ........................................................................ 14

        F.    Defendants cannot withhold documents under a vague "anticipation of litigation" privilege. ......................................... 15

        G.    Defendants cannot withhold documents under a deliberative process privilege. ................................................. 17

II.    The Court should compel amended responses to the
       Interrogatories.................................................................................... 20

       A.    Wendler's objections to identifying facts, policies, and other
             bases underlying his drag ban are improper.............................. 20

       B.    Wendler's disclaimer that his responses are to the "best of
             his recollection" is evasive and reflects inadequate review. ...... 22

       C.    The Court should compel Defendants to sign and verify
             their Interrogatory responses. ................................................... 23

CONCLUSION............................................................................................ 24

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Areizaga v. ADW Corp.*,
   314 F.R.D. 428 (N.D. Tex. 2016) ............................................................... 13

*Carr v. State Farm Mut. Auto Ins. Co.*,
   312 F.R.D. 459 (N.D. Tex. 2015) ................................................................. 7

*Dunn v. State Farm Fire & Cas. Co.*,
   927 F.2d 869 (5th Cir. 1991) ..................................................................... 15

*Harding v. County of Dallas*,
   No. 3:15-cv-0131-D, 2016 WL 7426127 (N.D. Tex. Dec. 23, 2016) ......................... 18

*Heller v. City of Dallas*,
   303 F.R.D. 466 (N.D. Tex. 2014) ................................................................. 7

*In re Kaiser Aluminum & Chem. Co.*,
   214 F.3d 586 (5th Cir. 2000) ..................................................................... 16

*In re Sealed Case*,
   121 F.3d 729 (D.C. Cir. 1997) ............................................................... 17, 18

*Kennedy v. Bremerton Sch. Dist.*,
   597 U.S. 507 (2022) ............................................................................... 22

*League of United Latin Am. Citizens v. Abbott*,
   No. EP-21-cv-00259-DCG-JES-JVB, 2022 WL 3233406 (W.D. Tex. Aug. 10,
   2022) ............................................................................................... 19

*Lopez v. Don Herring Ltd.*,
   327 F.R.D. 567 (N.D. Tex. 2018) ........................................................... 13, 23

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*,
   894 F.2d 1482 (5th Cir. 1990) ............................................................... 7, 13

*Navigant Consulting, Inc. v. Wilkinson*,
   220 F.R.D. 467 (N.D. Tex. 2004) ................................................................ 16

*NLRB v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975) ............................................................................... 17

*Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*,
   No. 2:23-CV-155-Z, 2024 WL 4895882 (N.D. Tex. Nov. 26, 2024) ......................... 9

*SEC v. Brady,*
  238 F.R.D. 429 (N.D. Tex. 2006) ................................................................ 7

*Torsh, Inc. v. Audio Enhancement, Inc.,* No. 22-2862, 2023 WL 7688583, at
  *14 (E.D. La. Nov. 15, 2023) ..................................................................... 9

*United States v. El Paso Co.,*
  682 F.2d 530 (5th Cir. 1982) ................................................................... 16

*United States v. Planned Parenthood Fed'n of Am., Inc.,*
  No. 2:21-cv-022-Z, 2022 WL 19021566 (N.D. Tex., Sept. 20, 2022) ...................... 7

*VeroBlue Farms USA Inc. v. Wulf,*
  345 F.R.D. 406 (N.D. Tex. 2021) ....................................................... 10, 23

*Walker v. Tex. Div., Sons of Confederate Veterans, Inc.,*
  576 U.S. 200 (2015) ........................................................................ 14, 22

## Rules

Fed. R. Civ. P.
  37(a)(3)(B) ................................................................................... 7
  37(a)(3)(B)(iii) ............................................................................. 2
  37(a)(3)(B)(iv) ............................................................................. 2
  37(a)(4) ................................................................................ 2, 22
  26(b)(1) ..................................................................................... 7
  26(b)(3)(A)(i) .............................................................................. 16
  26(b)(5)(A) ............................................................................. 2, 15
  33(b)(3) .................................................................................... 23
  33(b)(5) .................................................................................... 23
  33(d) ....................................................................................... 21
  33(d)(1) .................................................................................... 21
  34(b)(1)(A) .................................................................................. 9
  34(b)(2)(B) .................................................................................. 8

## Statutes

Tex. Gov't Code § 323.017 ................................................................ 2, 13

## Other Authorities

Interview with Walter Wendler, KFDA (Apr. 27, 2023) ........................................ 14

Kate McGee, West Texas A&M Turned to Leading Conservatives to Build
  Out Institute for "Panhandle values", Tex. Trib. (Jan. 29, 2024, 5:00 AM) .......... 13

Press Release, Chip Chandler, Dir. of Univ. Commc'n & Media Rels., W. Tex.
A&M Univ., Historic $20 Million Gift by Fairlys to Fund WT's Hill
Institute Promoting West Texas Values (Oct. 4, 2023)..........................................13

## INTRODUCTION

Absent the parties' timely resolution, the Court should compel Defendants to meet their discovery obligations and prevent prejudice to Plaintiff Spectrum WT, which must (a) prepare for depositions scheduled for early December, (b) meet the summary judgment deadline of December 30, (c) meet the Court's pre-trial submission requirements, and (d) prepare for trial set to start on January 14, 2026.

Although Plaintiff served Requests for Production immediately after the Court issued a scheduling order in early October, Defendants have produced only a scant 165 files and no privilege log. And their commitment to produce records on a rolling basis—with no express end date—imperils Plaintiff's ability to adequately prepare for depositions, let alone trial set for mid-January. Defendants' responses to the Interrogatories present the same roadblock to Plaintiff's right to discovery and a fair trial. For instance, President Wendler's responses reveal he did little—if anything— to obtain basic information to respond to the inquiries. He has even failed to identify the university policies he believes apply to Legacy Hall or drag performances, despite those policies being key fact issues in this case.

Since Defendants served their discovery responses on November 7, the parties' counsel have engaged in productive meet-and-confer discussions to narrow (if not resolve altogether) the discovery issues raised by this motion. Still, because this Court's amended scheduling order requires motions to compel "be filed by **seven (7) days** after the discovery response at issue was served," (ECF No. 122, ¶ 17 (emphasis in original)), and to avoid waiving its rights, Plaintiff is timely moving to compel the production of documents and further responses to the Requests for Production and

1

Interrogatories. *See* Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv) (failure to answer an interrogatory or to produce documents); *id.* 37(a)(4) (evasive or incomplete response).

Specifically, Plaintiff asks the Court for the following relief:

- **First Set of Requests for Production**

  - Compel Defendants Wendler and Thomas to produce a privilege log. Fed. R. Civ. P. 26(b)(5)(A); *infra* pp. 14–15.

  - Compel Defendants Wendler and Thomas to provide amended responses stating a date certain by which their rolling production will be completed—e.g., by November 26, 2025. *Infra* pp. 8–10.

  - Compel Defendants Wendler and Thomas to provide further responses to the RFPs (including Wendler RFP Responses to Nos. 18, 20, 22, 23 and Thomas RFP Responses to No. 14), omitting the general and specific objections to producing information "prepared for or in anticipation of litigation," except to the extent the information was prepared by or at the direction of an attorney. *Infra* pp. 15–17.

  - Compel Defendants Wendler and Thomas to provide further responses to the RFPs to omit objections asserting (in response to each RFP) a legislative privilege under Tex. Gov't Code § 323.017, as neither is a lawmaker within the scope of the privilege. *Infra* pp. 12–13.

  - Compel Defendants Wendler and Thomas to provide further responses to the RFPs to omit objections asserting (in response to all but one RFP) a qualified, deliberative process privilege, which Plaintiff has overcome or which Defendants have waived. *Infra* pp. 17–19.

  - Compel Defendants Wendler and Thomas to provide further responses to the RFPs to conform their definition of relevance to Fed. R. Civ. P. 26(b)(1), omitting their qualification that relevant information is limited to that which "specifically refer[s] to the events which are the subject matter of this litigation." *Infra* pp. 13–14.

- **First Set of Interrogatories**

  - Compel Defendant Wendler to provide further responses to Interrogatories 4–9 and 12–14 to state with particularity all of the bases for his decisions to cancel Plaintiff's drag shows, including the

facts, statutes, policies, rules, regulations, or customs he relied upon. *Infra* pp. 20–22.

- o  Compel Defendant Wendler to provide further responses to Interrogatories 1 and 2 to provide information beyond his "best … recollection." *Infra* pp. 22–23.

- o  Compel Defendant Wendler to verify his Amended Responses to Plaintiff's First Set of Interrogatories or the further responses this Court orders Wendler to provide. *Infra* p. 24.

Because the parties' continued negotiations may obviate the need for the Court to resolve this motion, Plaintiff will provide a further status update as to the parties' ongoing negotiations on or before November 21, 2025.

## FACTUAL AND PROCEDURAL BACKGROUND

**President Wendler has imposed a continuing, years-long prior restraint on student drag shows at a public university.**

Since March 2023, West Texas A&M University President Walter Wendler has imposed a prior restraint on student expression on the public university campus. Am. Compl. ¶¶ 103–105, ECF No. 28; ECF No. 28–1 ("Wendler Edict"). Although public records and publicly-available university policies show that any member of the public may reserve campus theaters (including the university's Legacy Hall) for virtually any use—for weddings, church services, pageants, and even cattle auctions—President Wendler has banned drag performances from campus because he believes drag shows are offensive to women. Am. Compl. ¶ 40; *see also* Wendler Edict. To that end, he has twice forbidden Spectrum WT, a registered student LGBTQ+ group, from holding a drag show at Legacy Hall.

Plaintiff brought this action within days of Wendler announcing his ban. This Court denied Plaintiff's motion for a preliminary injunction on September 21, 2023,

and, after Plaintiff appealed that order, administratively closed the case without having entered a scheduling order. (ECF Nos. 59, 61, 98).

**After the Fifth Circuit panel concludes a preliminary injunction is warranted, this Court reopens the case and initiates an accelerated discovery window.**

On August 18, 2025, a Fifth Circuit panel held that Plaintiff is entitled to a preliminary injunction. *Spectrum WT v. Wendler*, 151 F.4th 714 (5th Cir. 2025). Eight days later, this Court issued an order setting a September 10, 2025, status conference. (ECF No. 104). Following the status conference, the Court directed the parties to submit a Joint Proposed Scheduling Order. (ECF No. 118). The parties did so, proposing that they complete discovery on February 9, 2026, and trial in mid-April. (ECF No. 119). On October 8, the Court issued a scheduling order, with a more compressed timeline than what the parties proposed. The order required the completion of discovery by December 26, summary judgment motions by January 2, and trial in early February. (ECF No. 120). The same day, the Court directed the clerk to reopen the case, noting it was closed in May 2024 "pending resolution of Plaintiffs' appeal." (ECF No. 121).

After this Court reopened the case, the Fifth Circuit *sua sponte* vacated the panel judgment and granted rehearing en banc, making the appeal pending again. *Spectrum WT*, No. 23-10994, 2025 WL 3008019 (5th Cir. Oct. 27, 2025) (per curiam). Oral argument before the en banc Fifth Circuit is set for January 23, 2026. *Spectrum WT*, No. 23-10994, Dkt. No. 217. This Court issued an amended scheduling order noting the Fifth Circuit's decision to rehear the matter en banc, but without staying proceedings or altering the dates for close of discovery, summary judgment motions,

or trial. (Dkt. No. 122). After the parties jointly moved on November 3 to amend the scheduling order in light of the en banc Fifth Circuit's imminent consideration of the legal questions in this matter (ECF No. 124), this Court advanced trial to January 14, 2026, and advanced the discovery deadline to December 19, 2025 (ECF No. 126).

**Plaintiff's discovery efforts—including written discovery, notices of depositions, and third-party subpoenas—before the imminent close of discovery.**

The day this Court issued its first scheduling order, Plaintiff served Requests for Production and Interrogatories on Defendants Wendler and Thomas. (Appx. to Pl.'s Mot. to Compel ("Appx.") at 3–30 (RFPs to Wendler), 51–71 (RFPs to Thomas), 86–100 (Interrogatories to Wendler), 114–127 (Interrogatories to Thomas)).

On October 15, shortly after the Court issued its first scheduling order, Plaintiff asked Defendants' counsel for deposition dates in early December for Defendants Wendler and Thomas, a Rule 30(b)(6) deposition of West Texas A&M University, and two other university officials. On October 31, Plaintiff noticed depositions for Defendants, West Texas A&M University, and three other university officials for December 8–12, 2025, in Amarillo.[1] On the same day, Plaintiff served six record subpoenas (to West Texas A&M University, the Texas A&M University System, and four other university officials) requiring production by November 24.

Defendants provided written responses to Plaintiff's Requests for Production and Interrogatories on November 7, and Defendant Wendler then provided Amended

---

[1] Because all but one of Plaintiff's attorneys are based in Philadelphia and Washington, D.C., they must plan travel to Amarillo far in advance.

Responses to the Interrogatories on November 10. (Appx. 31–50 (Wendler Resp. to RFPs), 72–85 (Thomas Resp. to RFPs), 101–113 (Wendler Am. Resp. to Interrogs.), 128–134 (Thomas Resp. to Interrogs.)). In addition to the defects discussed below, Defendants have produced—as of the time of this filing—only 165 documents, committing only to a rolling production within a "reasonable" time. They also have not served a privilege log.

Given the seven-day window for moving to compel in the Court's scheduling order, Plaintiff's counsel emailed Defendants' counsel to arrange a telephone conference and then provided an emailed list of deficiencies in the responses. The parties held a productive meet-and-confer discussion via videoconferencing and are likely to resolve Plaintiff's concerns before Defendants' deadline to respond to this motion. Defendants then produced a first installment of their rolling production— some 68 documents—in the evening of Thursday, November 13, and a second installment this afternoon.

But because of the compressed discovery schedule, Plaintiff must obtain documents and complete Interrogatory responses in advance of the noticed depositions (and the impending December 19 deadline to complete discovery). Given the seven-day window to move to compel, Plaintiff brings this motion to preserve its rights and prevent severe prejudice.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26, a party may obtain discovery "regarding any nonprivileged matters that are both (1) relevant to a claim or defense in the case; and (2) proportional to the needs of the case." *United States v. Planned*

*Parenthood Fed'n of Am., Inc.*, No. 2:21-cv-022-Z, 2022 WL 19021566, at *1 (N.D. Tex. Sept. 20, 2022) (Kacsmaryk, J.) (citing Fed. R. Civ. P. 26(b)(1)) *order clarified,* No. 2:21-cv-022-Z, 2022 WL 19021321 (N.D. Tex. Oct. 11, 2022). Where responses are inadequate or a party has failed to produce documents, Federal Rule of Civil Procedure 37(a)(3)(B) allows a party to move for an order compelling production or further responses.

In general, the "scope of discovery is broad." *Planned Parenthood Fed'n*, 2022 WL 19021566, at *3. A movant need only show the information is "relevant to any party's claim or defense[.]" *See* Fed. R. Civ. P. 26(b)(1).

In turn, the burden shifts to the party resisting discovery to "show specifically how each interrogatory or document request is overly broad, unduly burdensome, or oppressive." *Heller v. City of Dallas*, 303 F.R.D. 466, 490 (N.D. Tex. 2014) (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)). That requires both "a specific objection" and "coming forward with specific information" addressing the "importance of the issues at stake in the action," the "parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense" of the discovery outweighs its benefit. *Carr v. State Farm Mut. Auto Ins. Co.*, 312 F.R.D. 459, 468 (N.D. Tex. 2015). Mere statements "that a request is overly broad and unduly burdensome" are insufficient, and the responding party must instead present evidentiary proof of its burden. *SEC v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006).

## ARGUMENT

I.  **The Court should compel amended responses to the Requests for Production, an adequate search for records, a privilege log, and completion of production by November 26.**

A.  **Defendants' pledge to provide records on a rolling basis will severely prejudice Plaintiff's rights and hinder this Court's ability to try the case.**

Defendants have produced few records in response to the Requests for Production, asserting instead they will produce records "on a rolling basis, within a reasonable time of this response." (*E.g.*, Appx. 35 (Wendler Resp. to RFP No. 1)). While a responding party may commit to producing records at "a reasonable time specified in the response," Fed. R. Civ. P. 34(b)(2)(B), Defendants' responses are deficient because (1) the Court's scheduling order renders an open-ended, "rolling basis" commitment unreasonable; and (2) the response fails to provide a date certain by which the production will be completed.

Start with the scheduling order's requirement that a party move to compel within seven days "after the discovery response at issue was served or due to be served." (ECF No. 122, ¶ 17). A commitment to an open-ended, rolling production is insufficient because it is not a "reasonable time" for production under the seven-day limitations period. Fed. R. Civ. P. 34(b)(2)(B). If the respondent produces records near the expiration of the seven-day deadline,[2] the requesting party will not have adequate time to (1) adequately review the production for completeness, (2) meet and confer in good faith with the responding party, and (3) prepare and file a motion to compel.

---

[2] Even if the records are produced simultaneously with the written response, a requesting party may not have adequate time to review a voluminous production.

And if the production occurs after the seven-day deadline, the requesting party may have no opportunity to compel further production.

That compressed timeline also frustrates the ability of the requesting party and the Court to evaluate the merits of claimed privileges. If a producing party is evaluating records on a rolling basis, it may not be able to produce a comprehensive privilege log until after the expiration of the seven-day deadline—and perhaps not until well after depositions occur. Under their current stance, Defendants could simply dump documents on Plaintiff just before discovery ends, leaving little time to evaluate those documents before the summary judgment, pre-trial submission, and trial deadlines. Not only will that severely prejudice Plaintiff, but it will also hinder the Court's ability to fully and fairly try this case in mid-January.

Preventing that prejudice is why Rule 34 requires a "specified time" to complete production, which Defendants' open-ended commitment fails. *See* Fed. R. Civ. P. 34(b)(1)(A) (requiring completion of production "no later than" the "reasonable time specified in the response"); *see also Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, No. 2:23-CV-155-Z, 2024 WL 4895882, at *1 (N.D. Tex. Nov. 26, 2024) (Kacsmaryk, J.) (holding that Rule 34 "plainly requires the responding party to specify an end date within a reasonable period of time" (citing *Torsh, Inc. v. Audio Enhancement, Inc.*, No. 22-2862, 2023 WL 7688583, at *14 (E.D. La. Nov. 15, 2023))).

This Court should compel Defendants to provide further responses committing to complete their production by November 26, produce their documents by that date,

9

and permit Plaintiff an adequate opportunity to evaluate the production and move to compel further responses if necessary.

**B.    Because Defendants' "diligent" records searches are demonstrably inadequate, the Court should order a second search.**

Although Defendants' rolling production has produced only a handful of documents, Plaintiff has evidence that Defendants' search has been inadequate, and this Court should order Defendants to conduct an adequate search and disclose steps taken to locate responsive records.

Ordinarily, a party's suspicion that a production is incomplete will not justify a secondary search or "discovery on discovery." *VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 420 (N.D. Tex. 2021). But a party may show the inadequacy of a search by making a showing, whether through "the documents that have been produced" or by identifying "the existence of additional responsive material," sufficient for "the Court to make a reasonable deduction that other documents may exist or did exist and have been destroyed." *Id.* (citation omitted). Plaintiff meets that burden here.

In response to RFP No. 16, Wendler stated he "conducted a diligent search and has no" communications with David Rejino, the Texas A&M University System Assistant Vice Chancellor for Governmental Relations, concerning drag shows. (Appx. 43). Yet before this litigation began, Plaintiff's counsel obtained records from West Texas A&M University in response to a public records request. Among these was an email from Wendler alerting Rejino to the drag ban. (Appx. 162–64). Plaintiff needs to be able to ascertain why Wendler believed it important to bring the ban to the attention of the A&M System's liaison with state political leaders, but it cannot

do so if Wendler fails to adequately search for those records. And Wendler's claimed inability to locate formerly existing communications with Rejino, despite a "diligent" search, raises doubts about whether Wendler adequately searched for these—or any—records.

Wendler's response to RFP No. 15 exacerbates these concerns. There, he avers that he is unable to locate any communications with Alex Fairly, a multi-million-dollar donor to Texas A&M University initiatives,[3] regarding Plaintiff's drag performance. (Appx. 42). But in a March 18, 2023, email exchange between Wendler and "Alex," Wendler explained he was planning to cancel Plaintiff's drag performance and shared an advanced copy of his draft statement announcing the ban to give the apparent stakeholder "a heads-up and … ask that you hold it close." (Appx. 160–61). Although external to the university, "Alex" is sufficiently important that Wendler informed him of the cancellation days before he informed even Plaintiff.[4] That is sufficient to raise a reasonable deduction that the individual is Alex Fairly and that Wendler is withholding, could not find, or failed to preserve relevant communications with a significant university donor.

---

[3] Press Release, Chip Chandler, Dir. of Univ. Commc'n & Media Rels., W. Tex. A&M Univ., Historic $20 Million Gift by Fairlys to Fund WT's Hill Institute Promoting West Texas Values (Oct. 4, 2023), https://www.wtamu.edu/news/2023/10/historic-20-million-gift-by-fairlys-to-fund-wts-hill-institute-promoting-west-texas-values.html [https://perma.cc/3CH7-SVX2]; *see also* Kate McGee, *West Texas A&M Turned to Leading Conservatives to Build Out Institute for "Panhandle Values"*, Tex. Trib. (Jan. 29, 2024, 5:00 AM), https://www.texastribune.org/2024/01/29/west-texas-am-hill-institute-2 [https://perma.cc/VC2L-9U3U].

[4] The length of the redaction of Alex's name suggests his last name is six or seven characters long, further supporting a reasonable deduction that Wendler's exchange is with Fairly. (*See* Appx. 160).

Finally, the sparse nature of Defendants' production of 165 documents is itself evidence of Defendants' inadequate production. In a 2023 television interview, for example, Wendler asserted he had received "two thousand emails—and I can show you every one of them. We've got 'em catalogued. I've got a few that are pro—95% are pro, about 5% are con."[5] Although Plaintiff requested these documents (Appx. at 45), Wendler has not produced them.

Because Wendler's searches for responsive records have failed to turn up existing, responsive records, the Court should order Wendler to conduct a more thorough search and provide a sworn declaration as to the search methodology.

### C. Defendants cannot justify their use of boilerplate objections to individual Requests for Production.

In response to each Request for Production, Defendants interpose identical, boilerplate objections:

> Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of documents subject to the attorney-client, attorney work product, or deliberative process privileges or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501.

(*E.g.*, Appx. 45).

Serving "boilerplate or stock objections does not preserve or accomplish anything other than waiver and subjecting the responding party to sanctions." *Lopez*

---

[5] Interview with Walter Wendler, KFDA (Apr. 27, 2023), *available at* https://www.newschannel10.com/video/2023/04/28/wtamus-walter-wendler-addresses-no-confidence-vote. Wendler's remarks occur at 1:37.

*v. Don Herring Ltd.*, 327 F.R.D. 567, 581 (N.D. Tex. 2018). Instead, a party's responses "must show specifically how each discovery request is not relevant or otherwise objectionable." *Areizaga v. ADW Corp.*, 314 F.R.D. 428, 434 (N.D. Tex. 2016) (citing *McLeod*, 894 F.2d at 1485).

That Defendants' use of these objections is inappropriate is evident from their irrelevance to the Requests. For example, for Requests unrelated to any legislation, Defendants invoke the statutory legislative privilege which protects only communications "between" *legislative* officials. Tex. Gov't Code § 323.017. Yet neither Defendant is a lawmaker. Thus, any communications they had with lawmakers do not fall within the statutory privilege. The Court should require Defendants to narrow their objections to tailor their application to the Request.

### D. Defendants' cramped definition of "relevant" defies the permissible scope of discovery.

Both Defendants interpose general objections to producing records that do "not specifically refer to the events which are the subject matter of this litigation[.]" (Appx. 33, ¶ 9 (Wendler Resp. to RFPs); Appx. 74, ¶ 9 (Thomas Resp. to RFPs)).

Defendants' objections flout the broad scope of discovery. Rule 26 is explicit in allowing discovery into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Information may be relevant even if it does not expressly "refer" to the "events" at issue in the case. Instead, information may be discoverable if it is relevant to any of the claims or defenses, *including* the "events" underlying Plaintiff's claims.

13

For example, prior uses of Legacy Hall for other drag shows or events are relevant to establishing the forum's classification, which turns on "policy and practice" and the venue's "compatibility with" the expressive activity. *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 215–16 (2015). Likewise, information pertaining to Wendler's involvement in cancelling other events on campus—for example, his cancellation of a rap performance due to its anticipated lyrics—is relevant in evaluating how Defendants decide what expression is offensive. (*See* Appx. 109 (Wendler disclosing he cancelled a "rap" or "hip-hop" performance because he "understood the group's concerts, performances and/or recordings to advocate or describe gun violence" or might "employ lyrics that are misogynistic"); *see also* Tr. of Sept. 10, 2025 Hr'g 60:8–13, ECF No. 117 (encouraging discovery into how campus events might be "prospectively declined or denied.")).

This Court should overrule Defendants' objection and compel them to produce adequate responses and documents.

### E.    The Court should compel Defendants to produce a privilege log.

Defendants object to producing records they claim are subject to an indefinite range of privileges, including "legislative privilege, executive privilege, deliberative process privilege, or any other applicable privilege, protection, doctrine, or immunity." (*See, e.g.*, Appx. 32–33, ¶¶ 3–6 (Wendler's Resp. to RFPs); Appx. 73–74, ¶¶ 3–6 (Def. Thomas's Resp. to RFPs)). Yet they've served no privilege log. That violates Rule 26's requirement that if a party "withholds information otherwise discoverable by claiming that the information is privileged," it must do more than make that claim, but must also "describe the nature of" the withheld information "in

a manner that … will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Defendants' boilerplate objections do not satisfy that obligation. And their failure to do so is prejudicing Plaintiff's ability to adequately—and, under the seven-day deadline to move to compel—timely assess their claims of privilege.

Only at that juncture can Plaintiff and the Court evaluate the propriety of Defendants' claimed privileges. The Court should order Defendants to promptly serve a privilege log meeting Rule 26's requirements.

### F. Defendants cannot withhold documents under a vague "anticipation of litigation" privilege.

Defendants' responses to the Requests are also deficient because they raise an "anticipation of litigation" privilege above and beyond the recognized attorney work-product doctrine.

Defendants' responses to the Requests for Production raise general objections to the requests "to the extent [they seek] information that was prepared for or in anticipation of litigation [or] constitutes attorney work product[.]" (Appx. 32–33, ¶¶ 3–6 (Wendler Resp. to RFPs); Appx. 73–74, ¶¶ 3–6 (Thomas Resp. to RFPs)). Defendants raise a similar objection ("prepared" or "exchanged" "in anticipation of litigation or subject to the attorney work product privilege") in response to individual requests. (*See* Appx. 43–47 (Wendler Resp. to RFP Nos. 18, 20, 22, 23), 81–82 (Thomas Resp. to RFP No. 14)).

The attorney work-product doctrine "insulates a lawyer's research, analyses of legal theories, mental impressions, notes, and memoranda of witnesses' statements[.]" *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991).

But materials assembled during the ordinary course of business or for non-litigation purposes do not fall within the work-product doctrine. To qualify for the privilege, the "primary motivating purpose behind the creation of the document" must be to "aid in" litigation. *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (quoting *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982)). The "factors relevant to determining the primary motivation for creating a document [include] the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance." *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 477 (N.D. Tex. 2004) (quotation marks omitted).

While Defendants may properly shield materials subject to the attorney work-product doctrine, their objections inappropriately seek to create a second objection to producing materials created—by anyone, for any reason—in anticipation of litigation. But information may be created in anticipation of litigation even when that information does not reflect an attorney's thought processes or was not created to facilitate an attorney's evaluations. For example, a defendant's emails or text messages to colleagues or friends about a lawsuit may be in anticipation of litigation but not shielded by the work-product doctrine. *See, e.g.*, Fed. R. Civ. P. 26(b)(3)(A)(i) (information prepared in anticipation of litigation or trial remains discoverable if it is "otherwise discoverable under" Rule 26(b)(1)'s allowance for discovery into "any nonprivileged matter").

The Court should compel Defendants to provide further responses omitting a separate "anticipation of litigation" privilege.

## G. Defendants cannot withhold documents under a deliberative process privilege.

Wendler's decisions about what expression is offensive or inoffensive are inherently subjective, and Plaintiff is entitled to discovery into WTAMU officials' decision-making.

However, Defendants' responses interpose general objections to producing communications, documents, or other information purportedly subject to a deliberative process privilege. (Appx. 32, ¶¶ 3–6 (Wendler Resp. to RFPs); Appx. 73–74, ¶¶ 3–6 (Thomas Resp. to RFPs)). Defendants invoke that same objection in boilerplate response to all but one of the Requests. (Appx. 35–48 (Wendler Resp. to RFPs, objecting to Request Nos. 1–27; Appx. 76–83 (Thomas Resp. to RFPs, objecting to Request Nos. 1–7, 9–19)). But the "deliberative process" privilege has no place here, both because Plaintiff can overcome the privilege and because Defendants have waived it.

The deliberative process privilege covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (quotation marks and citation omitted). "Two requirements are essential to the deliberative process privilege: the material must be predecisional and it must be deliberative." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (citation omitted). Critically, "[t]he deliberative process privilege is a qualified

privilege and can be overcome by a sufficient showing of need." *Id.* To that end, courts "balanc[e] … the competing interests" by considering factors such as "the relevance of the evidence, the availability of other evidence, the seriousness of the litigation, the role of the government, and the possibility of future timidity by government employees." *Id.* at 737–38 (quotation marks and citation omitted); *see also Harding v. County of Dallas*, No. 3:15-cv-0131-D, 2016 WL 7426127, at *12 (N.D. Tex. Dec. 23, 2016) (collecting cases).

As this Court and the parties agreed during the September 2025 status conference, exploration of how West Texas A&M officials decide what events are appropriate or not is central to Plaintiff's claims.[6] That is because Defendants have repeatedly invoked Wendler's personal insights and role as president of the university to justify deference to his personal judgment in imposing the ongoing drag performance ban and cancelling Spectrum's performances. *See, e.g.*, Br. for Def.-Appellee Wendler 31–32, *Spectrum WT*, No. 23-10994 (5th Cir. Dec. 28, 2023), Dkt. No. 94. Defendants' responses to the Interrogatories take the same tack, invoking Wendler's "years of conversations" with "current and prospective students, faculty, staff, parents, and community members," as well as his personal understanding of the "custom of according respect to individuals of all races and genders"—a custom he views as "important" to maintaining the university's support among donors and

---

[6] *See, e.g.*, Tr. of Sept. 10, 2025 Hr'g 43:2–5 (question about how the "university or a designated public official will respond to the request for use"); *id.* at 61:2–62:3 (inquiry into how officials evaluate whether an event is "offensive" is appropriate for discovery); *id.* at 28:11–16 (factual dispute as to Defendants' "questions about this event").

lawmakers. (Appx. 104–108 (Wendler Am. Resp. to Interrogs. 4–8)). Wendler cannot invoke his subjective deliberation as both a sword (to assert courts should defer to his judgment about whether expression is offensive) and shield (to block Plaintiff from discovery into those very deliberations).

Even if Plaintiff could not overcome the qualified privilege, Defendants have waived it by voluntarily disclosing information about Wendler's deliberations to third parties without objection. *See League of United Latin Am. Citizens v. Abbott*, No. EP-21-cv-00259-DCG-JES-JVB, 2022 WL 3233406, at *4 (W.D. Tex. Aug. 10, 2022) ("Because the [deliberative process] privilege is an executive one, the executive waives that privilege when it shares materials outside of the executive branch, including with the legislature.").

In responding to a pre-litigation public records request, West Texas A&M University did not invoke the state's deliberative process privilege in seeking a determination from the Office of the Attorney General. (Appx. 135–39). Instead, the university produced a litany of records reflecting Wendler's deliberations with his staff and others about the ban, including red-lined drafts of his March 2023 statement explaining his reasons for the ban on drag performances. (Appx. 140–59). These drafts, many stamped "WORKING DRAFT – DO NOT DISTRIBUTE," include comments and revisions revealing Wendler's deliberations with senior university officials and persons outside the university. *Id.*

Plaintiff's cannot fully ascertain the bases for Wendler's decision-making if Defendants are able to withhold responsive records in advance of their depositions in

early December. This Court should compel their expeditious production of relevant information.

## II.    The Court should compel amended responses to the Interrogatories.

Defendants' responses to Plaintiff's Interrogatories are also evasive because they inadequately respond to the substance of the Requests, interpose relevance objections inconsistent with the permissible scope of discovery, and fail to attach documents to which they refer.

### A.    Wendler's objections to identifying facts, policies, and other bases underlying his drag ban are improper.

Wendler's responses to Interrogatories soliciting facts and contentions central to this case are woefully deficient because they broadly direct Plaintiff to review every Texas A&M University System policy, West Texas A&M University policy, and scores of handbooks and other guides.

Interrogatories 4–8 and 14 ask Wendler to identify the bases for cancelling Plaintiff's drag performances, including the facts and the applicable statutes, policies, rules, regulations, and customs. (Appx. 104–108, 112–13 (Wendler Am. Resp. to Interrogs.)). In response, Wendler directs Plaintiff to review *all* policies of the entire Texas A&M University System and West Texas A&M University—in addition to the handbooks for West Texas A&M students, student organizations, and facilities personnel, and "other documents" not identified. *Id.* Wendler offers the same unspecific response to Interrogatory 9 (asking Wendler to identify why drag performances are incompatible with Legacy Hall) (Appx. 108–109), Interrogatory 12 (asking Wendler to identify reasons Plaintiff's performances would be disruptive to

20

university operations or functions) (Appx. 110–11), and Interrogatory 13 (why Wendler contends drag performances are "harassment") (Appx. 111–12).

Wendler's responses do not satisfy Federal Rule of Civil Procedure 33 because he broadly identifies hundreds of policies across multiple university campuses rather than identifying the facts and policies he contends justify *his* unilateral decision. A party can respond to an interrogatory by identifying *specific* business records, but only where "the burden of deriving or ascertaining the answer" to the interrogatory "will be substantially the same for either party." Fed. R. Civ. P. 33(d). But *only* Wendler can identify his subjective bases for his decisions to cancel Plaintiff's drag performances and the specific policies he contends apply. And handwaving in the general direction of hundreds of policies does not provide Plaintiff, as Rule 33 requires, the "sufficient detail to enable [Plaintiff] to locate and identify" the specific policies, rules, regulations, and customs Wendler contends apply. *Id.* 33(d)(1).

Wendler's evasive responses are all the more improper because the Court identified these specific questions, including the application of policies to drag performances, as central to this case. (ECF No. 104, at 3–4).[7] And rightly so. The classification of a forum, like Legacy Hall, turns on the university's "policy and practice," and the forum's "compatibility with" the expressive activity. *Walker*, 576

---

[7] *See also* Tr. of Sept. 10, 2025 Hr'g 50:10–13 (university policies "will need to be matched to the proposed event"); *id.* at 42:15–43:5 (need to "discern forum policy, expressive conduct policies" and how they apply); 55:18–23 (forum classification is a contested issue); *id.* at 56:19–57:2 ("knowing which policy determines which forum determines which decision-maker"); *id.* at 57:15–21 (Defendants intend to offer testimony about how they "apply these policies to the situations they encounter in the day-to-day running of the University").

U.S. at 215–16. Identifying the policies, practices, and facts Wendler contends apply is critical to the litigation because forum analysis determines which First Amendment standards control this case. And because Wendler has offered several post-lawsuit justifications for his prohibition, the parties dispute whether his justifications are "genuine, not hypothesized or invented post hoc in response to litigation." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 543 n.8 (2022).

In essence, Wendler's responses try to flip his discovery burden to Plaintiff by forcing it to review all of the university system's policies to divine what Wendler believes. The Federal Rules do not permit such evasion. Fed. R. Civ. P. 37(a)(4) ("[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."). This Court should compel Wendler to provide specific responses to these central questions.

### B. Wendler's disclaimer that his responses are to the "best of his recollection" is evasive and reflects inadequate review.

In response to Interrogatories 1 (asking Wendler to identify people with whom he has discussed the drag ban) and 2 (asking Wendler who contributed to his drafting of his drag ban announcement), Wendler provides a limited list of persons with the qualification that it is provided "[t]o the best of President Wendler's recollection." (Appx. 103). Those responses are deficient because Wendler has an obligation to review records beyond his memory bank.

While a party does not need to "make an extensive investigation in responding to an interrogatory," he must do more than recall, by "reviewing all sources of responsive information reasonably available to him and providing the responsive,

relevant facts reasonably available to him." *VeroBlue Farms*, 345 F.R.D. at 438 (quoting *Lopez*, 327 F.R.D. at 579). And records produced before this litigation demonstrate that Wendler discussed the drag ban with persons not mentioned in his Interrogatory responses. (*See, e.g.*, Appx. 140 (providing draft of drag ban announcement to staff member Amberly Winningham and Chief of Staff Tracee Post); Appx. 160–161 (discussing forthcoming drag ban with "Alex"); Appx. 162–64 (sharing drag ban announcement with Texas A&M University System Vice Chancellor for Governmental Relations David Rejino)).

Plaintiff is entitled to identify potential sources of discovery, including persons with whom Wendler discussed his decision (which may contribute, as discussed above, to waiver of any deliberative process privilege, insofar as the discussion was with persons external to the university) and who contributed to the decision. The Court should compel Wendler to provide specific, non-evasive responses.

### C. The Court should compel Defendants to sign and verify their Interrogatory responses.

A party responding to an Interrogatory must both sign their responses and verify the responses under oath. *Id.* 33(b)(3), (5). While Wendler provided verifications to the first iteration of the Interrogatories, he has not verified his amended responses. Additionally, the Court should compel both Defendants to verify any future amended response.

## **CONCLUSION**

If the parties are not able to resolve the dispute, the Court should grant Plaintiff's motion to compel.

Dated: November 14, 2025   Respectfully submitted,

        /s/ Adam Steinbaugh
        ADAM B. STEINBAUGH*
        PA Bar No. 326475
        JEFFREY D. ZEMAN*
        PA Bar No. 328570
        FOUNDATION FOR INDIVIDUAL RIGHTS AND
         EXPRESSION
        510 Walnut St.; Ste. 900
        Philadelphia, PA 19106
        Tel: (215) 717-3473
        Fax: (267) 573-3073
        adam@thefire.org
        jeff.zeman@thefire.org

        JT MORRIS
        TX Bar No. 24094444
        CONOR T. FITZPATRICK*
        MI Bar No. P78981
        FOUNDATION FOR INDIVIDUAL RIGHTS AND
         EXPRESSION
        700 Pennsylvania Ave., SE
        Ste. 340
        Washington, DC 20003
        Tel: (215) 717-3473
        Fax: (267) 573-3073
        jt.morris@thefire.org
        conor.fitzpatrick@thefire.org

        * Admitted *Pro Hac Vice*

        *Attorneys for Plaintiff*
        *Spectrum WT*

## FED. R. CIV. P. 37(a)(1) CERTIFICATION
## AND CERTIFICATE OF CONFERENCE

I certify that the movant has in good faith conferred or attempted to confer with Defendants' counsel in an effort to obtain disclosure or discovery without court action.

I further certify that the parties held a videoconference on November 13, 2025. In attendance were Adam Steinbaugh and Jeff Zeman for Plaintiffs and David Bryant, Munera Al-Fuhaid, Steven Loomis, and Zachary Berg for Defendants. While the parties made significant headway toward resolving the issues raised by this motion, the deadline to file a motion to compel, coupled with Defendants' need to continue reviewing and producing responsive records, inhibited the parties from fully resolving the matter. Plaintiff files this motion out of an abundance of caution to preserve its rights as negotiations continue.

/s/ Adam Steinbaugh
Adam Steinbaugh
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 14, 2025, a true and correct copy of the foregoing document was transmitted via using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

/s/ Adam Steinbaugh
Adam Steinbaugh
FOUNDATION FOR INDIVIDUAL
    RIGHTS AND EXPRESSION