# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

SPECTRUM WT,

        Plaintiff,

  v.

WALTER WENDLER, *et al.*,

        Defendants.

Case No.: 2:23-cv-00048-Z

Hon. Matthew J. Kacsmaryk

**PLAINTIFF'S APPENDIX
IN SUPPORT OF MOTION TO
COMPEL FURTHER RESPONSES
TO INTERROGATORIES AND THE
PRODUCTION OF DOCUMENTS**

---

JT MORRIS
TX Bar No. 24094444
CONOR T. FITZPATRICK*
MI Bar No. P78981
FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION
700 Pennsylvania Ave., SE; Ste. 340
Washington, DC 20003
Tel: (215) 717-3473
Fax: (267) 573-3073
jt.morris@thefire.org
conor.fitzpatrick@thefire.org

ADAM B. STEINBAUGH*
CA Bar No. 304829
JEFFREY D. ZEMAN*
MI Bar No. P76610
FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION
510 Walnut St.; Ste. 900
Philadelphia, PA 19106
Tel: (215) 717-3473
Fax: (267) 573-3073
adam@thefire.org
jeff.zeman@thefire.org

    * Admitted *Pro Hac Vice*

*Counsel for Plaintiff*

# INDEX

| Document | App'x Page Nos. |
|---|---|
| Plf.'s First Set of Requests for Production to Def. Wendler | 003–030 |
| Def. Wendler's Responses and Objections to Plf.'s First Set of Requests for Production | 031–050 |
| Plf.'s First Set of Requests for Production to Def. Thomas | 051–071 |
| Def. Thomas's Responses and Objections to Plf.'s First Set of Requests for Production | 072–085 |
| Plf.'s First Set of Interrogatories to Def. Wendler | 086–100 |
| Def. Wendler's Amended Responses and Objections to Plf.'s First Set of Interrogatories | 101–113 |
| Plf.'s First Set of Interrogatories to Def. Thomas | 114–127 |
| Def. Thomas's Responses and Objections to Plf.'s First Set of Interrogatories | 128–134 |
| April 11, 2023, brief of the Ofc. of the Atty. Gen. in re: Request for a Decision regarding a Public Information Request from Adam Steinbaugh to West Texas A&M University (H000731-032223) | 135–139 |
| Selection of Wendler drafts and communications concerning development and drafting of statement announcing prohibition on drag performances | 140–159 |
| Wendler March 18, 2023, email exchange with "Alex" concerning forthcoming ban on drag performances. | 160–161 |
| Wendler March 20, 2023 email to Texas A&M Univ. Sys. Asst. Vice Chancellor for Governmental Relations David Rejino | 162–164 |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

SPECTRUM WT,

                Plaintiff,

       v.

WALTER WENDLER, in his official capacity as the President of West Texas A&M University, *et al.*,

              Defendants.

Case No.: 2:23-cv-00048

**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT WALTER WENDLER IN HIS OFFICIAL CAPACITY AS PRESIDENT OF WEST TEXAS A&M UNIVERSITY**

       Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Spectrum WT requests that Defendant Walter Wendler in his official capacity respond to the following Requests for Production within thirty (30) days from the date of service. Defendant Wendler should produce or permit Plaintiff to inspect and copy the requested documents, electronically stored information, and tangible things at the office of:

      Foundation for Individual Rights and Expression
      510 Walnut Street, Suite 900
      Philadelphia, PA 19106

## INSTRUCTIONS

1.     Each response must be preceded by identifying and quoting verbatim the request for production to which it responds.

Plf. Appx. 003

2.      You should respond to each request separately based on information in your possession, custody, or control, or the possession, custody, or control of any of your attorneys, any of your agents, anyone acting on your behalf, or anyone subject to your control in your official capacity as president and chief executive officer of West Texas A&M University, and/or based on information from a person from whom you have the practical ability to obtain the information.

3.      Except where a request is expressly limited to information in your individual possession, custody, or control, you must obtain and produce responsive information or records in your possession, custody, or control; in the possession, custody, or control of any of your attorneys, any of your agents, anyone acting on your behalf, or anyone subject to your control in your official capacity as President of West Texas A&M University; or in the possession, custody, or control of a person from whom you have the practical ability to obtain the information or records.

4.      Requests for production should not be joined together and accorded a common response. To the extent that a response to any request for production can be made by referring to another response to a request for production, an appropriate reference will be acceptable.

5.      You must organize and label responsive documents to correspond to each request for production and any category within each request.

6.      If a document, electronically stored information, or tangible thing is no longer in your possession, custody, or control (or the custody, possession, or control of someone from whom you have the legal right to obtain the information or from whom

2

Plf. Appx. 004

you have the practical ability to obtain the information), you must state whether it: (a) is missing; (b) is lost; (c) has been destroyed; (d) has been transferred, voluntarily or involuntarily, to others; or (e) has been otherwise disposed. In each instance, you must state when it was most recently in your possession, custody or control.

7.    If any responsive document, electronically stored information, or tangible thing is missing, is lost, has been destroyed, or has otherwise been disposed or is unavailable for production, you must provide the following information:

      a.    the number of the request for production to which it would have been responsive;

      b.    its subject matter;

      c.    any authors and recipients;

      d.    the person(s) who had custody, control, or possession of it.

      e.    the person who destroyed it;

      f.    the person who directed that it be destroyed;

      g.    any other person with access to it;

      h.    the reason it was destroyed;

      i.    whether the material has been produced in connection with any other litigation, action, proceeding, or investigation;

      j.    the date (or approximate date) it was created;

      k.    the date (or approximate date) it was destroyed; and

      l.    any communication or document concerning the destruction of the material.

8.    If you object to any request, you must state whether you withheld any responsive materials based on that objection. An objection to part of a request must

<div align="center">3</div>

specify the part, and permit inspection or copying of any document(s) responsive to the rest of the request.

9.     If you object to any request, in whole or in part, based on a claim of privilege, you must provide a privilege log that contains enough information for Plaintiff to be able to determine if the requested material is properly withheld. At a minimum, the privilege log must identify: (a) the type of document or thing; (b) the subject matter; (c) the author(s), sender(s), addressees, and recipients, including their titles; (d) the date of the document and of any communications; (e) the numbers of the Requests for Production to which the document is responsive; (f) the privileges claimed; (g) the factual and legal bases for the claim of privilege; and (h) whether the document has been produced in connection with any other litigation, action, proceeding, investigation, or public records request.

10.    If responsive material is not privileged but raises privacy concerns, it must be produced subject to a protective order. Plaintiff's counsel will work with Defendants' counsel to ask the Court enter a protective order.

11.    You must produce all documents in electronic format with Concordance compatible load files. If for any reason you cannot do so, please meet-and-confer with Plaintiff's counsel to work out an acceptable format for production, including for that of ESI. You must ensure that all documents produced in electronic format are searchable with Optical Character Recognition (OCR), readable, with metadata intact. If necessary or requested, Plaintiff's will provide further information as to the format in which production should be made. If you believe these requirements are not

4

proportional to the needs of this case, then Plaintiff's counsel will discuss alternative production options with you.

12.    Electronic messages shall be produced in a searchable format that preserves the presentational features of the original messages, such as emojis, images, video files, animations, and the like. Electronic messages must not be converted to rasterized or non-unitized file formats such as PDF or TIFF. Electronic messages should be produced in the same format as that in which they were exported for purposes of collection, search, or review. Electronic messages should be produced in JSON (JavaScript Object Notation) format.

13.    In responding to requests for electronic messages, you should consider any software applications used by the parties and individual custodians of data as potential sources of electronic messages. Even applications that primarily serve other purposes may contain built-in messaging systems. For example, Twitter (or "X") direct messages, Slack, MS Teams, Blackboard Campus Edition, and anything else that allows for one-to-one or one-to-many means of communication.

14.    You must do anything necessary and proportional to the needs of this case to create a comprehensive collection of relevant emails. You must not modify, alter, or add to emails (or to the metadata and attachments associated with such emails) from their original state. If you must recover any data containing email, you must state that you are providing Plaintiff with a copy of recovered data.

15.    Electronic media and computerized data must be produced with sufficient information to permit identification of the source of the media or data. At a

Plf. Appx. 007

minimum, this information must include the name or identity of the server or computer system from which the information was copied or the backup was produced.

16.    You must include a technical description of the system from which electronic records and computerized information were derived that is sufficient to permit rendering the records and information intelligible. At a minimum, your description must include:

      a.    the manufacturer's name and model number for electronic hardware used to create and maintain the electronic records;

      b.    the name and version of the operating system used on the computer where the electronic records were created and maintained;

      c.    the manufacturer's name, product ID, and version number for any software used to create and maintain the electronic records, along with any proprietary software, written documentation, special parameters, and instructions sufficient to permit those records to be read from the media produced; and

      d.    on request if needed, all decryption or access passwords necessary to unlock any computerized information produced, including, without limitation, email passwords and file decryption passwords.

17.    In requests involving the search of electronic documents for certain keywords, the use of an exclamation point (!) at the end of a word indicates that any word with that root is sought. For instance, the word "fir!" should be read to seek "fir," "fire," "fired," "firing," etc. The bullet points next to the search terms are for ease of reference and should not be included as a part of the search term. If you believe the search terms are not proportional to the needs of the case, you must justify your claim by stating the number of documents that contain the requested search terms and

Plf. Appx. 008

suggest a narrowing of search term or parameters, identifying the number of documents generated thereby.

18.     In requests involving the search of electronic documents for certain keywords, the use of (/s) in between two word indicates that the party should search for the two connected words in a single sentence. For instance, Plaintiff /s Terminated would identify every document containing a sentence with the words "Plaintiff" and "Terminated." The bullet points next to the search terms are for ease of reference and should not be included as a part of the search term. If you believe the search terms are not proportional to the needs of the case, you must justify your claim by stating the number of documents that contain the requested search terms and suggest a narrowing of search terms or parameters, identifying the number of documents generated thereby.

19.     These requests are continuing in nature. If at any time after service of responses to these requests and before trial of this action, Defendants obtain or become aware of additional material pertaining to any of these requests, Defendants shall serve upon Plaintiff's counsel supplemental responses and documents as provided by Rule 26(e) of the Federal Rules of Civil Procedure.

20.     Except where expressly noted, these requests seek records generated or received on or after January 1, 2020. Where a request solicits records in place or effective as of a given date (such as a request seeking policies, protocols, or procedures), it includes records generated before that date.

**<u>DEFINITIONS</u>**

7

Plf. Appx. 009

1.      "Plaintiff" shall mean Spectrum WT and, except where expressly noted, its current and former individual officers and members, including Barrett Bright and Marcus Stovall.

2.      "Defendants" shall mean the defendants in the above-captioned action and, where applicable, any of their successors, agents, or other persons acting or purporting to act on their behalf for any purpose whatsoever.

3.      "You," "your," and "Wendler" shall mean Walter Wendler in his official capacity as president and chief executive officer of West Texas A&M University and any of his successors, agents, or other persons acting or purporting to act on his behalf, including persons to whom he has delegated authority or over whom he holds authority or control by virtue of his official capacity. Except where a request expressly seeks records of "Wendler individually," "Wendler" includes all persons over whom Walter Wendler holds authority or control by virtue of his official capacity.

4.      "West Texas A&M" and "WTAMU" each mean West Texas A&M University, including all persons over whom you hold authority or control by virtue of your official capacity.

5.      Unless specifically requested, these requests do not seek records held by any faculty member, student, faculty organization, or student organization, or except those individuals also serving administrative or staff functions, in which case any search for records should be limited to those in their custody, possession, or control in their capacity as an administrator or staff member.

8

Plf. Appx. 010

6.      "A Fool's Drag Race" refers to the event proposed by Plaintiff to be held at WTAMU in March or April of 2023.

7.      "Sam Houston drag show" refers to the event Plaintiff held at Sam Houston Park in Amarillo on or about March 31, 2023.

8.      "Don't Be A Drag Drag Show" refers to the event proposed by Plaintiff to be held at WTAMU on or about March 22, 2024, and for which Plaintiff submitted an April 11, 2023, facilities use request under the name "Buff-a-Woah Drag Show."

9.      "Queer Movie Night" refers to the event proposed by Plaintiff to be held at WTAMU on or about October 31, 2023, at which they intended to exhibit "Rocky Horror Picture Show."

10.     "Specific Events" means and includes each of the following:

a.      A Fool's Drag Race;

b.      Don't Be A Drag Drag Show;

c.      Queer Movie Night;

d.      Any event sponsored by Spectrum WT since January 1, 2020;

e.      The Secular Student Alliance's November 9, 2023, event with Andrew Seidel;

f.      Any campus event held (or proposed to be held) between January 1, 2020 and October 6, 2025, in which the "Status" is "Cancelled";

g.      Any event in which "drag show," "drag," "pageant," "dance," "talent," "Miss," "Ms." "Mister," or "Mr." is included in the event title or description;

h.      The March 2012 "Buff-A-Whoa Drag show";

i.      Any "Mr. & Miss West Texas Drag Show" since January 2015;

j.      Any "University Sing" event since January 1, 2018;

9

k.    Any "Miss Black & Gold" event since January 1, 2016;

l.    The September 22, 2010 "Mr. WT" male pageant;

m.    The performance of "Springtime Awakening";

n.    The "The Band Monarch" concert in August 2022;

o.    Any "Big Man On Campus" event since January 1, 2016;

p.    The "Movie Night: Friday the 13th" event held on or about September 13, 2024;

q.    The "Models and Mimosas Style Show" held on or about November 16, 2024;

r.    The "Jingle and Mingle Holiday Style Show" held on or about November 8, 2023;

s.    Any event with a proposed title including the words "Style Show" held since January 1, 2023;

t.    The Buffs for Christ event held at Legacy Hall on or about August 25, 2025; and

u.    The "The Story Tour" event proposed to be held on or about October 22, 2025.

11.    "JBK Student Center" means the Jack B. Kelley Student Center and each space within the Jack B. Kelley Student Center.

12.    "Draggieland" means the annual "Draggieland" drag performance held on the campus of Texas A&M University.

13.    "Texas A&M System Drag Resolution" means the February 28, 2025 resolution of the Texas A&M University System entitled "Resolution Regarding Certain Public Events on the Campuses of Universities in The Texas A&M University System."

Plf. Appx. 012

14.    "Gender Ideology Executive Order" means Executive Order 14,168, issued on January 20, 2025, by President Donald J. Trump and entitled "Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government".

15.    "Abbott Letter" means Governor Greg Abbott's January 30, 2025 letter to "Chairmen and Executive Directors," available at https://gov.texas.gov/uploads/files/press/State_Agency_Heads_01.30.25.pdf.

16.    "H.B. 229" refers to Texas House Bill 229, 89th Legislature, R.S. (2025) and Government Code §§ 311.005, 2051.251, and 2051.252 as amended or enacted by H.B. 229.

17.    The "Litigation" refers to the above-captioned action and any appeal or petition arising from it, specifically including:

      a.    *Spectrum WT v. Wendler*, No. 2:23-cv-00048 (N.D. Tex.)

      b.    *Spectrum WT v. Wendler*, No. 23-10994 (5th Cir.)

      c.    *Spectrum WT v. Wendler*, No. 23A820 (S. Ct.)

18.    "Executive Committee" refers to the WTAMU Executive Committee, its chair, and any person who is or has been a member of the committee. The Executive Committee currently consists of President Walter Wendler (individually), Vice President for Enrollment Management Dr. Rick Haasl, Vice President for Philanthropy and External Relations Todd Rasberry, Vice President for Business and Finance Randy Rikel, Vice President for Research and Compliance and Dean of Graduate Studies Dr. Angela Spaulding, Executive Vice President and Provost Neil

11

Plf. Appx. 013

Terry, Vice President for Student Affairs Dr. Christopher Thomas, Vice President for Athletics Doug Lipinski, and Vice President for Information Technology and Chief Information Officer James D. Webb.

19. "Communication" or "communications" refer to all transmittals or exchanges of information by any medium, including any oral, telephonic, written, or electronic messages. "Communication" includes, but is not limited to: emails, letters, memoranda, notes, letters, correspondence, fax transmissions, telephonic textual transmissions, SMS messages, iMessages, WhatsApp messages, Telegram messages, Signal messages, social media messages, logs, minutes of meetings or telephone calls, notes taken during meetings (whether face-to-face or virtual), notes taken during telephone calls, calendar entries, video or audio recordings of meetings, video or audio recordings of calls, video or audio recordings of conversations, Webex recordings, and Zoom recordings.

20. "Communications between" means (a) any communication sent by a specific person(s) to the other specific person(s); (b) any communication sent to both persons by a third party; and (c) any communication in which both specified persons was a sender or recipient.

21. "Document" means any written instrument or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium for which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably useable form. A draft or non-identical copy

12

(whether different from the original because of any notations or other comments that do not appear on the originals or other copies) is a separate document within the meaning of this term.

22.    "Electronic Messages" (or "electronic messages") shall mean any electronic text or media content exchanged between two or more users of a software application. Electronic messages include both SMS messages sent over cellular networks and messages sent over the Internet using applications such as emails (including the emails themselves and the attachments), WhatsApp, iMessage, Facebook Messenger, Twitter (or "X") (via direct message), Slack, Google Chat, Course Studio, Blackboard Campus Edition, and others.

23.    "Person" shall mean a natural person, proprietorship, corporation, partnership, trust, joint venture group, association, or organization.

24.    "Concerning" shall mean, without limitation, relating to, constituting, mentioning, referring to, describing, summarizing, evidencing, listing, relevant to, demonstrating, tending to prove or disprove, and explaining.

25.    "Possession, custody, or control" shall mean that you have the legal right to obtain the subject of the request.

26.    "And," "or," and "and/or" shall mean one or the other or both, or any one or more or all, of the things or persons or parties in connection with which the conjunction is used.

Plf. Appx. 015

## REQUESTS FOR PRODUCTION

**Request for Production No. 1**

Produce all documents or communications concerning drag shows, including A Fool's Drag Race, the Sam Houston drag show, and the Don't Be A Drag Drag Show.

**Response:**

**Request for Production No. 2**

Produce all documents or communications concerning the reasons WTAMU or Wendler individually had for cancelling or refusing permission to hold any drag show.

**Response:**

**Request for Production No. 3**

Produce all documents or communications concerning Wendler's March 20, 2023 email announcing that WTAMU "will not host a drag show on campus."

**Response:**

**Request for Production No. 4**

Produce all documents or communications concerning any of the Specific Events.

**Response:**

Plf. Appx. 016

**Request for Production No. 5**

Produce all documents setting forth policies, procedures, or practices currently

in place or in place on or after January 1, 2023, which concern:

    (a)    the recognition, rights, responsibilities, and privileges of student organizations at WTAMU;

    (b)    the reservation of facilities, spaces, or venues at West Texas A&M and/or the JBK Student Center;

    (c)    the use of the JBK Student Center by students, faculty, student organizations, or the general public; or

    (d)    "sexualized" conduct or expression.

**Response:**

**Request for Production No. 6**

Produce all published and draft versions (in their native formats) since

January 1, 2019, of:

    (a)    The Code of Student Life;

    (b)    WTAMU Student Rules; and

    (c)    The Student Handbook.

**Response:**

**Request for Production No. 7**

Produce emails to or from Wendler individually since January 1, 2019,

concerning revisions to, amendments of, changes to, or new versions of any of the

following documents as those revisions, amendments, or changes pertain to student

Plf. Appx. 017

expression, student organizations, use of campus facilities, spaces, or venues for events (whether by students, invitees, or the general public), sexual harassment, or sexual conduct:

    (a)    The Code of Student Life;

    (b)    WTAMU Student Rules; or

    (c)    The Student Handbook.

**Response:**


## Request for Production No. 8

Produce all documents reflecting efforts by any WTAMU employee, staff member, administrator, or volunteer to respond to, accommodate, facilitate, process, or cancel (a) A Fool's Drag Race; (b) the Don't Be A Drag Drag Show; or (c) Queer Movie Night.

**Response:**


## Request for Production No. 9

Produce all communications to or from any then-member of the WTAMU Executive Committee concerning A Fool's Drag Race, the Don't Be A Drag Drag Show, Queer Movie Night, the Sam Houston drag show, Plaintiff, Draggieland, the Texas A&M System Drag Resolution, the Gender Ideology Executive Order, the Abbott Letter, H.B. 229, "drag shows", "drag show", or the Litigation.

**Response:**

Plf. Appx. 018

**Request for Production No. 10**

Produce all communications to or from the following individuals (and any person directly reporting to them) concerning A Fool's Drag Race, the Don't Be A Drag Drag Show, Queer Movie Night, the Sam Houston Drag show, Plaintiff, Draggieland, the Texas A&M System Drag Resolution, or the Litigation, or otherwise mentioning the words "drag show" or "drag shows":

(a)    President Walter Wendler individually;

(b)    Chief of Staff Tracee Post;

(c)    Vice President for Student Affairs Christopher Thomas;

(d)    Vice President for Philanthropy and External Relations Todd Rasberry;

(e)    Communication and Community Outreach Specialist Amberly Winningham;

(f)    Assistant Vice President for Student Affairs Chance Haugen;

(g)    Vice President for Research and Compliance Angela Spaulding;

(h)    Vice President for Business and Finance Randy Rikel;

(i)    Assistant Vice President for Risk Management Richard Smith;

(j)    Assistant Vice President for Student Success and Engagement Amber Black;

(k)    Director of Student Engagement and Leadership Kimberly Cornelson;

(l)    Executive Director of the Office of Civil Rights and Title IX Nancy Hampton;

(m)    Director for Engaged Citizenship (formerly Chief Diversity and Inclusion Officer) Angela Allen;

(n)    Senior Director of Campus Community Shawn Fouts;

(o)    JBK Assistant Director Chari Hill;

Plf. Appx. 019

(p)    JBK Manager of Event Services (formerly Events Coordinator) Julie Eatley;

(q)    Senior Communications Specialist Chip Chandler;

(r)    Evelyn Montoya;

(s)    Ransom Colette;

(t)    Chief of Police Shawn Burns; and

(u)    Assistant Chief of Police Kyle Hawbaker.

**Response:**


**Request for Production No. 11**

Produce any documents and communications reflecting any complaints about actual or planned drag shows (including A Fool's Drag Race or Don't Be A Drag Drag Show). This request is limited to records generated after January 1, 2010.

**Response:**


**Request for Production No. 12**

Produce documents and communications reflecting any complaints about actual or planned campus events being offensive, divisive, demeaning, harassing, misogynistic, or mocking. This request is limited to records generated after January 1, 2020.

**Response:**


18

Plf. Appx. 020

**Request for Production No. 13**

Produce all documents or communications concerning Draggieland, the Texas A&M System Drag Resolution, the Gender Ideology Executive Order, the Abbott Letter, or H.B. 229.

**Response:**

**Request for Production No. 14**

Produce all documents and communications concerning drag shows, A Fool's Drag Race, the Don't Be A Drag Drag Show, Queer Movie Night, Plaintiff, Draggieland, the Texas A&M System Drag Resolution, the Gender Ideology Executive Order, the Abbott Letter, H.B. 229, or the Litigation to, from, or possessed by:

(a) President Walter Wendler individually;

(b) Chief of Staff Tracee Post;

(c) Vice President for Student Affairs Christopher Thomas;

(d) Vice President for Philanthropy and External Relations Todd Rasberry;

(e) Communication and Community Outreach Specialist Amberly Winningham;

(f) Assistant Vice President for Student Affairs Chance Haugen;

(g) Vice President for Research and Compliance Angela Spaulding;

(h) Vice President for Business and Finance Randy Rikel;

(i) Assistant Vice President for Risk Management Richard Smith;

(j) Assistant Vice President for Student Success and Engagement Amber Black;

19

Plf. Appx. 021

(k)     Director of Student Engagement and Leadership Kimberly Cornelson;

(l)     Executive Director of the Office of Civil Rights and Title IX Nancy Hampton;

(m)     Director for Engaged Citizenship (formerly Chief Diversity and Inclusion Officer) Angela Allen;

(n)     Senior Director of Campus Community Shawn Fouts;

(o)     JBK Assistant Director Chari Hill;

(p)     JBK Manager of Event Services (formerly Events Coordinator) Julie Eatley;

(q)     Senior Communications Specialist Chip Chandler;

(r)     Evelyn Montoya;

(s)     Ransom Colette;

(t)     Chief of Police Shawn Burns; and

(u)     Assistant Chief of Police Kyle Hawbaker

**Response:**


**Request for Production No. 15**

Produce all communications to or from Alex Fairly, Cheryl Fairly, or a representative of Alex or Cheryl Fairly, sent between January 21, 2022 and May 1, 2023, which concern Plaintiff, drag shows, or the litigation.

**Response:**


**Request for Production No. 16**

Produce all communications between Walter Wendler individually and David Rejino on or after January 1, 2022, concerning A Fool's Drag Race, the Don't Be A

20

Drag Drag Show, Queer Movie Night, the Sam Houston Drag show, Plaintiff, Draggieland, the Texas A&M System Drag Resolution, the Gender Ideology Executive Order, the Abbott Letter, H.B. 229, the Litigation, or otherwise mentioning the words "drag show" or "drag shows".

**Response:**


**Request for Production No. 17**

Produce documents or communications concerning the April 6, 2022, quinciñera event as referenced in Wendler's March 20, 2023 statement ("A Harmless Drag Show? No Such Thing"), the internet comments about the event, or actions taken by WTAMU in response to the event or to the internet comments.

**Response:**


**Request for Production No. 18**

Produce all documents reflecting drafts (in their native formats, if available) of the following statements:

(a)    Walter Wendler's March 20, 2023 statement entitled "A Harmless Drag Show? No Such Thing."

(b)    Walter Wendler's March 18, 2024 statement entitled "Spectrum WT Application for On-Campus Drag Show."

(c)    "Minority Points of View," *available at* https://walterwendler.com/2014/11/minority-points-of-view;

(d)    "Safe Sex," *archived at* https://web.archive.org/web/20150405204613/http://walterwendler.com/2015/01/safe-sex.

Plf. Appx. 023

(e)     "Ists, Isms and Free Will," *available at* https://walterwendler.com/2022/06/ists-isms-and-free-will;

(f)     "Leading a Public University," *available at* https://walterwendler.com/2023/04/leading-a-public-university;

(g)     "Private and Civic Virtue," *available at* https://walterwendler.com/2022/10/private-and-civic-virtue;

(h)     "Texas' Most Conservative 21st-Century Public University," *available at* https://walterwendler.com/2021/06/texas-most-conservative-21st-century-public-university;

(i)     "Thoughts from a Principled Conservative Outpost," *available at* https://walterwendler.com/2024/02/thoughts-from-a-principled-conservative-outpost;

(j)     "Individualism as the Ultimate Expression of Freedom," *available at* https://walterwendler.com/2024/03/individualism-as-the-ultimate-expression-of-freedom.

**Response:**


## Request for Production No. 19

Produce all communications with Gov. Greg Abbott, the Office of the Texas Governor, Lt. Gov. Dan Patrick, or the Texas Lieutenant Governor's Office on or after February 1, 2023, concerning drag shows, gender, Draggieland, the Texas A&M System Drag Resolution, the Gender Ideology Executive Order, the Abbott Letter, or H.B. 229.

**Response:**

Plf. Appx. 024

**Request for Production No. 20**

Produce all documents reflecting any efforts by or on behalf of Walter Wendler individually to research the "law of the land" referenced in Wendler's March 20, 2023, statement.

**Response:**

**Request for Production No. 21**

Produce all documents reflecting the "catalogued" emails or the "lot of texts" Wendler individually referenced in the interview with KFDA on or about April 27, 2023, *available at* https://www.newschannel10.com/video/2023/04/28/wtamus-walter-wendler-addresses-no-confidence-vote. If available, please produce these records in the "catalogued" format.

**Response:**

**Request for Production No. 22**

Produce all communications (including emails and Electronic Messages) to or from Walter Wendler individually, on the one hand, and any other person, on the other hand, on or after August 1, 2022, which contains any of the following terms:

- LGBT!

- drag /s show!

- gay!

- "law of the land"

23

Plf. Appx. 025

- "First Amendment"

- "free speech"

- "freedom of speech"

- "freedom of expression"

- "free expression"

- "executive order"

- "ideology"

- "gender"

- "sexualized"

- "obscene"

- "obscenity"

- "lewd"

**Response:**


## Request for Production No. 23

Produce all records (including recordings, notes, invitations, or calendar entries) of any Webex meeting in which Walter Wendler (individually), Todd Rasberry, Angela Spaulding, Amberly Winningham, or Christopher Thomas was a participant, and during which any participant discussed or mentioned any of the Specific Events, Plaintiff, Draggieland, the Texas A&M System Drag Resolution, the Gender Ideology Executive Order, the Abbott Letter, H.B. 229, "drag shows", "drag show", or the Litigation. This request includes any such meeting on March 14, 2023.

Plf. Appx. 026

This request is limited to recordings of meetings occurring on or after January 27, 2023.

**Response:**


**Request for Production No. 24**

Produce all documents reflecting notes, debriefing, or impressions of any conversation, meeting, or phone call between Walter Wendler individually and Chancellor Sharp between January 27, 2023, and April 1, 2023, during which any participant discussed or mentioned any of the Specific Events, Plaintiff, Draggieland, "drag shows", "drag show", or the Litigation.

**Response:**


**Request for Production No. 25**

Produce all documents reflecting notes, debriefing, or impressions of any conversation, meeting, or phone call between Walter Wendler individually and the Chancellor of the Texas A&M University System between January 27, 2023, and October 6, 2025, during which any participant discussed or mentioned any of the Specific Events, Plaintiff, Draggieland, the Texas A&M System Drag Resolution, the Gender Ideology Executive Order, the Abbott Letter, H.B. 229, "drag shows", "drag show", or the Litigation.

**Response:**

Plf. Appx. 027

**Request for Production No. 26**

Produce a copy of any documents within the categories of records identified in each of the Defendants' initial disclosures.

**Response:**


**Request for Production No. 27**

Produce a copy of any document or communication President Wendler intends to rely on at trial.

**Response:**


Dated: October 8, 2025

<div style="margin-left:40%">

Respectfully submitted,

/s/ JT Morris
JT MORRIS
TX Bar No. 24094444
FOUNDATION FOR INDIVIDUAL RIGHTS
   AND EXPRESSION
700 Pennsylvania Ave., SE; Ste. 340
Washington, DC 20003
Tel: (215) 717-3473
Fax: (267) 573-3073
jt.morris@thefire.org

CONOR T. FITZPATRICK*
MI Bar No. P78981
ADAM B. STEINBAUGH*
CA Bar No. 304829
JEFFREY D. ZEMAN*
MI Bar No. P76610
FOUNDATION FOR INDIVIDUAL RIGHTS
   AND EXPRESSION
510 Walnut St.; Ste. 900

</div>

Plf. Appx. 028

Philadelphia, PA 19106
Tel: (215) 717-3473
Fax: (267) 573-3073
conor.fitzpatrick@thefire.org
adam@thefire.org
jeff.zeman@thefire.org

\* Admitted *Pro Hac Vice*

*Counsel for Plaintiff*

Plf. Appx. 029

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 8, 2025, I served the foregoing document by e-mail to the following:

David Bryant
David.Bryant@oag.texas.gov


Munera Al-Fuhaid
Munera.Al-Fuhaid@oag.texas.gov


Zachary Berg
Zachary.Berg@oag.texas.gov


Date:   October 8, 2025                         /s/ Adam Steinbaugh_____
                                                Adam Steinbaugh
                                                FOUNDATION FOR INDIVIDUAL
                                                   RIGHTS AND EXPRESSION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

SPECTRUM WT, *et al.*,

     Plaintiffs,

v.

WALTER WENDLER, *et al.*,

     Defendants.

No. 2:23-cv-00048

**DEFENDANT WALTER WENDLER'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION**

  Pursuant to Federal Rules of Civil Procedure 33 and 34, Defendant, Walter Wendler, hereby submits his objections and responses to Plaintiff's First Set of Requests for Production to Defendant Walter Wendler, in his official capacity as President of West Texas A&M University.

### GENERAL STATEMENT

  Defendant's responses and objections are based on the information known to Defendant at this time and are made without prejudice to the assertion of additional responses and objections should Defendant identify additional grounds thereof. Defendant reserves the right to supplement, clarify, revise, or correct any or all of his responses to Plaintiff's Requests for Production. By answering any requests, Defendant does not concede the materiality of the subject to which it refers. Defendant's responses are made expressly subject to, and without waiving or intending to waive, any questions, or objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence or for any other purpose, of any of the documents or information provided, or of the subject matter thereof, in any proceeding including the trial of this action or any subsequent proceeding.

### RECURRING OBJECTIONS

1. Defendant objects to the inclusion of "attorneys" in Instruction No. 3, to the extent that this means the requests for production seek information protected by the attorney-client and attorney work product privileges.

Plf. Appx. 031

2. Defendant objects to the inclusion of "purporting to act" and "for any purpose whatsoever" in Definition Nos. 2 and 3 as unduly burdensome and calling for responses outside the bounds of the applicable discovery rules. One who purports to act on another's behalf is not that person's agent or representative, and including such persons in these definitions therefore necessarily includes persons who have neither the right nor the authority to act on behalf of Defendant, over whom Defendant exercises no control, and for whom he bears no responsibility. Defendant therefore responds to these requests for production as if "purporting to act" and "for any purpose whatsoever" is omitted from these definitions.

3. Defendant objects to the definition of "communication" and "communications between" in Definition Nos. 19 and 20 to the extent that it seeks information that was prepared for or in anticipation of litigation, constitutes attorney work product, contains attorney-client privileged communications, or is otherwise protected by legislative privilege, executive privilege, deliberative process privilege, or any other applicable privilege, protection, doctrine, or immunity.

4. Defendant objects to the definition of "document" in Definition No. 21 and to the inclusion of "[a] draft" in the definition of "document" to the extent that this definition seeks information that was prepared for or in anticipation of litigation, constitutes attorney work product, contains attorney-client privileged communications, or is otherwise protected by legislative privilege, executive privilege, deliberative process privilege, or any other applicable privilege, protection, doctrine, or immunity.

5. Defendant objects to the definition of "electronic messages" in Definition No. 22 to the

extent that this definition seeks information that was prepared for or in anticipation of litigation, constitutes attorney work product, contains attorney-client privileged communications, or is otherwise protected by legislative privilege, executive privilege, deliberative process privilege, or any other applicable privilege, protection, doctrine, or immunity.

6.    Defendant objects to each request for production to the extent that it seeks information that was prepared for or in anticipation of litigation, constitutes attorney work product, contains attorney-client privileged communications, or is otherwise protected by legislative privilege, executive privilege, deliberative process privilege, or any other applicable privilege, protection, doctrine, or immunity.

7.    Defendant objects to each request for production to the extent that it seeks information that is publicly available or uniquely or equally available from third parties.

8.    Defendant objects to each request for production to the extent that it seeks information not in Defendant's possession, custody, or control.  To the extent a request for production seeks information from individuals or entities who are not parties to this lawsuit and not under Defendant's direction and control, that request is subject to the rules governing third party discovery including Federal Rule of Civil Procedure 45.

9.    Defendant objects to each request for production to the extent that it seeks information that does not specifically refer to the events which are the subject matter of this litigation and to the extent that it seeks information not relevant to the subject matter of this litigation.

10.   Defendant will provide his responses based on terms as they are commonly understood and

consistent with the Federal Rules of Civil Procedure.  Defendant objects to and will refrain from extending or modifying words employed in the requests to comport with expanded definitions or instructions.  Defendant will answer the requests for production to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Northern District of Texas.

11. These responses and objections are made without waiving further objections to, or admitting, the relevancy or materiality of, the information requests.  All responses are given without prejudice to Defendant's right to introduce or object to the discovery of documents, facts, or information discovered later.  Defendant likewise does not waive the right to object to the evidentiary use of the information contained in these responses and objections or to discovery requests relating to these objections and responses.

12. Defendant objects to Instruction Nos. 11, 12, 15, and 16 to the extent that they request Defendant to produce documents in a format other than the format in which they are kept in the usual course of business.  Federal Rule of Civil Procedure 35(b)(2)(E)(i) permits a party to "produce documents as they are kept in the usual course of business."  Defendant does not agree to waive this option, or any other option he is permitted to use in responding to these requests under Federal Rule of Civil Procedure 34 or any other federal or local rule.

13. The inadvertent disclosure of any privileged information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such information or with respect to any other such discovery now or hereafter requested or provided.

**RESPONSES AND OBJECTIONS TO PLAINTIFF'S REQUESTS FOR PRODUCTION**

**Request for Production No. 1**
Produce all documents or communications concerning drag shows, including A Fool's Drag Race,

the Sam Houston drag show, and the Don't Be A Drag Drag Show.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of documents subject to attorney-client, attorney work product, or deliberative process privilege or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "all documents or communications" concerning drag shows would necessarily include documents and communications on fulfilling Defendant's legal obligations and internal deliberations on how best to implement policies in compliance with the law.

Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents and communications responsive to this request on a rolling basis, within a reasonable time of this response.

**Request for Production No. 2**
Produce all documents or communications concerning the reasons WTAMU or Wendler individually had for cancelling or refusing permission to hold any drag show.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of documents subject to attorney-client, attorney work product, or deliberative process privilege or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "all documents or communications" would necessarily include documents and communications on fulfilling Defendant's legal obligations and internal deliberations on how best to implement its policies in compliance with the law.

Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents and communications responsive to this request on a rolling basis, within a reasonable time of this response.

**Request for Production No. 3**
Produce all documents or communications concerning Wendler's March 20, 2023 email announcing that WTAMU "will not host a drag show on campus."

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of documents subject to attorney-client, attorney work product, or deliberative process privilege or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In

particular, "all documents or communications" would necessarily include documents and communications on fulfilling Defendant's legal obligations and internal deliberations on how best to implement its policies in compliance with the law.

Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents and communications responsive to this request on a rolling basis, within a reasonable time of this response.

**Request for Production No. 4**
Produce all documents or communications concerning any of the Specific Events.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of documents subject to attorney-client, attorney work product, or deliberative process privileges, or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "all documents or communications" would necessarily include documents and communications on fulfilling Defendant's legal obligations and internal deliberations on how best to implement policies in compliance with the law.

Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents and communications responsive to this request on a rolling basis, within a reasonable time of this response.

**Request for Production No. 5**
Produce all documents setting forth policies, procedures, or practices currently in place or in place on or after January 1, 2023, which concern:

(a)     the recognition, rights, responsibilities, and privileges of student organizations at WTAMU;
(b)     the reservation of facilities, spaces, or venues at West Texas A&M and/or the JBK Student Center;
(c)     the use of the JBK Student Center by students, faculty, student organizations, or the general public; or
(d)     "sexualized" conduct or expression.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of documents subject to attorney-client, attorney work product, or deliberative process privilege or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "all documents or communications" would necessarily include documents and

communications on fulfilling Defendant's legal obligations and internal deliberations on how best to implement its policies in compliance with the law.

Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents and communications responsive to this request on a rolling basis, within a reasonable time of this response.

**Request for Production No. 6**
Produce all published and draft versions (in their native formats) since January 1, 2019, of:

(a)    The Code of Student Life;
(b)    WTAMU Student Rules; and
(c)    The Student Handbook.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of documents subject to attorney-client, attorney work product, or deliberative process privilege or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "all…draft versions" would necessarily include documents on fulfilling Defendant's legal obligations and internal deliberations on how best to implement its policies in compliance with the law.

Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents in the format as they are kept in the ordinary course of business, that are responsive to this request, on a rolling basis, within a reasonable time of this response.

**Request for Production No. 7**
Produce emails to or from Wendler individually since January 1, 2019, concerning revisions to, amendments of, changes to, or new versions of any of the following documents as those revisions, amendments, or changes pertain to student expression, student organizations, use of campus facilities, spaces, or venues for events (whether by students, invitees, or the general public), sexual harassment, or sexual conduct:

(a)    The Code of Student Life;
(b)    WTAMU Student Rules; or
(c)    The Student Handbook.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of documents subject to attorney-client, attorney work product, or deliberative process privilege or protected from disclosure by Texas

Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "emails … concerning revisions, amendments, or changes" would necessarily include emails on fulfilling Defendant's legal obligations and internal deliberations on how best to implement or revise its policies in compliance with the law. Defendant further objects to this request as unduly burdensome and not proportional to the needs of the case.

Subject to and without waiving the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents, that are responsive to this request, on a rolling basis, within a reasonable time of this response.

**Request for Production No. 8**
Produce all documents reflecting efforts by any WTAMU employee, staff member, administrator, or volunteer to respond to, accommodate, facilitate, process, or cancel (a) A Fool's Drag Race; (b) the Don't Be A Drag Drag Show; or (c) Queer Movie Night.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of documents subject to attorney-client, attorney work product, or deliberative process privilege or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "all documents" would necessarily include documents on fulfilling Defendant's legal obligations and internal deliberations on how best to implement its policies in compliance with the law.

Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents in the format as they are kept in the ordinary course of business, that are responsive to this request, on a rolling basis, within a reasonable time of this response.

**Request for Production No. 9**
Produce all communications to or from any then-member of the WTAMU Executive Committee concerning A Fool's Drag Race, the Don't Be A Drag Drag Show, Queer Movie Night, the Sam Houston drag show, Plaintiff, Draggieland, the Texas A&M System Drag Resolution, the Gender Ideology Executive Order, the Abbott Letter, H.B. 229, "drag shows", "drag show", or the Litigation.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of documents subject to attorney-client, attorney work product, legislative privilege, or deliberative process privilege or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "all communications" would necessarily include emails on fulfilling Defendant's legal obligations and internal deliberations on how best to implement or revise its

policies in compliance with the law. Defendant further objects to this request as unduly burdensome, not proportional to the needs of the case, and seeking information that is not relevant to this case. Defendant further objects that this request calls for information that is not in his custody or control to the extent that is seeks communications related to Draggieland or Texas A&M University – College Station.

Subject to and without waiving the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents, that are responsive to this request, on a rolling basis, within a reasonable time of this response.

**Request for Production No. 10**
Produce all communications to or from the following individuals (and any person directly reporting to them) concerning A Fool's Drag Race, the Don't Be A Drag Drag Show, Queer Movie Night, the Sam Houston Drag show, Plaintiff, Draggieland, the Texas A&M System Drag Resolution, or the Litigation, or otherwise mentioning the words "drag show" or "drag shows":

(a)    President Walter Wendler individually;
(b)    Chief of Staff Tracee Post;
(c)    Vice President for Student Affairs Christopher Thomas;
(d)    Vice President for Philanthropy and External Relations Todd Rasberry;
(e)    Communication and Community Outreach Specialist Amberly Winningham;
(f)    Assistant Vice President for Student Affairs Chance Haugen;
(g)    Vice President for Research and Compliance Angela Spaulding;
(h)    Vice President for Business and Finance Randy Rikel;
(i)    Assistant Vice President for Risk Management Richard Smith;
(j)    Assistant Vice President for Student Success and Engagement Amber Black;
(k)    Director of Student Engagement and Leadership Kimberly Cornelson;
(l)    Executive Director of the Office of Civil Rights and Title IX Nancy Hampton;
(m)    Director for Engaged Citizenship (formerly Chief Diversity and Inclusion Officer) Angela Allen;
(n)    Senior Director of Campus Community Shawn Fouts;
(o)    JBK Assistant Director Chari Hill;
(p)    JBK Manager of Event Services (formerly Events Coordinator) Julie Eatley;
(q)    Senior Communications Specialist Chip Chandler;
(r)    Evelyn Montoya;
(s)    Ransom Colette;
(t)    Chief of Police Shawn Burns; and
(u)    Assistant Chief of Police Kyle Hawbaker.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of communications subject to the attorney-

client, attorney work product, legislative privilege, or deliberative process privileges or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "all communications" would necessarily include communications on fulfilling Defendant's legal obligations and internal deliberations on how best to implement its policies in compliance with the law.

Subject to and without waiving the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents, that are responsive to this request, on a rolling basis, within a reasonable time of this response.

**Request for Production No. 11**
Produce any documents and communications reflecting any complaints about actual or planned drag shows (including A Fool's Drag Race or Don't Be A Drag Drag Show). This request is limited to records generated after January 1, 2010.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of documents and communications subject to the attorney-client, attorney work product, or deliberative process privileges or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "any documents and communications" would necessarily include documents and communications on fulfilling Defendant's legal obligations and internal deliberations on how best to implement its policies in compliance with the law.

Subject to the foregoing objections, Defendant will conduct a diligent search and will produce non-privileged documents, that are responsive to this request, on a rolling basis, within a reasonable time of this response.

**Request for Production No. 12**
Produce documents and communications reflecting any complaints about actual or planned campus events being offensive, divisive, demeaning, harassing, misogynistic, or mocking. This request is limited to records generated after January 1, 2020.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of documents and communications subject to the attorney-client, attorney work product, or deliberative process privileges or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "documents and communications" would necessarily include documents and communications on fulfilling Defendant's legal obligations and internal deliberations on how best to implement its policies in compliance with the law.

Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents that are responsive to this request, on a rolling basis, within a reasonable time of this response.

**Request for Production No. 13**
Produce all documents or communications concerning Draggieland, the Texas A&M System Drag Resolution, the Gender Ideology Executive Order, the Abbott Letter, or H.B. 229.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of documents subject to attorney-client, attorney work product, legislative privilege, or deliberative process privilege or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "all documents or communications" would necessarily include documents or communications on fulfilling Defendant's legal obligations and internal deliberations on how best to implement or revise its policies in compliance with the law. Defendant further objects to this request as unduly burdensome, not proportional to the needs of the case, and seeking information that is not relevant to this case. Defendant further objects that this request calls for information that is not in his custody or control to the extent that it seeks documents or communications related to Draggieland or Texas A&M University – College Station.

Subject to and without waiving the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents, that are responsive to this request, on a rolling basis, within a reasonable time of this response.

**Request for Production No. 14**
Produce all documents and communications concerning drag shows, A Fool's Drag Race, the Don't Be A Drag Drag Show, Queer Movie Night, Plaintiff, Draggieland, the Texas A&M System Drag Resolution, the Gender Ideology Executive Order, the Abbott Letter, H.B. 229, or the Litigation to, from, or possessed by:
(a)    President Walter Wendler individually;
(b)    Chief of Staff Tracee Post;
(c)    Vice President for Student Affairs Christopher Thomas;
(d)    Vice President for Philanthropy and External Relations Todd Rasberry;
(e)    Communication and Community Outreach Specialist Amberly Winningham;
(f)    Assistant Vice President for Student Affairs Chance Haugen;
(g)    Vice President for Research and Compliance Angela Spaulding;
(h)    Vice President for Business and Finance Randy Rikel;
(i)    Assistant Vice President for Risk Management Richard Smith;
(j)    Assistant Vice President for Student Success and Engagement Amber Black; Director of Student Engagement and Leadership Kimberly Cornelson;
(k)    Executive Director of the Office of Civil Rights and Title IX Nancy Hampton;
(l)    Director for Engaged Citizenship (formerly Chief Diversity and Inclusion

Officer) Angela Allen;

(m)     Senior Director of Campus Community Shawn Fouts;
(n)     JBK Assistant Director Chari Hill;
(o)     JBK Manager of Event Services (formerly Events Coordinator) Julie Eatley;
(p)     Senior Communications Specialist Chip Chandler;
(q)     Evelyn Montoya;
(r)     Ransom Colette;
(s)     Chief of Police Shawn Burns; and
(t)     Assistant Chief of Police Kyle Hawbaker

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of documents subject to attorney-client, attorney work product, legislative privilege, or deliberative process privilege or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "all documents or communications" about "the Litigation" would necessarily include documents or communications on fulfilling Defendant's legal obligations and internal deliberations on how best to implement or revise its policies in compliance with the law. Defendant further objects to this request as unduly burdensome, not proportional to the needs of the case, and seeking information that is not relevant to this case. Defendant further objects that this request calls for information that is not in his custody or control to the extent that it seeks documents or communications related to Draggieland or Texas A&M University – College Station.

Subject to and without waiving the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents, that are responsive to this request, on a rolling basis, within a reasonable time of this response.

**Request for Production No. 15**
Produce all communications to or from Alex Fairly, Cheryl Fairly, or a representative of Alex or Cheryl Fairly, sent between January 21, 2022 and May 1, 2023, which concern Plaintiff, drag shows, or the litigation.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request to the extent it calls for the production of documents and communications subject to the attorney-client, attorney work product, legislative privilege, or deliberative process privilege or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501.

Subject to and without waiving the foregoing objections, Defendant has conducted a diligent search and has no documents that are responsive to this request.

**Request for Production No. 16**

Produce all communications between Walter Wendler individually and David Rejino on or after January 1, 2022, concerning A Fool's Drag Race, the Don't Be A Drag Drag Show, Queer Movie Night, the Sam Houston Drag show, Plaintiff, Draggieland, the Texas A&M System Drag Resolution, the Gender Ideology Executive Order, the Abbott Letter, H.B. 229, the Litigation, or otherwise mentioning the words "drag show" or "drag shows".

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request to the extent it calls for the production of documents and communications subject to the attorney-client, attorney work product, legislative privilege, or deliberative process privilege or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501.

Subject to and without waiving the foregoing objections, Defendant has conducted a diligent search and has no documents that are responsive to this request.

**Request for Production No. 17**

Produce documents or communications concerning the April 6, 2022, quinciñera event as referenced in Wendler's March 20, 2023 statement ("A Harmless Drag Show? No Such Thing"), the internet comments about the event, or actions taken by WTAMU in response to the event or to the internet comments.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of documents and communications subject to the attorney-client, attorney work product, or deliberative process privileges or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "documents or communications" would necessarily include documents or communications on fulfilling Defendant's legal obligations and internal deliberations on how best to implement its policies in compliance with the law.

Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents that are responsive to this request, on a rolling basis, within a reasonable time of this response.

**Request for Production No. 18**

(a)    Produce all documents reflecting drafts (in their native formats, if available) of the following statements: Walter Wendler's March 20, 2023 statement entitled "A Harmless Drag Show? No Such Thing."

(b)    Walter Wendler's March 18, 2024 statement entitled "Spectrum WT Application for On-Campus Drag Show."

(c)     "Minority Points of View," *available at*
        https://walterwendler.com/2014/11/minority-points-of-view;
(d)     "Safe                    Sex,"              *archived*                    *at*
        https://web.archive.org/web/20150405204613/http://walterwendler.com/   2015/01/safe-
        sex."Ists, Isms and Free Will," *available at*
        https://walterwendler.com/2022/06/ists-isms-and-free-will;
(e)     "Leading a Public University," *available at*
        https://walterwendler.com/2023/04/leading-a-public-university;
(f)     "Private and Civic Virtue," *available at*
        https://walterwendler.com/2022/10/private-and-civic-virtue;
(g)     "Texas' Most Conservative 21st-Century Public University," *available at*
        https://walterwendler.com/2021/06/texas-most-conservative-21st-century-public-
        university;
(h)     "Thoughts from a Principled Conservative Outpost," *available at*
        https://walterwendler.com/2024/02/thoughts-from-a-principled- conservative-outpost;
(i)     "Individualism as the Ultimate Expression of Freedom," *available at*
        https://walterwendler.com/2024/03/individualism-as-the-ultimate-expression-of-
        freedom.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of drafts subject to the attorney-client, attorney work product, or deliberative process privileges or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "all documents reflecting drafts" would necessarily include documents or communications on fulfilling Defendant's legal obligations and documents prepared in anticipation of litigation or subject to the attorney work product privilege.

Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents that are responsive to this request, as they are kept in the ordinary course of business, on a rolling basis, within a reasonable time of this response.

**Request for Production No. 19**
Produce all communications with Gov. Greg Abbott, the Office of the Texas Governor, Lt. Gov. Dan Patrick, or the Texas Lieutenant Governor's Office on or after February 1, 2023, concerning drag shows, gender, Draggieland, the Texas A&M System Drag Resolution, the Gender Ideology Executive Order, the Abbott Letter, or H.B. 229.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request to the extent it calls for the production of documents and communications subject to the attorney-client, attorney work product, legislative privilege, or deliberative process

privilege or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501.

Subject to and without waiving the foregoing objections, Defendant has conducted a diligent search and has no documents that are responsive to this request.

**Request for Production No. 20**
Produce all documents reflecting any efforts by or on behalf of Walter Wendler individually to research the "law of the land" referenced in Wendler's March 20, 2023, statement.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of documents subject to the attorney-client, attorney work product, or deliberative process privileges or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "all documents" related to the requested legal research would necessarily include documents or communications on fulfilling Defendant's legal obligations and documents prepared in anticipation of litigation or subject to the attorney work product privilege.

Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents that are responsive to this request, on a rolling basis, within a reasonable time of this response.

**Request for Production No. 21**

Produce all documents reflecting the "catalogued" emails or the "lot of texts" Wendler individually referenced in the interview with KFDA on or about April 27, 2023, *available at* https://www.newschannel10.com/video/2023/04/28/wtamus-walter-  wendler-addresses-no-confidence-vote. If available, please produce these records in the "catalogued" format.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of documents and communications subject to the attorney-client, attorney work product, or deliberative process privileges or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "all documents reflecting…emails or…texts" would necessarily include documents on fulfilling Defendant's legal obligations and internal deliberations on how best to implement its policies in compliance with the law.

Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents that are responsive to this request, on a rolling basis, within a reasonable time of this response.

**Request for Production No. 22**
Produce all communications (including emails and Electronic Messages) to or from Walter Wendler individually, on the one hand, and any other person, on the other hand, on or after August 1, 2022, which contains any of the following terms:

- LGBT!
- drag /s show!
- gay!
- "law of the land"
- "First Amendment"
- "free speech"
- "freedom of speech"
- "freedom of expression"
- "free expression"
- "executive order"
- "ideology"
- "gender"
- "sexualized"
- "obscene"
- "obscenity"
- "lewd"

**Response:**

       Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of communications to or from Defendant and "any other person" that are subject to the attorney-client, attorney work product, or deliberative process privileges or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "all communications" with "any other person" would necessarily include communications with counsel on fulfilling Defendant's legal obligations and communications exchanged in anticipation of litigation or subject to the attorney work product privilege.

       Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents that are responsive to this request, on a rolling basis, within a reasonable time of this response.

**Request for Production No. 23**
Produce all records (including recordings, notes, invitations, or calendar entries) of any Webex meeting in which Walter Wendler (individually), Todd Rasberry, Angela Spaulding, Amberly Winningham, or Christopher Thomas was a participant, and during which any participant discussed or mentioned any of the Specific Events, Plaintiff, Draggieland, the Texas A&M System Drag Resolution, the Gender Ideology Executive Order, the Abbott Letter, H.B. 229,

"drag shows", "drag show", or the Litigation. This request includes any such meeting on March 14, 2023. This request is limited to recordings of meetings occurring on or after January 27, 2023.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of records that are subject to the attorney-client, attorney work product, or deliberative process privileges or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "all records" would necessarily include records, documents, or communications with counsel on fulfilling Defendant's legal obligations and communications exchanged in anticipation of litigation or subject to the attorney work product privilege.

Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents that are responsive to this request, on a rolling basis, within a reasonable time of this response.

**Request for Production No. 24**
Produce all documents reflecting notes, debriefing, or impressions of any conversation, meeting, or phone call between Walter Wendler individually and Chancellor Sharp between January 27, 2023, and April 1, 2023, during which any participant discussed or mentioned any of the Specific Events, Plaintiff, Draggieland, "drag shows", "drag show", or the Litigation.

**Response:** Defendant incorporates by reference the recurring objections described above. Defendant objects to this request to the extent it calls for the production of documents and communications subject to the attorney-client, attorney work product, legislative privilege, or deliberative process privilege or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501.

Subject to and without waiving the foregoing objections, Defendant has conducted a diligent search and has no documents that are responsive to this request.
Defendant incorporates by reference the recurring objections described above. Defendant objects to this request to the extent it calls for the production of documents and communications subject to the attorney-client, attorney work product, legislative privilege, or deliberative process privilege or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501.

Subject to and without waiving the foregoing objections, Defendant has conducted a diligent search and has no documents that are responsive to this request.

**Request for Production No. 25**
Produce all documents reflecting notes, debriefing, or impressions of any conversation, meeting, or phone call between Walter Wendler individually and the Chancellor of the Texas

A&M University System between January 27, 2023, and October 6, 2025, during which any participant discussed or mentioned any of the Specific Events, Plaintiff, Draggieland, the Texas A&M System Drag Resolution, the Gender Ideology Executive Order, the Abbott Letter, H.B. 229, "drag shows", "drag show", or the Litigation.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request to the extent it calls for the production of documents and communications subject to the attorney-client, attorney work product, legislative privilege, or deliberative process privilege or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501.

Subject to and without waiving the foregoing objections, Defendant has conducted a diligent search and has no documents that are responsive to this request.

**Request for Production No. 26**
Produce a copy of any documents within the categories of records identified in each of the Defendants' initial disclosures.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request to the extent that it calls for the production of documents that are subject to the attorney-client, attorney work product, or deliberative process privileges or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501.

Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents that are responsive to this request, on a rolling basis, within a reasonable time of this response.

**Request for Production No. 27**
Produce a copy of any document or communication President Wendler intends to rely on at trial.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request to the extent that it calls for the production of documents or communications that are subject to the attorney-client, attorney work product, or deliberative process privileges or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501.

Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents that are responsive to this request, on a rolling basis, within a reasonable time of this response.

Plf. Appx. 049

Date: November 7, 2025                         Respectfully submitted.

KEN PAXTON                                     */s/ David Bryant*
Attorney General of Texas                      DAVID BRYANT
                                               Special Counsel
                                               Tex. State Bar No. 03281500
BRENT WEBSTER
First Assistant Attorney General
                                               MUNERA AL-FUHAID
                                               Special Counsel
RALPH MOLINA                                   Tex. State Bar No. 24094501
Deputy First Assistant Attorney General

                                               ZACHARY BERG
RYAN D. WALTERS                                Special Counsel
Deputy Attorney General for Legal Strategy     Tex. State Bar No. 24107706

RYAN G. KERCHER                                OFFICE OF THE ATTORNEY GENERAL
Chief, Special Litigation Division             P.O. Box 12548 (MC-009)
                                               Austin, Texas 78711-2548
                                               Tel.: (512) 463-2120
                                               Fax: (512) 320-0667
                                               david.bryant@oag.texas.gov
                                               munera.al-fuhaid@oag.texas.gov
                                               zachary.berg@oag.texas.gov


## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2025, I electronically served the foregoing responses on all counsel of record.

                                               */s/ David Bryant*
                                               DAVID BRYANT

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

SPECTRUM WT,

               Plaintiff,

     v.

WALTER WENDLER, in his individual
capacity and his official capacity as the
President of West Texas A&M
University, *et al.*,

               Defendants.

Case No.: 2:23-cv-00048

**PLAINTIFF'S FIRST SET OF
REQUESTS FOR PRODUCTION TO
DEFENDANT CHRISTOPHER
THOMAS IN HIS OFFICIAL
CAPACITY AS VICE PRESIDENT
FOR STUDENT AFFAIRS OF WEST
TEXAS A&M UNIVERSITY**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff

Spectrum WT requests that Defendant Christopher Thomas in his official capacity

respond to the following Requests for Production within thirty (30) days from the date

of service. Defendant Thomas should produce or permit Plaintiff to inspect and copy

the requested documents, electronically stored information, and tangible things at

the office of:

        Foundation for Individual Rights and Expression
        510 Walnut Street, Suite 900
        Philadelphia, PA 19106

## **INSTRUCTIONS**

1.    Each response must be preceded by identifying and quoting verbatim

the request for production to which it responds.

Plf. Appx. 051

2.     You should respond to each request separately based on information in your possession, custody, or control, or the possession, custody, or control of any of your attorneys, any of your agents, anyone acting on your behalf, or anyone subject to your control in your official capacity as Vice President for Student Affairs of West Texas A&M University, and/or based on information from a person from whom you have the practical ability to obtain the information.

3.     Except where a request is expressly limited to information in your individual possession, custody, or control, you must obtain and produce responsive information or records in your possession, custody, or control; in the possession, custody, or control of any of your attorneys, any of your agents, anyone acting on your behalf, or anyone subject to your control in your official capacity as Vice President for Student Affairs of West Texas A&M University; or in the possession, custody, or control of a person from whom you have the practical ability to obtain the information or records.

4.     Requests for production should not be joined together and accorded a common response. To the extent that a response to any request for production can be made by referring to another response to a request for production, an appropriate reference will be acceptable.

5.     You must organize and label responsive documents to correspond to each request for production and any category within each request.

6.     If a document, electronically stored information, or tangible thing is no longer in your possession, custody, or control (or the custody, possession, or control of

2

someone from whom you have the legal right to obtain the information or from whom you have the practical ability to obtain the information), you must state whether it: (a) is missing; (b) is lost; (c) has been destroyed; (d) has been transferred, voluntarily or involuntarily, to others; or (e) has been otherwise disposed. In each instance, you must state when it was most recently in your possession, custody or control.

7.    If any responsive document, electronically stored information, or tangible thing is missing, is lost, has been destroyed, or has otherwise been disposed or is unavailable for production, you must provide the following information:

   a.    the number of the request for production to which it would have been responsive;

   b.    its subject matter;

   c.    any authors and recipients;

   d.    the person(s) who had custody, control, or possession of it.

   e.    the person who destroyed it;

   f.    the person who directed that it be destroyed;

   g.    any other person with access to it;

   h.    the reason it was destroyed;

   i.    whether the material has been produced in connection with any other litigation, action, proceeding, or investigation;

   j.    the date (or approximate date) it was created;

   k.    the date (or approximate date) it was destroyed; and

   l.    any communication or document concerning the destruction of the material.

8.    If you object to any request, you must state whether you withheld any responsive materials based on that objection. An objection to part of a request must

3

Plf. Appx. 053

specify the part, and permit inspection or copying of any document(s) responsive to the rest of the request.

9.    If you object to any request, in whole or in part, based on a claim of privilege, you must provide a privilege log that contains enough information for Plaintiff to be able to determine if the requested material is properly withheld. At a minimum, the privilege log must identify: (a) the type of document or thing; (b) the subject matter; (c) the author(s), sender(s), addressees, and recipients, including their titles; (d) the date of the document and of any communications; (e) the numbers of the Requests for Production to which the document is responsive; (f) the privileges claimed; (g) the factual and legal bases for the claim of privilege; and (h) whether the document has been produced in connection with any other litigation, action, proceeding, investigation, or public records request.

10.    If responsive material is not privileged but raises privacy concerns, it must be produced subject to a protective order. Plaintiff's counsel will work with Defendants' counsel to ask the Court enter a protective order.

11.    You must produce all documents in electronic format with Concordance compatible load files. If for any reason you cannot do so, please meet-and-confer with Plaintiff's counsel to work out an acceptable format for production, including for that of ESI. You must ensure that all documents produced in electronic format are searchable with Optical Character Recognition (OCR), readable, with metadata intact. If necessary or requested, Plaintiff will provide further information as to the format in which production should be made. If you believe these requirements are not

4

proportional to the needs of this case, then Plaintiff's counsel will discuss alternative production options with you.

12.     Electronic messages shall be produced in a searchable format that preserves the presentational features of the original messages, such as emojis, images, video files, animations, and the like. Electronic messages must not be converted to rasterized or non-unitized file formats such as PDF or TIFF. Electronic messages should be produced in the same format as that in which they were exported for purposes of collection, search, or review. Electronic messages should be produced in JSON (JavaScript Object Notation) format.

13.     In responding to requests for electronic messages, you should consider any software applications used by the parties and individual custodians of data as potential sources of electronic messages. Even applications that primarily serve other purposes may contain built-in messaging systems. For example, Twitter direct messages, Slack, MS Teams, Blackboard Campus Edition, and anything else that allows for one-to-one or one-to-many means of communication.

14.     You must do anything necessary and proportional to the needs of this case to create a comprehensive collection of relevant emails. You must not modify, alter, or add to emails (or to the metadata and attachments associated with such emails) from their original state. If you must recover any data containing email, you must state that you are providing Plaintiff with a copy of recovered data.

15.     Electronic media and computerized data must be produced with sufficient information to permit identification of the source of the media or data. At a

Plf. Appx. 055

minimum, this information must include the name or identity of the server or computer system from which the information was copied or the backup was produced.

16.    You must include a technical description of the system from which electronic records and computerized information were derived that is sufficient to permit rendering the records and information intelligible. At a minimum, your description must include:

      a.    the manufacturer's name and model number for electronic hardware used to create and maintain the electronic records;

      b.    the name and version of the operating system used on the computer where the electronic records were created and maintained;

      c.    the manufacturer's name, product ID, and version number for any software used to create and maintain the electronic records, along with any proprietary software, written documentation, special parameters, and instructions sufficient to permit those records to be read from the media produced; and

      d.    on request if needed, all decryption or access passwords necessary to unlock any computerized information produced, including, without limitation, email passwords and file decryption passwords.

17.    In requests involving the search of electronic documents for certain keywords, the use of an exclamation point (!) at the end of a word indicates that any word with that root is sought. For instance, the word "fir!" should be read to seek "fir," "fire," "fired," "firing," etc. The bullet points next to the search terms are for ease of reference and should not be included as a part of the search term. If you believe the search terms are not proportional to the needs of the case, you must justify your claim by stating the number of documents that contain the requested search terms and

Plf. Appx. 056

suggest a narrowing of search term or parameters, identifying the number of documents generated thereby.

18.    In requests involving the search of electronic documents for certain keywords, the use of (/s) in between two word indicates that the party should search for the two connected words in a single sentence. For instance, Plaintiff /s Terminated would identify every document containing a sentence with the words "Plaintiff" and "Terminated." The bullet points next to the search terms are for ease of reference and should not be included as a part of the search term. If you believe the search terms are not proportional to the needs of the case, you must justify your claim by stating the number of documents that contain the requested search terms and suggest a narrowing of search terms or parameters, identifying the number of documents generated thereby.

19.    These requests are continuing in nature. If at any time after service of responses to these requests and before trial of this action, Defendants obtain or become aware of additional material pertaining to any of these requests, Defendants shall serve upon Plaintiff's counsel supplemental responses and documents as provided by Rule 26(e) of the Federal Rules of Civil Procedure.

20.    Except where expressly noted, these requests seek records generated or received on or after January 1, 2020. Where a request solicits records in place or effective as of a given date (such as a request seeking policies, protocols, or procedures), it includes records generated before that date.

Plf. Appx. 057

## **DEFINITIONS**

1.      "Plaintiff" shall mean Spectrum WT and, except where expressly noted, its current and former individual officers and members, including Barrett Bright and Marcus Stovall.

2.      "Defendants" shall mean the defendants in the above-captioned action and, where applicable, any of their successors, agents, or other persons acting or purporting to act on their behalf for any purpose whatsoever.

3.      "You," "your," and "Thomas" shall mean Christopher Thomas in his official capacity as vice president of West Texas A&M University and any of his successors, agents, or other persons acting or purporting to act on his behalf, including persons to whom he has delegated authority or over whom he holds authority or control by virtue of his official capacity. Except where a request expressly seeks records of "Thomas individually," "Thomas" includes all persons over whom Thomas holds authority or control by virtue of his official capacity.

4.      "Wendler" means Walter Wendler.

5.      "West Texas A&M" and "WTAMU" each mean West Texas A&M University, including all persons over whom you hold authority or control by virtue of your official capacity.

6.      Unless specifically requested, these requests do not seek records held by any faculty member, student, faculty organization, or student organization, or except those individuals also serving administrative or staff functions, in which case any

8

Plf. Appx. 058

search for records should be limited to those in their custody, possession, or control in their capacity as an administrator or staff member.

7.    "A Fool's Drag Race" refers to the event proposed by Plaintiff to be held at WTAMU in March or April of 2023.

8.    "Sam Houston drag show" refers to the event Plaintiff held in Sam Houston Park in Amarillo on or about March 31, 2023.

9.    "Don't Be A Drag Drag Show" refers to the event proposed by Plaintiff to be held at WTAMU on or about March 22, 2024, and for which Plaintiff submitted an April 11, 2023, facilities use request under the name "Buff-a-Woah Drag Show."

10.   "Queer Movie Night" refers to the event proposed by Plaintiff to be held at WTAMU on or about October 31, 2023 at which they intended to exhibit "Rocky Horror Picture Show."

11.   "Specific Events" means and includes each of the following:

    a.    A Fool's Drag Race;

    b.    Don't Be A Drag Drag Show;

    c.    Queer Movie Night;

    d.    Any event sponsored by Spectrum WT since January 1, 2020;

    e.    The Secular Student Alliance's November 9, 2023, event with Andrew Seidel;

    f.    Any campus event held (or proposed to be held) between January 1, 2020 and October 6, 2025, in which the "Status" is "Cancelled";

    g.    Any event in which "drag show," "drag," "pageant," "dance," "talent," "Miss," "Ms." "Mister," or "Mr." is included in the event title or description;

    h.    The March 2012 "Buff-A-Whoa Drag show";

Plf. Appx. 059

i.      Any "Mr. & Miss West Texas Drag Show" since January 2015;

j.      Any "University Sing" event since January 1, 2018;

k.      Any "Miss Black & Gold" event since January 1, 2016;

l.      The September 22, 2010 "Mr. WT" male pageant;

m.      The performance of "Springtime Awakening";

n.      The "The Band Monarch" concert in August 2022;

o.      Any "Big Man On Campus" event since January 1, 2016;

p.      The "Movie Night: Friday the 13th" event held on or about September 13, 2024;

q.      The "Models and Mimosas Style Show" held on or about November 16, 2024;

r.      The "Jingle and Mingle Holiday Style Show" held on or about November 8, 2023;

s.      Any event with a proposed title including the words "Style Show" held since January 1, 2023;

t.      The Buffs for Christ event held at Legacy Hall on or about August 25, 2025; and

u.      The "The Story Tour" event proposed to be held on or about October 22, 2025.

12.    "JBK Student Center" means the Jack B. Kelley Student Center and each space within the Jack B. Kelley Student Center.

13.    "Draggieland" means the annual "Draggieland" drag performance held on the campus of Texas A&M University.

14.    "Texas A&M System Drag Resolution" means the February 28, 2025 resolution of the Texas A&M University System entitled "Resolution Regarding Certain Public Events on the Campuses of Universities in The Texas A&M University System."

Plf. Appx. 060

15. "Gender Ideology Executive Order" means Executive Order 14,168, issued on January 20, 2025, by President Donald J. Trump and entitled "Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government".

16. "Abbott Letter" means Governor Greg Abbott's January 30, 2025 letter to "Chairmen and Executive Directors," available at https://gov.texas.gov/uploads/files/press/State_Agency_Heads_01.30.25.pdf.

17. "H.B. 229" refers to Texas House Bill 229, 89th Legislature, R.S. (2025) and Government Code §§ 311.005, 2051.251, and 2051.252 as amended or enacted by H.B. 229.

18. The "Litigation" refers to the above-captioned action and any appeal or petition arising from it, specifically including:

      a.    *Spectrum WT v. Wendler*, No. 2:23-cv-00048 (N.D. Tex.)

      b.    *Spectrum WT v. Wendler*, No. 23-10994 (5th Cir.)

      c.    *Spectrum WT v. Wendler*, No. 23A820 (S. Ct.)

19. "Communication" or "communications" refer to all transmittals or exchanges of information by any medium, including any oral, telephonic, written, or electronic messages. "Communication" includes, but is not limited to: emails, letters, memoranda, notes, letters, correspondence, fax transmissions, telephonic textual transmissions, SMS messages, iMessages, WhatsApp messages, Telegram messages, Signal messages, social media messages, logs, minutes of meetings or telephone calls, notes taken during meetings (whether face-to-face or virtual), notes taken during

11

telephone calls, calendar entries, video or audio recordings of meetings, video or audio recordings of calls, video or audio recordings of conversations, Webex recordings, and Zoom recordings.

20. "Communications between" means (a) any communication sent by a specific person(s) to the other specific person(s); (b) any communication sent to both persons by a third party; and (c) any communication in which both specified persons was a sender or recipient.

21. "Document" means any written instrument or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium for which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably useable form. A draft or non-identical copy (whether different from the original because of any notations or other comments that do not appear on the originals or other copies) is a separate document within the meaning of this term.

22. "Electronic Messages" (or "electronic messages") shall mean any electronic text or media content exchanged between two or more users of a software application. Electronic messages include both SMS messages sent over cellular networks and messages sent over the Internet using applications such as emails (including the emails themselves and the attachments), WhatsApp, iMessage, Facebook Messenger, Twitter (or "X") (via direct message), Slack, Google Chat, Course Studio, Blackboard Campus Edition, and others.

12

Plf. Appx. 062

23.     "Person" shall mean a natural person, proprietorship, corporation, partnership, trust, joint venture group, association, or organization.

24.     "Concerning" shall mean, without limitation, relating to, constituting, mentioning, referring to, describing, summarizing, evidencing, listing, relevant to, demonstrating, tending to prove or disprove, and explaining.

25.     "Possession, custody, or control" shall mean that you have the legal right to obtain the subject of the request.

26.     "And," "or," and "and/or" shall mean one or the other or both, or any one or more or all, of the things or persons or parties in connection with which the conjunction is used.

## REQUESTS FOR PRODUCTION

### Request for Production No. 1

Produce all documents or communications concerning drag shows, including A Fool's Drag Race, the Sam Houston drag show, and the "Don't Be a Drag Drag Show."

**Response:**


### Request for Production No. 2

Produce all documents or communications concerning any of the Specific Events.

**Response:**

13

**Request for Production No. 3**

Produce documents or communications concerning the April 6, 2022, quinciñera event as referenced in Wendler's March 2023 statement ("A Harmless Drag Show? No Such Thing"), the internet comments about the event, or actions taken by WTAMU in response to the event or to the internet comments.

**Response:**

**Request for Production No. 4**

Produce all documents (in their native format) reflecting any drafts or red-lines (on or after January 1, 2020) of any version of the "Student Handbook," "WTAMU Student Rules," or "Code of Student Life."

**Response:**

**Request for Production No. 5**

Produce all documents concerning the cancellations of A Fool's Drag Race and/or the "Don't Be a Drag Drag Show."

**Response:**

**Request for Production No. 6**

Produce documents and communications reflecting any complaints about actual or planned campus events being offensive, divisive, demeaning, harassing,

14

misogynistic, or mocking. This request is limited to records generated after January 1, 2020.

**Response:**


## Request for Production No. 7

Produce the calendar of events in the JBK Student Center since January 1, 2021.

**Response:**


## Request for Production No. 8

Produce all submitted reservation forms (including but not limited to the forms available at https://reservations.wtamu.edu) for use of spaces in the Jack B. Kelly Student Center or Alumni Banquet Facility submitted since January 1, 2021.

**Response:**


## Request for Production No. 9

Produce all documents reflecting any efforts by WTAMU to promote or advertise the availability of the JBK Student Center for rental, reservation, or other use by students, student organizations, members of the public, or non-student organizations. This request is limited to records generated on or after January 1, 2020.

**Response:**

Plf. Appx. 065

**Request for Production No. 10**

Produce the following documents as they relate to any event formally proposed by a student, student organization, faculty member, faculty organization, member of the public, or non-WTAMU organization that (a) WTAMU canceled, denied, otherwise refused (except due to the COVID-19 pandemic), or (b) WTAMU approved on condition that the organizer(s) modify the content of the event on or after January 1, 2020:

    (a)    The application form (or submission) proposing the event;

    (b)    Any correspondence to or from the organizer of the event concerning the cancellation of the proposed event;

    (c)    Any records concerning the involvement of the President of WTAMU in the decision to cancel, deny, or otherwise refuse the event.

**Response:**


**Request for Production No. 11**

Produce all documents reflecting the EMS Reservation data for any of the Specific Events, including:

    (a)    the tabs (or entries) for the "Reservation Summary," "Properties," "Reminders," "Comments," "Attachments," "User Defined Fields," "Transactions," "History" (or "History*"), or "Emails" for the Specific Events; and

    (b)    any comments, attachments, or emails associated with the EMS Reservation entry.

**Response:**

Plf. Appx. 066

**Request for Production No. 12**

Produce all documents reflecting any risk assessment concerning each of the Specific Events, including:

(a)     the risk matrix (including any "Hazard Matrix" and/or "Risk Assessment Form"); and

(b)     any communication with or assessment by the Texas A&M University System Office of Risk Management or its personnel.

**Response:**

**Request for Production No. 13**

Produce all documents reflecting efforts by any WTAMU employee, staff member, administrator, or volunteer to respond to, accommodate, facilitate, process, or cancel (a) A Fool's Drag Race; (b) the Don't Be A Drag Drag Show; or (c) Queer Movie Night.

**Response:**

**Request for Production No. 14**

Produce all documents or communications concerning the Texas A&M System Drag Resolution, the Gender Ideology Executive Order, the Abbott Letter, or H.B. 229.

**Response:**

Plf. Appx. 067

**Request for Production No. 15**

Produce all communications between Thomas individually and David Rejino on or after January 1, 2022, concerning A Fool's Drag Race, the Don't Be A Drag Drag Show, Queer Movie Night, the Sam Houston Drag show, Plaintiff, Draggieland, the Texas A&M System Drag Resolution, the Gender Ideology Executive Order, the Abbott Letter, H.B. 229, the Litigation, or otherwise mentioning the words "drag show" or "drag shows".

**Response:**

**Request for Production No. 16**

Produce documents or communications concerning the April 6, 2022, quinciñera event as referenced in Wendler's March 20, 2023 statement ("A Harmless Drag Show? No Such Thing"), the internet comments about the event, or actions taken by WTAMU in response to the event or to the internet comments.

**Response:**

**Request for Production No. 17**

Produce all records (including recordings, notes, invitations, or calendar entries) of any Webex meeting in which Walter Wendler, Todd Rasberry, Angela Spaulding, Amberly Winningham, or Christopher Thomas (individually) was a participant, and during which any participant discussed or mentioned any of the Specific Events, Plaintiff, the Texas A&M System Drag Resolution, the Gender

Plf. Appx. 068

Ideology Executive Order, the Abbott Letter, H.B. 229, "drag shows", "drag show", or the Litigation. This request includes any such meeting on March 14, 2023. This request is limited to recordings of meetings occurring on or after January 27, 2023.

**Response:**


## Request for Production No. 18

Produce a copy of any documents within the categories of records identified in each of the Defendants' initial disclosures.

**Response:**


## Request for Production No. 19

Produce a copy of any document or communication Thomas intends to rely on at trial.

**Response:**


Dated: October 8, 2025

Respectfully submitted,

/s/ JT Morris
JT MORRIS
TX Bar No. 24094444
FOUNDATION FOR INDIVIDUAL RIGHTS
  AND EXPRESSION
700 Pennsylvania Ave., SE; Ste. 340
Washington, DC 20003
Tel: (215) 717-3473
Fax: (267) 573-3073

Plf. Appx. 069

jt.morris@thefire.org

CONOR T. FITZPATRICK*
MI Bar No. P78981
ADAM B. STEINBAUGH*
CA Bar No. 304829
JEFFREY D. ZEMAN*
MI Bar No. P76610
FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION
510 Walnut St.; Ste. 900
Philadelphia, PA 19106
Tel: (215) 717-3473
Fax: (267) 573-3073
conor.fitzpatrick@thefire.org
adam@thefire.org
jeff.zeman@thefire.org

* Admitted *Pro Hac Vice*

*Counsel for Plaintiff*

20

Plf. Appx. 070

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 8, 2025, I served the foregoing document by e-mail to the following:

David Bryant
David.Bryant@oag.texas.gov


Munera Al-Fuhaid
Munera.Al-Fuhaid@oag.texas.gov


Zachary Berg
Zachary.Berg@oag.texas.gov


Date:   October 8, 2025           /s/ Adam Steinbaugh
                                  Adam Steinbaugh
                                  FOUNDATION FOR INDIVIDUAL
                                      RIGHTS AND EXPRESSION

Plf. Appx. 071

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

SPECTRUM WT, *et al.*,

          Plaintiffs,

v.

WALTER WENDLER, *et al.*,

          Defendants.

No. 2:23-cv-00048

### DEFENDANT CHRISTOPHER THOMAS'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION

Pursuant to Federal Rules of Civil Procedure 33 and 34, Defendant, Christopher Thomas, hereby submits his objections and responses to Plaintiff's First Set of Requests for Production to Defendant Christopher Thomas, in his official capacity as Vice President for Student Affairs of West Texas A&M University.

### GENERAL STATEMENT

Defendant's responses and objections are based on the information known to Defendant at this time and are made without prejudice to the assertion of additional responses and objections should Defendant identify additional grounds thereof. Defendant reserves the right to supplement, clarify, revise, or correct any or all of his responses to Plaintiff's Requests for Production. By answering any requests, Defendant does not concede the materiality of the subject to which it refers. Defendant's responses are made expressly subject to, and without waiving or intending to waive, any questions, or objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence or for any other purpose, of any of the documents or information provided, or of the subject matter thereof, in any proceeding including the trial of this action or any subsequent proceeding.

### RECURRING OBJECTIONS

1. Defendant objects to the inclusion of "attorneys" in Instruction No. 3, to the extent that this means the requests for production seek information protected by the attorney-client

Plf. Appx. 072

and attorney work product privileges.

2.  Defendant objects to the inclusion of "purporting to act" and "for any purpose whatsoever" in Definition Nos. 2 and 3 as unduly burdensome and calling for responses outside the bounds of the applicable discovery rules. One who purports to act on another's behalf is not that person's agent or representative, and including such persons in these definitions therefore necessarily includes persons who have neither the right nor the authority to act on behalf of Defendant, over whom Defendant exercises no control, and for whom he bears no responsibility. Defendant therefore responds to these requests for production as if "purporting to act" and "for any purpose whatsoever" is omitted from these definitions.

3.  Defendant objects to the definition of "communication" and "communications between" in Definition Nos. 19 and 20 to the extent that it seeks information that was prepared for or in anticipation of litigation, constitutes attorney work product, contains attorney-client privileged communications, or is otherwise protected by legislative privilege, executive privilege, deliberative process privilege, or any other applicable privilege, protection, doctrine, or immunity.

4.  Defendant objects to the definition of "document" in Definition No. 21 and to the inclusion of "[a] draft" in the definition of "document" to the extent that this definition seeks information that was prepared for or in anticipation of litigation, constitutes attorney work product, contains attorney-client privileged communications, or is otherwise protected by legislative privilege, executive privilege, deliberative process privilege, or any other applicable privilege, protection, doctrine, or immunity.

Plf. Appx. 073

5.  Defendant objects to the definition of "electronic messages" in Definition No. 22 to the extent that this definition seeks information that was prepared for or in anticipation of litigation, constitutes attorney work product, contains attorney-client privileged communications, or is otherwise protected by legislative privilege, executive privilege, deliberative process privilege, or any other applicable privilege, protection, doctrine, or immunity.

6.  Defendant objects to each request for production to the extent that it seeks information that was prepared for or in anticipation of litigation, constitutes attorney work product, contains attorney-client privileged communications, or is otherwise protected by legislative privilege, executive privilege, deliberative process privilege, or any other applicable privilege, protection, doctrine, or immunity.

7.  Defendant objects to each request for production to the extent that it seeks information that is publicly available or uniquely or equally available from third parties.

8.  Defendant objects to each request for production to the extent that it seeks information not in Defendant's possession, custody, or control.  To the extent a request for production seeks information from individuals or entities who are not parties to this lawsuit and not under Defendant's direction and control, that request is subject to the rules governing third party discovery including Federal Rule of Civil Procedure 45.

9.  Defendant objects to each request for production to the extent that it seeks information that does not specifically refer to the events which are the subject matter of this litigation and to the extent that it seeks information not relevant to the subject matter of this litigation.

Plf. Appx. 074

10. Defendant will provide his responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Defendant objects to and will refrain from extending or modifying words employed in the requests to comport with expanded definitions or instructions. Defendant will answer the requests for production to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Northern District of Texas.

11. These responses and objections are made without waiving further objections to, or admitting, the relevancy or materiality of, the information requests. All responses are given without prejudice to Defendant's right to introduce or object to the discovery of documents, facts, or information discovered later. Defendant likewise does not waive the right to object to the evidentiary use of the information contained in these responses and objections or to discovery requests relating to these objections and responses.

12. Defendant objects to Instruction Nos. 11, 12, 15, and 16 to the extent that they request Defendant to produce documents in a format other than the format in which they are kept in the usual course of business. Federal Rule of Civil Procedure 35(b)(2)(E)(i) permits a party to "produce documents as they are kept in the usual course of business." Defendant does not agree to waive this option, or any other option he is permitted to use in responding to these requests under Federal Rule of Civil Procedure 34 or any other federal or local rule.

13. The inadvertent disclosure of any privileged information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such information or with respect to any other such discovery now or hereafter requested or provided.

**RESPONSES AND OBJECTIONS TO PLAINTIFF'S REQUESTS FOR PRODUCTION**

4

Plf. Appx. 075

**Request for Production No. 1**
Produce all documents or communications concerning drag shows, including A Fool's Drag Race, the Sam Houston drag show, and the "Don't Be a Drag Drag Show."

**Response:**

Defendant objects to this request because it calls for the production of documents subject to attorney-client, attorney work product, or deliberative process privilege. In particular, "all documents" concerning drag shows would necessarily include documents and communications on fulfilling Defendants legal obligations and internal deliberations on how best to implement policies in compliance with the law.

Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents and communications responsive to this request on a rolling basis, within a reasonable time of this response.

**Request for Production No. 2**
Produce all documents or communications concerning any of the Specific Events.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of documents subject to attorney-client, attorney work product, or deliberative process privileges, or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "all documents or communications" would necessarily include documents and communications on fulfilling Defendant's legal obligations and internal deliberations on how best to implement policies in compliance with the law.

Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents and communications responsive to this request on a rolling basis, within a reasonable time of this response.

**Request for Production No. 3**
Produce documents or communications concerning the April 6, 2022, quinciñera event as referenced in Wendler's March 2023 statement ("A Harmless Drag Show No Such Thing"), the internet comments about the event, or actions taken by WTAMU in response to the event or to the internet comments.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of documents and communications subject to the attorney-client, attorney work product, or deliberative process privileges or protected from

Plf. Appx. 076

disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "documents or communications" would necessarily include documents or communications on fulfilling Defendant's legal obligations and internal deliberations on how best to implement policies in compliance with the law.

Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents that are responsive to this request, on a rolling basis, within a reasonable time of this response.

**Request for Production No. 4**
Produce all documents (in their native format) reflecting any drafts or red-lines (on or after January 1, 2020) of any version of the "Student Handbook," "WTAMU Student Rules," or "Code of Student Life."

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of documents subject to attorney-client, attorney work product, or deliberative process privilege or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "all drafts or red-lines" would necessarily include documents on fulfilling Defendant's legal obligations and internal deliberations on how best to implement its policies in compliance with the law.

Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents in the format as they are kept in the ordinary course of business, that are responsive to this request, on a rolling basis, within a reasonable time of this response.

**Request for Production No. 5**
Produce all documents concerning the cancellations of A Fool's Drag Race and/or the "Don't Be a Drag Drag Show."

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of documents subject to attorney-client, attorney work product, or deliberative process privilege or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "all documents" would necessarily include documents on fulfilling Defendant's legal obligations and internal deliberations on how best to implement policies in compliance with the law.

Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents in the format as they are kept in the ordinary course of business, that are responsive to this request, on a rolling basis, within a reasonable time of this response.

Plf. Appx. 077

**Request for Production No. 6**
Produce documents and communications reflecting any complaints about actual  or  planned campus events being offensive, divisive, demeaning, harassing, misogynistic, or mocking. This request is limited to records generated after January 1, 2020.

**Response:**

Defendant incorporates by reference the recurring objections described above.  Defendant objects to this request because it calls for the production of documents and communications subject to the attorney-client, attorney work product, or deliberative process privileges or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501.  In particular, "documents and communications" would necessarily include documents and communications on fulfilling Defendant's legal obligations and internal deliberations on how best to implement its policies in compliance with the law.

Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents that are responsive to this request, on a rolling basis, within a reasonable time of this response.

**Request for Production No. 7**
Produce the calendar of events in the JBK Student Center since January 1, 2021.

**Response:**

Defendant incorporates by reference the recurring objections described above.  Defendant objects to this request because it calls for the production of records that are subject to the attorney-client, attorney work product, or deliberative process privileges or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501.

Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents that are responsive to this request, on a rolling basis, within a reasonable time of this response.

**Request for Production No. 8**
Produce all submitted reservation forms (including but not limited to the forms  available  at https://reservations.wtamu.edu) for use of spaces in the Jack B. Kelly Student Center or Alumni Banquet Facility submitted since January 1, 2021.

**Response:**

Defendant incorporates by reference the recurring objections described above.  Defendant

7

objects to this request because it is unduly burdensome and not proportional to the needs of the case because it requests "all submitted reservation forms" for all events in the JBK Student Center or Alumni Banquet Facility since January 1, 2021.

Subject to and without waiving the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents, that are responsive to this request, on a rolling basis, within a reasonable time of this response, for all drag show events and all Spectrum WT events during the referenced time period.

### Request for Production No. 9

Produce all documents reflecting any efforts by WTAMU to promote or advertise the availability of the JBK Student Center for rental, reservation, or other use by students, student organizations, members of the public, or non-student organizations. This request is limited to records generated on or after January 1, 2020.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request to the extent it calls for the production of documents subject to attorney-client, attorney work product, or deliberative process privilege or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "all documents" would necessarily include documents on fulfilling Defendant's legal obligations and internal deliberations on how best to implement policies in compliance with the law.

Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents, that are responsive to this request, on a rolling basis, within a reasonable time of this response.

### Request for Production No. 10

Produce the following documents as they relate to any event formally proposed by a student, student organization, faculty member, faculty organization, member of the public, or non-WTAMU organization that (a) WTAMU canceled, denied, otherwise refused (except due to the COVID-19 pandemic), or (b) WTAMU approved on condition that the organizer(s) modify the content of the event on or after January 1, 2020:
  (a)    The application form (or submission) proposing the event;
  (b)    Any correspondence to or from the organizer of the event concerning the cancellation of the proposed event;
  (c)    Any records concerning the involvement of the President of WTAMU in the decision to cancel, deny, or otherwise refuse the event.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of documents subject to attorney-client,

Plf. Appx. 079

attorney work product, legislative privilege, or deliberative process privilege or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "any records" would necessarily include records on fulfilling Defendant's legal obligations and internal deliberations on how best to implement or revise its policies in compliance with the law. Defendant further objects to this request as unduly burdensome and not proportional to the needs of the case, because it seeks all application forms, correspondence and records regarding the referenced cancellations.

Subject to and without waiving the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents, that are responsive to this request, on a rolling basis, within a reasonable time of this response, that show the canceled events and the reasons for their cancellation.

**Request for Production No. 11**
Produce all documents reflecting the EMS Reservation data for any of the Specific Events, including:

        (a)      the tabs (or entries) for the "Reservation Summary," "Properties," "Reminders," "Comments," "Attachments," "User Defined Fields," "Transactions," "History" (or "History*"), or "Emails" for the Specific Events; and

        (b)      any comments, attachments, or emails associated with the EMS Reservation entry.

**Response:** Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of documents subject to attorney-client, attorney work product, legislative privilege, or deliberative process privilege or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "any comments, attachments, or emails" would necessarily include emails, comments, or attachments on fulfilling Defendant's legal obligations and internal deliberations on how best to implement policies in compliance with the law.

Subject to and without waiving the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents, that are responsive to this request, on a rolling basis, within a reasonable time of this response.

**Request for Production No. 12**
Produce all documents reflecting any risk assessment concerning each of the Specific Events, including:

        (a)      the risk matrix (including any "Hazard Matrix" and/or "Risk Assessment Form"); and

        (b)      any communication with or assessment by the Texas A&M University System Office of Risk Management or its personnel.

**Response:**

Plf. Appx. 080

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of documents subject to attorney-client, attorney work product, legislative privilege, or deliberative process privilege or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "any communication or assessment" would necessarily include communications and assessments on fulfilling Defendant's legal obligations and internal deliberations on how best to implement policies in compliance with the law.

Subject to and without waiving the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents, that are responsive to this request, on a rolling basis, within a reasonable time of this response.

### Request for Production No. 13

Produce all documents reflecting efforts by any WTAMU employee, staff member, administrator, or volunteer to respond to, accommodate, facilitate, process, or cancel (a) A Fool's Drag Race; (b) the Don't Be A Drag Drag Show; or (c) Queer Movie Night.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of documents subject to attorney-client, attorney work product, or deliberative process privilege or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "all documents" would necessarily include documents on fulfilling Defendant's legal obligations and internal deliberations on how best to implement policies in compliance with the law.

Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents in the format as they are kept in the ordinary course of business, that are responsive to this request, on a rolling basis, within a reasonable time of this response.

### Request for Production No. 14

Produce all documents or communications concerning the Texas A&M System Drag Resolution, the Gender Ideology Executive Order, the Abbott Letter, or H.B. 229.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request because it calls for the production of records that are subject to the attorney-client, attorney work product, legislative, or deliberative process privileges or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501. In particular, "all documents or communications" would necessarily include documents or communications on fulfilling Defendant's legal obligations and communications exchanged in anticipation of litigation or subject to the attorney work product privilege.

Plf. Appx. 081

Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents that are responsive to this request, on a rolling basis, within a reasonable time of this response.

**Request for Production No. 15**
Produce all communications between Thomas individually and David Rejino on or after January 1, 2022, concerning A Fool's Drag Race, the Don't Be A Drag Drag Show, Queer Movie Night, the Sam Houston Drag show, Plaintiff, Draggieland, the Texas A&M System Drag Resolution, the Gender Ideology Executive Order, the Abbott Letter, H.B. 229, the Litigation, or otherwise mentioning the words "drag show" or "drag shows".

**Response:** Defendant incorporates by reference the recurring objections described above. Defendant objects to this request to the extent it calls for the production of documents and communications subject to the attorney-client, attorney work product, legislative privilege, or deliberative process privilege or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501.

Subject to and without waiving the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents that are responsive to this request, on a rolling basis, within a reasonable time of this response.

**Request for Production No. 16**
Produce documents or communications concerning the April 6, 2022, quinciñera event as referenced in Wendler's March 20, 2023 statement ("A Harmless Drag Show No Such Thing"), the internet comments about the event, or actions taken by WTAMU in response to the event or to the internet comments.

**Response:**

Defendant incorporates by reference the recurring objections described above.  Defendant objects to this request because it calls for the production of documents and communications subject to the attorney-client, attorney work product, or deliberative process privileges or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501.  In particular, "documents or communications" concerning "actions take by WTAMU" would necessarily include documents or communications on fulfilling Defendant's legal obligations and internal deliberations on how best to implement its policies in compliance with the law.

Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents that are responsive to this request, on a rolling basis, within a reasonable time of this response.

**Request for Production No. 17**
Produce all records (including recordings, notes, invitations, or calendar entries) of any Webex meeting in which Walter Wendler, Todd Rasberry, Angela Spaulding, Amberly Winningham,

Plf. Appx. 082

or Christopher Thomas (individually) was a participant, and during which any participant discussed or mentioned any of the Specific Events, Plaintiff, the Texas A&M System Drag Resolution, the Gender Ideology Executive Order, the Abbott Letter, H.B. 229, "drag shows", "drag show", or the Litigation. This request includes any such meeting on March 14, 2023. This request is limited to recordings of meetings occurring on or after January 27, 2023.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request to the extent it calls for the production of documents and communications subject to the attorney-client, attorney work product, legislative privilege, or deliberative process privilege or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501.

Subject to and without waiving the foregoing objections, Defendant has conducted a diligent search and has no documents that are responsive to this request.

**Request for Production No. 18**
Produce a copy of any documents within the categories of records identified in each of the Defendants' initial disclosures.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request to the extent that it calls for the production of documents that are subject to the attorney-client, attorney work product, or deliberative process privileges or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501.

Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents that are responsive to this request, on a rolling basis, within a reasonable time of this response.

**Request for Production No. 19**
Produce a copy of any document or communication Thomas intends to rely on at trial.

**Response:**

Defendant incorporates by reference the recurring objections described above. Defendant objects to this request to the extent that it calls for the production of documents or communications that are subject to the attorney-client, attorney work product, or deliberative process privileges or protected from disclosure by Texas Government Code § 323.017, which are therefore privileged under Federal Rule of Evidence 501.

Plf. Appx. 083

Subject to the foregoing objections, Defendant is conducting a diligent search and will produce non-privileged documents that are responsive to this request, on a rolling basis, within a reasonable time of this response.

Plf. Appx. 084

Date: November 7, 2025

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

*/S/ David Bryant*

DAVID BRYANT
Special Counsel
Tex. State Bar No. 03281500

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

MUNERA AL-FUHAID
Special Counsel
Tex. State Bar No. 24094501

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

ZACHARY BERG
Special Counsel
Tex. State Bar No. 24107706

RYAN G. KERCHER
Chief, Special Litigation Division

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2120
Fax: (512) 320-0667
david.bryant@oag.texas.gov
munera.al-fuhaid@oag.texas.gov
zachary.berg@oag.texas.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2025, I electronically served the foregoing responses on all counsel of record.

*/S/ David Bryant*

DAVID BRYANT

Plf. Appx. 085

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | |
|---|---|
| SPECTRUM WT, | |
| Plaintiff, | Case No.: 2:23-cv-00048 |
| v. | |
| WALTER WENDLER, in his official capacity as the President of West Texas A&M University, *et al*., | **PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT WALTER WENDLER IN HIS OFFICIAL CAPACITY AS PRESIDENT OF WEST TEXAS A&M UNIVERSITY** |
| Defendants. | |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Spectrum WT requests that Defendant Walter Wendler in his official capacity respond to the following Interrogatories within thirty (30) days from the date of service. Defendant should fully answer the following Requests for admission in writing, under oath.

Under Federal Rule of Civil Procedure 26(e), you are required to amend any prior response if you learn between the initial date of the response and the time of hearing or trial of this matter that the response is incomplete or incorrect.

## INSTRUCTIONS

1.    The words "and" and "or" shall be construed both conjunctively and disjunctively.

2.    The singular forms of words shall include the plural and vice versa.

Plf. Appx. 086

3.      Each response to an interrogatory must be preceded by identifying and quoting verbatim the interrogatory to which it responds.

4.      You must answer each interrogatory based on information known by you or in your possession or control, or the possession, custody, or control of any of your attorneys, any of your agents, anyone acting on your behalf, or anyone subject to your control in your official capacity as president and chief executive officer of West Texas A&M University, and/or based on information from a person from whom you have the practical ability to obtain the information.

5.      Your answers must include all information concerning the matters inquired about and available to you, your attorneys, or other agents.

6.      In formulating your answer, you may not give lack of information or knowledge as a reason for failure to admit or deny, unless you state you have made reasonable inquiry and the information known or readily obtainable by you is insufficient to enable you to admit or deny the Request.

7.      Interrogatories shall not be joined together and accorded a common answer. To the extent that information sought by any interrogatory with reference to another interrogatory, an appropriate reference is acceptable.

8.      If you produce documents instead of responding to an interrogatory under Federal Rule of Civil Procedure 33(d), you must identify by Bates number which document(s) you are relying on for your response to the interrogatory.

9.      If you object to an interrogatory or a portion of an interrogatory, answer that portion of the interrogatory to which you do not object and specify the precise

Plf. Appx. 087

ground or basis for your objection and the precise portion of the request to which an objection is made.

10.    If you object to an interrogatory on the grounds that it inquires into a privileged matter, set forth fully in the objection the facts upon which you rely as the basis for the asserted privilege, including, but not limited to: (a) the name of the person making the communication; (b) the names of the persons present while the communication was made; (c) the relationship of the persons present to the person making the communication; (d) the date of the communication; (e) the place of the communication; (f) the general subject matter of the communication; and (g) each and every person known to you to whom the substance of the communication was disclosed.

11.    If an interrogatory calls for identifying a document or documents you claim to be privileged, please provide a privilege log identifying:  (a) each document for which you claim a privilege; (b) date of the document; (c) author(s); (d) sender(s); (e) recipient(s), including job title; (f) subject matter of the document, (g) the basis on which you claim a privilege; (h) to which request(s) the document responds; and (i) each and every person known to have seen the document.

12.    If any response to an interrogatory identifies a document or documents that you do not or no longer possess (or is no longer in the custody, possession, or control of someone from whom you have the legal right to obtain the information or from whom you have the practical ability to obtain the information), you must state whether it: (a) is missing; (b) is lost; (c) has been destroyed; (d) has been transferred,

3

voluntarily or involuntarily, to others, and to whom, if known; or (e) has been otherwise disposed. In each instance, you must state when the document was most recently in your possession or control. In the event the document was destroyed, you must identify: (a) when it was destroyed; (b) the person who destroyed the document; (c) the person who directed that the document be destroyed; (d) the reason for the destruction; and (e) all communications or documents pertaining to the document's destruction.

13.    If the answer to all or any part of an interrogatory is not presently known or available, include a statement to that effect and furnish any information currently known or available. The fact that an investigation is continuing or that discovery is not complete shall not excuse the failure to answer each interrogatory as fully as possible.

14.    These interrogatories shall be deemed continuing to the time of trial. If at any time after service of responses to these interrogatories and before trial in this action, Defendants obtain or become aware of additional information pertaining to any of these interrogatories, Defendants shall promptly serve upon Plaintiff's counsel supplemental written answers setting forth the additional information as provided by Federal Rules of Civil Procedure 26(e).

## **DEFINITIONS**

4

1.      "Plaintiff" shall mean Spectrum WT and, except where expressly noted, its current and former individual officers and members, including Barrett Bright and Marcus Stovall.

2.      "Defendants" shall mean the defendants in the above-captioned action and, where applicable, any of their successors, agents, or other persons acting or purporting to act on their behalf for any purpose whatsoever.

3.      "You," "your," and "Wendler" shall mean Walter Wendler in his official capacity as president and chief executive officer of West Texas A&M University and any of his successors, agents, or other persons acting or purporting to act on his behalf, including persons to whom he has delegated authority or over whom he holds authority or control by virtue of his official capacity. Except where a request expressly seeks records of "Wendler individually," "Wendler" includes all persons over whom Walter Wendler holds authority or control by virtue of his official capacity.

4.      "West Texas A&M" and "WTAMU" each mean West Texas A&M University, including all persons over whom you hold authority or control by virtue of your official capacity.

5.      "A Fool's Drag Race" refers to the event proposed by Plaintiff to be held at WTAMU in March or April of 2023.

6.      "Sam Houston drag show" refers to the event Plaintiff held in Sam Houston Park in Amarillo on or about March 31, 2023.

Plf. Appx. 090

7. "Don't Be A Drag Drag Show" refers to the event proposed by Plaintiff to be held at WTAMU on or about March 22, 2024, and for which Plaintiff submitted an April 11, 2023, facilities use request under the name "Buff-a-Woah Drag Show."

8. The "Litigation" refers to the above-captioned action and any appeal or petition arising from it, specifically including:

    a.    *Spectrum WT v. Wendler*, No. 2:23-cv-00048 (N.D. Tex.)

    b.    *Spectrum WT v. Wendler*, No. 23-10994 (5th Cir.)

    c.    *Spectrum WT v. Wendler*, No. 23A820 (S. Ct.)

9. "Document" or "Documents" means any "writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations" as defined under Federal Rule of Civil Procedure 34(a)(1)(A). "Document" or "Documents" shall further mean, without limitation, the following: correspondence, papers, agreements, licenses, minutes, computer discs and glossaries, memoranda, reports, notes, diaries, interoffice and/or intraoffice corporate communications, business chat messages (*e.g.*, Skype for business, Microsoft Teams, etc.), telegrams, telex communications, books, letters, ledgers, photographs, pictures, drawings, sketches, computer-stored data, internal and external electronic mail, text messages, computer generated data, webpages, electronic posts, social media entries, computer diskettes, spreadsheets, summaries, electronic files, blueprints, analytical data, data sheets, motion pictures, publications, catalog sheets or addenda, price lists, instructions, maintenance records, worksheets, time charts, time records, advertisements, brochures, pamphlets, recordings (tapes, disks, belt, or any other

Plf. Appx. 091

type), invoices, work assignments, work records, shipping tickets or bills, samples, models, prototypes, devices, or any other written, printed, and/or typewritten matter. A draft or non-identical copy (whether different from the original because of any notations or other comments that do not appear on the originals or other copies) is a separate document within the meaning of this term.

10.    "Communication" or "communications" refer to all transmittals or exchanges of information by any medium, including any oral, telephonic, written, or electronic messages. "Communication" includes, but is not limited to: emails, letters, memoranda, notes, letters, correspondence, fax transmissions, telephonic textual transmissions, SMS messages, iMessages, WhatsApp messages, Telegram messages, Signal messages, social media messages, logs, minutes of meetings or telephone calls, notes taken during meetings (whether face-to-face or virtual), notes taken during telephone calls, calendar entries, video or audio recordings of meetings, video or audio recordings of calls, video or audio recordings of conversations, Webex recordings, and Zoom recordings.

11.    "Communications between" means (a) any communication sent by a specific person(s) to the other specific person(s); (b) any communication sent to both persons by a third party; and (c) any communication in which both specific persons was a sender or recipient.

12.    "Person" shall mean a natural person, proprietorship, corporation, partnership, trust, joint venture group, association, or organization.

Plf. Appx. 092

13.    "Concerning" shall mean, without limitation, relating to, constituting, mentioning, referring to, describing, summarizing, evidencing, listing, relevant to, demonstrating, tending to prove or disprove, and explaining.

14.    "Communication" means all transmittals or exchanges of information, by and to whomsoever made, including but not limited to correspondence (including but not limited to electronic correspondence, facsimiles, text messages, social media postings and messages), dialogues, meetings, discussions, interviews, consultations, agreements, and all other understandings between or among two or more persons, as well as all documents memorializing, recapping, summarizing, or otherwise reflecting the communication.

15.    "Identify" when used in reference to a person means to provide: (a) the person's full name; (b) job title; (c) present or last known place of employment; (d) present or last known address; and (e) all known telephone numbers and e-mail addresses. When "identify" is used in reference to an employee of WTAMU or the Texas A&M University System, please also include (f) location of employment; (g) date of hire; (h) job titles held; (i) supervisors while employed in those positions; and, if applicable, (j) date of separation from Defendants, if applicable; and (k) reason for separation, if applicable.

16.    "Identify" when used in reference to documents means to specify, in sufficient detail to permit a person to locate and recognize the document, the contents of the document, including but not limited to:  (a) the type of document (*e.g.*, a letter, memorandum, etc.); (b) the title of the document; (c) the authors; (d) the addressees;

8

(e) the recipients; (f) the date of the document; (g) a description of its subject matter and contents; (h) the name and address of the custodian(s) of the document; (i) the location of the document; and (j) the relationship of the author and addressee(s) to each other.

17.   "Identify" when used in reference to a statute, policy, rule, regulation, or custom means to specify, in sufficient detail to permit a person to locate and recognize its source, including but not limited to: (a) the name of the statute, policy, rule, or regulation; (b) the number of the statute, policy, rule, or regulation; (c) the name of the publication where the statute, policy, rule, or regulation is found; (d) the page number of the publication where the statute, policy, rule, or regulation is found; (d) the date the policy was first enacted; (e) the text of the statute, policy, rule, or regulation; and (f) any amendments, modifications, or changes to its text at any time on or after January 1, 2020.

18.   "Describe" means to narrate, relate, or depict a factual set of events, including identifying the parties involved, the date(s) the events took place, and how events unfolded.

<div align="center">

**INTERROGATORIES**

</div>

**Interrogatory No. 1**

Identify every person Wendler communicated with concerning Plaintiff, drag shows, A Fool's Drag Race, the Sam Houston drag show, the Don't Be A Drag Drag Show, the "Draggieland" performance(s) at Texas A&M University, the February 28, 2025 resolution of the Texas A&M University System entitled "Resolution Regarding

Plf. Appx. 094

Certain Public Events on the Campuses of Universities in The Texas A&M University System," or the Litigation since January 1, 2022.

**Response:**

## Interrogatory No. 2

Identify every person who provided input (or was provided a draft version of) President Wendler's March 20, 2023 statement on or before March 20, 2023.

**Response:**

## Interrogatory No. 3

Identify every person who participated in any decision to cancel any of Plaintiff Spectrum WT's proposed events.

**Response:**

## Interrogatory No. 4

Identify every basis for canceling Plaintiffs' drag shows at Legacy Hall.

**Response:**

## Interrogatory No. 5

State all facts known to Wendler individually that he relied on in deciding to cancel A Fool's Drag Race.

**Response:**

10

Plf. Appx. 095

**Interrogatory No. 6**

Identify every statute, policy, rule, regulation, or custom Wendler individually relied upon in deciding to cancel A Fool's Drag Race.

**Response:**

**Interrogatory No. 7**

State all facts known to Wendler individually that he relied on in deciding to cancel Don't Be A Drag Drag Show.

**Response:**

**Interrogatory No. 8**

Identify every statute, policy, rule, regulation, or custom Wendler individually relied on in deciding to cancel Don't Be A Drag Drag Show.

**Response:**

**Interrogatory No. 9**

Identify each reason you contend that Plaintiff's intended uses of Legacy Hall for drag performances are inconsistent with the uses for which West Teas A&M makes the space available.

**Response:**

11

Plf. Appx. 096

**Interrogatory No. 10**

Identify every campus event Wendler individually refused to permit, reserve space for, or cancelled because it included sexual material or content.

**Response:**

**Interrogatory No. 11**

Identify every campus event since 2020 that West Texas A&M University has refused to permit or cancelled because it included content that was offensive, divisive, demeaning, misogynistic, or mocking.

**Response:**

**Interrogatory No. 12**

Identify each reason you contend that Plaintiff's performances will be or would have been disruptive to the operations or educational functions of West Texas A&M University.

**Response:**

**Interrogatory No. 13**

Identify each reason you contend that Plaintiff's performances will amount to "harassment" as referenced in your March 2023 email announcing the cancellation of Plaintiffs' first drag show.

**Response:**

Plf. Appx. 097

**Interrogatory No. 14**

State all bases for your statement in your March 20, 2023, email that "West Texas A&M University will not host a drag show on campus."

**Response:**

Dated: October 8, 2025

<div align="right">

Respectfully submitted,

/s/ JT Morris
JT MORRIS
TX Bar No. 24094444
FOUNDATION FOR INDIVIDUAL RIGHTS
   AND EXPRESSION
700 Pennsylvania Ave., SE; Ste. 340
Washington, DC 20003
Tel: (215) 717-3473
Fax: (267) 573-3073
jt.morris@thefire.org

CONOR T. FITZPATRICK*
MI Bar No. P78981
ADAM B. STEINBAUGH*
CA Bar No. 304829
JEFFREY D. ZEMAN*
MI Bar No. P76610
FOUNDATION FOR INDIVIDUAL RIGHTS
   AND EXPRESSION
510 Walnut St.; Ste. 900
Philadelphia, PA 19106
Tel: (215) 717-3473
Fax: (267) 573-3073
conor.fitzpatrick@thefire.org
adam@thefire.org
jeff.zeman@thefire.org

</div>

Plf. Appx. 098

13

\* Admitted *Pro Hac Vice*

*Counsel for Plaintiff*

Plf. Appx. 099

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 8, 2025, I served the foregoing document by e-mail to the following:

David Bryant
David.Bryant@oag.texas.gov


Munera Al-Fuhaid
Munera.Al-Fuhaid@oag.texas.gov


Zachary Berg
Zachary.Berg@oag.texas.gov


Date:   October 8, 2025                   /s/ Adam Steinbaugh
                                          Adam Steinbaugh
                                          FOUNDATION FOR INDIVIDUAL
                                               RIGHTS AND EXPRESSION

<div align="center">

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

</div>

| | |
|---|---|
| SPECTRUM WT, *et al.*, | |
| Plaintiffs, | |
| v. | No. 2:23-cv-00048 |
| WALTER WENDLER, *et al.*, | |
| Defendants. | |

### DEFENDANT WALTER WENDLER'S AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 33 and 34, Defendant, Walter Wendler, in his official capacity, hereby submit his objections and responses to Plaintiff's First Set of Interrogatories to Defendant Wendler.

## GENERAL STATEMENT

Defendants' responses and objections are based on the information known to Defendants at this time and are made without prejudice to the assertion of additional responses and objections should Defendants identify additional grounds thereof. Defendants reserve the right to supplement, clarify, revise, or correct any or all their responses to Plaintiff's Interrogatories and Requests for Production. By answering any requests, Defendants do not concede the materiality of the subject to which it refers. Defendants' responses are made expressly subject to, and without waiving or intending to waive, any questions, or objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence or for any other purpose, of any of the documents or information provided, or of the subject matter thereof, in any proceeding including the trial of this action or any subsequent proceeding.

## GENERAL OBJECTIONS

1. Defendant objects to Plaintiff's 11-prong definition of "identify" as overbroad and unduly burdensome to the extent that it demands information irrelevant to the ongoing litigation.

2. Defendant objects to each interrogatory directing it to "identify every person" it has communicated with concerning Plaintiff's drag shows to the extent that such requests seek

<div align="center">1</div>

Plf. Appx. 101

information collected in preparation for this litigation and communications protected by attorney-client privilege.

3. Defendant objects to each interrogatory directing it to "[s]tate all facts," "[i]dentify each reason," "[s]tate all bases," or something similar. Defendant is not obligated to furnish all its evidence at this stage of litigation. *See* Fed. R. Civ. P. 33; *see also Faykus-Orr v. Liberty Life Assur. Co. of Boston*, No. 3:06-cv-0750, 2006 WL 3734213, at *4 (N.D. Tex. Dec. 18, 2006) ("Defendant is not required to marshal plaintiff's evidence for her.").

4. Defendant objects to each interrogatory to the extent that it seeks publicly available information or information that is equally available to Plaintiff.

5. Defendant objects to each interrogatory to the extent that it is overbroad or unduly burdensome, requesting information neither proportional to the needs of this case nor within the scope of discovery.

6. Defendant objects to each interrogatory to the extent that it requests information about non-parties to the litigation who are beyond the scope of Defendant's control.

## RESPONSES AND OBJECTIONS TO INTERROGATORIES

### Interrogatory No. 1

Identify every person Wendler communicated with concerning Plaintiff, drag shows, A Fool's Drag Race, the Sam Houston drag show, the Don't Be A Drag Drag Show, the "Draggieland" performance(s) at Texas A&M University, the February 28, 2025 resolution of the Texas A&M University System entitled "Resolution Regarding Certain Public Events on the Campuses of Universities in The Texas A&M University System," or the Litigation since January 1, 2022.

**Response:**

Defendant objects to this interrogatory because it is multifarious, vague, overbroad, not within the scope of discovery, as it is not "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* Fed. R. Civ. P. 26(b)(1). The Sam Houston drag show was an off-campus event planned and facilitated entirely by Plaintiff. President Wendler was not apprised of details

2

concerning that event before or at the time of its occurrence. Moreover, no "Draggieland" performances have occurred at WTAMU or are at issue in this Litigation.

Defendant further objects to the phrase "every person Wendler communicated with" to the extent it is vague, impermissibly overbroad, and potentially seeks information that is not only irrelevant to any party's claim or defense but also which concerns non-parties whose deliberations and activities are not within President Wendler's custody or control.

Subject to and without waiving the foregoing objections, and to the best of his recollection, President Wendler communicated with the following Texas A&M University System and West Texas A&M University ("WTAMU") officials and employees regarding Plaintiff's proposed drag shows in 2023 or 2024: WTAMU Vice Presidents Chris Thomas and Todd Rasberry; WTAMU Executive Vice President Neil Terry; Chief of Staff Tracee Post; and (former) Texas A&M System Chancellor John Sharp.

## Interrogatory No. 2

Identify every person who provided input (or was provided a draft version of) President Wendler's March 20, 2023 statement on or before March 20, 2023.

**Response:**

Defendant objects to the phrase "every person who provided input" to the extent it is vague, ambiguous, and potentially seeks information that is not relevant to any party's claim or defense. Moreover, the request for "every person who provided input" concerning President Wendler's March 20, 2023, statement imposes upon Defendant a burden to identify all people who may have set eyes on the statement on or before March 20, 2023, without regard to those individuals' degree of "input" or relationship to WTAMU.

Subject to and without waiving foregoing objections: To the best of President Wendler's recollection, WTAMU Vice President for Philanthropy and External Relations Todd Rasberry reviewed and provided non-substantive, editorial suggestions to President Wendler regarding his March 20, 2023 memorandum prior to its publication.

## Interrogatory No. 3

Identify every person who participated in any decision to cancel any of Plaintiff Spectrum WT's proposed events.

**Response:**

Defendant objects to the phrase "every person who participated" as vague and ambiguous.

Subject to and without waiving the foregoing objections: It was President Wendler's decision

Plf. Appx. 103

alone to not permit Plaintiff's proposed drag shows at Legacy Hall, as reflected in his two memoranda to the university community dated March 20, 2023, and March 18, 2024. To Defendant Wendler's knowledge, all other events sponsored by Plaintiff on the West Texas A & M University campus over many years have proceeded as Plaintiff planned.

**Interrogatory No. 4**

Identify every basis for canceling Plaintiffs' drag shows at Legacy Hall.

**Response:**

Defendant objects to this interrogatory because it is unreasonably cumulative or duplicative of prior statements which have been produced in this lawsuit. Defendant objects to this request because the discovery requested can be obtained from some other source that is more convenient, less burdensome, or less extensive. *See* FED. R. CIV. P. 26(b)(2)(C)(i).

Subject to and without waiving the foregoing objections, please see President Wendler's memoranda to the campus community entitled "A Harmless Drag Show? No Such Thing," dated March 20, 2023, and "Spectrum WT Application for On-Campus Drag Show," dated March 18, 2024. In addition, please see President Wendler's weekly op-ed article entitled "Ists, Isms and Free Will," dated June 12, 2022 (available at: https://walterwendler.com/2022/06/ists-isms-and-free-will/).

As a preliminary matter, President Wendler considered A&M System policies and regulations, as well as WTAMU rules and procedures. Please see the TAMUS policies, WTAMU rules and standard administrative procedures ("SAPs"), which are publicly available online at the URL: https://www.tamus.edu/legal/policy/. Defendant is providing a copy of the WT Student Handbook, Campus Organizations Handbook, JBK Student Center Policies Manual, JBK Procedures and Guidelines, and other documents.

Additionally, President Wendler reviewed and considered various publications, articles, scholarly works, and other materials on the matter prior to making his decision on the cancellation of the event. Defendant is producing a non-exhaustive list of publications and materials considered by President Wendler contemporaneously with this response.

President Wendler furthermore considered both the custom of according respect to individuals of all races and genders in the university community, and the custom of not publicly denigrating, demeaning, or negatively caricaturing individuals of other races and genders. President Wendler believes maintaining these customs is important to achieving the educational mission of WTAMU; to attracting and retaining quality students, faculty, and employees at WTAMU; and to garnering critical public and private financial and community support for WTAMU.

Finally, President Wendler considered his role, responsibilities, and experiences as the top

4

administrative official of a university located in the Panhandle community of Texas with thousands of students, many of whom are minors. He also took his years of conversations and other dealings with current and prospective students, faculty, staff, parents, and community members into account. President Wendler was aware of proposed and later enacted state legislation ("S.B. 12") criminalizing "sexually oriented performances" on public property in the presence of minors. *See* TEX. HEALTH & SAFETY CODE ANN. § 769.002; TEX. LOC. GOV'T CODE ANN. § 243.0031; TEX. PENAL CODE ANN. § 43.2.

### Interrogatory No. 5

State all facts known to Wendler individually that he relied on in deciding to cancel A Fool's Drag Race.

**Response:**

Defendant objects to the phrase "all facts known to Wendler individually" to the extent it is vague, ambiguous, and potentially seeks information that is not relevant to any party's claim or defense. Defendant objects to this interrogatory because it is unreasonably cumulative or duplicative of prior statements which have been produced in this lawsuit. Defendant objects to this request because the discovery requested can be obtained from some other source that is more convenient, less burdensome, or less extensive. *See* FED. R. CIV. P. 26(b)(2)(C)(i).

Subject to and without waiving the foregoing objections, please see President Wendler's memoranda to the campus community entitled "A Harmless Drag Show? No Such Thing," dated March 20, 2023, and "Spectrum WT Application for On-Campus Drag Show," dated March 18, 2024. In addition, please see President Wendler's weekly op-ed article entitled "Ists, Isms and FreWill," dated June 12, 2022 (available at: https://walterwendler.com/2022/06/ists-isms-and-free-will/).

As a preliminary matter, President Wendler relied on A&M System policies and regulations, as well as WTAMU rules and procedures. Please see the TAMUS policies, WTAMU rules and SAPs, which are publicly available online at the URL: https://www.tamus.edu/legal/policy/. Defendant is providing a copy of the WT Student Handbook, Campus Organizations Handbook, JBK Student Center Policies Manual, JBK Procedures and Guidelines, and other documents.

Additionally, President Wendler reviewed and considered various publications, articles, scholarly works, and other materials on the matter prior to making his decision on the cancellation of the event. Defendant is producing a non-exhaustive list of publications and materials considered by President Wendler contemporaneously with this response.

President Wendler furthermore considered both the custom of according respect to individuals of all races and genders in the university community, and the custom of not publicly denigrating, demeaning, or negatively caricaturing individuals of other races and genders. President Wendler believes maintaining these customs is important to achieving the educational

5

mission of WTAMU; to attracting and retaining quality students, faculty, and employees at WTAMU; and to garnering critical public and private financial and community support for WTAMU.

Finally, President Wendler considered his role, responsibilities, and experiences as the top administrative official of a university in the Panhandle community of Texas with thousands of students, many of whom are minors. He also took his years of conversations and dealings with current and prospective students, faculty, staff, parents, and community members into account. At the time of canceling Plaintiff's 2023 drag show, President Wendler was aware of proposed and later enacted state legislation ("S.B. 12") criminalizing "sexually oriented performances" on public property in the presence of minors. *See* Tex. Health & Safety Code Ann. § 769.002; Tex. Loc. Gov't Code Ann. § 243.0031; Tex. Penal Code Ann. § 43.2.

### Interrogatory No. 6

Identify every statute, policy, rule, regulation, or custom Wendler individually relied upon in deciding to cancel A Fool's Drag Race.

### Response:

Defendant objects to this request to the extent the terms "policy," "rule," "regulation," or "custom" are vague or ambiguous. Defendant further objects to this request because it is unreasonably cumulative or duplicative of the A&M System policies and regulations, and WTAMU rules and procedures themselves. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). The requesting party's ability to obtain the information is similar to that of the responding party. *See* Fed. R. Civ. P. 26(b)(1).

Subject to and without waiving the foregoing objections, President Wendler relied on A&M System policies and regulations, as well as WTAMU rules and procedures. Please see the TAMUS policies, WTAMU rules and SAPs, which are publicly available online at the URL: https://www.tamus.edu/legal/policy/. Defendant is providing a copy of the WT Student Handbook, Campus Organizations Handbook, JBK Student Center Policies Manual, JBK Procedures and Guidelines, and other documents.
⌐OBJ⌐

President Wendler furthermore relied on both the custom of according respect to individuals of all races and genders in the university community, and the custom of not publicly denigrating, demeaning, or negatively caricaturing individuals of other races and genders. President Wendler believes maintaining these customs is important to achieving the educational mission of WTAMU; to attracting and retaining quality students, faculty, and employees at WTAMU; and to garnering critical public and private financial and community support for WTAMU.

### Interrogatory No. 7

State all facts known to Wendler individually that he relied on in deciding to cancel Don't Be A

Plf. Appx. 106

Drag Drag Show.

**Response:**

Defendant objects to the phrase "all facts known to Wendler individually" to the extent it is vague, ambiguous, and potentially seeks information that is not relevant to any party's claim or defense. Defendant objects to this interrogatory because it is unreasonably cumulative or duplicative of prior statements which have been produced in this lawsuit. Defendant objects to this request because the discovery requested can be obtained from some other source that is more convenient, less burdensome, or less extensive. *See* FED. R. CIV. P. 26(b)(2)(C)(i).

Subject to and without waiving the foregoing objections, please see President Wendler's memoranda to the campus community entitled "A Harmless Drag Show? No Such Thing," dated March 20, 2023, and "Spectrum WT Application for On-Campus Drag Show," dated March 18, 2024. In addition, please see President Wendler's weekly op-ed article entitled "Ists, Isms and Free Will," dated June 12, 2022 (available at: https://walterwendler.com/2022/06/ists-isms-and-free-will/).

As a preliminary matter, President Wendler relied on A&M System policies and regulations, as well as WTAMU rules and procedures. Please see the TAMUS policies, WTAMU rules and SAPs, which are publicly available online at the URL: https://www.tamus.edu/legal/policy/. Defendant is providing a copy of the WT Student Handbook, Campus Organizations Handbook, JBK Student Center Policies Manual, JBK Procedures and Guidelines, and other documents.

Additionally, President Wendler reviewed and considered various publications, articles, scholarly works, and other materials on the matter prior to making his decision on the cancellation of the event. Defendant is producing a non-exhaustive list of publications and materials considered by President Wendler contemporaneously with this response.

Finally, President Wendler regarded his role, responsibilities, and experiences as the top administrative official of a university in the Panhandle community of Texas with thousands of students, many of whom are minors. He also took his dealings with current and prospective students, faculty, staff, parents, and community members into account.

At the time of canceling Plaintiff's 2024 drag show, President Wendler was aware of proposed and later enacted state legislation ("S.B. 12") criminalizing "sexually oriented performances" on public property in the presence of minors. *See* TEX. HEALTH & SAFETY CODE ANN. § 769.002; TEX. LOC. GOV'T CODE ANN. § 243.0031; TEX. PENAL CODE ANN. § 43.2.

<u>**Interrogatory No. 8**</u>

Identify every statute, policy, rule, regulation, or custom Wendler individually relied on in deciding to cancel Don't Be A Drag Drag Show.

Plf. Appx. 107

**Response:**

Defendant objects to this request to the extent the terms "policy," "rule," "regulation," or "custom" are vague or ambiguous. Defendant further objects to this request because it is "unreasonably cumulative or duplicative" of the A&M System policies and regulations, and WTAMU rules and procedures themselves. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). The requesting party's ability to obtain the information is similar to that of the responding party. *See* Fed. R. Civ. P. 26(b)(1).

Subject to and without waiving the foregoing objections, President Wendler relied on A&M System policies and regulations, as well as WTAMU rules and procedures. Please see the TAMUS policies, WTAMU rules and SAPs, which are publicly available online at the URL: https://www.tamus.edu/legal/policy/. Defendant is providing a copy of the WT Student Handbook, Campus Organizations Handbook, JBK Student Center Policies Manual, JBK Procedures and Guidelines, and other documents. He was also aware of proposed and later enacted state legislation ("S.B. 12") proscribing "sexually oriented performances" on public property in the presence of minors. *See* TEX. HEALTH & SAFETY CODE ANN. § 769.002; TEX. LOC. GOV'T CODE ANN. § 243.0031; TEX. PENAL CODE ANN. § 43.2.

President Wendler furthermore relied on both the custom of according respect to individuals of all races and genders in the university community, and the custom of not publicly denigrating, demeaning, or negatively caricaturing individuals of other races and genders. President Wendler believes maintaining these customs is important to achieving the educational mission of WTAMU; to attracting and retaining quality students, faculty, and employees at WTAMU; and to garnering critical public and private financial and community support for WTAMU.

**Interrogatory No. 9**

Identify each reason you contend that Plaintiff's intended uses of Legacy Hall for drag performances are inconsistent with the uses for which West Texas A&M makes the space available.

**Response:**

Defendant objects to this request to the extent it is unreasonably cumulative or duplicative of other requests.

Subject to and without waiving the foregoing objections, please see President Wendler's memoranda to the campus community entitled "A Harmless Drag Show? No Such Thing," dated March 20, 2023, and "Spectrum WT Application for On-Campus Drag Show," dated March 18, 2024. In addition, please see President Wendler's weekly op-ed article entitled "Ists, Isms and Free Will," dated June 12, 2022 (available at: https://walterwendler.com/2022/06/ists-isms-and-free-will/).

As a preliminary matter, President Wendler considered A&M System policies and regulations, as well as WTAMU rules and procedures. Please see the TAMUS policies, WTAMU rules and SAPs, which are publicly available online at the URL: https://www.tamus.edu/legal/policy/. Defendant is providing a copy of the WT Student Handbook, Campus Organizations Handbook, JBK Student Center Policies Manual, JBK Procedures and Guidelines, and other documents.

Additionally, President Wendler reviewed and considered various publications, articles, scholarly works, and other materials on the matter prior to making his decision on the cancellation of the event. Defendant is producing a non-exhaustive list of publications and materials considered by President Wendler contemporaneously with this response.

Finally, President Wendler regarded his role, responsibilities, and experiences as the top administrative official of a university in the Panhandle community of Texas with thousands of students, many of whom are minors. He also took his dealings with current and prospective students, faculty, staff, parents, and community members into account.

President Wendler's view that Legacy Hall should not be used for drag performances is informed by his reliance on both the custom of according respect to individuals of all races and genders in the university community, and the custom of not publicly denigrating, demeaning, or negatively caricaturing individuals of other races and genders.

President Wendler believes maintaining these customs is important to achieving the educational mission of WTAMU; to attracting and retaining quality students, faculty, and employees at WTAMU; and to garnering critical public and private financial and community support for WTAMU.

## Interrogatory No. 10

Identify every campus event Wendler individually refused to permit, reserve space for, or cancelled because it included sexual material or content.

**Response:**

Defendant objects to this request to the extent the phrase "every campus event" to the extent it is vague or ambiguous. Defendant further objects that the request is not reasonably specific or limited in scope or time.

Subject to the foregoing objections, President Wendler in May of 2024 disallowed use of WTAMU on-campus facilities for a proposed concert by what was described as a "rap" or "hip-hop" group. President Wendler understood the group's concerts, performances and/or recordings to advocate or describe gun violence. Rap groups also may employ lyrics that are misogynistic, sexually provocative, lewd, or indecent. *See, e.g.*, Kayla Gray, *Evidence of Rape Culture in Modern Music*, 7 CLA JOURNAL 35 (2019).

9

**Interrogatory No. 11**

Identify every campus event since 2020 that West Texas A&M University has refused to permit or cancelled because it included content that was offensive, divisive, demeaning, misogynistic, or mocking.

**Response:**

Defendant objects to this request to the extent the term "every campus event" is overly broad, vague or ambiguous.

Subject to the foregoing objections, Defendant understands this request to inquire about any campus event, since 2020, for which WTAMU has disallowed use of campus facilities.

In May of 2024, President Wendler cancelled a rap performance scheduled to occur in one of WTAMU's campus facilities based on his concerns that the featured rapper's music was offensive—more specifically, that it advocated gun violence. He cancelled the event even though its organizers had already begun promoting and selling tickets for it. Rap groups also may employ lyrics that are misogynistic, sexually provocative, lewd, or indecent. *See, e.g.*, Kayla Gray, *Evidence of Rape Culture in Modern Music*, 7 CLA JOURNAL 35 (2019).

**Interrogatory No. 12**

Identify each reason you contend that Plaintiff's performances will be or would have been disruptive to the operations or educational functions of West Texas A&M University.

**Response:**

Defendant objects to this interrogatory because it is unreasonably cumulative or duplicative of prior statements which have been produced in this lawsuit. Defendant objects to this request because the discovery requested can be obtained from some other source that is more convenient, less burdensome, or less extensive. *See* FED. R. CIV. P. 26(b)(2)(C)(i). Defendant further objects because it is not possible to know at this time what will be the content or parameters of any future performance by Plaintiff.

Subject to and without waiving the foregoing objections, please see President Wendler's memoranda to the campus community entitled "A Harmless Drag Show? No Such Thing," dated March 20, 2023, and "Spectrum WT Application for On-Campus Drag Show," dated March 18, 2024. In addition, please see President Wendler's weekly op-ed article entitled "Ists, Isms and Free Will," dated June 12, 2022 (available at: https://walterwendler.com/2022/06/ists-isms-and-free-will/).

As a preliminary matter, President Wendler considered A&M System policies and

10

regulations, as well as WTAMU rules and procedures. Please see the TAMUS policies, WTAMU rules and SAPs, which are publicly available online at the URL: https://www.tamus.edu/legal/policy/. Defendant is providing a copy of the WT Student Handbook, Campus Organizations Handbook, JBK Student Center Policies Manual, JBK Procedures and Guidelines, and other documents.

Additionally, President Wendler reviewed and considered various publications, articles, scholarly works, and other materials on the matter prior to making his decision on the cancellation of the event. Defendant is producing a non-exhaustive list of publications and materials considered by President Wendler contemporaneously with this response.

Finally, President Wendler regarded his role, responsibilities, and experiences as the top administrative official of a university in the Panhandle community of Texas with thousands of students, many of whom are minors. He also took his dealings with current and prospective students, faculty, staff, parents, and community members into account.

**Interrogatory No. 13**

Identify each reason you contend that Plaintiff's performances will amount to "harassment" as referenced in your March 2023 email announcing the cancellation of Plaintiffs' first drag show.

**Response:**

Defendant objects to this interrogatory because it is unreasonably cumulative or duplicative of prior statements which have been produced in this lawsuit. Defendant objects to this request because the discovery requested can be obtained from some other source that is more convenient, less burdensome, or less extensive. *See* FED. R. CIV. P. 26(b)(2)(C)(i). Defendant further objects because it is not possible to know at this time what will be the content or parameters of any future performance by Plaintiff.

Subject to and without waiving the foregoing objections, please see President Wendler's memoranda to the campus community entitled "A Harmless Drag Show? No Such Thing," dated March 20, 2023, and "Spectrum WT Application for On-Campus Drag Show," dated March 18, 2024. In addition, please see President Wendler's weekly op-ed article entitled "Ists, Isms and Free Will," dated June 12, 2022 (available at: https://walterwendler.com/2022/06/ists-isms-and-free-will/).

As a preliminary matter, President Wendler considered A&M System policies and regulations, as well as WTAMU rules and procedures. Please see the TAMUS policies, WTAMU rules and SAPs, which are publicly available online at the URL: https://www.tamus.edu/legal/policy/. Defendant is providing a copy of the WT Student Handbook, Campus Organizations Handbook, JBK Student Center Policies Manual, JBK Procedures and Guidelines, and other documents.

Additionally, President Wendler reviewed and considered various publications, articles,

Plf. Appx. 111

scholarly works, and other materials on the matter prior to making his decision on the cancellation of the event. Defendant is producing a non-exhaustive list of publications and materials considered by President Wendler contemporaneously with this response.

Finally, President Wendler regarded his role, responsibilities, and experiences as the top administrative official of a university in the Panhandle community of Texas with thousands of students, many of whom are minors. He also took his dealings with current and prospective students, faculty, staff, parents, and community members into account.

**Interrogatory No. 14**

State all bases for your statement in your March 20, 2023, email that "West Texas A&M University will not host a drag show on campus."

**Response:**

Defendant objects to this interrogatory because it is unreasonably cumulative or duplicative of prior statements which have been produced in this lawsuit. Defendant objects to this request because the discovery requested can be obtained from some other source that is more convenient, less burdensome, or less extensive. *See* FED. R. CIV. P. 26(b)(2)(C)(i).

Subject to and without waiving the foregoing objections, please see President Wendler's memoranda to the campus community entitled "A Harmless Drag Show? No Such Thing," dated March 20, 2023, and "Spectrum WT Application for On-Campus Drag Show," dated March 18, 2024. In addition, please see President Wendler's weekly op-ed article entitled "Ists, Isms and Free Will," dated June 12, 2022 (available at: https://walterwendler.com/2022/06/ists-isms-and-free-will/). Dr. Wendler's statement should be construed as a statement on the drag show under consideration at that time and not as a statement on any hypothetical or other drag shows for all future times.

As a preliminary matter, President Wendler considered A&M System policies and regulations, as well as WTAMU rules and procedures. Please see the TAMUS policies, WTAMU rules and SAPs, which are publicly available online at the URL: https://www.tamus.edu/legal/policy/. Defendant is providing a copy of the WT Student Handbook, Campus Organizations Handbook, JBK Student Center Policies Manual, JBK Procedures and Guidelines, and other documents.

Additionally, President Wendler reviewed and considered various publications, articles, scholarly works, and other materials on the matter prior to making his decision on the cancellation of the event. Defendant is producing a non-exhaustive list of publications and materials considered by President Wendler contemporaneously with this response.

Finally, President Wendler regarded his role, responsibilities, and experiences as the top administrative official of a university in the Panhandle community of Texas with thousands of students, many of whom are minors. He also took his dealings with current and prospective students, faculty, staff, parents, and community members into account.

Plf. Appx. 112

At the time of issuing his March 20, 2023 statement, President Wendler was aware of proposed and later enacted state legislation ("S.B. 12") criminalizing "sexually oriented performances" on public property in the presence of minors. *See* TEX. HEALTH & SAFETY CODE ANN. § 769.002; TEX. LOC. GOV'T CODE ANN. § 243.0031; TEX. PENAL CODE ANN. § 43.2.

Date: November 10, 2025

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division

Respectfully submitted.

*/s/ David Bryant*
DAVID BRYANT
Special Counsel
Tex. State Bar No. 03281500

MUNERA AL-FUHAID
Special Counsel
Tex. State Bar No. 24094501

ZACHARY BERG
Special Counsel
Tex. State Bar No. 24107706

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2120
Fax: (512) 320-0667
david.bryant@oag.texas.gov
munera.al-fuhaid@oag.texas.gov
zachary.berg@oag.texas.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2025, I electronically served the foregoing responses on all counsel of record.

*/s/ David Bryant*
DAVID BRYANT

Plf. Appx. 113

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | |
|---|---|
| SPECTRUM WT,<br><br>Plaintiff,<br><br>v.<br><br>WALTER WENDLER, in his official capacity as the President of West Texas A&M University, *et al.*,<br><br>Defendants. | Case No.: 2:23-cv-00048<br><br><br>**PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT CHRISTOPHER THOMAS IN HIS OFFICIAL CAPACITY AS VICE PRESIDENT FOR STUDENT AFFAIRS AT WEST TEXAS A&M UNIVERSITY** |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Spectrum WT requests that Defendant Christopher Thomas in his official capacity respond to the following Interrogatories within thirty (30) days from the date of service. Defendant should fully answer the following Requests for admission in writing, under oath.

Under Federal Rule of Civil Procedure 26(e), you are required to amend any prior response if you learn between the initial date of the response and the time of hearing or trial of this matter that the response is incomplete or incorrect.

## <u>INSTRUCTIONS</u>

1.    The words "and" and "or" shall be construed both conjunctively and disjunctively.

2.    The singular forms of words shall include the plural and vice versa.

3.      Each response to an interrogatory must be preceded by identifying and quoting verbatim the interrogatory to which it responds.

4.      You must answer each interrogatory based on information known by you or in your possession or control, or the possession, custody, or control of any of your attorneys, any of your agents, anyone acting on your behalf, or anyone subject to your control in your official capacity as vice president of student affairs at West Texas A&M University, and/or based on information from a person from whom you have the practical ability to obtain the information.

5.      Your answers must include all information concerning the matters inquired about and available to you, your attorneys, or other agents.

6.      In formulating your answer, you may not give lack of information or knowledge as a reason for failure to admit or deny, unless you state you have made reasonable inquiry and the information known or readily obtainable by you is insufficient to enable you to admit or deny the Request.

7.      Interrogatories shall not be joined together and accorded a common answer. To the extent that information sought by any interrogatory with reference to another interrogatory, an appropriate reference is acceptable.

8.      If you produce documents instead of responding to an interrogatory under Federal Rule of Civil Procedure 33(d), you must identify by Bates number which document(s) you are relying on for your response to the interrogatory.

9.      If you object to an interrogatory or a portion of an interrogatory, answer that portion of the interrogatory to which you do not object and specify the precise

Plf. Appx. 115

ground or basis for your objection and the precise portion of the request to which an objection is made.

10.    If you object to an interrogatory on the grounds that it inquires into a privileged matter, set forth fully in the objection the facts upon which you rely as the basis for the asserted privilege, including, but not limited to: (a) the name of the person making the communication; (b) the names of the persons present while the communication was made; (c) the relationship of the persons present to the person making the communication; (d) the date of the communication; (e) the place of the communication; (f) the general subject matter of the communication; and (g) each and every person known to you to whom the substance of the communication was disclosed.

11.    If an interrogatory calls for identifying a document or documents you claim to be privileged, please provide a privilege log identifying:  (a) each document for which you claim a privilege; (b) date of the document; (c) author(s); (d) sender(s); (e) recipient(s), including job title; (f) subject matter of the document, (g) the basis on which you claim a privilege; (h) to which request(s) the document responds; and (i) each and every person known to have seen the document.

12.    If any response to an interrogatory identifies a document or documents that you do not or no longer possess (or is no longer in the custody, possession, or control of someone from whom you have the legal right to obtain the information or from whom you have the practical ability to obtain the information), you must state whether it: (a) is missing; (b) is lost; (c) has been destroyed; (d) has been transferred,

3

voluntarily or involuntarily, to others, and to whom, if known; or (e) has been otherwise disposed. In each instance, you must state when the document was most recently in your possession or control. In the event the document was destroyed, you must identify: (a) when it was destroyed; (b) the person who destroyed the document; (c) the person who directed that the document be destroyed; (d) the reason for the destruction; and (e) all communications or documents pertaining to the document's destruction.

13.     If the answer to all or any part of an interrogatory is not presently known or available, include a statement to that effect and furnish any information currently known or available. The fact that an investigation is continuing or that discovery is not complete shall not excuse the failure to answer each interrogatory as fully as possible.

14.     These interrogatories shall be deemed continuing to the time of trial. If at any time after service of responses to these interrogatories and before trial in this action, Defendants obtain or become aware of additional information pertaining to any of these interrogatories, Defendants shall promptly serve upon Plaintiff's counsel supplemental written answers setting forth the additional information as provided by Federal Rules of Civil Procedure 26(e).

Plf. Appx. 117

## **DEFINITIONS**

1.     "Plaintiff" shall mean Spectrum WT and, except where expressly noted, its current and former individual officers and members, including Barrett Bright and Marcus Stovall.

2.     "Defendants" shall mean the defendants in the above-captioned action and, where applicable, any of their successors, agents, or other persons acting or purporting to act on their behalf for any purpose whatsoever.

3.     "You," "your," and "Thomas" shall mean Christopher Thomas in his official capacity as vice president of student affairs at West Texas A&M University and any of his predecessors, successors, agents, or other persons acting or purporting to act on his behalf, including persons to whom he has delegated authority or over whom he holds authority or control by virtue of his official capacity.

4.     "Wendler" shall mean Walter Wendler in his official capacity as president and chief executive officer of West Texas A&M University and any of his successors, agents, or other persons acting or purporting to act on his behalf, including persons to whom he has delegated authority or over whom he holds authority or control by virtue of his official capacity.

5.     "West Texas A&M" and "WTAMU" each mean West Texas A&M University, including all persons over whom you hold authority or control by virtue of your official capacity.

6.     "A Fool's Drag Race" refers to the event proposed by Plaintiff to be held at WTAMU in March or April of 2023.

Plf. Appx. 118

7.    "Sam Houston drag show" refers to the event Plaintiff held in Sam Houston Park in Amarillo on or about March 31, 2023.

8.    "Don't Be A Drag Drag Show" refers to the event proposed by Plaintiff to be held at WTAMU on or about March 22, 2024, and for which Plaintiff submitted an April 11, 2023, facilities use request under the name "Buff-a-Woah Drag Show."

9.    The "Litigation" refers to the above-captioned action and any appeal or petition arising from it, specifically including:

      a.    *Spectrum WT v. Wendler*, No. 2:23-cv-00048 (N.D. Tex.)

      b.    *Spectrum WT v. Wendler*, No. 23-10994 (5th Cir.)

      c.    *Spectrum WT v. Wendler*, No. 23A820 (S. Ct.)

10.    "Document" or "Documents" means any "writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations" as defined under Federal Rule of Civil Procedure 34(a)(1)(A). "Document" or "Documents" shall further mean, without limitation, the following: correspondence, papers, agreements, licenses, minutes, computer discs and glossaries, memoranda, reports, notes, diaries, interoffice and/or intraoffice corporate communications, business chat messages (*e.g.*, Skype for business, Microsoft Teams, etc.), telegrams, telex communications, books, letters, ledgers, photographs, pictures, drawings, sketches, computer-stored data, internal and external electronic mail, text messages, computer generated data, webpages, electronic posts, social media entries, computer diskettes, spreadsheets, summaries, electronic files, blueprints, analytical data, data sheets, motion pictures, publications, catalog sheets or addenda, price lists,

6

instructions, maintenance records, worksheets, time charts, time records, advertisements, brochures, pamphlets, recordings (tapes, disks, belt, or any other type), invoices, work assignments, work records, shipping tickets or bills, samples, models, prototypes, devices, or any other written, printed, and/or typewritten matter. A draft or non-identical copy (whether different from the original because of any notations or other comments that do not appear on the originals or other copies) is a separate document within the meaning of this term.

11.    "Communication" or "communications" refer to all transmittals or exchanges of information by any medium, including any oral, telephonic, written, or electronic messages. "Communication" includes, but is not limited to: emails, letters, memoranda, notes, letters, correspondence, fax transmissions, telephonic textual transmissions, SMS messages, iMessages, WhatsApp messages, Telegram messages, Signal messages, social media messages, logs, minutes of meetings or telephone calls, notes taken during meetings (whether face-to-face or virtual), notes taken during telephone calls, calendar entries, video or audio recordings of meetings, video or audio recordings of calls, video or audio recordings of conversations, Webex recordings, and Zoom recordings.

12.    "Communications between" means (a) any communication sent by a specific person(s) to the other specific person(s); (b) any communication sent to both persons by a third party; and (c) any communication in which both specific persons was a sender or recipient.

Plf. Appx. 120

13.    "Person" shall mean a natural person, proprietorship, corporation, partnership, trust, joint venture group, association, or organization.

14.    "Concerning" shall mean, without limitation, relating to, constituting, mentioning, referring to, describing, summarizing, evidencing, listing, relevant to, demonstrating, tending to prove or disprove, and explaining.

15.    "Communication" means all transmittals or exchanges of information, by and to whomsoever made, including but not limited to correspondence (including but not limited to electronic correspondence, facsimiles, text messages, social media postings and messages), dialogues, meetings, discussions, interviews, consultations, agreements, and all other understandings between or among two or more persons, as well as all documents memorializing, recapping, summarizing, or otherwise reflecting the communication.

16.    "Identify" when used in reference to a person means to provide: (a) the person's full name; (b) job title; (c) present or last known place of employment; (d) present or last known address; and (e) all known telephone numbers and e-mail addresses. When "identify" is used in reference to an employee of WTAMU or the Texas A&M University System, please also include (f) location of employment; (g) date of hire; (h) job titles held; (i) supervisors while employed in those positions; and, if applicable, (j) date of separation from Defendants, if applicable; and (k) reason for separation, if applicable.

17.    "Identify" when used in reference to documents means to specify, in sufficient detail to permit a person to locate and recognize the document, the contents

8

of the document, including but not limited to: (a) the type of document (*e.g.*, a letter, memorandum, etc.); (b) the title of the document; (c) the authors; (d) the addressees; (e) the recipients; (f) the date of the document; (g) a description of its subject matter and contents; (h) the name and address of the custodian(s) of the document; (i) the location of the document; and (j) the relationship of the author and addressee(s) to each other.

18.    "Identify" when used in reference to a statute, policy, rule, regulation, or custom means to specify, in sufficient detail to permit a person to locate and recognize its source, including but not limited to: (a) the name of the statute, policy, rule, or regulation; (b) the number of the statute, policy, rule, or regulation; (c) the name of the publication where the statute, policy, rule, or regulation is found; (d) the page number of the publication where the statute, policy, rule, or regulation is found; (d) the date the policy was first enacted; (e) the text of the statute, policy, rule, or regulation; and (f) any amendments, modifications, or changes to its text at any time on or after January 1, 2020.

19.    "Describe" means to narrate, relate, or depict a factual set of events, including identifying the parties involved, the date(s) the events took place, and how events unfolded.

## INTERROGATORIES

## Interrogatory No. 1

Identify every instance in which WTAMU canceled or refused permission for an event to be held at the JBK Student Center since January 1, 2021.

9

**Response:**

**Interrogatory No. 2**

Identify every instance since January 1, 2020, in which WTAMU decided to refuse permission for an event to be held at the JBK Student Center or required changes to the expressive aspects of such an event prior to granting permission.

    **Response:**

**Interrogatory No. 3**

Identify every person Thomas communicated with concerning Plaintiff, drag shows, A Fool's Drag Race, the Sam Houston drag show, the Don't Be A Drag Drag Show, the "Draggieland" performance(s) at Texas A&M University, the February 28, 2025 resolution of the Texas A&M University System entitled "Resolution Regarding Certain Public Events on the Campuses of Universities in The Texas A&M University System," or the Litigation since January 1, 2022.

    **Response:**

**Interrogatory No. 4**

Identify every person who participated in any decision to cancel any of Plaintiff Spectrum WT's proposed events.

    **Response:**

10

**Interrogatory No. 5**

Identify every statute, policy, rule, regulation, or custom concerning the persons or groups who may utilize Jack B. Kelley Student Center spaces.

**Response:**


**Interrogatory No. 6**

Identify every statute, policy, rule, regulation, or custom limiting the subject matter or content of events with respect to the use of Jack B. Kelley Student Center spaces.

**Response:**


**Interrogatory No. 7**

Identify West Texas A&M University and Texas A&M System rule, regulation, policy, custom, or practice concerning sexual material or content.

**Response:**


**Interrogatory No. 8**

Identify every campus event West Texas A&M University has refused to permit, reserve space for, or cancelled because it included sexual material or content.

**Response:**

11

Plf. Appx. 124

**Interrogatory No. 9**

Identify every campus event since 2020 that West Texas A&M University has refused to permit or cancelled because it included content that was offensive, divisive, demeaning, misogynistic, or mocking.

**Response:**


**Interrogatory No. 10**

Identify each reason you contend that Plaintiff's performances will be or would have been disruptive to the operations or educational functions of West Texas A&M University.

**Response:**


**Interrogatory No. 11**

Identify every step which (a) was necessary for Plaintiff to complete in order to conduct A Fool's Drag Race and (b) list which, if any, step(s) were unfulfilled on March 20, 2023.

**Response:**


**Interrogatory No. 12**

Identify every step which (a) was necessary for Plaintiff to complete in order to conduct Don't Be A Drag Drag Show and (b) list which, if any, step(s) were unfulfilled on March 18, 2024.

12

**Response:**

Dated: October 8, 2025

Respectfully submitted,

/s/ JT Morris

JT MORRIS
TX Bar No. 24094444
FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION
700 Pennsylvania Ave., SE; Ste. 340
Washington, DC 20003
Tel: (215) 717-3473
Fax: (267) 573-3073
jt.morris@thefire.org

CONOR T. FITZPATRICK*
MI Bar No. P78981
ADAM B. STEINBAUGH*
CA Bar No. 304829
JEFFREY D. ZEMAN*
MI Bar No. P76610
FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION
510 Walnut St.; Ste. 900
Philadelphia, PA 19106
Tel: (215) 717-3473
Fax: (267) 573-3073
conor.fitzpatrick@thefire.org
adam@thefire.org
jeff.zeman@thefire.org

* Admitted *Pro Hac Vice*

*Counsel for Plaintiff*

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 8, 2025, I served the foregoing document by e-mail to the following:

David Bryant

David.Bryant@oag.texas.gov


Munera Al-Fuhaid

Munera.Al-Fuhaid@oag.texas.gov


Zachary Berg

Zachary.Berg@oag.texas.gov


Date:   October 8, 2025                    /s/ Adam Steinbaugh
                                           Adam Steinbaugh
                                           FOUNDATION FOR INDIVIDUAL
                                               RIGHTS AND EXPRESSION

Plf. Appx. 127

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

SPECTRUM WT, *et al.*,

                Plaintiffs,

v.

WALTER WENDLER, *et al.*,

                Defendants.

No. 2:23-cv-00048

### DEFENDANT CHRISTOPHER THOMAS'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 33 and 34, Defendant, Christopher Thomas hereby submit his objections and responses to Plaintiff's First Set of Discovery to Defendants.

### GENERAL STATEMENT

Defendant's responses and objections are based on the information known to Defendant at this time and are made without prejudice to the assertion of additional responses and objections should Defendants identify additional grounds thereof. Defendant reserves the right to supplement, clarify, revise, or correct any or all their responses to Plaintiff's Interrogatories and Requests for Production. By answering any requests, Defendant does not concede the materiality of the subject to which it refers. Defendant's responses are made expressly subject to, and without waiving or intending to waive, any questions, or objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence or for any other purpose, of any of the documents or information provided, or of the subject matter thereof, in any proceeding including the trial of this action or any subsequent proceeding.

Plf. Appx. 128

## RESPONSES AND OBJECTIONS TO INTERROGATORIES

**Interrogatory No. 1**
Identify every instance in which WTAMU canceled or refused permission for an event to be held at the JBK Student Center since January 1, 2021.

**Response:**

Defendant objects to this interrogatory because it is not within the scope of discovery, as it is not "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* Fed. R. Civ. P. 26(b)(1). Defendant further objects to the phrase "every instance" to the extent it is vague, overbroad, and potentially seeks information that is not relevant to any party's claim or defense.

Subject to and without waiving the foregoing objections, please see attached spreadsheet with all events that were cancelled since January 1, 2020. The spreadsheet includes a column highlighting the cancelled reason.

**Interrogatory No. 2**
Identify every instance since January 1, 2020, in which WTAMU decided to refuse permission for an event to be held at the JBK Student Center or required changes to the expressive aspects of such an event prior to granting permission.

**Response:**

Defendant objects to this interrogatory because it is not within the scope of discovery, as it is not "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* Fed. R. Civ. P. 26(b)(1). Defendant further objects to the phrase "every instance" to the extent it is vague, overbroad, and potentially seeks information that is not relevant to any party's claim or defense.

Subject to and without waiving the foregoing objections, please see attached spreadsheet with all events that were cancelled since January 1, 2020. The spreadsheet includes a column highlighting the cancelled reason.

**Interrogatory No. 3**
Identify every person Thomas communicated with concerning Plaintiff, drag shows, A Fool's Drag Race, the Sam Houston drag show, the Don't Be A Drag Drag Show, the "Draggieland" performance(s) at Texas A&M University, the February 28, 2025 resolution of the Texas A&M University System entitled "Resolution Regarding Certain Public Events on the Campuses of

2

Universities in The Texas A&M University System," or the Litigation since January 1, 2022.

**Response:**

Defendant objects to this interrogatory because it is not within the scope of discovery, as it is not "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* Fed. R. Civ. P. 26(b)(1). Defendant further objects to the phrase "every person Thomas communicated with" to the extent it is vague, overbroad, and potentially seeks information that is not relevant to any party's claim or defense.

Subject to and without waiving the foregoing objections, Dr. Thomas communicated with the following university officials and employees: WTAMU President Walter Wendler; and Assistant Vice Presidents Amber Black and Chance Haugen.

**Interrogatory No. 4**
Identify every person who participated in any decision to cancel any of Plaintiff Spectrum WT's proposed events.

**Response:**

Defendant objects to this interrogatory because it is not within the scope of discovery, as it is not "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* Fed. R. Civ. P. 26(b)(1). Defendant objects to the phrase "every person who participated in any decision" to the extent it is vague, ambiguous, and potentially seeks information that is not relevant to any party's claim or defense.

Subject to and without waiving the foregoing objections:

- Spectrum Lavender Prom – April 11, 2020; Cancelled due to COVID-19, Dr. Thomas is not aware of the individuals involved in that decision.
- A Fool's Drag Race – March 31, 2023; Cancelled due to direction from President, Dr. Walter Wendler
- Don't Be A Drag, Drag Show – March 22, 2024; Cancelled due to direction from President, Dr. Walter Wendler

**Interrogatory No. 5**
Identify every statute, policy, rule, regulation, or custom concerning the persons or groups

3

Plf. Appx. 130

who may utilize Jack B. Kelley Student Center spaces.

**Response:**

Defendant objects to this request to the extent the terms "policy," "rule," "regulation," or "custom" are vague or ambiguous. Defendant further objects to this request because it is unreasonably cumulative or duplicative of the A&M System policies and regulations, and WTAMU rules and procedures themselves. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). The requesting party's ability to obtain the information is similar to that of the responding party. *See* Fed. R. Civ. P. 26(b)(1).

Subject to and without waiving the foregoing objections, please see the TAMUS policies, WTAMU rules and SAPs, which are publicly-available online at the URL: https://www.tamus.edu/legal/policy/. In addition, Defendant is providing a copy of the WT Student Handbook, Campus Organizations Handbook, JBK Student Center Policies Manual, JBK Procedures and Guidelines, and other documents.

**Interrogatory No. 6**
Identify every statute, policy, rule, regulation, or custom limiting the subject matter or content of events with respect to the use of Jack B. Kelley Student Center spaces.

**Response:**

Defendant objects to this request to the extent the terms "policy," "rule," "regulation," or "custom" are vague or ambiguous. Defendant further objects to this request because it is unreasonably cumulative or duplicative of the A&M System policies and regulations, and WTAMU rules and procedures themselves. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). The requesting party's ability to obtain the information is similar to that of the responding party. *See* Fed. R. Civ. P. 26(b)(1).

Subject to and without waiving the foregoing objections, please see the TAMUS policies, WTAMU rules and SAPs, which are publicly-available online at the URL: https://www.tamus.edu/legal/policy/. In addition, Defendant is providing a copy of the WT Student Handbook, Campus Organizations Handbook, JBK Student Center Policies Manual, JBK Procedures and Guidelines, and other documents.

**Interrogatory No. 7**
Identify West Texas A&M University and Texas A&M System rule, regulation, policy, custom, or practice concerning sexual material or content.

**Response:**

Defendant objects to this request to the extent the terms "policy," "rule," "regulation," or "custom" are vague or ambiguous. Defendant further objects to this request because it is unreasonably cumulative or duplicative of the A&M System policies and regulations, and WTAMU rules and procedures themselves. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). The requesting party's ability

4

to obtain the information is similar to that of the responding party. *See* Fed. R. Civ. P. 26(b)(1).

Subject to and without waiving the foregoing objections, please see the TAMUS policies, WTAMU rules and SAPs, which are publicly-available online at the URL: https://www.tamus.edu/legal/policy/. In addition, Defendant is providing a copy of the WT Student Handbook, Campus Organizations Handbook, JBK Student Center Policies Manual, JBK Procedures and Guidelines, and other documents.

### Interrogatory No. 8

Identify every campus event West Texas A&M University has refused to permit, reserve space for, or cancelled because it included sexual material or content.

**Response:**

Defendant objects to this request to the extent the phrase "every campus event" to the extent it is vague or ambiguous. Defendant further objects that the request is not reasonably specific or limited in scope or time.

Subject to the foregoing objections, Dr. Thomas is not personally aware of any other events that have been cancelled other than the events subject to this lawsuit.

### Interrogatory No. 9

Identify every campus event since 2020 that West Texas A&M University has refused to permit or cancelled because it included content that was offensive, divisive, demeaning, misogynistic, or mocking.

**Response:**

Defendant objects to this request to the extent the phrase "every campus event" to the extent it is vague or ambiguous. Defendant further objects that the request is compound and not reasonably specific or limited in scope.

Subject to the foregoing objections, Dr. Thomas is not personally aware of any other events that have been cancelled other than the events subject to this lawsuit.

### Interrogatory No. 10

Identify each reason you contend that Plaintiff's performances will be or would have been disruptive to the operations or educational functions of West Texas A&M University.

**Response:**

Defendant objects to this request to the extent it is unreasonably cumulative or duplicative of other requests.

Plf. Appx. 132

Subject to and without waiving the foregoing objections, Dr. Thomas deferred to President Wendler's decisions in this matter. President Wendler's decisions and accompanying reasons are provided in his memoranda to the campus community entitled "A Harmless Drag Show? No Such Thing," dated March 20, 2023, and "Spectrum WT Application for On-Campus Drag Show," dated March 18, 2024.

**<u>Interrogatory No. 11</u>**
Identify every step which (a) was necessary for Plaintiff to complete in order to conduct A Fool's Drag Race and (b) list which, if any, step(s) were unfulfilled on March 20, 2023.

**Response:**

Defendant objects to the extent this request is compound, overly broad, and the term "every step" is vague or ambiguous.

Subject to the foregoing objections, to the best of Dr. Thomas's knowledge, the following steps and their fulfillment status for the event are listed below:

1. Submit an online reservation request at reservations.wtamu.edu (Fulfilled)
2. Complete and submit a risk assessment (Fulfilled)
3. Review of marketing to ensure that it aligns with the marketing requirements for student organizations (Fulfilled)
4. Complete and submit the catering exemption form if serving food (Fulfilled)
5. Receive event "confirmation" from the JBK Event Services team (Fulfilled)

**<u>Interrogatory No. 12</u>**
Identify every step which (a) was necessary for Plaintiff to complete in order to conduct Don't Be A Drag Drag Show and (b) list which, if any, step(s) were unfulfilled on March 18, 2024.

**Response:**

Defendant objects to the extent this request is compound, overly broad, and the term "every step" is vague or ambiguous.

Subject to the foregoing objections, to the best of Dr. Thomas's knowledge, the following steps and their fulfillment status for the event are listed below:

1. Submit an online reservation request at reservations.wtamu.edu (Fulfilled)
2. Complete and submit a risk assessment (Unfulfilled)
3. Review of marketing to ensure that it aligns with the purpose of the event (if the event has marketing) (Unfulfilled)
4. Complete and submit the catering exemption form if serving food (Unfulfilled)
5. Receive event "confirmation" from the JBK Event Services team (Unfulfilled)

Plf. Appx. 133

Date: November 7, 2025                    Respectfully submitted.

KEN PAXTON                               */S/ David Bryant*
Attorney General of Texas                ─────────────────────────
                                         DAVID BRYANT
BRENT WEBSTER                            Special Counsel
First Assistant Attorney General         Tex. State Bar No. 03281500

RALPH MOLINA                             MUNERA AL-FUHAID
Deputy First Assistant Attorney General  Special Counsel
                                         Tex. State Bar No. 24094501
RYAN D. WALTERS
Deputy Attorney General for Legal Strategy  ZACHARY BERG
                                         Special Counsel
RYAN G. KERCHER                          Tex. State Bar No. 24107706
Chief, Special Litigation Division
                                         OFFICE OF THE ATTORNEY GENERAL
                                         P.O. Box 12548 (MC-009)
                                         Austin, Texas 78711-2548
                                         Tel.: (512) 463-2120
                                         Fax: (512) 320-0667
                                         david.bryant@oag.texas.gov
                                         munera.al-fuhaid@oag.texas.gov
                                         zachary.berg@oag.texas.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2025, I electronically served the foregoing responses on all counsel of record.

                                         */S/ David Bryant*
                                         ─────────────────────────
                                         DAVID BRYANT

Plf. Appx. 134



Office of General Counsel

# THE TEXAS A&M UNIVERSITY SYSTEM

April 11, 2023

Open Records Division                                    ***via UPS DELIVERY***
Office of the Attorney General
P.O. Box 12548
Austin, TX 78711-2548

Re:    Request for a Decision regarding a Public Information Request from Adam Steinbaugh to
       West Texas A&M University (H000731-032223)

Dear Open Records Division:

On April 4, 2023, we requested a decision on an open records request Adam Steinbaugh ("requestor") submitted to West Texas A&M University ("university") on March 22, 2023.[1] The request, enclosed as Exhibit A, seeks certain information and correspondence.

We believe that a portion of the information responsive to the request is excepted from disclosure under the Texas Public Information Act, Government Code, Chapter 552 ("Act"), as explained below. Therefore, we are requesting a decision regarding this information.

## Reasonably Anticipated (And Now Pending) Litigation

The requestor is an attorney with the Foundation for Individual Rights and Expression ("FIRE"). *See* Exhibit A. FIRE, on behalf of an alleged recognized student organization and several alleged university students, filed suit against the university and The Texas A&M University System ("Texas A&M System") defendants on March 24, 2023. A copy of the "Verified Complaint for Civil Rights Violations" ("Complaint") filed by FIRE (with requestor listed as one of plaintiffs' counsel) is enclosed as Exhibit C. In relevant part, the suit alleges that on March 20, 2023, the university's president barred the plaintiff student organization "from exercising its clear First Amendment right to put on a PG-13 charity drag show at a campus event hall with the aim of raising funds for LGBTQ+ suicide prevention." *See* Exhibit C, Complaint at 1, 4-5, 16-17. Prior to filing suit, FIRE submitted a letter to the university's president alleging that the president's announcement to cancel the student organization's charity drag show was a

---

[1] Please note that this request was originally received on March 20, 2023 after close of business hours, making the original date of receipt the next business day, March 21, 2023. The university requested clarification or narrowing on March 22, 2023, and the requestor provided clarification on the same date. Thus, the date of receipt of this request was March 22, 2023, making the 10th business day after receipt of this request April 5, 2023, and the 15th business day is April 12, 2023.

Plf. Appx. 135

Open Records Division (H000731-032223)
April 11, 2023
Page 2 of 5

violation of students' freedom of expression subjecting the president to personal liability. Exhibit C, March 21, 2023 Letter to Walter Wendler, Ph.D. ("March 21st Letter").

> Against this backdrop, your avowed defiance of your constitutional obligations comes into sharp relief. In yesterday's statement, you repeatedly boasted that you are motivated by personal animus for the message and the content you presumed the performance will include. The suppression of speech "because of its message" is viewpoint discrimination, an "egregious form" of censorship.

> Admitting that you are aware your authority as a state official is circumscribed by the First Amendment but that you nonetheless intend to violate the law to censor student speech is particularly stunning. Accordingly, we remind you that a public college administrator who violates clearly established law will not retain qualified immunity and can be held personally responsible for monetary damages for violating First Amendment rights, including punitive damages if their actions show a "reckless or callous indifference to the federally protected rights of others.

Exhibit C, March 21st Letter, at 3 (footnotes omitted). FIRE's March 21st letter closed with a demand for a reversal of the alleged violation of the students' rights: "Given the urgent nature of this matter, we request a substantive response to this letter no later than the close of business tomorrow, Wednesday, March 22, confirming that you will restore the event and will not stand in the way of WTAMU students' First Amendment right to express themselves." *See* Exhibit C, March 21st Letter, at 4.

As noted above, the requestor responded to the university's request for clarification or narrowing on March 22, 2023, making this the date of receipt of this request. *See* Exhibit A. Therefore, the request at issue was received <u>after</u> FIRE's March 21st Letter notified the university's president that he had allegedly violated the First Amendment rights of university students by allegedly cancelling a student drag show. *See* Exhibits A, C, March 21st Letter.

**Tex. Gov't Code § 552.107**

The representative sample of information, enclosed as Exhibit B-1, constitutes or documents communications between a Texas A&M System attorney and West Texas A&M University administrators, and these communications should be excepted from disclosure under section 552.107(1) of the Act. The attorney general has provided the following analysis of this exception:

> Section 552.107(1) of the Government Code protects information coming within the attorney-client privilege. When asserting the attorney-client privilege, a governmental body has the burden of providing the necessary facts to demonstrate the elements of the privilege in order to withhold the information at issue. Open Records Decision No. 676 at 6-7 (2002). First, a governmental body must

---

Plf. Appx. 136

Open Records Division (H000731-032223)
April 11, 2023
Page 3 of 5

demonstrate that the information constitutes or documents a communication. *Id.* at 7. Second, the communication must have been made "to facilitate the rendition of professional legal services" to the client governmental body. Tex. R. Evid. 503(b)(1). The privilege does not apply when an attorney or representative is involved in some capacity other than that of providing or facilitating professional legal services to the client governmental body. *In re Tex. Farmers Ins. Exch.*, 990 S.W.2d 337, 340 (Tex. App.—Texarkana 1999, orig. proceeding) (attorney-client privilege does not apply if attorney acting in a capacity other than that of attorney). Governmental attorneys often act in capacities other than that of professional legal counsel, such as administrators, investigators, or managers. Thus, the mere fact that a communication involves an attorney for the government does not demonstrate this element. Third, the privilege applies only to communications between or among clients, client representatives, lawyers, and lawyer representatives. Tex. R. Evid. 503(b)(1). Thus, a governmental body must inform this office of the identities and capacities of the individuals to whom each communication at issue has been made. Lastly, the attorney-client privilege applies only to a confidential communication, *id.* 503(b)(1), meaning it was "not intended to be disclosed to third persons other than those: (A) to whom disclosure is made to further the rendition of professional legal services to the client; or (B) reasonably necessary to transmit the communication." *Id.* 503(a)(5). Whether a communication meets this definition depends on the intent of the parties involved at the time the information was communicated. *Osborne v. Johnson*, 954 S.W.2d 180, 184 (Tex. App.—Waco 1997, orig. proceeding). Moreover, because the client may elect to waive the privilege at any time, a governmental body must explain that the confidentiality of a communication has been maintained. Section 552.107(1) generally excepts an entire communication that is demonstrated to be protected by the attorney-client privilege unless otherwise waived by the governmental body. *See Huie v. DeShazo*, 922 S.W.2d 920, 923 (Tex. 1996) (privilege extends to entire communication, including facts contained therein).

*See, e.g.*, Tex. Att'y Gen. OR2016-02974 (2016).

We submit the information meets the criteria set forth above to demonstrate the elements of the attorney–client privilege necessary to withhold this information in its entirety. First, the information constitutes or documents communications, satisfying the first element of the privilege test. The communications or documented communications in Exhibit B-1 are between a Texas A&M System Office of General Counsel ("OGC") attorney and West Texas A&M University administrators. Specifically, the communications in Exhibit B-1 are between the following: David Halpern, Assistant General Counsel, OGC; and Walter Wendler, President, West Texas A&M University. Also copied on the communication are Tracee Post, Chief of Staff and Assistant Vice President for Strategic Communication, West Texas A&M University; Melissa Parker, Legal Assistant, OGC; and Chris Thomas, Vice President for Student Affairs, West Texas A&M University.

301 Tarrow Street, 6th Floor · College Station, Texas 77840-7896
(979) 458-6120 · Fax (979) 458-6150 · www.tamus.edu/legal

Plf. Appx. 137

Open Records Division (H000731-032223)
April 11, 2023
Page 4 of 5

Second, the communications or documented communications were sent and received expressly for the purpose of facilitating the rendition of legal services from an OGC attorney to West Texas A&M University. Third, the communications are between an OGC attorney and West Texas A&M University administrators, and the attorney-client privilege expressly covers communications between a client or the client's representatives and the client's lawyer or the lawyer's representatives. *See* Tex. R. Evid. 503(b)(1)(A). Finally, at the times this information was communicated, it was the intent of the parties that the information not be disclosed to third persons. Subsequent to the initial communication of the information, the attorney and client representatives have maintained the confidentiality of the communications. Therefore, we believe that the information represented by the sample in Exhibit B-1 is excepted from disclosure under section 552.107(1).

**Tex. Gov't Code Sec. 552.103**

Finally, we believe that the litigation exception should apply to the marked portion of the representative sample enclosed as Exhibit B-2. Section 552.103 provides in part:

> Information is excepted from the requirements of Section 552.021 if it is information relating to litigation of a civil or criminal nature to which the state or a political subdivision is or may be a party or to which an officer or employee of the state or a political subdivision, as a consequence of the persons office or employment, is or may be a party.

Tex. Gov't Code Ann. § 552.103(a) (West 2012).

For information to be excepted from public disclosure under the litigation exception, section 552.103(a): (1) litigation involving the governmental body or the governmental body's officer or employee must be pending or reasonably anticipated; and (2) the information must relate to that litigation. *See* Tex. Att'y Gen. ORD-551, at 4 (1990). Therefore, a governmental body that seeks an attorney general decision has the burden of clearly establishing both prongs of this test.

Here, we can establish both prongs of the litigation exception. First, as explained above, litigation against West Texas A&M University and/or its president was reasonably anticipated when this request was received on March 22, 2023. *See* Exhibits A, C, March 21st Letter. FIRE's suit was filed three days after the March 21st Letter. *See* Exhibit C, Complaint. Second, the information, enclosed as Exhibit B-2, directly relates to the anticipated (and now pending) litigation: the drag show at issue in the March 21st Letter and the Complaint. *See* Exhibit B-2. FIRE can use the formal discovery process to obtain information from West Texas A&M University, and it should not be allowed to use the Texas Public Information Act to skirt the discovery process. Accordingly, we contend that the marked information in Exhibit B-2 is excepted from disclosure pursuant to section 552.103(a) of the Act.

---

301 Tarrow Street, 6th Floor · College Station, Texas 77840-7896
(979) 458-6120 · Fax (979) 458-6150 · www.tamus.edu/legal

Plf. Appx. 138

Open Records Division (H000731-032223)
April 11, 2023
Page 5 of 5


Thank you for your consideration of this matter.  If you have any questions, please feel free to contact me.

Sincerely,

R. Brooks Moore
Deputy General Counsel

Enclosures:    Exhibits A, B-1, B-2, C


cc:    Requestor *(via email) (no attachments)*

West Texas A&M Open Records Office

Plf. Appx. 139

| **From:** | Winningham, Amberly |
|---|---|
| **To:** | Wendler, Walter V. |
| **Cc:** | Post, Tracee; Winningham, Amberly |
| **Subject:** | RE: Edits please. |
| **Date:** | Tuesday, March 14, 2023 12:37:55 PM |
| **Attachments:** | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |
| | image006.png |
| | A Harmless Drag Show_acw accepted.docx |
| | A Harmless Drag Show_acw tracked.docx |

**From:** Wendler, Walter V. <wwendler@wtamu.edu>
**Sent:** Tuesday, March 14, 2023 12:14 PM
**To:** Winningham, Amberly <awinningham@wtamu.edu>; Post, Tracee <tpost@wtamu.edu>
**Subject:** Edits please.

See attached.

# WALTER V. WENDLER
## PRESIDENT

**Office of the President**
o: 806.651.2100 | wwendler@wtamu.edu
West Texas A&M University | WT Box 60997 | Canyon, TX 79016
wt125.wtamu.edu

 

For Reflections on Higher Education visit  *http://walterwendler.com/*

Plf. Appx. 140

RECORD FOR RELEASE
Adam Steinbaugh
H000731

## A Harmless Drag Show?  No Such Thing.

A drag show will be held (or was held or planned but cancled) in an effort to raise money for the Trevor Project to battle suicide in the Gay community. A noble cause to be sure.  Any person considering self-harm, for any reason is tragic. I believe every human being, every one, is created in the image of God, and, therefore a person of dignity.  Being created in God's image was the basis of Natural Law, the foundation for all human conduct for James Madison and Thomas Jefferson who declared the divine origin of all as part of the fabric of the founding of a nation.

Does a drag show preserve human dignity? I think not. As a performance exaggerating aspects of womanhood (sexuality, femininity, gender), drag shows stereotype women and discriminates womanhood. Any effort, by anyone, to diminish an individual's identity through such caricaturize anyone is wrong. We would immediately call out a group performing with blackface as demeaning or racist. Should we not call out as misogynistic and demeaning to women a show portraying the caricature of women as sexual objects?

West Texas A&M University endeavors to treat all people equally, as individuals. Drag shows are derisive no matter the stated intent of those in drag and run counter to the purpose of a public university. We cannot know the motivations of the human being when they present an unwelcome caricature, and does motive even matter? One group does not cannot elevate itself by eroding another.  As a tax supported public university, I do not support "blackface" performances on our campus, no matter how many times I was told that it is a form of free speech, nor do I support a drag show. I do not support any show, performance, or artistic expression that demeans a person for any reason ( race, sexual orientation, gender, faith affiliation, physical or intellectual ability). WT intends to provide fair opportunities to all based on academic performance. I believe that on a university campus charged by the state of Texas to treat each person fairly, based on performance and capability without regard to group membership is a high standard based on educational mission and service to all.  These educational purposes are sanctioned by the legislature, the governor, and numerous elected and appointed officials.

The WT community should live by the Golden Rule expressed this way in Buddhism: "Hurt not others with that which pains yourself," this way in Judaism, "What you yourself hate, do to no man." Anthropologists demonstrate the law of reciprocity is at work in every known religion and society. I learned this basic way of living expressed in the book of Mathew, "So in everything, do to others what you would have them do to you, for this sums up the Law and the Prophets." Mocking or objectifying in any way members of

Deleted: by the Trevor Project.  ...A noble cause to be sure.  Any person considering self-harm, for any reason is heartbreaking...ragic. I believe every ...uman being on the face of the earth... every one, was, ...s and forever will be ...reated in the image of God, and, therefore a person of dignity.  This ...eing created in God's image is the...as the basis of Natural Law, the durable moral principles held by many to be the the ...oundation for all human conduct for . ...James Madison, thought this principle so deeply embedded in human nature that any adjustment to it was a diminishment of a person's relationship to God... and Thomas Jefferson in writing the...ho  Declaration of Independence,...declared the divine origin of all as part of the fabric of the founding of a nation.  It has taken nearly 250 years for the Equal Rights Amendment to secure the 38 votes needed to make it part of our Constitution under the Law of the Land. The amendment's application to the constitution has been held up as attorneys argue its righteousness, defying the obvious which was declared in earnest at the 1848 Seneca Falls Convention of Women's suffrage.  ... [1]

Deleted: A...drag show preserve human dignity? I think not. , a ...s a performance that ...xaggerating targets various...aspects of womanhood that exaggerates...sexuality, femininity, gender) "sexual" aspects of female existence that potentially... drag shows creates a ...tereotype of ...omen as having a certain appearance, ...nd discriminates womanhoo  ... [2]

Deleted: West Texas A&M University endeavors to treat all people equally, as individuals. Group membership through a caricature of women as sexual objects, as is frequently done in drag shows is a form of misogyny... I...rag shows t is...re derisive no matter the stated intent of those in drag. It is against...and run counter to the purpose of a public university. Som  ... [3]

Moved (insertion) [1]

Deleted:  as ...xpressed this way in Buddhism: "Hurt not others with that which pains yourself;.... this way in Judaism historically proclaims... "What you yourself do to no man." And so it goes in every organized system of belief on the planet.  ...nthropologists demonstrate the law of reciprocity is at work in every known religion and society.  Me personal favorite ... [4]

Moved up [1]: I believe that on a university campus charged by the state of Texas to treat each person fairly, based on performance and capability without regard to group membership is a high standard based on educational mission and service to all.  These educational purposes are sanctioned by the legislature,

Deleted: creating objects

Plf. Appx. 141

RECORD FOR RELEASE
Adam Steinbaugh
H000731

any group based on appearance, bias, or assumed predisposition is unacceptable to me. To the critic who wants to say, "He doesn't know what he's talking about, he is a cisgender man," I argue women and men have been working for nearly two centuries to eliminate systemic sexism. Drag shows reinforce sexism and demean women regardless of intention.

Acts of prejudice that are not crimes can be harmful and are harmful.

Denigrating women in a drag show to raise money for suicide prevention is a bad idea and has a negative impact.

A harmless drag show? Rather, a drag show held for any reason is will be harmful and demeaning to women. Therefore, WT should never tolerate, accept, or appear to condone the diminishment of any group for any reason. *Walter V. Wendler is President of West Texas A&M University. His weekly columns, with hyperlinks, are available at https://walterwendler.com/.*

| Deleted Comments |
|---|
| **Deleted:** inappropriate |
| **Deleted:** Women portrayed by men in costume solely as sex objects is demeaning. |
| **Deleted:** say, |
| **Deleted:** "Utter nonsense, possibly stupidity." W |
| **Deleted:** thoughtful |
| **Deleted:** it |
| **Deleted:** A hate crime, motivated by bias against race, color, religion, national origin, gender, or disability does not propel a drag show into a criminal event, but exists in a no man's land of a bias or a "hate incident." |
| **Deleted:** , but |
| **Deleted:** stupidity |
| **Deleted:** Nonetheless, the impact on many members of our society is not lessened by the legal description of what a crime is and what it isn't. A hate incident hurts people. |
| **Deleted:** Anything that d |
| **Deleted:** es |
| **Deleted:** any way |
| **Deleted:** on succeeding generations of Americans. Not a single study proves otherwise. |
| **Deleted:** No harm, no foul |
| **Deleted:** . |
| **Deleted:** Not really |
| **Deleted:** Real harm, real foul. |
| **Deleted:** And, because this is self-evident, |
| **Deleted:** our campus |
| **Deleted:** endorse |
| **Deleted:** one |
| **Deleted:** through real or perceived prejudice or bias against another |
| **Deleted:** Such action represents the gutter of ideology, not the high ground of ideas. ¶ It is not the way of West Texas A&M University.¶ |

RECORD FOR RELEASE
Adam Steinbaugh
H000731

| Page 1: [1] Deleted | Rasberry, Todd | 3/14/2023 9:56:00 AM |
|---|---|---|

| Page 1: [1] Deleted | Rasberry, Todd | 3/14/2023 9:56:00 AM |
|---|---|---|

| Page 1: [1] Deleted | Rasberry, Todd | 3/14/2023 9:56:00 AM |
|---|---|---|

| Page 1: [1] Deleted | Rasberry, Todd | 3/14/2023 9:56:00 AM |
|---|---|---|

| Page 1: [1] Deleted | Rasberry, Todd | 3/14/2023 9:56:00 AM |
|---|---|---|

| Page 1: [1] Deleted | Rasberry, Todd | 3/14/2023 9:56:00 AM |
|---|---|---|

| Page 1: [1] Deleted | Rasberry, Todd | 3/14/2023 9:56:00 AM |
|---|---|---|

| Page 1: [1] Deleted | Rasberry, Todd | 3/14/2023 9:56:00 AM |
|---|---|---|

| Page 1: [1] Deleted | Rasberry, Todd | 3/14/2023 9:56:00 AM |
|---|---|---|

| Page 1: [1] Deleted | Rasberry, Todd | 3/14/2023 9:56:00 AM |
|---|---|---|

| Page 1: [1] Deleted | Rasberry, Todd | 3/14/2023 9:56:00 AM |
|---|---|---|

| Page 1: [1] Deleted | Rasberry, Todd | 3/14/2023 9:56:00 AM |
|---|---|---|

| Page 1: [1] Deleted | Rasberry, Todd | 3/14/2023 9:56:00 AM |
|---|---|---|

| Page 1: [1] Deleted | Rasberry, Todd | 3/14/2023 9:56:00 AM |
|---|---|---|

RECORD FOR RELEASE
Adam Steinbaugh
H000731

WEST TEXAS A&M UNIVERSITY

**Page 1: [2] Deleted**    **Rasberry, Todd**    **3/14/2023 10:02:00 AM**

**Page 1: [2] Deleted**    **Rasberry, Todd**    **3/14/2023 10:02:00 AM**

**Page 1: [2] Deleted**    **Rasberry, Todd**    **3/14/2023 10:02:00 AM**

**Page 1: [2] Deleted**    **Rasberry, Todd**    **3/14/2023 10:02:00 AM**

**Page 1: [2] Deleted**    **Rasberry, Todd**    **3/14/2023 10:02:00 AM**

**Page 1: [2] Deleted**    **Rasberry, Todd**    **3/14/2023 10:02:00 AM**

**Page 1: [2] Deleted**    **Rasberry, Todd**    **3/14/2023 10:02:00 AM**

**Page 1: [2] Deleted**    **Rasberry, Todd**    **3/14/2023 10:02:00 AM**

**Page 1: [2] Deleted**    **Rasberry, Todd**    **3/14/2023 10:02:00 AM**

**Page 1: [2] Deleted**    **Rasberry, Todd**    **3/14/2023 10:02:00 AM**

**Page 1: [2] Deleted**    **Rasberry, Todd**    **3/14/2023 10:02:00 AM**

**Page 1: [2] Deleted**    **Rasberry, Todd**    **3/14/2023 10:02:00 AM**

**Page 1: [2] Deleted**    **Rasberry, Todd**    **3/14/2023 10:02:00 AM**

**Page 1: [2] Deleted**    **Rasberry, Todd**    **3/14/2023 10:02:00 AM**

RECORD FOR RELEASE
Adam Steinbaugh
H000731

WEST TEXAS A&M UNIVERSITY

| Page 1: [2] Deleted | Rasberry, Todd | 3/14/2023 10:02:00 AM |

| Page 1: [3] Deleted | Rasberry, Todd | 3/14/2023 10:10:00 AM |

| Page 1: [3] Deleted | Rasberry, Todd | 3/14/2023 10:10:00 AM |

| Page 1: [3] Deleted | Rasberry, Todd | 3/14/2023 10:10:00 AM |

| Page 1: [3] Deleted | Rasberry, Todd | 3/14/2023 10:10:00 AM |

| Page 1: [3] Deleted | Rasberry, Todd | 3/14/2023 10:10:00 AM |

| Page 1: [3] Deleted | Rasberry, Todd | 3/14/2023 10:10:00 AM |

| Page 1: [3] Deleted | Rasberry, Todd | 3/14/2023 10:10:00 AM |

| Page 1: [3] Deleted | Rasberry, Todd | 3/14/2023 10:10:00 AM |

| Page 1: [3] Deleted | Rasberry, Todd | 3/14/2023 10:10:00 AM |

| Page 1: [3] Deleted | Rasberry, Todd | 3/14/2023 10:10:00 AM |

| Page 1: [3] Deleted | Rasberry, Todd | 3/14/2023 10:10:00 AM |

| Page 1: [3] Deleted | Rasberry, Todd | 3/14/2023 10:10:00 AM |

| Page 1: [3] Deleted | Rasberry, Todd | 3/14/2023 10:10:00 AM |

RECORD FOR RELEASE
Adam Steinbaugh
H000731

| Page 1: [3] Deleted | Rasberry, Todd | 3/14/2023 10:10:00 AM |
|---|---|---|

| Page 1: [4] Deleted | Rasberry, Todd | 3/14/2023 10:20:00 AM |
|---|---|---|

| Page 1: [4] Deleted | Rasberry, Todd | 3/14/2023 10:20:00 AM |
|---|---|---|

| Page 1: [4] Deleted | Rasberry, Todd | 3/14/2023 10:20:00 AM |
|---|---|---|

| Page 1: [4] Deleted | Rasberry, Todd | 3/14/2023 10:20:00 AM |
|---|---|---|

| Page 1: [4] Deleted | Rasberry, Todd | 3/14/2023 10:20:00 AM |
|---|---|---|

| Page 1: [4] Deleted | Rasberry, Todd | 3/14/2023 10:20:00 AM |
|---|---|---|

| Page 1: [4] Deleted | Rasberry, Todd | 3/14/2023 10:20:00 AM |
|---|---|---|

Plf. Appx. 146

RECORD FOR RELEASE
Adam Steinbaugh
H000731

# A Harmless Drag Show? No Such Thing.

West Texas A&M University will not host a drag show on campus. It was advertised for March 31, 2023, as an effort to raise money for The Trevor Project. The nonprofit organization focuses on suicide prevention—a noble cause—in the LGBTQ community. Any person considering self-harm for any reason is tragic.

I believe every human being is created in the image of God and, therefore, a person of dignity. Being created in God's image is the basis of Natural Law. James Madison and Thomas Jefferson, prisoners of the culture of their time as are we, declared the Creator's origin as the foundational fiber in the fabric of our nation as they breathed life into it.

Does a drag show preserve a single thread of human dignity? I think not. As a performance exaggerating aspects of womanhood (sexuality, femininity, gender), drag shows stereotype women in cartoon-like extremes for the amusement of others and discriminate against womanhood. Any event which diminishes an individual or group through such representation is wrong. I registered a similar concern on campus when individuals debased Latinas regarding a quinceañera celebration. Should I let rest misogynistic behavior portraying women as objects? While I am not a woman, my best friend I have been married to for over a half-century, is. I am also blessed to have daughters-in-law and granddaughters. Demeaning any demeans all. This is not an intellectual abstraction but a stark reality.

WT endeavors to treat all people equally. Drag shows are derisive, divisive and demoralizing misogyny, no matter the stated intent. Such conduct runs counter to the purpose of WT. A person or group should not attempt to elevate itself or a cause by mocking another person or group. As a university president, I would not support "blackface" performances on our campus, even if told the performance is a form of free speech or intended as humor. It is wrong. I do not support any show, performance, or artistic expression which denigrates others—in this case, women—for any reason. WT intends to provide fair opportunities to all based on academic performance. Ideas, not ideology, are the coin of our realm. A university campus, charged by the state of Texas to treat each individual fairly, should elevate students based on achievement and capability, performance in a word, without regard to group membership—an implacable and exacting standard based on educational mission and service to all, sanctioned by the legislature, the governor, and numerous elected and appointed officials.

The WT community should live by the Golden Rule. As a Christian, I personally learned this in the book of Mathew, *"So in everything, do to others what you would have them do to you, for this sums up the Law and the Prophets"* Buddhism expresses it this way: "Hurt not others with that which pains yourself." Judaism states, "What you yourself hate, do to no man." The law of reciprocity is at work in every known religion and society on the

Plf. Appx. 147

RECORD FOR RELEASE
Adam Steinbaugh
H000731

planet. Colloquially speaking, it is a manifestation of Newton's Third Law of Motion, "For every action, there is an equal and opposite reaction."

Mocking or objectifying in any way members of any group based on appearance, bias, or predisposition is unacceptable. Forward-thinking women and men have worked together for nearly two centuries to eliminate sexism. Women have fought valiantly, seeking equality in the voting booth, marketplace, and court of public opinion. No one should claim a right to contribute to women's suffering via a slapstick sideshow that erodes the worth of women

When humor becomes harassment, it has gone too far. Any reading of the U.S. Equal Employment Opportunity Commission's purpose, coupled with common sense, affirms that acts of prejudice in the workplace and our campus is a workplace, even when not criminal, are harmful and wholly inappropriate. No amount of fancy rhetorical footwork or legal wordsmithing eludes the fact that drag shows denigrate and demean women— noble goals notwithstanding.

A harmless drag show? Not possible. I will not appear to condone the diminishment of any group at the expense of impertinent gestures toward another group for any reason, even when the law of the land appears to require it. Supporting The Trevor Project is a good idea. My recommendation is to skip the show and send the dough.

Offering respect, not ridicule, is the order of the day for fair play and is the WT way. And equally important, it is the West Texas way.

*Walter V. Wendler is President of West Texas A&M University. His weekly columns, with hyperlinks, are available at https://walterwendler.com/.*

Plf. Appx. 148

RECORD FOR RELEASE
Adam Steinbaugh
H000731

## A Harmless Drag Show? No Such Thing.

West Texas A&M University will not host a drag show on campus. It was advertised for March 31, 2023, as an effort to raise money for The Trevor Project. The nonprofit organization focuses on suicide prevention—a noble cause—in the LGBTQ community. Any person considering self-harm for any reason is tragic.

I believe every human being is created in the image of God and, therefore, a person of dignity. Being created in God's image is the basis of Natural Law. James Madison and Thomas Jefferson, prisoners of the culture of their time as are we, declared the Creator's origin as the foundational fiber in the fabric of our nation as they breathed life into it.

Does a drag show preserve a single thread of human dignity? I think not. As a performance exaggerating aspects of womanhood (sexuality, femininity, gender), drag shows stereotype women in cartoon-like extremes for the amusement of others and discriminate against womanhood. Any event which diminishes an individual or group through such representation is wrong. I registered a similar concern on campus when individuals debased Latinas regarding a quinceañera celebration. Should I let rest misogynistic behavior portraying women as objects? While I am not a woman, my best friend I have been married to for over a half-century, is. I am also blessed to have daughters-in-law and granddaughters. Demeaning any demeans all. This is not an intellectual abstraction but a stark reality.

WT endeavors to treat all people equally. Drag shows are derisive, divisive and demoralizing misogyny, no matter the stated intent. Such conduct runs counter to the purpose of WT. A person or group should not attempt to elevate itself or a cause by mocking another person or group. As a university president, I would not support "blackface" performances on our campus, even if told the performance is a form of free speech or intended as humor. It is wrong. I do not support any show, performance, or artistic expression which denigrates others—in this case, women—for any reason. WT intends to provide fair opportunities to all based on academic performance. Ideas, not ideology, are the coin of our realm. A university campus, charged by the state of Texas to treat each individual fairly, should elevate students based on achievement and capability, performance in a word, without regard to group membership—an implacable and exacting standard based on educational mission and service to all, sanctioned by the legislature, the governor, and numerous elected and appointed officials.

The WT community should live by the Golden Rule. As a Christian, I personally learned this in the book of Mathew, *"So in everything, do to others what you would have them do to you, for this sums up the Law and the Prophets"* Buddhism expresses it this way: "Hurt not others with that which pains yourself." Judaism states, "What you yourself hate, do to no man." The law of reciprocity is at work in every known religion and society on the

**Deleted:** to whom I have been married

**Deleted:**

**Deleted:** West Texas A&M University

**Deleted:** ,

**Deleted:** West Texas A&M University

**Deleted:** ,

**Deleted:** ,

RECORD FOR RELEASE
Adam Steinbaugh
H000731

WEST TEXAS A&M UNIVERSITY

WORKING DRAFT DO NOT DISTRIBUTE

planet. Colloquially speaking, it is a manifestation of Newton's Third Law of Motion, "For every action, there is an equal and opposite reaction."

Mocking or objectifying in any way members of any group based on appearance, bias, or predisposition is unacceptable. Forward-thinking women and men have worked together for nearly two centuries to eliminate sexism. Women have fought valiantly, seeking equality in the voting booth, marketplace, and court of public opinion. No one should claim a right to contribute to women's suffering via a slapstick sideshow that erodes the worth of women

When humor becomes harassment, it has gone too far. Any reading of the U.S. Equal Employment Opportunity Commission's purpose, coupled with common sense, affirms that acts of prejudice in the workplace and our campus is a workplace, even when not criminal, are harmful and wholly inappropriate. No amount of fancy rhetorical footwork or legal wordsmithing eludes the fact that drag shows denigrate and demean women—noble goals notwithstanding.

A harmless drag show? Not possible. I will not appear to condone the diminishment of any group at the expense of impertinent gestures toward another group for any reason, even when the law of the land appears to require it. Supporting The Trevor Project is a good idea. My recommendation is to skip the show and send the dough.

Offering respect, not ridicule, is the order of the day for fair play and is the WT way. And equally important, it is the West Texas way.

*Walter V. Wendler is President of West Texas A&M University. His weekly columns, with hyperlinks, are available at https://walterwendler.com/.*

| | |
|---|---|
| **Deleted:** been working | |
| **Deleted:** , | |
| **Deleted:** , | |

Plf. Appx. 150

RECORD FOR RELEASE
Adam Steinbaugh
H000731

## A Harmless Drag Show? No Such Thing.

An on-campus drag show (will be held or was held or planned but canceled) in an effort to raise money for The Trevor Project. The nonprofit organization focuses on suicide prevention in the LGBTQ community—a noble cause. Any person considering self-harm for any reason is tragic. I believe every human being, everyone, is created in the image of God and, therefore, a person of dignity. Being created in God's image was the basis of Natural Law, the foundation for all human conduct for James Madison and Thomas Jefferson, who declared the divine origin of all as part of the fabric of the founding of a nation.

Does a drag show preserve human dignity? I think not. As a performance exaggerating aspects of womanhood (sexuality, femininity, gender), drag shows stereotype women and discriminate against womanhood in a number of manifestations. Any effort to diminish an individual's identity through such characterization of an individual or group is wrong. We would immediately call out a group performing in blackface as demeaning or racist. Should we not call out as misogynistic and demeaning to women a show portraying the caricature of women as sexual objects?

West Texas A&M University endeavors to treat all people equally, as individuals. Drag shows are derisive no matter the stated intent of those in drag and run counter to the purpose of a public university. We cannot know the motivations of human beings when they present an unwelcome caricature, and does motive even matter? One group cannot elevate itself by eroding another. As a tax-supported public university, I do not support nor allow "blackface" performances on our campus, no matter how often I was told that it is a form of free speech. I do not support a drag show. I do not support any show, performance or artistic expression that demeans a person for any reason (race, sexual orientation, gender, faith affiliation, physical or intellectual ability or disability). WT intends to provide fair opportunities to all based on academic performance. I believe that on a university campus, charged by the state of Texas to treat each person fairly, students should be evaluated based on performance and capability, without regard to group membership—a high standard based on educational mission and service to all. These educational purposes are sanctioned by the legislature, the governor, and numerous elected and appointed officials.

The WT community should live by the Golden Rule, expressed this way in Buddhism: "Hurt not others with that which pains yourself;" this way in Judaism, "What you yourself hate, do to no man." Anthropologists demonstrate the law of reciprocity is at work in every known religion and society. I learned this basic way of living expressed in the book of Mathew, *"So in everything, do to others what you would have them do to you, for this sums up the Law and the Prophets."* Mocking or objectifying in any way members of any group based on appearance, bias, or assumed predisposition is unacceptable to me. To

Deleted:
Deleted:
Deleted: (
Deleted: t
Deleted: to battle
Deleted: Gay
Deleted: . A
Deleted:  to be sure
Deleted:
Deleted: ,
Deleted:
Deleted: ,
Deleted:
Deleted: , by anyone,
Deleted: .
Deleted:
Deleted: the
Deleted: does not,
Deleted:
Deleted: tax
Deleted: many times
Deleted:
Deleted:
Deleted: ,
Deleted:
Deleted: is
Deleted:
Deleted:
Deleted:

Plf. Appx. 151

RECORD FOR RELEASE
Adam Steinbaugh
H000731

the critic who wants to say, "He doesn't know what he's talking about; he is a cisgender man," I argue women and men have been working for nearly two centuries to eliminate systemic sexism. Drag shows reinforce sexism and demean women regardless of intention. Women have fought valiantly for centuries seeking equality in the voting booth, marketplace and court of public opinion. Therefore, men have no right to contribute to women's suffering via a slapstick sideshow that robs them of their worth as women. When humor becomes harassment, it has gone too far.

Acts of prejudice that are not crimes can still be harmful. In 2009 the Matthew Shepard and James Byrd Jr. Hate Crimes Prevention Act expanded the federal definition of hate crimes from LBJ's endorsed 1968 legislative action. A drag show may not be a hate crime, but it comes dreadfully close as it maligns one human group at the expense of another. It is not rocket science or the fancy footwork of legal wordsmithing, but a flat-footed understanding of human nature in its various dimensions.

Denigrating women in a drag show to raise money for suicide prevention is a bad idea and has a negative impact.

A harmless drag show? No, never. Rather, a drag show held for any reason could be harmful and demeaning to women. Therefore, WT should never tolerate, accept or appear to condone the diminishment of any group for any reason. Offering respect, not ridicule, is the order of the day for fair play.

*Walter V. Wendler is President of West Texas A&M University. His weekly columns, with hyperlinks, are available at https://walterwendler.com/.*

Deleted: ,

Deleted: ,

Deleted:

Deleted: ,

Deleted: the

Deleted: Men, therefore, have no right to contribute to women's suffering via a slapstick sideshow which

Deleted: ,

Deleted: ,

Deleted:

Deleted:

Deleted: ,

Deleted:

Deleted: manifold

Deleted:

Deleted:

Deleted:

Deleted:

Deleted:

Formatted: Font: 10 pt

Formatted: Font: 9 pt

Formatted: Font: 10 pt

RECORD FOR RELEASE
Adam Steinbaugh
H000731

## A Harmless Drag Show? No Such Thing.

An on-campus drag show (will be held or was held or planned but canceled) in an effort to raise money for The Trevor Project. The nonprofit organization focuses on suicide prevention—a noble cause—in the LGBTQIA* community. Any person considering self-harm for any reason is tragic. I believe every human being, everyone, is created in the image of God and, therefore, a person of dignity. Being created in God's image was the basis of Natural Law, the foundation for all human conduct for James Madison and Thomas Jefferson, who declared the divine origin of all as part of the fabric of the founding of a nation.

Does a drag show preserve a single facet of human dignity? I think not. As a performance exaggerating aspects of womanhood (sexuality, femininity, gender), drag shows stereotype women and discriminate against womanhood. Any event which diminishes an individual or group through such characterization is wrong. I registered a similar concern on campus when individuals debased Latinas regarding a quinceañera celebration. Should I not call out this misogynistic behavior portraying women as objects? While I am not a woman, my best friend of 54 years is. I will not stand for demeaning shows that objectify women, which includes my wife, daughter-in-laws, and granddaughters.

West Texas A&M University endeavors to treat all people equally as individuals. Drag shows are derisive, no matter the stated intent of those in drag, and run counter to the purpose of a public university. We cannot know the motivations of persons who present demeaning caricatures. A person or group should not attempt to elevate itself or a cause by making fun of another. As a university, we would not support "blackface" performances on our campus, even if told the performance is a form of free speech. I do not support any show, performance or artistic expression which demeans others—in this case women—for any reason (race, sexual orientation, gender, faith affiliation, physical or intellectual ability or disability). WT intends to provide fair opportunities to all based on academic performance. We are about ideas not ideology. A university campus, charged by the state of Texas to treat each individual fairly, should elevate students based on performance and capability, without regard to group membership—a high standard based on educational mission and service to all. These educational purposes are sanctioned by the legislature, the governor, and numerous elected and appointed officials.

The WT community should live by the Golden Rule, expressed this way in Buddhism: "Hurt not others with that which pains yourself," and this way in Judaism, "What you yourself hate, do to no man." Anthropologists demonstrate the law of reciprocity is at work in every known religion and society. I learned this basic way of living expressed in

**Deleted:**
**Deleted:** —
**Deleted:** a noble cause

**Deleted:** in a number of manifestations.
**Deleted:** effort
**Deleted:** to
**Deleted:** 's identity
**Deleted:** of a person or group
**Deleted:**
**Deleted:** as
**Deleted:** that is demeaning to women
**Deleted:** them
**Deleted:** sexual
**Deleted:** human beings
**Deleted:** when
**Deleted:** they
**Deleted:** an
**Deleted:** unwelcome
**Deleted:** Does motive even matter? One
**Deleted:** cannot
**Deleted:** eroding
**Deleted:** tax-supported public
**Deleted:** I
**Deleted:** I were to be
**Deleted:**
**Deleted:** that
**Deleted:** it
**Deleted:**
**Deleted:** ,
**Deleted:** that
**Deleted:** a person
**Deleted:** I believe that on a
**Deleted:** should be evaluated

Plf. Appx. 153

RECORD FOR RELEASE
Adam Steinbaugh
H000731

the book of Mathew, *"So in everything, do to others what you would have them do to you, for this sums up the Law and the Prophets."*

Mocking or objectifying in any way members of any group based on appearance, bias, or predisposition is unacceptable. Critics might argue, "Wendler doesn't know what he's talking about. He is not like me." If the standard of judgement is dependent on sameness, we are doomed. The fact is, women and men have been working for nearly two centuries to eliminate systemic sexism. Women have fought valiantly seeking equality in the voting booth, marketplace and court of public opinion. No one should claim a right to contribute to women's suffering via a slapstick sideshow that erodes the worth as women.

When humor becomes harassment, it has gone too far. The Matthew Shepard and James Byrd Jr. Hate Crimes Prevention Act affirmed acts of raw prejudice, even if they are not criminal, are harmful. No amount of fancy rhetorical footwork or legal wordsmithing avoids the fact that drag shows denigrate and demeans women—even if the stated purpose for having a drag show is for a good purpose like raising money for suicide prevention.

A harmless drag show? No, never. I will never tolerate, accept, or appear to condone the diminishment of any group for any reason. Supporting The Trevor Project is a great idea. My recommendation is skip the show and send the dough.

Offering respect, not ridicule, is the order of the day for fair play and is the WT way.

*Walter V. Wendler is President of West Texas A&M University. His weekly columns, with hyperlinks, are available at https://walterwendler.com/.*

**Deleted:** He

**Deleted:** ; h

**Deleted:** a heterosexual

**Deleted:** man.

**Deleted:** I argue

**Deleted:** Drag shows reinforce sexism and demean women regardless of intention.

**Deleted:** ,

**Deleted:** Therefore, n

**Deleted:** owns

**Deleted:** the

**Deleted:** robs them of their

**Deleted:** .

**Moved down [1]:** Acts of raw prejudice that are not crimes are harmful.

**Deleted:** on a public university campus

**Deleted:** ¶

**Moved (insertion) [1]**

**Deleted:** A

**Deleted:** that are not crimes

**Deleted:**

**Deleted:** that

**Deleted:** .

**Deleted:** A drag show comes dreadfully close to maligning one group by the misdeeds of another. ... [1]

**Deleted:** matter the

**Deleted:** ,

**Deleted:** a

**Deleted:** cannot avoid

**Deleted:** demans

**Deleted:** ing

**Deleted:**

**Deleted:** it

**Deleted:** claims to do so

**Deleted:** Rather, a drag show is by definition ... [2]

**Deleted:** , but I would send the money and skip th ... [3]

**Deleted:** It's sexist, and, it's morally and ethically ... [4]

**Deleted:** . That is

Plf. Appx. 154

RECORD FOR RELEASE
Adam Steinbaugh
H000731

WEST TEXAS A&M UNIVERSITY

**Page 2: [1] Deleted**      **Rasberry, Todd**   **3/15/2023 7:56:00 AM**

**Page 2: [2] Deleted**      **Rasberry, Todd**   **3/15/2023 7:57:00 AM**

**Page 2: [3] Deleted**      **Rasberry, Todd**   **3/15/2023 7:58:00 AM**

**Page 2: [4] Deleted**      **Rasberry, Todd**   **3/15/2023 7:58:00 AM**

Plf. Appx. 155

RECORD FOR RELEASE
Adam Steinbaugh
H000731

WEST TEXAS A&M UNIVERSITY

## A Harmless Drag Show? No Such Thing.

An on-campus drag show (will be held or was held or planned but canceled) in an effort to raise money for The Trevor Project. The nonprofit organization focuses on suicide prevention in the LGBTQ community—a noble cause. Any person considering self-harm for any reason is tragic. I believe every human being, everyone, is created in the image of God and, therefore, a person of dignity. Being created in God's image was the basis of Natural Law, the foundation for all human conduct for James Madison and Thomas Jefferson, who declared the divine origin of all as part of the fabric of the founding of a nation.

Does a drag show preserve human dignity? I think not. As a performance exaggerating aspects of womanhood (sexuality, femininity, gender), drag shows stereotype women and discriminate against womanhood in a number of manifestations. Any effort to diminish an individual's identity through such characterization of an individual or group is wrong. We would immediately call out a group performing in blackface as demeaning or racist. Should we not call out as misogynistic and demeaning to women a show portraying the caricature of women as sexual objects?

West Texas A&M University endeavors to treat all people equal as individuals. Drag shows are derisive no matter the stated intent of those in drag and run counter to the purpose of a public university. We cannot know the motivations of human beings when they present an unwelcome caricature. Does motive even matter? One group cannot elevate itself by eroding another. As a tax-supported public university, I do not support "blackface" performances on our campus, even if I were to be told that it is a form of free speech. I do not support a drag show. I do not support any show, performance, or artistic expression that demeans a person—in this case women—for any reason (race, sexual orientation, gender, faith affiliation, physical or intellectual ability or disability). WT intends to provide fair opportunities to all based on academic performance. I believe that on a university campus, charged by the state of Texas to treat each person fairly, students should be evaluated based on performance and capability, without regard to group membership—a high standard based on educational mission and service to all. These educational purposes are sanctioned by the legislature, the governor, and numerous elected and appointed officials.

The WT community should live by the Golden Rule, expressed this way in Buddhism: "Hurt not others with that which pains yourself," and this way in Judaism, "What you yourself hate, do to no man." Anthropologists demonstrate the law of reciprocity is at work in every known religion and society. I learned this basic way of living expressed in the book of Mathew, *"So in everything, do to others what you would have them do to you, for this sums up the Law and the Prophets."* Mocking or objectifying in any way members of any group based on appearance, bias, or assumed predisposition is

| | |
|---|---|
| **Deleted:** ly, | |
| **Deleted:** , and | |
| **Deleted:** d | |
| **Deleted:** nor allow | |
| **Deleted:** | |
| **Deleted:** no matter how often | |
| **Deleted:** I was | |
| **Deleted:** | |
| **Deleted:** ; | |

Plf. Appx. 156

RECORD FOR RELEASE
Adam Steinbaugh
H000731

unacceptable to me. Critics might argue, "He doesn't know what he's talking about; he is a cisgender man." I argue, women and men have been working for nearly two centuries to eliminate systemic sexism. Drag shows reinforce sexism and demean women regardless of intention. Women have fought valiantly for centuries seeking equality in the voting booth, marketplace, and court of public opinion. Therefore, men (or anyone) have no right to contribute to women's suffering via a slapstick sideshow that robs them of their worth as women. When humor becomes harassment, it has gone too far.

Acts of prejudice that are not crimes can still be harmful. In 2009, the Matthew Shepard and James Byrd Jr. Hate Crimes Prevention Act expanded the federal definition of hate crimes from President Lindon B. Johnson's, endorsed 1968 legislative civil rights action. A drag show may not be a hate crime, but it comes dreadfully close by maligning one group at the expense of another. It is not rocket science, and no matter the fancy footwork of legal wordsmithing, a drag show is cannot avoid denigrating women even if it claims to do so for a good purpose like, raising money for suicide prevention.

A harmless drag show? No, never. Rather, a drag show held for any reason will be harmful and demeaning to women. Therefore, WT should never tolerate, accept, or appear to condone the diminishment of any group for any reason. Offering respect, not ridicule, is the order of the day for fair play.

*Walter V. Wendler is President of West Texas A&M University. His weekly columns, with hyperlinks, are available at https://walterwendler.com/.*

| Deleted: To the c |
| Deleted: who wants to say |

| Deleted: LBJ's |
| Deleted: as it |
| Deleted: s |
| Deleted: human |
| Deleted: or |
| Deleted: but a flat-footed |
| Deleted: understanding of human nature in its various dimensions. ¶ D |
| Deleted: in a drag show t |
| Deleted: o |
| Deleted: e |
| Deleted: is a bad idea and has a negative impact |
| Deleted: could |

Plf. Appx. 157

RECORD FOR RELEASE
Adam Steinbaugh
H000731

## A Harmless Drag Show? No Such Thing.

An on-campus drag show (will be held or was held or planned but canceled) in an effort to raise money for The Trevor Project. The nonprofit organization focuses on suicide prevention—a noble cause—in the LGBTQIA* community—. Any person considering self-harm for any reason is tragic. I believe every human being, everyone, is created in the image of God and, therefore, a person of dignity. Being created in God's image was the basis of Natural Law, the foundation for all human conduct for James Madison and Thomas Jefferson, who declared the divine origin of all as part of the fabric of the founding of a nation.

Does a drag show preserve a single facet of human dignity? I think not. As a performance exaggerating aspects of womanhood (sexuality, femininity, gender), drag shows stereotype women and discriminate against womanhood. Any event which diminishes an individual or group through such characterization is wrong. I registered a similar concern on campus when individuals debased Latinas regarding a quinceañera celebration.   Should I not call out as misogynistic behavior portraying women as objects?

West Texas A&M University endeavors to treat all people equally as individuals. Drag shows are derisive, no matter the stated intent of those in drag, and run counter to the purpose of a public university. We cannot know the motivations of persons who present demeaning caricatures.  A person or group should not attempt to elevate itself or a cause by making fun of another. As a university, we would not support "blackface" performances on our campus, even if told the performance, is a form of free speech. I do not support any show, performance, or artistic expression which demeans others—in this case women—for any reason (race, sexual orientation, gender, faith affiliation, physical or intellectual ability or disability). WT intends to provide fair opportunities to all based on academic performance. We are about ideas not ideology. A university campus, charged by the state of Texas to treat each individual fairly, should elevate students based on performance and capability, without regard to group membership—a high standard based on educational mission and service to all. These educational purposes are sanctioned by the legislature, the governor, and numerous elected and appointed officials.

The WT community should live by the Golden Rule, expressed this way in Buddhism: "Hurt not others with that which pains yourself," and this way in Judaism, "What you yourself hate, do to no man." Anthropologists demonstrate the law of reciprocity is at work in every known religion and society. I learned this basic way of living expressed in the book of Mathew, *"So in everything, do to others what you would have them do to you, for this sums up the Law and the Prophets."*

**Deleted:**
**Deleted:** a noble cause

**Deleted:**  in a number of manifestations.
**Deleted:** effort
**Deleted:** to
**Deleted:** 's identity
**Deleted:** of a person or group
**Deleted:** that is demeaning to women
**Deleted:** them
**Deleted:** sexual
**Deleted:** human beings
**Deleted:** when
**Deleted:** they
**Deleted:** an
**Deleted:** unwelcome
**Deleted:** Does motive even matter? One
**Deleted:** cannot
**Deleted:** eroding
**Deleted:** tax-supported public
**Deleted:** I
**Deleted:** I were to be
**Deleted:** that
**Deleted:** it
**Deleted:** that
**Deleted:** a person
**Deleted:** I believe that on a
**Deleted:** should be evaluated

RECORD FOR RELEASE
Adam Steinbaugh
H000731

WEST TEXAS A&M UNIVERSITY

Mocking or objectifying in any way members of any group based on appearance, bias, or predisposition is unacceptable. Critics might argue, "Wendler doesn't know what he's talking about. He is not like me." If the standard of judgement is dependent on sameness, we are doomed. The fact is, women and men have been working for nearly two centuries to eliminate systemic sexism. Women have fought valiantly seeking equality in the voting booth, marketplace, and court of public opinion. No one should claim a right to contribute to women's suffering via a slapstick sideshow that erodes the worth as women.

When humor becomes harassment, it has gone too far. The Matthew Shepard and James Byrd Jr. Hate Crimes Prevention Act affirmed acts of raw prejudice, even if they are not criminal, are harmful. No amount of fancy rhetorical footwork or legal wordsmithing avoids the fact that drag shows denigrate and demans women even if the stated purpose for having a drag show is for a good purpose like raising money for suicide prevention.

A harmless drag show? No, never. I will never tolerate, accept, or appear to condone the diminishment of any group for any reason. Supporting The Trevor Project is a great idea. My recommendation is skip the show and send the dough.

Offering respect, not ridicule, is the order of the day for fair play and is the WT way.

*Walter V. Wendler is President of West Texas A&M University. His weekly columns, with hyperlinks, are available at https://walterwendler.com/.*

| Deleted: He |
|---|
| Deleted: ; h |
| Deleted: a heterosexual |
| Deleted: man. |
| Deleted: I argue |
| Deleted: Drag shows reinforce sexism and demean women regardless of intention. |
| Deleted: Therefore, n |
| Deleted: owns |
| Deleted: the |
| Deleted: robs them of their |
| Deleted: . |
| Moved down [1]: Acts of raw prejudice that are not crimes are harmful. |
| Deleted: on a public university campus |
| Deleted: ¶ |
| Moved (insertion) [1] |
| Deleted: A |
| Deleted: that are not crimes |
| Deleted: that |
| Deleted: A drag show comes dreadfully close to maligning one group by the misdeeds of another. No high-minded rhetoric here. |
| Deleted: matter the |
| Deleted: , |
| Deleted: a |
| Deleted: cannot avoid |
| Deleted: ing |
| Deleted: it |
| Deleted: claims to do so |
| Deleted: Rather, a drag show is by definition demeaning to women. WT should |
| Deleted: , but I would send the money and skip the ill-conceived and dehumanizing show. |
| Deleted: It's sexist, and, it's morally and ethically wrong, and inconsistent with the values of WT, and the Texas Panhandle. |
| Deleted: . That is |

RECORD FOR RELEASE
Adam Steinbaugh
H000731

| | |
|---|---|
| **From:** | |
| **To:** | Wendler, Walter V. |
| **Subject:** | [EXTERNAL] Re: Drag Show |
| **Date:** | Saturday, March 18, 2023 5:50:22 PM |

Sounds good. Let's find a time. I've missed you - it's me that's been AWOL.

Get Outlook for iOS

**From:** Wendler, Walter V. <wwendler@wtamu.edu>
**Sent:** Saturday, March 18, 2023 11:49:49 AM
**To:**
**Subject:** Re: Drag Show

**ATTENTION! This email originated from an EXTERNAL sender. Please do not click links or open attachments contained in this email unless you are sure the email comes from a known sender, and have verified the content is safe. If you suspect fraud, click "Phish Alert."**

Alex, you're too kind with your compliments but I certainly appreciate them. Can't do brunch tomorrow…beans.

I would like to find a time next week when we can visit. Maybe early in the day for coffee. I'd be pleased to come to you.

Walter

Get Outlook for iOS

**From:**
**Sent:** Saturday, March 18, 2023 9:41:19 AM
**To:** Wendler, Walter V. <wwendler@wtamu.edu>
**Subject:** [EXTERNAL] RE: Drag Show

Oh man, Walther. This is SO good. So bold. So full of truth.

I'm so inspired by it.

You are a man of courage and conviction and principle. I'm proud to know you.

I haven't been on break – just under water with some things. Maybe we have brunch tomorrow?

Alex

**From:** Wendler, Walter V. <wwendler@wtamu.edu>
**Sent:** Saturday, March 18, 2023 8:59 AM
**To:**
**Subject:** Drag Show

Plf. Appx. 160

RECORD FOR RELEASE
ADAM STEINBAUGH
H000731

WEST TEXAS A&M UNIVERSITY

**ATTENTION! This email originated from an EXTERNAL sender. Please do not click links or open attachments contained in this email unless you are sure the email comes from a known sender, and have verified the content is safe. If you suspect fraud, click "Phish Alert."**

Alex,

I think you may be on break, but I want to share the attached with you.  A group has scheduled a drag show on campus.  I am canceling it.  I will likely get some pushback.

I am attaching what will be published next week.  Until then I am not talking about it. I share this with you as a heads-up and would ask that you hold it close.

I hope you are having a good break if you are on one.  If not, you ought to be.  You work too hard!

Walter


Walter V. Wendler
President
West Texas A&M University
Canyon, Texas  79016
Email:  wwendler@wtamu.edu
Phone:  806-651-2100
For Reflections on Higher Education visit *http://walterwendler.com/*



Plf. Appx. 161

RECORD FOR RELEASE
ADAM STEINBAUGH
H000731

| | |
|---|---|
| **From:** | Wendler, Walter V. |
| **To:** | Rejino, David |
| **Subject:** | Fwd: Message from President Wendler: A Harmless Drag Show? No Such Thing. |
| **Date:** | Monday, March 20, 2023 6:03:03 PM |
| **Attachments:** | image001.png |

FYI

**From:** President Walter V. Wendler <president@wtamu.edu>
**Sent:** Monday, March 20, 2023 4:39:53 PM
**To:** ALL <ALL@wtamu.edu>
**Subject:** Message from President Wendler: A Harmless Drag Show? No Such Thing.



**Office of the President**

*visio | veritas | valor*

**To:**     Students, Faculty and Staff

**From:**   Walter V. Wendler, President

**Date:**    March 20, 2023

**RE:**     A Harmless Drag Show? No Such Thing.

West Texas A&M University will not host a drag show on campus. It was advertised for March 31, 2023, as an effort to raise money for The Trevor Project. The nonprofit organization focuses on suicide prevention—a noble cause—in the LGBTQ community. Any person considering self-harm for any reason is tragic.

I believe every human being is created in the image of God and, therefore, a person of dignity. Being created in God's image is the basis of Natural Law. James Madison and Thomas Jefferson, prisoners of the culture of their time as are we, declared the Creator's origin as the foundational fiber in the fabric of our nation as they breathed life into it.

Does a drag show preserve a single thread of human dignity? I think not. As a performance exaggerating aspects of womanhood (sexuality, femininity, gender), drag shows stereotype women in cartoon-like extremes for the amusement of others and discriminate against womanhood. Any event which diminishes an individual or group through such representation is wrong. I

Plf. Appx. 162

RECORD FOR RELEASE
Adam Steinbaugh
H000731

registered a similar concern on campus when individuals debased Latinas regarding a quinceañera celebration. Should I let rest misogynistic behavior portraying women as objects? While I am not a woman, my best friend I have been married to for over a half-century is. I am also blessed to have daughters-in-law and granddaughters. Demeaning any demeans all. This is not an intellectual abstraction but a stark reality.

WT endeavors to treat all people equally. Drag shows are derisive, divisive and demoralizing misogyny, no matter the stated intent. Such conduct runs counter to the purpose of WT. A person or group should not attempt to elevate itself or a cause by mocking another person or group. As a university president, I would not support "blackface" performances on our campus, even if told the performance is a form of free speech or intended as humor. It is wrong. I do not support any show, performance or artistic expression which denigrates others—in this case, women—for any reason. WT intends to provide fair opportunities to all based on academic performance. Ideas, not ideology, are the coin of our realm. A university campus, charged by the state of Texas to treat each individual fairly, should elevate students based on achievement and capability, performance in a word, without regard to group membership—an implacable and exacting standard based on educational mission and service to all, sanctioned by the legislature, the governor and numerous elected and appointed officials.

The WT community should live by the Golden Rule. As a Christian, I personally learned this in the book of Matthew, "*So in everything, do to others what you would have them do to you, for this sums up the Law and the Prophets.*" Buddhism expresses it this way: "Hurt not others with that which pains yourself." Judaism states, "What you yourself hate, do to no man." The law of reciprocity is at work in every known religion and society on the planet. Colloquially speaking, it is a manifestation of Newton's Third Law of Motion, "For every action, there is an equal and opposite reaction."

Mocking or objectifying in any way members of any group based on appearance, bias or predisposition is unacceptable. Forward-thinking women and men have worked together for nearly two centuries to eliminate sexism. Women have fought valiantly, seeking equality in the voting booth, marketplace and court of public opinion. No one should claim a right to contribute to women's suffering via a slapstick sideshow that erodes the worth of women.

When humor becomes harassment, it has gone too far. Any reading of the U.S. Equal Employment Opportunity Commission's purpose, coupled with common sense, affirms that acts of prejudice in the workplace and our campus is a workplace, even when not criminal, are harmful and wholly inappropriate. No amount of fancy rhetorical footwork or legal wordsmithing eludes the fact that drag shows denigrate and demean women—noble goals notwithstanding.

A harmless drag show? Not possible. I will not appear to condone the diminishment of any group at the expense of impertinent gestures toward

Plf. Appx. 163

RECORD FOR RELEASE
Adam Steinbaugh
H000731

WEST TEXAS A&M UNIVERSITY

another group for any reason, even when the law of the land appears to require it. Supporting The Trevor Project is a good idea. My recommendation is to skip the show and send the dough.

Offering respect, not ridicule, is the order of the day for fair play and is the WT way. And equally important, it is the West Texas way.

## Walter V. Wendler
**President**
806.651.2100
president@wtamu.edu

If you need email content or attachments in alternate formats for accessibility, please send your contact information and the details of your request to accessibility@wtamu.edu.

Plf. Appx. 164

RECORD FOR RELEASE
Adam Steinbaugh
H000731

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 14, 2025, a true and correct copy of the foregoing appendix was transmitted via using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

<u>/s/ Adam Steinbaugh</u>
Adam Steinbaugh
FOUNDATION FOR INDIVIDUAL
    RIGHTS AND EXPRESSION