**United States District Court**
**Northern District of Texas**
**Amarillo Division**

SPECTRUM WT,
      Plaintiff,
v.
WALTER WENDLER,
      Defendant.

No. 2:23-cv-00048

**DEFENDANT WENDLER'S BRIEF IN OPPOSITION**
**TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant Walter Wendler, in his official capacity as President of West Texas A & M

University, files his Brief in Opposition to Plaintiff Spectrum WT's Motion for Summary Judgment

(ECF. No. 144) as follows.

TABLE OF CONTENTS

Table of Contents ............................................................................................................ ii

Table of Authorities ....................................................................................................... iii

Introduction ..................................................................................................................... 1

Standard of Review ......................................................................................................... 6

Disputed Material Facts ................................................................................................... 7

I.    Subject Matter Jurisdiction: Spectrum WT Lacks Standing and Its Claims Herein Are Not Ripe for Adjudication ........................................................................................... 11

II.    Spectrum WT Fails on The Merits ...................................................................... 13

   A.    The Proposed 2023 and 2024 Drag Shows to be Held in Legacy Hall Were Not Expressive Conduct Protected by the First Amendment ........................................... 13

   B.    Legacy Hall is a Limited Public Forum that WTAMU Expressly Reserves for Events that are not Inappropriate or Inconsistent with the University's Educational Mission and Core Values ........................................................................................................... 16

   C.    President Wendler Did Not Engage in Any Viewpoint-based or Content-based Discrimination Against Spectrum WT or Impose a Prior Restraint on Any Speech ............ 17

III.    Spectrum Has Suffered No Irreparable Harm And Is Threatened With None ............ 18

   A.    Spectrum was Not Irreparably Damaged by Holding a Drag Show Off Campus Rather than at Legacy Hall in 2023 or 2024 ............................................................................ 19

   B.    Spectrum WT is Not Threatened With Irreparable Harm as to the Proposed April 2026 Legacy Hall Drag Show ............................................................................................. 19

IV.    An Injunction Would Disserve the Public Interest, And the Balance of Equities Favors Defendant Wendler ..................................................................................................... 20

V.    The Court Should Exercise Its Equitable Discretion to Deny Injunctive Relief on the Facts of This Case ....................................................................................................... 22

VI.    Declaratory Relief Would Be Inappropriate And Unwarranted .................................... 23

Certificate Of Service .................................................................................................... 24

TABLE OF AUTHORITIES

**Cases**

*Allied World Surp. Lines v. Blue Cross & Blue Shield of Miss.*,
 No. 3:17-cv-251-DPJ-FKB, 2018 U. S. Dist. LEXIS 8021 (S. D. Miss. 2018) ...........................23

*Burrell v. Twin Goose, LLC*,
 No. 3:16-cv-1079-L 2017 U. S. Dist. LEXIS 156669 (N. D. Tex. 2017)....................................23

*Christian Legal Soc'y of the Univ. of Cal. Hastings Coll. of the Law v. Martinez*,
 561 U. S. 661 (2010) ................................................................................................... 3, 16, 17, 21

*Cooper Tire & Rubber Co. v. Farese, Farese & Farese Prof. Ass'n*,
 423 F.3d 446 (5th Cir. 2005) .................................................................................................. 6

*Deville v. McDaniel*, 567 F.3d 156 (5th Cir. 2009) .......................................................................... 6

*EBay, Inc. v. MercExchange, L. L. C.*,
 547 U. S. 388 (2006) ................................................................................................................23

*eBay, Inc. v. MercExchange*,
 *L.L.C.*, 547 U. S. 388 (2006) ................................................................................................. 22

*Int'l Shortstop, Inc. v. Reilly's, Inc.*,
 939 F.2d 1257 (5th Cir. 1991), cet. denied, 502 U. S. 1059 (1992). ............................................. 6

*Lujan v. Defenders of Wildlife*,
 504 U. S. 555 (1992) ................................................................................................................ 11

*The Woodlands Pride, Inc. v. Paxton*,
 No. 23-20480, 2025 U.S. App. LEXIS 29217* (5th Cir. Nov. 6, 2025) .....................................21

*Trump v. CASA, Inc.*,
 606 U. S. 831 (2025)................................................................................................................ 22

*United States v. O'Brien*,
 391 U. S. 367 (1968)................................................................................................................ 15

*Widmar v. Vincent*,
 454 U.S. 263 (1981) ..................................................................................................................3

*Wilton v. Seven Falls Co.*,
 515 U. S. 277 (1995)................................................................................................................23

**Statutes**

Fed. R. Civ. P. 65(d)(1) ............................................................................................................23

## INTRODUCTION

President Wendler is charged by the State of Texas, and by the Board of Regents of the Texas A & M University System, with the responsibility to carry out the educational mission of West Texas A & M University ("WTAMU") and uphold its core values. One of the most important of those core values is "Respect."App'x 169 at 86-89; App'x 4; App'x 373; App'x 39.

 At WTAMU, this means, at a minimum, that the common humanity of each person must not be demeaned or denigrated in WTAMU campus facilities. Plaintiff Spectrum WT is aware of WTAMU's core value of Respect and also is committed to live by this core value of WTAMU. App'x 169 at 87- 88.

Unlike some public university administrators, President Wendler has exercised the leadership required to live up to his responsibilities. He has done so even at the cost of nationwide media attacks, huge amounts of hate mail, and years of litigation. This case tests whether such educational leadership—actually upholding the core value of Respect on the WTAMU campus— is now deemed unconstitutional in America. Under the law and the facts of this case, President Wender's leadership is consistent both with the First Amendment and with the best traditions of American public education.

Plaintiff Spectrum WT's arguments to the contrary are based on misinterpretations of both the facts and the law. All conduct is not necessarily "speech" protected by the First Amendment and all conduct is not "inherently expressive." Sometimes it is just conduct that does not rise to the level of First Amendment Speech. *See* Memorandum Opinion and Order dated Sept. 21, 2023, at 10-14 (ECF No. 59) (all drag shows not inherently expressive and constitutionally protected speech).

Plaintiff Spectrum WT, in its 2023 drag show at Legacy Hall, proposed to present "Myss Myka" and other Amarillo drag queens to an audience including minors. The evidence will show that Myss Myka's drag show performances were typically sexualized and lewd, sometimes involving simulated masturbation and frottage. ECF No. 37-3. Plaintiff's insistence that the 2023 and 2024 proposed drag shows at Legacy Hall would somehow have been expressive conduct

protected by the First Amendment is, and was always, indefensible. Plaintiff now seems to have shifted to the argument that all "stage performance" is somehow constitutionally protected on public university campuses—apparently even those simulating sex acts. *See* ECF No. 144 at 17-18. But the law refutes that absolutist vision of the First Amendment.

Notably, Spectrum WT mischaracterizes Legacy Hall at WTAMU, which is a limited public forum. Legacy Hall in the Jack B. Kelly Student Center is and long has been clearly differentiated by WTAMU in its policies from traditional public forums like the "common outdoor areas" of the WTAMU campus, areas which are freely available for debate, demonstrations, protests, and other protected speech. App'x 8,9.

By way of contrast, the use of Legacy Hall by recognized student groups is plainly described in the Campus Organizations Handbook to such student groups as a "privilege." App'x 64; App'x 90 at 25: 3 –8.

Spectrum WT understands that access to WTAMU campus facilities is a privilege. App'x 169 at 119-20. And Spectrum WT understands that a "privilege" is different than a "right." Fanelli Dep. at 121-22. Student groups like Spectrum WT are clearly advised that they must obtain the University's approval to use Legacy Hall. App'x 169 at 131-32. That approval process is not limited to such matters as ensuring that there are enough seats or security for a proposed event. WTAMU has made it clear to student groups like Spectrum WT that the University reserves the right to cancel any proposed event in Legacy Hall that it deems inconsistent with the educational mission of WTAMU. App'x 150; App'x 571; App'x 54; App'x 169 at 116-18.

In cancelling Spectrum WT's proposed 2023 and 2024 drag shows in Legacy Hall, President Wendler simply enforced this express limitation on use of Legacy Hall that has long been made plain and is well understood by Spectrum WT. Fanelli Dep. at 116-18. As Spectrum WT testified:

> Q.     you understand that West Texas A & M University has the right to cancel or interrupt any event if the event can be viewed as inappropriate or not consistent with the mission of West Texas A & M University?
> A.     Yes.

This longstanding and publicly stated limitation is at the heart of what makes Legacy Hall a limited public forum dedicated to furthering the educational mission of WTAMU, and not a traditional or designated public forum. The evidence shows that this well-known limitation on use of Legacy Hall has been invoked sparingly, but allowing a wide variety of events that do *not* violate the express limitation does not, as Spectrum WT seems to think, abolish or delete that limitation. The evidence shows that President Wendler also declined to allow use of WTAMU facilities for a concert by a group whose song lyrics glorified guns and was a public safety risk. App'x 14, at 21.

The First Amendment does not compel public universities to open their indoor event spaces to host minstrel shows that include white students in blackface denigrating black students. It does not require that WTAMU host events at Legacy Hall at which neo-Nazi groups celebrate the Holocaust and denigrate Jews. And the First Amendment does not compel President Wendler to abandon his responsibilities by permitting drag shows at Legacy Hall that he sincerely believes are comparable to blackface performances in demeaning and denigrating women. *See* App'x 4.

The Supreme Court has long acknowledged the "special characteristics of the school environment." *Widmar v. Vincent*, 454 U.S. 263, 267-268 n.5 (1981). Universities are entitled to adopt reasonable policies, "due decent respect" by federal courts, that further their educational mission and enforce [n]ondiscrimination" policies and "state-law proscriptions on discrimination." *Christian Legal Soc'y of the Univ. of Cal. Hastings Coll. of the Law v. Martinez*, 561 U. S. 661, 687, 689-90 (2010) ("*CLS*"). University authorities like President Wendler thus are entitled to make good faith judgments (though inevitably disputed) as to whether events like the proposed 2023 Spectrum drag show will denigrate or demean others and violate the core values of WTAMU. App'x 1, at 2 (granting System Presidents "[g]eneral supervision of all student programs and services.")]. Such events may not be "banned" altogether but may be excluded from University event facilities like Legacy Hall as "restrictions on time, place, and manner."App'x 8, at 2.

Much of Spectrum WT's fundamental argument is that President Wendler's rationale for cancelling the Legacy Hall drag shows was a pretext for viewpoint or content discrimination. ECF No. 144 at 24-29. This hotly disputed claim itself would raise a material fact issue precluding

summary judgment, but the evidence refutes any suggestion that President Wendler cancelled the proposed Spectrum drag shows because of some secret antipathy toward LGBTQ+ groups or persons. App'x 4; App'x 90 85:6-86:12. Spectrum's claim of viewpoint or content discrimination thus is without factual basis.

To the contrary, the evidence shows and Spectrum WT admits, that President Wendler has *never* interfered at any time with any other activities of Spectrum, on or off the WTAMU campus. App'x 169. at 32-24, 54-55; App'x 400 at 132:10-133:25 (discussing Spectrum's use of the JBK Student Center),23:25-26:1. Spectrum has extensively used, and continues to use, Legacy Hall and other facilities on the WTAMU campus to conduct a broad range of activities without incident. App'x 334 at 9-14 (listing numerous Spectrum events hosted on campus between Spring 2020 and Fall 2025). Spectrum WT's current president, Johnathan-Jayce Fanelli, affirmed that Spectrum WT has held dozens of events on and off campus without interference or harassment of any kind from President Wendler or WTAMU. App'x 19. at 54-55. The group's former president, Barrett "Bear" Bright, can likewise identify no instance—aside from President Wendler's decisions concerning Spectrum's drag shows—in which President Wendler or the University prohibited Spectrum's use of any on-campus facilities for its events. App'x 400 at 135:5-17 (acknowledging that after President Wendler's decision, Spectrum enjoyed "the same access to [WTAMU] buildings, rooms, et cetera, as [it] did before the controversy" surrounding on-campus drag shows).

Spectrum WT repeatedly mischaracterizes President Wendler's actions as a "ban" on drags shows or as "censorship" of Spectrum WT. *See generally* ECF No. 144; App'x 90 at 106:12-17; App'x 169 at 75. Yet the evidence shows these charges are unsupported. When President Wendler refused to allow the proposed 2023 drag show to occur at Legacy Hall, Spectrum WT held its drag show off campus at a public park, on the same weekend it planned to host the show on campus. App'x 49 at 64:12-24. At the off-campus show, Spectrum proceeded with the performances that it wished to present. App'x 49 at 55-57.

Myss Myka, other Amarillo drag queens, and Spectrum WT students performed their dance routines (some of which were risqué) before a large audience. The crowd included minors,

with some young children going onstage to place tips in the drag performers' scanty costumes. Spectrum WT fully and freely expressed what they misconceive as their First Amendment rights. Furthermore, the off-campus drag show in March 2023 drew an audience of two hundred or more, a significantly greater audience than had been expected at Legacy Hall. App'x 49 at 56, 65. It raised much more money for the Trevor Project than was expected had the drag show been held at Legacy Hall. *See* App'x 49 at 65 (financial success).

Most importantly, it will be undisputed there were no adverse consequences to Spectrum WT or its members from holding the off campus drag show in 2023. President Wendler and WTAMU expelled no one. WTAMU conducted no disciplinary proceedings against anyone. Spectrum WT remains a recognized student group at WTAMU and continues to use campus facilities for its activities without incident. App'x 169 at 49-50. The President of Spectrum WT admits that he is aware of no retaliation of any kind against Spectrum WT by President Wendler. App'x 169 at 65-67. If Spectrum WT had really been "banned" or "censored" from holding drag shows, there would have been consequences from presenting Myss Myka and other drag queens in a drag show in the park in 2023. But there were none.

Instead, the facts show President Wendler in 2023 and 2024 exercised his good faith judgment that the proposed Spectrum WT drag shows at Legacy Hall featuring Myss Myka and other Amarillo drag queens in the presence of minors was inconsistent with the educational mission and core values of WTAMU. He exercised the right of WTAMU to impose time, place, and manner restrictions on the proposed Spectrum WT drag show—specifically, a restriction on the "place" at which the drag show could proceed. Those decisions by President Wendler were consistent with the published limitations on use of Legacy Hall that Spectrum WT and other student groups knew, or at least were supposed to know, were applicable when they sought to exercise their privilege to reserve Legacy Hall. *Compare* App'x 400 at 128:16-129:21 (suggesting Bright, in planning Spectrum's 2023 drag show, was not fully "aware of the specific guidelines" governing use of the JBK) *with* App'x 169 at 116-18.

As every leader knows, not everyone will agree with the leader's good faith decisions. But leaders must nevertheless make what they honestly believe is the best decision possible in service of the responsibilities he or she bears, even if that decision is unpopular. President Wendler proved himself a leader faithful to his responsibilities in 2023 and 2024. He violated no one's constitutional rights, and he will not violate Spectrum WT's constitutional rights in the future.

### STANDARD OF REVIEW

Summary judgment is warranted only when the factual record establishes "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court must view the facts in the light most favorable to the non-moving party, here President Wendler. *Deville v. McDaniel*, 567 F.3d 156, 164 (5th Cir. 2009). A court must also draw all reasonable inferences from the facts in favor of the non-movant, here President Wendler. *Id.*

The Fifth Circuit has long stated that claims which involve determination of the movant's state of mind "are particularly ill-suited for summary judgment." *Cooper Tire & Rubber Co. v. Farese, Farese & Farese Prof. Ass'n*, 423 F.3d 446 (5th Cir. 2005); *Int'l Shortstop, Inc. v. Reilly's, Inc.,* 939 F.2d 1257, 1265 (5th Cir. 1991), cet. denied, 502 U. S. 1059 (1992). Spectrum WT's claims depend in part on the alleged intent of Spectrum WT to convey an "expressive message" through its proposed 2023 and 2024 drag shows, and also on whether an audience for those drag shows— which never occurred likely would have perceived and understood that purported message. As to the proposed April 2026 drag show, Spectrum WT's alleged intent to convey an "expressive message" is also at issue, although Spectrum WT admitted that the message of the 2026 proposed drag show will be whatever the yet-undetermined performers intend to express, as Spectrum WT has no particular expressive message itself. App'x 169. at 35-36, 40, 141-42. As a result, this case is especially ill-suited for resolution by summary judgment and requires the determination of sharply disputed facts after trial.

## DISPUTED MATERIAL FACTS

Plaintiff Spectrum WT includes in its Brief some eleven pages of what it labels as a "Statement of Undisputed Material Facts." Plaintiff's Brief in Support of Motion for Summary Judgment (ECF No. 144) ("Brief") at pp. 5-15. Some of the facts stated fit that description, but most are either disputed or immaterial. Defendant Wendler will describe some of them.

WTAMU makes available to student groups the "privilege" of conducting events in indoor campus facilities like Legacy Hall, but these events do not necessarily constitute "expressive activities" as Spectrum WT asserts. Rather, WTAMU makes Legacy Hall in the Jack B. Kelly Student Center ("JBK") available to recognized student groups only for events that are not inappropriate or inconsistent with the educational mission of WTAMU. App'x 571; App'x 150; App'x 54.

Spectrum applied for a reservation to use Legacy Hall for a drag show in March 2023. The organization chose to invite a drag performer known as "Myss Myka" and other Amarillo drag queens—all non-students at WTAMU and non-members of Spectrum WT—to participate in the 2023 drag show at Legacy Hall.  App'x 51; App'x 52.

To date, Spectrum cannot recall whether it, during the planning stages of its 2023 drag show, ever informed the JBK staff of its intentions to involve experienced, non-student drag performers participate in the event. App'x 400 at 74:17-77:20. Myss Myka has an extensive record of drag performances that may be considered lewd and inappropriate for minors. *See* ECF No. 37-3. Yet Spectrum WT planned to admit minors to the proposed 2023 drag show at Legacy Hall, which Myka was to emcee. App'x 400 at 76:18-19. Indeed, Spectrum WT's then-President Bear Bright even invited his younger siblings to attend the 2023 show. *See* App'x 400 at 67:10-12.

But WTAMU personnel never gave final confirmation to the proposed Spectrum WT 2023 drag show at Legacy Hall. As of March 20, 2023, Spectrum WT had not yet completed the review of the proposed performances and costumes at the drag show as required by WTAMU staff. App'x 56-61 (email thread); App'x 40'x 5910 at 121:21-124:16. Thus, despite any statements by Spectrum WT as to what it "planned" or "intended" to occur at the proposed March 2023 drag show at

Legacy Hall, or how it "instructed" proposed performers, or what "PG-13 rating" Spectrum claimed to assign to it, the fact is that as of March 20, 2023, no WTAMU staff had actually reviewed the proposed performances or costumes that would comprise the drag show. App'x 591 at 157. Instead, the task of previewing and preapproving drag performances was left to the discretion of Bear Bright and other Spectrum officers. App'x 591 at 157; App'x 400 at 124:17-127:7. Bright planned to perform in the Legacy Hall drag show himself but didn't inform JBK staff of that. App'x 400 at 157.

On March 20, 2023, President Wendler sent an email to the WTAMU campus community announcing that the Spectrum WT proposed March 31, 2023, drag show would not proceed at Legacy Hall. President Wendler alone made this decision. App'x 14, at 4. President Wendler's March 20 email articulated his view that drag shows demean and denigrate women. App'x 4. Shortly after the statement was issued, Dr. Thomas communicated with Spectrum's then-President Bear Bright that Wendler's decision was informed by his belief that drag shows discriminate against women. App'x 97, at 22. There is no evidence that President Wendler's conviction that drag shows demean, denigrate, and harm women was not sincerely and conscientiously held by him. Though Spectrum WT and many others may disagree with that view, it is one that is shared by many others. As Spectrum WT's President testified: "I'm sure it is a popular view. From what I've seen, it is." *E.g.*, App'x 169 at 101. *See generally* App'x 374-381 ("Drag=Blackface"); App'x 394- 399 ("Is Drag Misogynistic?").

Indeed, Spectrum's current President, Johnathan-Jayce Fanelli, is familiar with the view that drag shows are comparable to blackface minstrel performances in their demeaning effects. *His own mother and some of his uncles hold the same view as President Wendler*. App'x 169 at 103.

Spectrum WT was not "banned" from holding a drag show or "censored" by President Wendler. President Wendler merely exercised WTAMU's expressly reserved right to determine that the Spectrum WT drag show planned for March 31, 2023, would not proceed at Legacy Hall. But that drag show did proceed on or about the same March 31 date. App'x 49 at 64:12-20.

Spectrum WT held the drag show in Sam Houston Park in Amarillo, only about ten miles off the WTAMU campus. That event had significantly higher attendance than the performance planned for Legacy Hall, and it raised far more money for the Trevor Project than Spectrum had expected to raise at the proposed on-campus show. App'x 49 at 65.

Spectrum WT's off-campus drag show also featured Myss Myka and other Amarillo drag queens, as well as Spectrum WT members. App'x 400 at 101:18-103:1, 139:18- 140:3. But Spectrum WT made *no effort* to exclude minors of any age from that drag show. App'x 400 at 98: 5-101:17; App'x 90. at 130:2-131:3. And although the event was advertised to WTAMU students and community members as a PG-13 show, Spectrum admittedly did not preview or preapprove all the drag performers' routines before they took to the stage. App'x 400 at 100:16-22.

As this case proceeded in late 2023 and early 2024, Spectrum WT applied to reserve Legacy Hall for another drag show in March 2024. The proposed 2024 drag show was also to feature Myss Myka and involve other non-student drag queens. App'x 400 at 144:1-149:5. Spectrum WT again proposed that minors would be admitted to the proposed 2024 drag show. Spectrum WT applied to this Court, the Fifth Circuit Court of Appeals, and the United States Supreme Court for injunctive relief pending appeal that would force President Wendler to allow the proposed 2024 Spectrum WT drag show to proceed in Legacy Hall. None of the courts granted that relief. President Wendler declined to allow the proposed 2024 Spectrum WT drag show in Legacy Hall, but Spectrum WT remained free to hold a 2024 drag show at a venue of their choice off campus. Spectrum WT chose not to do so.

Spectrum WT also chose not to schedule a drag show either on the WTAMU campus or off campus in 2025. Even after a Fifth Circuit panel voted 2-1 on August 18, 2025, to reverse this Court's denial of a preliminary injunction against President Wendler, Spectrum WT took no action to schedule a drag show at any venue in the Fall Semester of 2025. This Court then set this case for trial in early 2026.

It was only in the final days of the discovery period in this case mid-December 2025, that Spectrum WT, with the participation of Spectrum WT's attorneys, submitted an online

reservation request for a drag show at Legacy Hall purportedly to occur in late April 2026. *See* Fanelli Dep. at 26-28, App'x 194-96.

Spectrum WT admits that it has only general intentions to hold such a 2026 show, but none of the details have yet been worked out. Fanelli Dep. at 31, App'x 199. The organization is "in the very, very early planning stages." and has not selected any of the performers, performances, costumes, or music for the purported April 2026 drag show. Fanelli Dep. at 30, App'x 198. Spectrum WT says that the expressive message of the show will be whatever the as-yet unidentified performers want to express, as Spectrum WT has no specific message of its own. Fanelli Dep. at 35-36, 40, App'x 203-04, 208.

Spectrum WT will have no control over whatever messages that the performers will convey by their performances at the proposed 2026 drag show:

> Q.    Now, as part of your previous answer, you noted that whatever performances occur in the proposed 2026 drag show, they may be perceived as having many messages to the audience; is that correct?
> A.    Yes.
> Q.    And there's no way that Spectrum – or perhaps even the performers – can control how their performances are perceived by different members of the audience, correct?
> A.    Yes.

Fanelli Dep. at 39, App'x at 207.

Despite the total absence of identified content for the proposed 2026 drag show, Spectrum WT says that its intention is that only student performers will be permitted (no Myss Myka or Amarillo drag queens); no minors will be permitted to attend; and Spectrum WT will ensure that all performances are "not inappropriate in any way." *See* Fanelli Dep. at 37, App'x at 205.

## I.    SUBJECT MATTER JURISDICTION: SPECTRUM WT LACKS STANDING AND ITS CLAIMS HEREIN ARE NOT RIPE FOR ADJUDICATION.

The Court's Second Amended Civil Scheduling Order (ECF No. 126) states at page 6 (emphasis added):

> Any brief supporting or responding to a motion for summary judgment must be accompanied by and include citations to a separately filed appendix of evidence sufficient to support a reasonable jury finding on any relevant jurisdictional facts and *such brief must directly (1) state whether the party invokes or opposes subject matter jurisdiction of this Court and (2) address the questions of fact and law that pertain to subject matter jurisdiction in this case.*

President Wendler opposes subject matter jurisdiction in this Court and offers the following to address the questions of fact and law that pertain to subject matter jurisdiction in this case. Defendant Wendler filed his Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 105) on September 5, 2025. The Court entered its Memorandum Opinion and Order on September 23, 2025 (ECF No. 116).

In order to have standing to sue, a "plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent,' not 'conjectural' or 'hypothetical[.]'" *E.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff always bears the burden of showing standing, and these are not mere pleading requirements but an indispensable part of the plaintiff's case. *Id.* at 561. The elements of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation". *Id.* At the final stage of a case, the facts relied on by the plaintiff to show standing must be supported adequately by the evidence adduced at trial. *Id.*

At trial in this case, Spectrum WT seeks only forward-looking injunctive and declaratory relief. In such cases, evidence as to past alleged injuries is relevant only for its predictive value. *See Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (citing *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974))

(past exposure to illegal conduct does not in and of itself show a present case or controversy regarding injunctive relief). Plaintiffs are required to show that they are "imminently" threatened with legal injury by the defendant absent injunctive relief from the court.

Spectrum WT cannot make this showing. Spectrum did nothing to schedule any drag show for more than a year and a half after March 2024. Indeed, Spectrum WT did nothing for months after the panel opinion in this case on August 18, 2025. Only in the last few days of the discovery period in this case in December 2025 did Spectrum WT submit an online reservation request for a drag show at Legacy Hall in late April 2026. Regardless of whether this online request is in good faith or merely a litigation ploy, it is unaccompanied by any concrete or specific plans.

Spectrum WT admits that the performers, costumes, music, and content of the purported April 2026 drag show are unknown at this point. Fanelli Dep. at 35-36, App'x at 203-04. Moreover, the purported "message" of the hypothetical 2026 drag show is unknown because it will be determined by the various as-yet unidentified performers, not by Spectrum. Spectrum WT itself admits it has no specific "message" it seeks to express by the proposed 2026 drag show. Fanelli Dep. at 40, App'x at 208.

Essentially, all Spectrum WT has with respect to the 2026 drag show are "general intentions". Fanelli Dep. at 31, App'x at 199. But the cases make clear that "some-day intentions -- without any description of concrete plans" do not support a finding of the actual or imminent injury required to support standing. E.g., *Summers v. Earth Island Institute*, 555 U. S. 488, 496 (2009); *Springer v. Graham*, No. 23-2192 & 23-2194, 2025 U.S. App. LEXIS 25445, at **15-21 (10th Cir. 2025) ("concrete plans" required to show imminent and not merely speculative injury). The Northern District of Texas has applied these principles to conclude that plaintiffs failed to meet the essential injury in fact requirement for standing. *See Segovia v. Admiral Realty, Inc.,* No 3:21-cv-2478-L, 2022 U.S Dist. LEXIS 138621, at *5-8 (N.D. Tex. 2022) (plaintiff failed to adequately show intent to return to challenged site so as to result in imminent threat of legal injury); *Strojnik v. Teof Hotel GP, LLC*, No. 3:19-cv-01336-E, 2020 U. S. Dist. LEXIS 158287, at **10-11 (N. D. Tex. 2020);

*Access 4 All, Inc. v. Wintergreen Comm'l P'ship, LTD*, No. 3:05-CV-1307-G 2005 U. S. Dist. LEXIS 26935, at ** 8-14 (N. D. Tex. 2005).

Neither Defendant Wendler nor the Court can know any of the concrete plans for the alleged 2026 drag show at Legacy Hall, because Spectrum WT itself does not know them. Those concrete plans simply do not exist.[1] Moreover, Spectrum WT has stated its intention that its proposed April 2026 drag show will be radically different than the drag shows it proposed for Legacy Hall in 2023 and 2024, and the drag show it actually held off campus in 2023. As a result, the "predictive value" of the events related to the proposed of 2023 and 2024 is minimal. Spectrum WT's assumption that President Wendler will not allow its proposed 2026 drag show is further undermined by the February 2025 decision of the Texas A&M University System that its Board of Regent will determine policy as to on-campus drag shows on a system-wide basis, apparently taking that policy decision away from individual campus leaders like President Wendler.

For all these reasons, Spectrum WT cannot show a threat of injury in fact and lacks standing. Spectrum WT's claim for forward-looking injunctive declaratory relief also is not ripe. This Court lacks subject matter jurisdiction. Under Federal Rule of Civil Procedure 12(h)(3), a court must dismiss an action if "the court determines at any time that it lacks subject matter jurisdiction." Accordingly, the Court should now dismiss this action.

## II.    SPECTRUM WT FAILS ON THE MERITS

### A.    THE PROPOSED 2023 AND 2024 DRAG SHOWS TO BE HELD IN LEGACY HALL WERE NOT EXPRESSIVE CONDUCT PROTECTED BY THE FIRST AMENDMENT.

Spectrum WT has not shown that any of its intended drag shows involved constitutionally protected "speech." The Free Speech Clause of the First Amendment protects only conduct that is

---

[1] Spectrum's President professes that the April 2026 drag show will be dramatically different than the proposed 2023 or 2024 drag shows. The Spectrum President asserts that only student drag performers will be allowed (no Myss Myka or lewd Amarillo drag queens); no minors will be allowed to attend; and all performances will be entirely "appropriate". But without concrete plans, who can know? And if the actual concrete plans align with these glib assertions, that would not be a performance similar to that cancelled by President Wendler in 2023 or 2024.

"inherently expressive"—that is, conduct "sufficiently imbued with elements of communication."
*Texas v. Johnson*, 491 U. S. 397, 404 (1989). Conduct meets that high standard only if "[1] an intent
to convey a particularized message was present, and . . . the likelihood was great that the message
would be understood by the those who viewed it." *Id*. Spectrum WT fails both prongs of this test.

Spectrum WT has made self-serving statements that its proposed drag shows were
intended to convey a general message of acceptance of LGBTQ people and lifestyles. Bright Dep.
at 51:8-17, App'x 450; Stovall Ex. 1, Verified Amended Complaint at 17,18, 29, App'x 097-147;
Fanelli Dep. 142, App'x at 210.

But this is far from a "particularized" message that can transform ordinary conduct into
First Amendment-protected "inherently expressive" activity. The very existence of Spectrum WT
as a recognized student organization on the WTAMU campus conveys the same generalized
message of LGBTQ+ acceptance. Virtually every activity of Spectrum WT on (or off) the WTAMU
campus, such as Queer History Night, Queer Movie Night, its social hours at the Bubble Bar or the
Tabletop Tavern, and Lavender Prom—all allowed without question by President Wendler and
WTAMU—convey the highly generalized message that LGBTQ+ people and lifestyles should be
or are accepted.

What then is the "particularized" message that Spectrum would intend to convey through
"choreographed performers dancing on stage in costume accompanied by music"? There is none.
As Spectrum WT testified about its proposed 2026 drag show:

> We are not trying to convey a specific message, no.

Fanelli Dep. at 40, App'x 208.

Do black choreographed performers dancing on stage in costume accompanied by music
intend to convey a *particularized* message of acceptance of black people and lifestyles? Do Native
American performers dancing on stage in costume accompanied by music intend to convey a
*particularized* message of acceptance of Native American people and lifestyles? No, they intend only

to engage in conduct that is culturally relevant to them, satisfying to them, and hopefully entertaining to their audiences. Like Spectrum WT, they have no particularized "message" that their dance is intended to convey, only conduct that may convey at the very most a very *generalized* message.

Thus, a drag show is markedly different than, for example, a draft resister publicly burning his draft card with the obvious intent to protest the draft and/or the Vietnam War. *See United States v. O'Brien*, 391 U. S. 367 (1968). It is different than refusing to salute a flag, *W. Va. Bd. of Educ., v. Barnette*, 319 U. S. 624, 632 (1943); or wearing a black armband to protest a war, *Tinker v. Des Moines Cmty. Sch. Dist.*, 393 U. S. 503, 505-06 (1969). Spectrum WT fails the first prong of the *Texas v. Johnson* test.

But Spectrum WT fails even more obviously to pass the second prong of that test. Not only is the purported message of LGBTQ+ acceptance at most a generalized one, but Spectrum WT also cannot show that "the likelihood was great that the message [purportedly of LGBTQ+ acceptance] would be understood by the those who viewed it." *See Johnson*, 491 U.S. at 404. The Supreme Court has cautioned that it "cannot accept the view that an apparently limitless variety of conduct can be labelled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U. S. 367, 376 (1968). After all, "[i]t is possible to find a kernel of expression in almost every activity a person undertakes." *City of Dallas v. Stanglin*, 490 U. S. 19, 25 (1989). Ultimately, "[i]n order for a message to be delivered by conduct, it must, in context, be reasonably apprehended by viewers." *Cabrol v. City of Youngsville*, 106 F.3d 101, 109 (5th Cir. 1997).

Spectrum WT may claim now that the [unknown] audiences of the proposed 2023 and 2024 drag shows at Legacy Hall somehow would have "understood" what it claims was a general message of LGBTQ+ acceptance. But it has conceded the contrary on appeal:

> Perhaps 'an observer' of Spectrum's drag performance 'may not discern that the performers' conduct communicates 'advocacy in favor of LGBTQ+ rights,' as the district court claimed.

Spectrum Brief at 29 (Case No. 23-20944, 5th Cir.). Even more importantly, Spectrum offers no summary judgment evidence whatsoever to establish that "the likelihood was great that the message [purportedly of LGBTQ+ acceptance] would be understood by the those who viewed it" in 2023 or 2024 [much less in April 2026]. These deficiencies clearly preclude any summary judgment (or recovery at all) in favor of Spectrum WT.

> **B.    LEGACY HALL IS A LIMITED PUBLIC FORUM THAT WTAMU EXPRESSLY RESERVES FOR EVENTS THAT ARE NOT INAPPROPRIATE OR INCONSISTENT WITH THE UNIVERSITY'S EDUCATIONAL MISSION AND CORE VALUES.**

The exclusion of Spectrum's drag shows from Legacy Hall was not unconstitutional because it was a reasonable, viewpoint neutral restriction on use of a limited public forum. Legacy Hall, an indoor event space that may be reserved for student use and which could be denied or cancelled if the proposed use was inconsistent with the educational mission of the University—is clearly a limited public forum. Unlike a designated public forum, Legacy Hall is *not* "open for indiscriminate public use for communicative purposes." *Lamb's Chapel v. Ctr, Moriches Union Free Sch. Dist.*, 508 U. S. 384, 392 (1993). And Legacy Hall plainly is not a traditional public forum, as WTAMU designates the "common outdoor areas" on its campus.

Because Legacy Hall is a limited public forum, Spectrum WT had the burden to show that President Wendler's exclusion of its drag show is not reasonable or viewpoint neutral. But it cannot meet that burden because President Wendler's action was both reasonable and viewpoint neutral. *See CLS*, 561 U.S at 679. The Supreme Court "ha[s] never denied a university's authority to impose reasonable regulations compatible with [its] mission upon the use of its campus and facilities." *Widmar*, 454 U. S. at 267 n.5. It has accordingly instructed the courts to "resist substitut[ing] their own notions of sound educational policy for those of the school authorities that they review." *CLS*, 561 U. S. at 686 (citation omitted). And it has deemed "reasonable" university efforts to enforce "nondiscrimination" policies and "state law proscriptions on discrimination." *Id*. at 689-90.

That is precisely what President Wendler did here. As he explained, by excluding Spectrum WT's proposed drag show from Legacy Hall, he sought to prevent an event in a major WTAMU

venue that would "[m]ock[] or objectify" women "based on appearance, bias, or predisposition" in violation of "the purpose of" the University, its "educational mission," and state and federal discrimination law. Wendler Ex. 3, March 2023 Statement, App'x 004-06. That restriction on "place" was particularly reasonable in light of the "substantial alternative channels that remain open"— including Spectrum WT's own on- and off-campus events—to express its purported message of LGBTQ+ acceptance. *CLS*, 561 U. S. at 690.

WTAMU's exclusion of Spectrum WT's drag show from Legacy Hall was also viewpoint neutral. As the Fifth Circuit panel majority stated, Spectrum was told only to "abandon *the way in which it wished* to deliver its message, i.e., the message of support of the LGBTQ+ community through the *delivery mechanism* of a drag show. *Spectrum WT v. Wendler*, 151 F.4th 714, 728 (5th Cir. 2025) (emphasis added). Critically, "President Wendler's objections were *not to the message* but to the way [in which it] would be delivered." *Id.* (emphasis added). The evidence bears this out overwhelmingly, since Spectrum WT admits that Dr. Wendler has never in any way interfered with its same message expressed through its myriad other activities Fanelli Dep. at 32-34, 67, App'x 200-02, 235 (no action by President Wendler to prohibit Spectrum from promoting, publishing, or organizing any messaging); Bright Dep. at 23:2-2:1, App'x 422; 132:10-133:2, 135:5-17, App'x 531-34. It was only the demeaning "delivery mechanism" of the proposed drag show to which President Wendler objected. President Wendler was prepared to uphold WTAMU's core value of "Respect" not only against such drag shows, but also against "blackface performances" and ridicule of "quinceanera celebrations" in a way that "debased Latinas." Wendler Ex 3, March 2023 Statement, App'x 004-06.

C.    **PRESIDENT WENDLER DID NOT ENGAGE IN ANY VIEWPOINT-BASED OR CONTENT-BASED DISCRIMINATION AGAINST SPECTRUM WT OR IMPOSE A PRIOR RESTRAINT ON ANY SPEECH.**

President Wendler prohibited the Spectrum WT 2023 and 2024 proposed drag shows at the limited public forum that is Legacy Hall. He did so in accordance with WTAMU's express reservation of the right to cancel any event at Legacy Hall that was inappropriate or inconsistent with

the educational mission of the University. Stovall Ex. 13, JBK023, App'x 154-72; Status Conference DX 6, JBK 2025, App'x 571-90; SF Ex. 56, Facility Use Procedure, App'x 054-55. President Wendler clearly did so not because of any animus toward Spectrum WT or LGBTQ+ community, but because President Wendler judges that the proposed drag shows denigrate and demean women. That is *not* a judgment based on disagreement with Spectrum WT's viewpoint—here, its purported message of "LGBTQ+ acceptance." Nor is it a judgment based on disagreement with the content of the proposed drag shows: "choreographed performers in costumes dancing to music." President Wendler's judgment was based not on Spectrum WT's purported message, but on the place and manner of the proposed drag show.

President Wendler therefore restricted the place—Legacy Hall—at which Spectrum WT could hold its drag show but did not do so in any way that prevented them from holding a drag show of their choosing off campus. Nor did President Wendler ever seek to impose any adverse consequences whatsoever on Spectrum WT or its members for holding that drag show. Assuming Spectrum WT had a constitutional right to have Myss Myka and others perform risqué dances in front of minors—which it does not. Spectrum WT exercised that right. The organization was not subject to any "prior restraint" on such alleged "speech." President Wendler did not violate the First Amendment right of free speech and Spectrum WT's claims fail on the merits.

### III.    SPECTRUM HAS SUFFERED NO IRREPARABLE HARM AND IS THREATENED WITH NONE

An essential element of a claim for injunctive relief is that the plaintiff show that it is imminently threatened with irreparable harm from conduct of the defendant. Here, Spectrum WT cannot make that showing because it was not irreparably damaged by President Wendler's cancellation of the proposed drag shows at Legacy Hall in 2023 and 2024.Nor is it threatened with irreparable harm as to the April 2026 drag show it very recently began to plan.

### A. SPECTRUM WAS NOT IRREPARABLY DAMAGED BY HOLDING A DRAG SHOW OFF CAMPUS RATHER THAN AT LEGACY HALL IN 2023 OR 2024.

Though Spectrum WT planned for a drag show in Legacy Hall in March 2023 with up to one hundred in attendance, Fouts Dep. 108:4-12, App'x 596, it actually held a drag show off campus that same week that drew more than 200. App'x 49 at 56. There were serious doubts that Spectrum WT could make any money for the Trevor Project from the proposed Legacy Hall drag show. *See* Fouts Dep. 108:4-12, App'x 596; App'x 56- 61. Yet Spectrum WT raised and delivered to the Trevor Project over $9,000 because of the drag show it held in Sam Houston Park off campus. Furthermore, the financial expenses associated with Spectrum's use of Sam Houston Park for the drag show were covered by the donations it garnered through its GoFundMe page. App. 568-570; App. 125.

Thus, Spectrum WT cannot show it suffered any damage, irreparable or otherwise, as a result of its drag show's exclusion from Legacy Hall by President Wendler. The same is true as to 2024, when Spectrum WT was free to hold a drag show off campus but simply chose not to do so. Bright Dep. 152:8-153:7, App. 551-552. Nor can Spectrum WT show it suffered irreparable harm when it was purportedly prevented from expressing its purported message in 2023. That is because Spectrum *did* have its drag show in Sam Houston Park, and that event reached a much larger audience than it could have had it proceeded in Legacy Hall. Chandler Dep. at 64:11-20, App. 050.

Spectrum WT's membership also was not adversely affected by any actions of President Wendler. Its membership has remained stable over the years from 2023 to the present. Fanelli Dep. at 21:1-22:19, App. 189-190. It maintains a full slate of activities on and off campus at WTAMU and admits there has been no retaliation against it by President Wendler of WTAMU. Fanelli Dep. 67:2-14, App. 235.

### B. SPECTRUM WT IS NOT THREATENED WITH IRREPARABLE HARM AS TO THE PROPOSED APRIL 2026 LEGACY HALL DRAG SHOW.

Spectrum WT has very recently submitted a barebones online reservation for a proposed drag show at Legacy Hall in 2026. "None of the details have yet been worked out" and the performers, costumes, music, and the purported "message" of the performers at the proposed

2026 drag show are all undetermined. Fanelli Dep. at 30:1-31:24, 40:1-25, App. 198-199, 208. Of course, WTAMU and President Wendler have not taken any action with respect to the proposed April 2026 drag show. App. 208.

Spectrum WT would like to simply *assume* that Dr. Wendler will not allow the proposed 2026 drag show in Legacy Hall. But a plaintiff is required to prove its claims, including irreparable harm, and not simply assume them. Spectrum WT has not done so. This is especially so here, where Spectrum WT states that the proposed 2026 drag show will be dramatically different than the proposed drag shows in 2023 and 2024: no minors in attendance, no non-student performers like Myss Myka and other drag queens; and no performances that are "inappropriate" in any way.

Moreover, Spectrum WT cannot prove irreparable harm as to the proposed 2026 drag show because there is no particularized expressive message that it seeks to convey through the drag show. Fanelli Dep. 35:18-36:18, 40:10:-16, App. 203-204, 208. Instead, the expressive message, if any with will be that intended by the performers. Fanelli Dep. 35:18-36:18, App. 203-204. Those performers and their "messages" are currently unknown, but one thing is certain: the unknown proposed drag show performers are not Spectrum WT and they are not plaintiffs in this case. For these additional reasons, Spectrum WT has failed to prove irreparable harm and is not entitled to summary judgment.

## IV.    AN INJUNCTION WOULD DISSERVE THE PUBLIC INTEREST, AND THE BALANCE OF EQUITIES FAVORS DEFENDANT WENDLER

The central public interest at stake in this case lies in furthering the educational mission of WTAMU, and more broadly in upholding the ability of university presidents to control the use of on-campus facilities in support of the educational mission and core values of their institutions. As a preliminary matter, Spectrum has not established that its drag shows are expressive conduct enjoying First Amendment protection. But even if it could make that showing, First Amendment rights are subject to reasonable time, place, and manner restrictions in a limited public forum like Legacy Hall. App. 7, at 2.

Here, President Wendler has enforced reasonable restrictions as to place, while permitting Spectrum WT to hold its drag show off campus. Tellingly, he has not imposed *any* adverse consequences on the group or its members. Fanelli Dep. 67:4-14, App. 235; Bright Dep. 23:25-26:1, 132:10- 133:25, 135:5-17, App. 422-425, 531-532,534. Nor has he interfered with Spectrum's ability to advance its mission of supporting and affirming LGBTQ+ students enrolled at WTAMU through its on-campus events. Fanelli Dep. at 32:8-34:22, 50:13-19, App'x 200-202, 218; Bright Dep. 27:12-28:2, App'x 426-427.

Ultimately, the permanent injunction Spectrum WT seeks would disserve the public interest by placing students, rather than university officials, effectively in charge of campus facilities. It would also invite federal courts to second-guess the judgments of those officials on educational policy even though "judges lack the on-the-ground expertise and experience of school administrators." *CLS,* 561 U.S. at 686. A permanent injunction would effectively open campus facilities to demeaning and degrading events like "blackface" minstrel shows, anti-Semitic rallies, and anti-LGBTQ+ events, as well as drag shows like those sought by Spectrum WT—regardless of what their antidiscrimination policies and community standards demand. Spectrum WT admits that these types of events must be permitted in Legacy Hall under its (erroneous) view of the First Amendment. Fanelli Dep. at 137:6-140:23, App'x 305-308 (WTAMU should not be allowed to prevent anti-semitic groups, neo-Nazi groups, and anti-LGBTQ+ groups from use of Legacy Hall).

The public interest here also lies in protecting minors from lewdness and gender ideology. Many minors are students at WTAMU. Many are jointly enrolled at WTAMU and area high schools. They walk the campus of WTAMU and take classes alongside adult university students. The voters of Texas have spoken loudly and clearly: K-12 students in Texas are not to be exposed to instruction on gender ideology. App'x 44. Moreover, Texas public policy, as embodied in S. B. 12, prevents minors from being present at lewd drag shows or other sexualized performances on public property. *Id.*; *The Woodlands Pride, Inc. v. Paxton*, No. 23-20480, 2025 U.S. App. LEXIS 29217*, at *6 (5th Cir. Nov. 6, 2025).

Yet the 2023 and 2024 drag shows proposed by Spectrum WT, featuring Myss Myka and other Amarillo drag queens, may very well have crossed the lines purposefully drawn by the Legislature. *See* App'x 7. During the one charity drag show that Spectrum *did* host in Sam Houston Park in March of 2023, it failed to take reasonable steps to protect minor attendees. Bright Dep. 98:5-101:17, App'x 497-500. It abdicated that responsibility simply because the show occurred in a public park. Bright Dep. 100:6-101:3, App'x 499-500; Stovall Dep. 130:2-131:3, App'x 095-096. Accordingly, a permanent injunction like that sought by Spectrum WT would disserve the declared public interest of Texas in protecting minors from gender ideology, at least on the campuses of taxpayer-funded, public state universities like WTAMU.

A plaintiff who seeks a permanent injunction also bears the burden of proving that "considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted." *eBay, Inc. v. MercExchange, L.L.C.*, 547 U. S. 388, 391 (2006). Spectrum WT falls short here, too. If this Court denies a permanent injunction the only "hardship" to Spectrum WT is that it must hold its future drag shows off the WTAMU campus.

But a grant of a permanent injunction here would require WTAMU and other public universities to open their taxpayer-funded campus facilities not only to lewd drag shows, but also to the neo-Nazi rallies, blackface minstrel shows, and other events that demean and denigrate LGBTQ+ students—events that Spectrum WT asserts have the same right to use Legacy Hall as it does. *See* Spectrum WT's Reply to Defendants-Appellees' Supp. En Banc Brief. at 14-15, No. 23-10994, *Spectrum WT v. Wendler* (5th Cir. 2025). The Constitution does not outlaw common sense. The balance of equities here strongly favors President Wendler.

## V.    THE COURT SHOULD EXERCISE ITS EQUITABLE DISCRETION TO DENY INJUNCTIVE RELIEF ON THE FACTS OF THIS CASE

This Court is a court of equity with the flexible discretionary powers that such courts have exercised for many hundreds of years. *Trump v. CASA, Inc.*, 606 U. S. 831, 841-42 (2025). Even in those cases (unlike this one) where a plaintiff has proven the elements of a right to prevail on the merits, courts of equity always retain the equitable discretion to withhold injunctive relief based on

the specific acts of the case before the court. *EBay, Inc. v. MercExchange, L. L. C.*, 547 U. S. 388 (2006) (decision to grant a permanent injunction is "an act of equitable discretion"). Here, any injunctive relief would be inequitable and unworkable. The parameters of Spectrum WT's proposed 2026 drag show at Legacy Hall are undefined, and any injunctive relief would have to prescribe in a vacuum what type of drag show President Wendler would (or would not) be compelled to permit. Any such injunction must "state its terms specifically" and "describe in reasonable detail – and not by referring to the complaint or other documents – the act or acts constrained or required." Fed. R. Civ. P. 65(d)(1). The Court should exercise its equitable discretion to decline to go down that uncertain and unnecessary road.

## VI.    DECLARATORY RELIEF WOULD BE INAPPROPRIATE AND UNWARRANTED.

Declaratory relief under 28 U. S. C. § 2201 *et seq.* is also unwarranted. Declaratory relief is discretionary and not mandatory. Even if Spectrum WT were entitled to any relief in this case — and it is not—the Court should decline to exercise that discretion for all the reasons set forth above. *See Wilton v. Seven Falls Co.*, 515 U. S. 277, 286-89 (1995) (district courts have discretion as to whether they should hear or grant claims for declaratory judgment); *Allied World Surp. Lines v. Blue Cross & Blue Shield of Miss.*, No. 3:17-cv-251-DPJ-FKB, 2018 U. S. Dist. LEXIS 8921, at **3-4 (S. D. Miss. 2018) (Declaratory Judgment Act confer discretion on the courts rather than absolute right on litigant). An injunction does not follow from success on the merits as a matter of course, and equitable discretion includes the ability to deny as well as grant injunctive relief. *Burrell v. Twin Goose, LLC*, No. 3:16-cv-1079-L 2017 U. S. Dist. LEXIS 156669, at **6-7 (N. D. Tex. 2017).

The Court's decision in this case will necessarily be highly fact-dependent and therefor inappropriate or a broad declaratory judgment. That is especially true as applied to the yet-undefined general intention Spectrum WT admits is all it has for a proposed April 2026 drag show at Legacy Hall.

For all the reasons set forth herein, Defendant Wendler respectfully requests that Plaintiff's Motion for Summary Judgment be denied in all respects.

Date: January 6, 2026                    Respectfully submitted.

KEN PAXTON                               /s/ David Bryant
Attorney General of Texas                DAVID BRYANT
                                         Senior Special Counsel
BRENT WEBSTER                            Tex. State Bar No. 03281500
First Assistant Attorney General         ATTORNEY IN CHARGE

RALPH MOLINA                             MUNERA AL-FUHAID
Deputy First Assistant Attorney General  Special Counsel
                                         Tex. State Bar No. 24094501
RYAN D. WALTERS
Deputy Attorney General for Legal Strategy   ZACHARY BERG
                                         Special Counsel
RYAN G. KERCHER                          Tex. State Bar No. 24107706
Chief, Special Litigation Division
                                         OFFICE OF THE ATTORNEY GENERAL
                                         P.O. Box 12548 (MC-009)
                                         Austin, Texas 78711-2548
                                         Tel.: (512) 463-2120
                                         Fax: (512) 320-0667
                                         david.bryant@oag.texas.gov
                                         munera.al-fuhaid@oag.texas.gov
                                         zachary.berg@oag.texas.gov

                                         ATTORNEYS FOR DEFENDANT
                                         WALTER WENDLER, IN HIS OFFICIAL
                                         CAPACITY AS PRESIDENT OF WEST TEXAS A
                                         & M UNIVERSITY

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all registered CM/ECF users.

                                         /s/ David Bryant
                                         DAVID BRYANT