## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | |
|---|---|
| SPECTRUM WT, | Case No.: 2:23-cv-00048-Z |
|        Plaintiff, | |
| v. | Hon. Matthew J. Kacsmaryk |
| WALTER WENDLER, in his official capacity as the President of West Texas A&M University, | **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
|        Defendant. | |

JT Morris
TX Bar No. 24094444
Conor T. Fitzpatrick*
MI Bar No. P78981
Foundation for Individual Rights
   and Expression
700 Pennsylvania Ave., SE; Ste. 340
Washington, DC 20003
Tel: (215) 717-3473
Fax: (267) 573-3073
jt.morris@fire.org
conor.fitzpatrick@fire.org

Adam B. Steinbaugh*
CA Bar No. 304829
Jeffrey D. Zeman*
MI Bar No. P76610
Samuel Rudovsky*
PA Bar No. 335724
Foundation for Individual Rights
   and Expression
510 Walnut St.; Ste. 900
Philadelphia, PA 19106
Tel: (215) 717-3473
Fax: (267) 573-3073
adam@fire.org
jeff.zeman@fire.org
sam.rudovsky@fire.org

* Admitted *Pro Hac Vice*

*Counsel for Plaintiff*

## TABLE OF CONTENTS

ARGUMENT ...................................................................................................... 1

I.      The Undisputed Facts Confirm Spectrum Has Standing. ...................... 2

II.     The First Amendment Protects Stage Performances Like Drag Shows, Even If The Message Is Open To Interpretation. ...................... 4

      A.      The First Amendment protects Spectrum's drag shows because they are inherently expressive. ....................................... 4

      B.      The record confirms Spectrum's ticketed audience would understand their drag shows were intended to communicate *something*, as required for First Amendment protection. ................................................................................. 5

III.    The Undisputed Record, Centered on President Wendler's Own Statements, Establishes Unconstitutional Viewpoint Discrimination. ................................................................................. 7

IV.     President Wendler Offers Nothing To Dispute That His Drag Show Ban Constitutes An Unconstitutional Prior Restraint. ............... 9

V.      President Wendler Fails To Dispute Controlling University Policy And Practice Establishing Legacy Hall As A Designated Public Forum Where Strict Scrutiny Applies. ..................................... 9

VI.     President Wendler Effectively Concedes His Drag Show Ban Cannot Satisfy Constitutional Scrutiny. ............................................... 12

      A.      President Wendler lacks evidence to support any purported concerns over lewdness, which are constitutionally irrelevant. ................................................................................. 13

      B.      Regardless of whether Legacy Hall is a designated public forum or limited public forum, President Wendler still must satisfy strict scrutiny—which he makes no attempt to do. ........................................................................................... 15

VII.    The Undisputed Facts Confirm Spectrum Is Entitled To Injunctive Relief. ................................................................................. 15

      A.      Spectrum continues to suffer irreparable harm. ........................ 16

      B.      Public interest considerations favor injunctive relief. .............. 17

i

CONCLUSION...................................................................................................... 17

CERTIFICATE OF SERVICE ............................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*303 Creative LLC v. Elenis,*
   600 U.S. 570 (2023) ................................................................................ 9

*Brown v. Ent. Merchs. Ass'n,*
   564 U.S. 786 (2011) .............................................................................. 12

*Chiu v. Plano Indep. Sch. Dist.,*
   260 F.3d 330 (5th Cir. 2001) ............................................................... 15

*Chiu v. Plano Indep. Sch. Dist.,*
   339 F.3d 273 (5th Cir. 2003) ................................................................. 9

*Christian Legal Soc'y Ch. of the Univ. of Cal., Hastings Coll. of the Law v.*
   *Martinez*, 561 U.S. 661 (2010).............................................................. 11

*City of Ladue v. Gilleo,*
   512 U.S. 43 (1994) ............................................................................... 11

*Elrod v. Burns,*
   427 U.S. 347 (1976) ....................................................................... 16, 17

*Free Speech Coalition, Inc. v. Paxton,*
   606 U.S. 461 (2025) ............................................................................. 14

*Gay Student Servs. v. Texas A&M Univ.,*
   737 F.2d 1317 (5th Cir. 1984) ............................................................. 15

*Ginsberg v. New York,*
   390 U.S. 629 (1968) ............................................................................. 14

*Healy v. James,*
   408 U.S. 169 (1972) ....................................................................... 13, 17

*Iota Xi Chapter of Sigma Chi Fraternity v. George Mason Univ.,*
   993 F.2d 386 (4th Cir. 1993) ................................................................. 7

*Justice for All v. Faulkner,*
   410 F.3d 760 (5th Cir. 2005) ............................................................... 15

*Knowles v. City of Waco,*
   462 F.3d 430 (5th Cir. 2006) ............................................................... 12

*Matal v. Tam*,
   582 U.S. 218 (2017) .......................................................................... 7, 8

*McCauley v. Univ. of the Virgin Islands*,
   618 F.3d 232 (3d Cir. 2010) ................................................................. 12

*Papish v. Board of Curators of University of Missouri*,
   410 U.S. 667 (1973) .......................................................................... 13

*Pleasant Grove City, Utah v. Summum*,
   555 U.S. 460 (2009) .......................................................................... 10

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015) ....................................................................... 10, 11

*Reeves v. McConn*,
   631 F.2d 377 (5th Cir. 1980) ................................................................. 8

*Robinson v. Hunt County*,
   921 F.3d 440 (5th Cir. 2019) ................................................................. 7

*Rosenberger v. Rector & Visitors of Univ. of Virginia*,
   515 U.S. 819 (1995) .................................................................. 8, 11, 15

*Sable Commc'ns of Ca., Inc. v. FCC*,
   492 U.S. 115 (1989) .......................................................................... 11

*Schad v. Borough of Mount Ephraim*,
   452 U.S. 61, 65 (1981) ........................................................................ 5

*Se. Promotions, Ltd. v. Conrad*,
   420 U.S. 546 (1975) .......................................................................... 15

*Spectrum WT v. Wendler*,
   151 F.4th 714 (5th Cir. 2025) ................................................................ 1

*Speech First, Inc. v. Cartwright*,
   32 F.4th 1110 (11th Cir. 2022) ............................................................... 1

*Speech First, Inc. v. Fenves*,
   979 F.3d 319 (5th Cir. 2020) ........................................................... 1, 2, 3

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ........................................................................... 2

*Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*,
   576 U.S. 200 (2015) .......................................................................... 10

*Widmar v. Vincent,*
  454 U.S. 263 (1981) .......................................................................... 13, 15

# ARGUMENT

President Wendler's Brief in Opposition to Spectrum's Motion for Summary Judgment (Opposition) reveals the unmistakable parallel between his drag show ban and the speech codes public universities have imposed for years under a banner of preventing discrimination and harassment—and which courts have routinely invalidated as unconstitutional. *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1125–27 (11th Cir. 2022); *accord Speech First, Inc. v. Fenves*, 979 F.3d 319, 339–40 & n. 17 (5th Cir. 2020) (collecting cases). The undisputed record, replete with Wendler's own statements, establishes he is prohibiting student expression based on his subjective determination that it is offensive and demeaning to others. This violates bedrock First Amendment principles.

President Wendler has little answer for why he can violate these principles. Rather, he focuses on rehashing his claim that drag shows are not protected expressive conduct. But his argument is a stark outlier, both in the face of Supreme Court precedent and a substantial and quickly growing body of case law confirming drag shows like Spectrum's are inherently expressive, including the recent Fifth Circuit panel decision in this case where not even the dissent disagreed. *Spectrum WT v. Wendler*, 151 F.4th 714, 726 (5th Cir. 2025). Nor can President Wendler reconcile this argument with his own statements. Not only does he expressly *identify* the inherent ideological message of Spectrum's planned drag performances, he describes it as the sole basis for his censorship. *E.g.*, Wendler Depo. Ex. 3 (App'x 92–94); Wendler Tr. 23:4–6, 23:17–20 (App'x 13), 41:11–17 (App'x 18), 243:20–244:2 (App'x 81–82). He thus cannot credibly deny drag's expressiveness.

1

Yet even if this Court determines that fact questions exist as to whether Spectrum's drag shows are constitutionally protected, there is no dispute that, if they are: (1) Wendler's actions are unconstitutional viewpoint discrimination; (2) they are subject to strict scrutiny as a content-based restriction in a designated public forum; and (3) they effectuate a prior restraint that blocks Spectrum's speech in advance based on Wendler's subjective view of it as offensive and demeaning. Yet he makes no effort to satisfy strict scrutiny or his heavy burden to justify a prior restraint. Instead, he disregards binding Supreme Court precedent, and elsewhere effectively concedes several arguments by failing to refute them altogether.

These are issues where the law is clearly established and the factual record is undisputed. Summary judgment, either in whole or in part, is therefore warranted.

## I.    The Undisputed Facts Confirm Spectrum Has Standing.

The established record underscores why the Court has no reason to depart from its two prior holdings that Spectrum has satisfied the injury-in-fact standing requirement. The relaxed injury-in-fact standard for First Amendment cases requires a showing of only "intent[] to engage" in "arguably" protected speech "arguably … proscribed," and merely a "substantial" threat of enforcement, not, as Wendler urges, an "imminent" one. Opp. at 12. *Fenves*, 979 F.3d at 330 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161–64 (2014)).

Spectrum's intent to engage in speech is even more crystallized now than when the Court last found (for a second time) it has standing. *See* ECF No. 116 at 12–13 (rejecting President Wendler's argument about an "unscheduled hypothetical future drag show" and finding Spectrum satisfied the three-prong test). Spectrum now has

a date, a venue, and plans for how to select performers based on the proposed costumes and music. Fanelli Tr. 30:5–32:4 (App'x 691–693); *see also* App'x 761–765.

Nor is there any doubt of a substantial threat of enforcement: President Wendler "unequivocally declare[d] the university 'will not' host a drag show because a harmless drag show is '[n]ot possible.'" ECF No. 116 at 11 (quoting ECF No. 28-1 at 2, 4). That Wendler followed through on that pledge *a second time* cements the risk of enforcement. ECF No. 116 at 11 n.2. As the Fifth Circuit has confirmed, "[p]ast enforcement of speech-related policies can assure standing." *Fenves*, 979 F.3d at 336.

According to President Wendler, this past enforcement was premised on his "sincerely and conscientiously held" belief (Opp. at 8) that drag shows are intrinsically disrespectful because they create a "monolithic view" about women—and he claims to have seen nothing in the last three years to convince him otherwise. Wendler Tr. 172:20–173:7 (App'x 60–61), 220:9–15 (App'x 72), 243:4–244:2 (App'x 81–82), 256:22–25 (App'x 89). And he has publicly confirmed he would not have done anything differently. (App'x 774).

President Wendler's suggestion that Spectrum's proposed April 2026 performance would be so "dramatically different" that past cancellations cannot establish future injury is wrong. Opp. at 13 n.1. All the purported changes he identifies applied to the March 2023 performance he canceled—and more to the point, Wendler confirmed he did not care about the specifics of Spectrum's shows before cancelling them. Wendler Tr. 217:20–218:12 (App'x 69–70) (Wendler not aware of non-student emcee's involvement), Wendler Depo. Ex. 3 (App'x 92–94) (no mention of

3

minors), Wendler Tr. 99:22–100:7 (App'x 31–32) (canceled show before he was aware of "PG-13" designation), 65:22–66:8 (App'x 20–21) (canceled show despite never speaking to Spectrum members about the 2023 show's details).

In all particulars, Spectrum meets the injury-in-fact requirement to satisfy standing to challenge President Wendler's restrictions on student expression.[1]

## II.    The First Amendment Protects Stage Performances Like Drag Shows, Even If The Message Is Open To Interpretation.

President Wendler concedes that Spectrum intends to communicate a "message of acceptance of LGBTQ people and lifestyles" with a campus drag show. Opp. at 14. Likewise, he claims that drag shows convey an "ideology" that is (in his view) disrespectful and demeaning to women. Wendler Tr. 243:20–244:2 (App'x 81–82). Still, he argues Spectrum's expression lacks constitutional protection because it has no "particularized message" that viewers are likely to understand. Opp. at 15–16. Both the undisputed record and binding case law foreclose this argument.

### A.    The First Amendment protects Spectrum's drag shows because they are inherently expressive.

The Supreme Court has unambiguously rejected President Wendler's argument that a defined, "particularized message" is required for First Amendment protection. *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 569 (1995). Wendler cannot avoid this binding principle. *See* Opp. at 15–16. Instead, his arguments betray basic First Amendment principles.

---

[1] A heading in President Wendler's opposition also suggests the case is not ripe. This Court has already rejected that argument. ECF No. 116 at 13. In any event, Wendler forfeited the argument by not developing it or citing any facts in support.

For instance, Wendler scoffs at the suggestion that the First Amendment protects "black choreographed performers dancing on stage in costume accompanied by music" intended to convey a "message of acceptance of black people and lifestyles"; Or that it protects "Native American performers dancing on stage in costume accompanied by music" intended to convey a "message of acceptance of Native American people and lifestyles." Opp. at 14. But such choreographed stage performances by black and Native American performers are inherently expressive, and that alone, as with Spectrum's drag performances, merits First Amendment protection. *See* Spectrum's Br. in Supp. of Mot. for Summ. J. (ECF No. 144) at Sec. I.A. ("MSJ Brief"). *In addition*, insofar as those shows intend to communicate cultural pride and support, that message is, undoubtedly, the type of expression the First Amendment protects. *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65 (1981) ("[L]ive entertainment, such as musical and dramatic works[,] fall within the First Amendment guarantee.").

Any other conclusion would mean, for example, that a Christian student group's rendition of the nativity scene in celebration of their faith does not receive First Amendment protection. Nor would a dramatic reenactment of the battle of Gettysburg. But the law is clear that the First Amendment protects these forms of expression. Just as it protects Spectrum's shows.

## B.    The record confirms Spectrum's ticketed audience would understand their drag shows were intended to communicate *something*, as required for First Amendment protection.

President Wendler's description of drag shows as "artistic expression" conveying "ideology" on "sexuality, femininity, [and] gender" (with which he

disagrees) concedes that both he and audiences understand Spectrum's intent to communicate something. Wendler Depo. Ex. 3 (App'x 92–93). This is all the First Amendment requires. That each drag show's precise meaning may vary or be up for interpretation does not defeat First Amendment protection—for that is a feature inherent to almost all artistic expression. *Hurley*, 515 U.S. at 569. We have art schools, movie critics, and online forums debating the meaning of such expression because audiences disagree as to their intended meanings. Under Wendler's constrained view of the First Amendment, no art, entertainment, parade, or any other expressive conduct open to interpretation would be safe from the censor's pen. That is not the law. *See id.*

Yet, here, the message behind drag performance is even more apparent than many forms of protected expression. President Wendler's March 2023 email cancelling Spectrum's performance reveals his disagreement with drag performances' expressed perspective on gender stereotypes. Wendler Depo. Ex. 3 (App'x 92); *id.* (App'x 92–94); *see also* Stovall Tr. 72:5–7 (App'x 672); Bright Tr. 107:22–109:10 (App'x 749–751). And Spectrum's current student president, Johnathan Fanelli, testified at length regarding the message Spectrum specifically seeks to communicate through its drag shows regarding traditional gender norms. Fanelli Tr. 114:3–12 (App'x 706), 154:17–155:5 (App'x 709–710); *see also* Bright Tr. 51:21–52:2 (App'x 730–731), 104:24–105:8 (App'x 746–747).

Under Supreme Court precedent, these undisputed facts establish Spectrum's drag shows are inherently expressive conduct and thus protected by the First

Amendment.

### III. The Undisputed Record, Centered on President Wendler's Own Statements, Establishes Unconstitutional Viewpoint Discrimination.

President Wendler cannot avoid his words establishing that he banned Spectrum's show because he finds drag categorically "demeaning" and "disrespectful." That is obvious viewpoint discrimination. *Robinson v. Hunt County*, 921 F.3d 440, 447 (5th Cir. 2019) (citing *Matal v. Tam*, 582 U.S. 218, 243 (2017)); *see also Iota Xi Chapter of Sigma Chi Fraternity v. George Mason Univ.*, 993 F.2d 386, 388, 393 (4th Cir. 1993) (finding viewpoint discrimination where university censored expression under its "mission statement" promoting "equal treatment, respect for diversity, and individual dignity"). Yet President Wendler disregards Supreme Court precedent and insists from the first page of his brief that government officials may censor speech because they find the method of communication disrespectful. Opp. at 1, 3, 17.

The Supreme Court expressly rejected that argument in *Matal v. Tam*. There, a rock group named "The Slants," so chosen in effort to reclaim a derogatory term for Asians and "drain its denigrating force," sought to register their name with the Patent and Trademark Office (PTO). *Matal*, 582 U.S. at 223. While the PTO sympathized with the band's efforts to reclaim the term, it denied their application because it found the band's method of doing so potentially disparaging to "a racial or ethnic group" in violation of the Lanham Act. *Id.* at 228–29, 231. The Supreme Court unanimously invalidated the Act's disparagement clause as unconstitutional viewpoint discrimination. *Id.* at 243–44.

*Matal* controls here. President Wendler claims to sympathize with Spectrum's pro-LGBTQ+ message but insists students may not express it in ways he finds disrespectful or disparaging to women. Wendler Depo. Ex. 3 (App'x 92–94); Wendler Tr. 23:4–6 (App'x 13), 256:22–25 (App'x 89); *see also* Opp. at 1, 3, 8. As in *Matal*, the First Amendment precludes his insistence. As Justice Kennedy explained: "The First Amendment's viewpoint neutrality principle protects more than the right to identify with a particular side. *It protects the right to create and present arguments for particular positions in particular ways, as the speaker chooses.*" *Id.* at 249 (Kennedy, J., concurring) (emphasis added); *see also Reeves v. McConn*, 631 F.2d 377, 382 (5th Cir. 1980) (The "right to communicate inherently comprehends the right to communicate effectively.").

President Wendler does not dispute that drag shows are designed not only to celebrate LGBTQ+ culture and community, but to challenge traditional gender norms. Opp. at 21–22 (describing drag's inherent "gender ideology"). Nor could he. It is precisely Wendler's disapproval of that "ideology" and depiction of "womanhood" and "femininity" that prompted his censorship. Wendler Depo. Ex. 3 (App'x 92–94).

It makes no difference whether, as Wendler argues at length, his opinion "is shared by many others." Opp. at 8. Government officials may not wield their authority to censor speech "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction"—regardless of how popular or unpopular the speaker's message. *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995) (citation omitted). Nor do First Amendment

protections belong only to speech the government finds worthy. They belong to all—including "speakers whose motives others may find misinformed or offensive." *303 Creative LLC v. Elenis*, 600 U.S. 570, 595 (2023) (citation omitted).

President Wendler's viewpoint discrimination alone warrants summary judgment or, at a minimum, partial summary judgment to narrow the focus at trial.

## IV.    President Wendler Offers Nothing To Dispute That His Drag Show Ban Constitutes An Unconstitutional Prior Restraint.

President Wendler's sole reference to "prior restraints" in his Opposition—that Spectrum "was not subject to any 'prior restraint' on such alleged 'speech,'" with no support or justification, Opp. at 18—effectively concedes there is no material dispute of *fact* here. And the admissions in his Opposition underscore the unconstitutionality of that prior restraint. Wendler acknowledges he "alone made th[e] decision" to ban Spectrum's drag show, Opp. at 8, doing so exclusively because he "judges that the proposed drag shows denigrate and demean women," Opp. at 18. The case law establishes that denying speech in advance based "on the will of an official" absent any narrow, objective limitations is precisely the "unconstitutional burden[] on speech classified as [a] prior restraint[]." *Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 280 (5th Cir. 2003); *see also* MSJ Br. at Sec. I.C. Summary judgment is warranted on Spectrum's prior restraint claim.

## V.    President Wendler Fails To Dispute Controlling University Policy And Practice Establishing Legacy Hall As A Designated Public Forum Where Strict Scrutiny Applies.

President Wendler cannot dispute the University's consistent practice of opening Legacy Hall up to unfettered expression from students and the public alike.

MSJ Br. Sec. I.D. And he makes no attempt to do so. *See generally* Opp.

Nor does he dispute how the University's Expressive Activities Policy holds out "buildings" on campus for free expression, subject only to content-neutral time, place, and manner restrictions, which Wendler's ban is not. MSJ Br. at Sec. I.D.2. In fact, Wendler admits the "extension of expressive activities on campus, in my mind, would include drag shows." Wendler Tr. 112:10–11 (App'x 38). And he also admits that "drag show" "events may not be 'banned' altogether" and may only "be excluded from University event facilities like Legacy Hall" pursuant to a content-neutral restriction on time, place, or manner. Opp. at 3.

Under these undisputed facts, public forum doctrine compels the conclusions that Legacy Hall is a designated public forum and that Wendler must satisfy strict scrutiny to justify his facially content-based limitation on Spectrum's expression. *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 215–16 (2015) (A forum's classification turns on the government's "policy and practice" and the venue's "compatibility with expressive activity.") (citation omitted); *see also Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469–70 (2009) (content-based restrictions in designated public forums must satisfy strict scrutiny).

President Wendler tries to avoid strict scrutiny by arguing his ban is a content-neutral restriction on time, place, or manner. It is anything but. First, Wendler's restriction is content based *on its face*, because it "singles out" drag shows among all other forms of stage performance or expressive conduct for blanket censorship. *Reed v. Town of Gilbert*, 576 U.S. 155, 163–64, 169 (2015); *Christian Legal Soc'y Ch. of the*

*Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 684–85 (2010) (citing *Rosenberger*, *Healy*, and *Widmar*).[2] That is so even where, unlike here, the government takes no position on the underlying viewpoint: The "paradigmatic example" of content-based discrimination "singles out specific subject matter for differential treatment, even if it does not target viewpoints within that subject matter." *Reed*, 576 U.S. at 169. That is what President Wendler's ban does.

Second, a blanket, campus-wide ban on a form of expression is not a restriction on "place." Nor is it merely a restriction on "manner." Indeed, the Supreme Court has repeatedly "voiced particular concern with laws that foreclose an entire medium of expression." *City of Ladue v. Gilleo*, 512 U.S. 43, 55 (1994) (collecting cases); *accord Sable Commc'ns of Ca., Inc. v. FCC*, 492 U.S. 115, 127 (1989) (describing the unique constitutional pitfalls inherent to a "total ban" on a medium of communication).

President Wendler's argument that his campus-wide prohibition on drag shows is not a "ban" because students were permitted to hold their "drag show off campus at a public park" without retaliation defies common sense. Opp. at 4–5. For one thing, Wendler has no authority to ban student expression *off campus in a public park*. That alone discredits his plea that the Court credit him for allowing the off-campus event to proceed. More to the point, forcing students to hold their event off campus rather than in Legacy Hall as planned is precisely what's at issue here. Wendler could no more force Hillel or Christians on Campus to hold prayer meetings

---

[2] Even if interpreted more broadly as a prohibition on expression that demeans or offends, that is still categorically a content-based restriction. *Rosenberger*, 515 U.S. at 820.

off campus for content-based reasons than he can force Spectrum to engage in protected expression off campus. Further, because Wendler's prohibition is facially content based, whether alternative avenues for expression exist is irrelevant. *Knowles v. City of Waco*, 462 F.3d 430, 433–34 (5th Cir. 2006). Instead, the law requires President Wendler to satisfy strict scrutiny. The undisputed facts show he cannot.

## VI. President Wendler Effectively Concedes His Drag Show Ban Cannot Satisfy Constitutional Scrutiny.

Drag shows, as inherently expressive conduct, receive constitutional protection unless one of the Supreme Court's narrowly defined First Amendment exceptions applies. *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 791 (2011). But President Wendler *does not dispute* that no First Amendment exception applies to Spectrum's drag shows. The issue thus becomes whether he can satisfy the constitutional scrutiny required to regulate them. He cannot. He has offered no record evidence to suggest *any* level of constitutional scrutiny is met and does not even address Spectrum's arguments in their briefing. *See generally* Opp.

Instead, Wendler insists he acted in "good faith" and has been "reasonable" in restricting Spectrum's protected expression. Opp. at 3, 6, 16, 17, 21. That comes nowhere near meeting strict scrutiny. Public university officials have no legitimate interest—let alone a compelling one—in restricting speech, even in "good faith," because some may find it offensive. *McCauley v. Univ. of the Virgin Islands*, 618 F.3d 232, 248 (3d Cir. 2010) ("The desire to protect the listener cannot be convincingly trumpeted as a basis for censoring speech for university students.") Wendler still

12

offers no concrete evidence to show his concerns about "harassment" and "discrimination" were anything but the "undifferentiated fear and apprehension" that cannot justify campus officials restricting speech. *Healy v. James*, 408 U.S. 169, 190–91 (1972)*; see also Widmar v. Vincent*, 454 U.S. 263, 270 (1981). And it is telling that Wendler casts his post-hoc rationales for prohibiting drag shows as public interest factors, and *not* arguments on the constitutional merits. Opp. at 20–22. There is simply no dispute that his rationale cannot satisfy constitutional scrutiny.

### A. President Wendler lacks evidence to support any purported concerns over lewdness, which are constitutionally irrelevant.

Even if the Court considered Wendler's post-litigation concerns about lewdness, lewd speech still receives First Amendment protection on university campuses. *Papish v. Board of Curators of University of Missouri*, 410 U.S. 667, 669–70 (1973). In any event, the undisputed record establishes that university officials never raised any concerns that the planned performance would violate its PG-13 rating (Wendler Tr. 159:3–12) (App'x 56), or any provision of the University's student handbook or community standards (Thomas Tr. 25:15–26:8) (App'x 543–544). Nor were there any documented concerns that the show would be so much as "lewd." Chandler Tr. 33:21–34:15 (App'x 328–329). President Wendler concedes he "alone" is raising this concern. Opp. at 8. And he also admits he made no attempt to clarify the content of Spectrum's drag performance before canceling it. Wendler Tr. 65:22–66:8 (App'x 20–21), 68:1–23 (App'x 23). All he offers in Opposition are vague references to "simulated masturbation" and "frottage," without *anything* to suggest either would occur at Spectrum's PG-13 show. Opp. at 1; *see also id.* at 2, 13, 21. By contrast, the

University's own Director of Communications, who, unlike President Wendler, actually attended Spectrum's 2023 drag show, readily confirmed *there was no profane music or lewd conduct of any kind*. Chandler Tr. 58:18–59:1 (App'x 339–340), 32:16–33:3 (App'x 327–328), 33:21–34:15 (App'x 328–329).[3]

Nor do Wendler's purported concerns over Myss Myka's participation in Spectrum's 2023 performance help justify his drag show ban.[4] Opp. at 1, 4, 5, 7, 9, 13, 18, 22. For one thing, President Wendler concedes he never even considered Myss Myka's participation until *after* he had canceled the 2023 show. Wendler Tr. 217:20–218:12 (App'x 69–70). Second, Myss Myka's past participation in sexualized performances would not prevent her from participating in a PG-13 show—as demonstrated by her undisputedly non-lewd performance in Spectrum's show. Chandler Tr. 58:18–59:1 (App'x 339–40). Even if assuming otherwise were reasonable, conjecture alone cannot satisfy a government official's "heavy burden" to justify a speech prohibition. *Gay Student Servs. v. Texas A&M Univ.*, 737 F.2d 1317,

---

[3] President Wendler misstates the record in claiming "Spectrum WT made *no effort* to exclude minors of any age." Opp. at 9 (emphasis in original). The record establishes that Spectrum *prohibited* minors from attending their drag show unless accompanied by a parent or guardian. Chandler Tr. 32:16–23 (App'x 327); Stovall Tr. 65:12–14 (App'x 670); Bright Tr. 58:2–4 (App'x 736), 61:12–16 (App'x 738). The record also forecloses that Spectrum's performance constituted "obscenity as to minors" so as to trigger any allowances the First Amendment allows as to such expression, *see Free Speech Coalition, Inc. v. Paxton*, 606 U.S. 461 (2025); *Ginsberg v. New York*, 390 U.S. 629 (1968), and President Wendler (understandably) does not even attempt to argue otherwise.

[4] Spectrum reiterates its objection, set forth in its objections to Defendant's exhibits (ECF 156-2), to evidence related to prior performances by Michael Arredondo, who performs under the stage name "Myss Myka." This evidence has no bearing on whether the First Amendment prohibits President Wendler from barring Spectrum from staging future drag performances involving only University students and is inadmissible hearsay. Wendler points to nothing in his response showing that he was aware of any of this material when he made his decisions to cancel the 2023 and 2024 shows.

1327–30 (5th Cir. 1984); *see also Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 554–55 (1975).

**B. Regardless of whether Legacy Hall is a designated public forum or limited public forum, President Wendler still must satisfy strict scrutiny—which he makes no attempt to do.**

Even if President Wendler's ban were not expressly viewpoint-discriminatory (and thus *per se* unconstitutional "in any forum"), *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 350 (5th Cir. 2001)—at an absolute minimum, he still must satisfy strict scrutiny. That is true regardless of whether Legacy Hall is a designated public forum, as the record confirms, or a limited one.

When the government opens a limited public forum, it still must "respect the lawful boundaries it has itself set." *Rosenberger*, 515 U.S. at 829. Because President Wendler's ban excludes students "who fall[] within the class to which" Legacy Hall "is made generally available"—something he does not dispute—it triggers strict scrutiny just as it would in a public forum. *Justice for All v. Faulkner*, 410 F.3d 760, 766–67 (5th Cir. 2005) (citation omitted); *see also Widmar*, 454 U.S. at 269–270.

So regardless of whether Legacy Hall is categorized as a designated public forum or limited public forum, the outcome is the same: President Wendler cannot meet his constitutional burden to justify his prohibition on expression, in no small part because he does not even try to show his ban satisfies strict scrutiny.

**VII. The Undisputed Facts Confirm Spectrum Is Entitled To Injunctive Relief.**

Spectrum has more than demonstrated why injunctive relief is proper. As a threshold matter, President Wendler makes the unsubstantiated claim that

injunctive relief would be "unworkable" because it "would have to prescribe in a vacuum what type of drag show President Wendler would (or would not) be compelled to permit." Opp. at 23. This completely disregards the nature of the relief Spectrum is seeking. Spectrum does not ask the Court to mandate that the University permit drag shows. Spectrum asks the Court to enjoin President Wendler from denying Spectrum access to Legacy Hall to host a drag show on the basis of his subjective belief that the show's content is offensive. (ECF No. 30).

## A. Spectrum continues to suffer irreparable harm.

President Wendler's claim that Spectrum has failed to demonstrate irreparable harm disregards the undisputed record, including President Wendler's own statements made under oath. As described *supra*, Sec. I, all existing evidence reflects Wendler's intention to enforce his drag show ban, premised on his disapproval of drag's underlying "gender ideology." *See* Fanelli Tr. 157:6–21 (App'x 712). These sentiments are continued throughout President Wendler's Opposition as well, where he reiterates his "conviction that drag shows demean, denigrate, and harm women." Opp. at 8; *see also id.* at 1–6, 21–22. Without relief, Spectrum will remain cut off in its ability to express itself on campus—the focal point of its mission—in its chosen manner, changing its expressive impact. Fanelli Tr. 152:2–13 (App'x 707), 152:20– 154:16 (App'x 707–709).

Spectrum's "First Amendment interests" are thus both "threatened" by continued enforcement of the drag show ban *and also* "in fact being impaired" by the ongoing unconstitutional prior restraint. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

Either suffices to warrant injunctive relief, as "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.*

### B. Public interest considerations favor injunctive relief.

Contrary to President Wendler's arguments in Opposition, the public interest at stake lies not in the authority of university administrators, which here was exercised as unchecked discretion to censor speech they find offensive. It is the preservation of First Amendment protections for free expression regardless of whether individual government officials approve of the underlying message. As the Supreme Court has said—that protection is "nowhere more vital" than at public universities. *Healy*, 408 U.S. at 180. President Wendler's attempt to reframe the constitutional question is irreconcilable with decades of established law.

## <u>CONCLUSION</u>

For all these reasons, Plaintiff asks that the Court grant its motion for summary judgment.

Dated: January 10, 2026

Respectfully submitted,

/s/ JT Morris
JT MORRIS
TX Bar No. 24094444
CONOR T. FITZPATRICK*
MI Bar No. P78981
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION
700 Pennsylvania Ave., SE
Ste. 340
Washington, DC 20003
Tel: (215) 717-3473
Fax: (267) 573-3073
jt.morris@fire.org

conor.fitzpatrick@fire.org

ADAM B. STEINBAUGH*
PA Bar No. 326475
JEFFREY D. ZEMAN*
Pa. Bar No. 328570
SAMUEL RUDOVSKY*
PA BAR NO. 335724
FOUNDATION FOR INDIVIDUAL
    RIGHTS AND EXPRESSION
510 Walnut St.; Ste. 900
Philadelphia, PA 19106
Tel: (215) 717-3473
Fax: (267) 573-3073
adam@fire.org
jeff.zeman@fire.org
sam.rudovsky@fire.org

* Admitted *Pro Hac Vice*

*Attorneys for Plaintiff Spectrum
WT*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 10, 2026, a true and correct copy of the foregoing document was transmitted via using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

/s/ JT Morris
JT Morris
