# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

| | |
|---|---|
| SPECTRUM WT,<br><br>    Plaintiff,<br><br>  v.<br><br>WALTER WENDLER,<br><br>    Defendant. | Case No.: 2:23-cv-00048-Z<br><br>Hon. Matthew J. Kacsmaryk<br><br>**PLAINTIFF'S TRIAL BRIEF** |

JT MORRIS
TX Bar No. 24094444
CONOR T. FITZPATRICK*
MI Bar No. P78981
FOUNDATION FOR INDIVIDUAL RIGHTS
 AND EXPRESSION
700 Pennsylvania Ave., SE; Ste. 340
Washington, DC 20003
Tel: (215) 717-3473
Fax: (267) 573-3073
jt.morris@fire.org
conor.fitzpatrick@fire.org

ADAM B. STEINBAUGH*
CA Bar No. 304829
JEFFREY D. ZEMAN*
MI Bar No. P76610
SAMUEL RUDOVSKY*
Pa. Bar No. 335724
FOUNDATION FOR INDIVIDUAL RIGHTS
 AND EXPRESSION
510 Walnut St.; Ste. 900
Philadelphia, PA 19106
Tel: (215) 717-3473
Fax: (267) 573-3073
adam@fire.org
jeff.zeman@fire.org
sam.rudovsky@fire.org

\* Admitted *Pro Hac Vice*

*Counsel for Plaintiff*

# TABLE OF CONTENTS

I. The First Amendment Protects Spectrum's Stage Performances. ..................... 1

II. The First Amendment's Robust Protection at Public Universities. ................... 2

III. Wendler's Ban is Viewpoint-Discrimination Prohibited in Any Forum. .......... 3

IV. Wendler Is Imposing an Unconstitutional Prior Restraint. ............................... 3

V. Wendler's Ban Is a Content-Based Prohibition in a Designated Public Forum That Cannot Satisfy Strict Scrutiny. ..................................................... 4

VI. Spectrum Is Suffering Irreparable Harm. ........................................................ 5

VII. An Injunction and Declaratory Relief Will Serve the Public Interest. ............. 5

# **TABLE OF AUTHORITIES**

**Cases**

*Chiu v. Plano Indep. Sch. Dist.*,
    260 F.3d 330 (5th Cir. 2001) ................................................................................. 3

*Christian Legal Society v. Martinez*,
    561 U.S. 661 (2010) ............................................................................................. 2

*Concerned Women for Am., Inc. v. Lafayette Cnty.*,
    883 F.2d 32 (5th Cir. 1989) ................................................................................. 4

*Green v. Miss United States of Am., LLC*,
    52 F.4th 773 (9th Cir. 2022) ............................................................................... 1

*Healy v. James*,
    408 U.S. 169 (1972) ........................................................................................ 2, 5

*Holloman v. Harland*,
    370 F.3d 1252 (11th Cir. 2004) .......................................................................... 1

*Hurley v. Irish–Am., Gay, Lesbian & Bisexual Group of Boston*,
    515 U.S. 557 (1995) ............................................................................................. 1

*Just. for All v. Faulkner*,
    410 F.3d 760 (5th Cir. 2005) .............................................................................. 5

*Matal v. Tam*,
    582 U.S. 218 (2017) ............................................................................................. 3

*McCauley v. Univ. of the Virgin Islands*,
    618 F.3d 232 (3d Cir. 2010) ............................................................................... 5

*Papish v. Bd. of Curators of Univ. of Mo.*,
    410 U.S. 667 (1973) ............................................................................................. 5

*Pro-Life Cougars v. Univ. of Hous.*,
    259 F.Supp.2d 575 (S.D. Tex. 2003) .................................................................. 3

*Robinson v. Hunt County*,
    921 F.3d 440 (5th Cir. 2019) .............................................................................. 3

*Rumsfeld v. FAIR*,
    547 U.S. 47 (2006) ............................................................................................... 1

*Schad v. Borough of Mount Ephraim*,
  452 U.S. 61 (1981) ................................................................................................ 1

*Se. Promotions, Ltd. v. Conrad*,
  420 U.S. 546 (1975) .............................................................................................. 3

*Speech First, Inc. v. Fenves*,
  979 F.3d 319 (5th Cir. 2020) ............................................................................ 2, 5

*Texans for Free Enter. v. Tex. Ethics Comm'n*,
  732 F.3d 535 (5th Cir. 2013) ................................................................................ 5

*Texas v. Equal Emp. Opportunity Comm'n*,
  633 F. Supp. 3d 824 (N.D. Tex. 2022) .................................................................. 5

*Texas v. Johnson*,
  491 U.S. 397 (1989) .............................................................................................. 1

*Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*,
  576 U.S. 200 (2015) .............................................................................................. 4

## **Statutes**

Tex. Educ. Code § 51.9315(b)(1) ................................................................................ 2

I. **The First Amendment Protects Spectrum's Stage Performances.**

The First Amendment protects conduct when it is "inherently expressive." *Rumsfeld v. FAIR*, 547 U.S. 47, 66 (2006) (citing *Texas v. Johnson*, 491 U.S. 397, 406 (1989)). Some conduct, like stage performance, is so inherently expressive in its context that "a narrow, succinctly articulable message is not a condition of constitutional protection." *Hurley v. Irish–Am., Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 569 (1995); *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65 (1981) (The First Amendment protects "live entertainment, such as musical and dramatic works"); *accord Green v. Miss United States of Am., LLC*, 52 F.4th 773, 780–83, 789 (9th Cir. 2022) (all-woman beauty pageant inherently expressive).

In short, the First Amendment protects expressive conduct when context allows a "reasonable person [to] interpret it as *some* sort of message" even if they may not "infer a *specific* message." *Holloman v. Harland*, 370 F.3d 1252, 1270 (11th Cir. 2004) (citing *Hurley*, 515 U.S. at 569). That's true even when a group assembles "multifarious voices" to send a "collective point." *Green*, 52 F.4th at 785 (quoting *Hurley*, 515 U.S. at 568–69). Spectrum's planned performances meet that standard. Bright 51:8–52:2, 104:9–104:21, 104:24–105:15, 105:18–106:3; Fanelli 154:17–155:5, 156:6–15. Patrons of a Spectrum show would see an artistic performance. PL40–41. They would see theatre with stage and lights, and performers acting as characters they created (Bright 72:9–24, 159:14–160:1; Stovall 76:4–16), dressed in colorful costumes (Bright 73:10–14), wearing makeup (*id.* 72:9–13), and dancing to curated songs. Performers may tell jokes or stories illuminating their character. Bright 71:12–25, 107:3–4. With that context, audience members would know Spectrum intends to

1

communicate *something*, thus the First Amendment protects their shows.

And even if Spectrum's shows must convey a specific message the audience is likely to understand, they will. Spectrum intends to convey messages of LGBTQ+ support and twisting gender norms that some viewers are likely to understand. PL4, PL34, Bright 51:8–52:2, 107:22–108:10, 108:20–109:10; Stovall 71:25–72:7, 135:5–11; Fanelli 104:16–25, 108:13–20, 154:19–155:5, 156:6–15. Even Wendler understands Spectrum's performances convey a perspective on gender norms (one he disagrees with), describing the show as "a performance exaggerating aspects of womanhood (sexuality, femininity, gender)" that conveys an "ideology." PL1; *see also* ECF No. 145 at 81–82 [drag show will promote an ideology with a "monolithic view" of women].

## II. The First Amendment's Robust Protection at Public Universities.

The First Amendment's protections are "nowhere more vital" than at public universities, *Healy v. James*, 408 U.S. 169, 180 (1972), and the Fifth Circuit commands courts to be "vigilant" against campus censors, *Speech First, Inc. v. Fenves*, 979 F.3d 319, 339 (5th Cir. 2020). Texas law and university policy confirm this vigorous protection of student expression is "central to the mission" of public universities. Tex. Educ. Code § 51.9315(b)(1); PL6 at 1. And while universities have an interest in maintaining an academic mission, they cannot do so beyond First Amendment limits. The Supreme Court has made this clear in a "series of decisions" "emphasiz[ing]" the First Amendment precludes "universities from denying student organizations access to school-sponsored forums because of the groups' viewpoints." *Christian Legal Society v. Martinez* (CLS), 561 U.S. 661, 667–68 (2010) (citing *Rosenberger, Healy,* and *Widmar*).

### III. Wendler's Ban is Viewpoint-Discrimination Prohibited in Any Forum.

Viewpoint discrimination is *per se* unconstitutional "in any forum." *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 350 (5th Cir. 2001). And Wendler is engaging in viewpoint-discrimination by prohibiting campus drag shows based on his "subjective judgment that the content of protected speech is offensive or inappropriate." *Robinson v. Hunt County*, 921 F.3d 440, 447 (5th Cir. 2019). He left no doubt when giving his reason for the ban: He views drag shows as "ideology" that is "derisive," "divisive" and "misogyny." PL1; *accord Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) (government cannot restrict expression based on "the specific motivating ideology or the opinion or perspective of the speaker.") It does not matter if Wendler has tolerated *other* LGBTQ+ speech, because "the First Amendment protects the right to create and present arguments for particular positions in particular ways." *Matal v. Tam*, 582 U.S. 218, 249 (2017) (Kennedy, J., concurring). And if he claims to prohibit *any* "demeaning" speech about *any* group, an "evenhanded" limit on demeaning speech is still viewpoint-discriminatory. *Id.* at 243.

### IV. Wendler Is Imposing an Unconstitutional Prior Restraint.

Wendler's prohibition on drag performances is an unconstitutional prior restraint because he has prohibited performances in advance based solely on his subjective determination about what speech is appropriate for Legacy Hall, instead of the "narrow, objective, and definite standards" a prior restraint must have to overcome the "heavy presumption" against their unconstitutionality. *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 552–553 (1975); *Pro-Life Cougars v. Univ. of Hous.*, 259 F.Supp.2d 575, 583 (S.D. Tex. 2003)). Wendler alone has decided to prohibit

3

Spectrum's performances (ECF 145 at 65), based on subjective views of "respect" (ECF 145 at 57–58, 89–91) and what others may believe "offensive" (*id.* at 50–52, 58), which in his view, "supersede[] any other policy of the university" (*id.* at 85).

## V. Wendler's Ban Is a Content-Based Prohibition in a Designated Public Forum That Cannot Satisfy Strict Scrutiny.

Legacy Hall is a designated public forum because the university, by "policy and practice," makes it generally available for expressive use by student organizations and the public alike, and it is "compatibl[e] with expressive activity." *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 215–16 (2015) (citation omitted). Legacy Hall is not reserved to particular speakers or subjects. *Id.* at 215. Rather, University policy guarantees student organizations access to "buildings" for "expressive activities," subject only to content- and viewpoint-neutral "time, place, and manner restrictions." PL6 at §§ 1.1, 1.3 and Definitions 3, 6, & 12. The university allows a broad range of events with no connection to any educational interest, including beauty pageants, religious worship, wedding ceremonies, dance-off competitions, fashion shows, and more. *E.g.*, Fouts 88:17–91:10. Indeed, its consistent practice of allowing groups having "little to do with [its] educational … mission" to host events in Legacy Hall cements its status as a *designated* public forum. *Concerned Women for Am., Inc. v. Lafayette Cnty.*, 883 F.2d 32, 34 (5th Cir. 1989).

Because Wendler's ban is content-based, he must satisfy strict scrutiny by showing it is "necessary to serve a compelling state interest which cannot be served by a less restrictive action." *Id.* at 34–35. Strict scrutiny also applies because Spectrum and drag performances "fall[] within the class to which" Legacy Hall "is

4

made generally available." *Just. for All v. Faulkner*, 410 F.3d 760, 766–67 (5th Cir. 2005). But there is no compelling interest in preventing offense, *e.g.*, *McCauley v. Univ. of the Virgin Islands*, 618 F.3d 232, 248 (3d Cir. 2010), or "lewd" expression, *Papish v. Bd. of Curators of Univ. of Mo.*, 410 U.S. 667, 669–70 (1973). Nor does Wendler have any evidence supporting his vague concerns about harassment and discrimination. *See Healy*, 408 U.S. at 191 (campus speech restrictions may not rest on "undifferentiated fear or apprehension"). And he can address harassment through student disciplinary procedures *after* the fact—a less-restrictive means than stopping expression in advance, and one which university policy requires. *E.g.*, PL37 at § 2.18.D–E.

## VI.  Spectrum Is Suffering Irreparable Harm.

The "loss of First Amendment freedoms for even minimal periods of time" is irreparable injury justifying injunctive relief. *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) (cleaned up). Without that relief, Spectrum's ability to advocate *on campus*—the focus of its mission—will continue to suffer. Fanelli 152:2–13, 152:20–154:16.

## VII.  An Injunction and Declaratory Relief Will Serve the Public Interest.

A prohibition on offensive speech threatens the public interest in strong First Amendment protections at public universities. *Speech First, Inc.*, 979 F.3d at 339 (courts "must be especially vigilant" in protecting campus free speech). Further, declaratory relief is proper because an actual controversy exists and no inequities, concerns over judicial economy, or forum issues counsel against declaratory relief. *See Texas v. Equal Emp. Opportunity Comm'n*, 633 F. Supp. 3d 824, 846 (N.D. Tex. 2022).

5

| | |
|---|---|
| Dated: January 12, 2026 | Respectfully submitted, |
| | |
| | /s/ JT Morris |
| | JT MORRIS |
| | TX Bar No. 24094444 |
| | CONOR T. FITZPATRICK* |
| | MI Bar No. P78981 |
| | FOUNDATION FOR INDIVIDUAL |
| |    RIGHTS AND EXPRESSION |
| | 700 Pennsylvania Ave., SE |
| | Ste. 340 |
| | Washington, DC 20003 |
| | Tel: (215) 717-3473 |
| | Fax: (267) 573-3073 |
| | jt.morris@fire.org |
| | conor.fitzpatrick@fire.org |
| | |
| | ADAM B. STEINBAUGH* |
| | PA Bar No. 326475 |
| | JEFFREY D. ZEMAN* |
| | Pa. Bar No. 328570 |
| | SAMUEL RUDOVSKY* |
| | Pa. Bar No. 335724 |
| | FOUNDATION FOR INDIVIDUAL |
| |    RIGHTS AND EXPRESSION |
| | 510 Walnut St.; Ste. 900 |
| | Philadelphia, PA 19106 |
| | Tel: (215) 717-3473 |
| | Fax: (267) 573-3073 |
| | adam@fire.org |
| | jeff.zeman@fire.org |
| | sam.rudovsky@fire.org |
| | |
| | * Admitted *Pro Hac Vice* |
| | |
| | *Attorneys for Plaintiff Spectrum WT* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2026, a true and correct copy of the foregoing document was transmitted via the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

/s/ JT Morris
JT Morris
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION
