UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

SPECTRUM WT, et al.,        )
          Plaintiffs,   )
                           )
vs.                        )Cause No. 2:23-CV-00048-Z
                           )
WALTER WENDLER, et al.,    )
          Defendants.   )

_____

TRANSCRIPT OF PRETRIAL CONFERENCE
BEFORE THE HONORABLE MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

JANUARY 9, 2026
AMARILLO, TEXAS

_____

**A P P E A R A N C E S**

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 PENNSYLVANIA AVENUE, SE
SUITE 340
WASHINGTON, DC 20003

BY  MR. JT MORRIS
    MR. ADAM STEINBAUGH
    MR. SAMUEL RUDOVSKY

                    FOR THE PLAINTIFFS;

ATTORNEY GENERAL OF TEXAS
P.O. BOX 12548
AUSTIN, TX  78711

BY:  MR. DAVID BRYANT
MS. MUNERA AL-FUHAID
MS. ALEXIA BAKER, via Zoom,
                    FOR THE DEFENDANTS.

FEDERAL OFFICIAL COURT REPORTER:
CHRISTINE M. ORR, 205 SE 5TH AVENUE
AMARILLO, TEXAS, 79101, (806)468-3816
PROCEEDINGS RECORDED BY STENOGRAPHY; TRANSCRIPT
PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

[CALL TO THE ORDER OF THE COURT.]

THE COURT:  The Court calls for pretrial conference case number 2:23-CV-048-Z, *Spectrum WT versus Wendler*.  Are the parties ready to proceed?

MR. MORRIS:  Plaintiff is ready, your Honor.

MR. BRYANT:  Defendant is ready, your Honor.

THE COURT:  Okay.  I'll just give Plaintiff an opportunity to identify the counsel seated at your table and then we'll do the same for the Defendant.

MR. MORRIS:  Thank you, your Honor. J.T. Morris on behalf of Plaintiff Spectrum WT. With me I have Mr. Adam Steinbaugh and Mr. Sam Rudovsky.

THE COURT:  And for the Defendant?

MR. BRYANT:  Your Honor, David Bryant on behalf of the Defendant.  With me at the counsel table is Munera Al-Fuhaid.  We're both from the Attorney General's Office in Austin.  In addition, I believe that auditing the hearing or at least that was the intention is our colleague, Alexia Baker.

THE COURT:  Okay.  And Mr. Morris, does Plaintiff have any counsel who are listening to the

hearing remotely?

MR. MORRIS:  We do not, your Honor.

THE COURT:  But that was made available to your team should you require it?

MR. MORRIS:  Yes.

THE COURT:  Okay.  So let's take care of housekeeping in anticipation of a bench trial on Wednesday.  So as currently scheduled, the start time for trial will be 9:00 o'clock a.m. Central Standard Time on Wednesday, January 14, 2026.  We will make available for counsel only the remote listening option as we did for this hearing.  Please coordinate with my CRD, Victoria Shrewsbury, if you have remote counsel who intend to listen to the proceedings.  For those attorneys participating in the hearing, a few rules about the well space and how we do trial in this courtroom.  You make speak from the lectern or counsel table.  I spent two-thirds of my career as an appellate attorney, so I'm perfectly comfortable allowing people to have their notes, their papers and operate from counsel table.  This will be more like an appellate argument.  But if you want to present at the lectern, you may do so.  Just ask for permission to move about the well.  If you're interfacing with a

witness, we won't have a jury in the box, so we don't have to worry about publication of exhibits or things like that, but I'm very permissive when it comes to well space.  Water is allowed but nothing else.  So everything that you have at your desk now is permitted.  I've also reversed my predecessor's rule about courtroom technology.  Judge Robinson would not allow cell phones, laptops, things of that sort.  Just look to the judge-specific requirements on that.  As long as things are silenced, I don't have any objection to courtroom technology, cell phones, laptops.  Just make sure everything is set to silent.

And I'll admonish attorneys that I don't have a high tolerance for theatrics in presentation or gamesmanship and objections.  I think it'll go rather smoothly with this team here today because of your appellate disposition and background.  I'd prefer this to look more like oral argument than anything you would see on Court TV.

Now, just so that we can preserve the record that both sides will need for any appeal, I want to make sure that we get names, titles, terminology, anything that's specific to this case that might be confusing to the court reporter.

Please provide those lists in advance of the hearing. You can bring that list at the outset of Wednesday's bench trial or you can present those to my courtroom deputy through the portal. And that's just what we call the NDTX link that's on the judge-specific web page for the Northern District of Texas.

Now, as a reminder to more experienced trial attorneys, because this is a bench trial, I want to set some ground rules for any colloquies that happen with witnesses. So because it is a bench trial, this Court has the prerogative to ask questions of both counsel and witnesses, if necessary, interrupting Direct and Cross-Examination. Sometimes that has been jarring for attorneys who have only done jury trials. But especially in a bench trial format, you might expect the Court to interrupt, ask questions of the witness or ask questions of counsel. I'll refer you to Rule of Evidence 614 and 611(a) as the basis for that authority. This Court may call a witness on its own or at a party's request and the Court may examine a witness regardless of who calls the witness. And then Rule 611(a) also explains that the Court can use its interchange with witnesses to control the

mode and order of examination.

Now, let me go through my inventory of motions that remain and those that have been decided.  So I believe besides Plaintiff's pending Motion for Summary Judgment in ECF number 143 that there are no timely motions that can be resolved today or before the hearing.  Mr. Morris, is that correct from Plaintiff's standpoint?

MR. MORRIS:  That is correct, from our standpoint, your Honor.

THE COURT:  Okay.  And is that correct from Defendant's perspective?

MR. BRYANT:  Your Honor, it is.  I did want to raise one brief point.  Rule 65(a)(2) says that evidence that was received on the Preliminary Injunction is part of the trial record.  I did not -- if it were necessary to make some type of motion to confirm that, then I would want to do it. I simply want to make it clear that that would be operative in this instance because we don't want to or need to under Rule 65(a)(2) repeat evidence that was presented to the Court on preliminary injunction.  So we would like -- if the Court would prefer to do that by motion, we'll be happy to do that at this time.

THE COURT:  And is that specific to some of the Rule 37(c)(1) objections to exhibits that were not produced within the discovery schedule?

MR. BRYANT:  No, your Honor.  It's -- we're not trying to obviate any of the objections that Plaintiff has made to any of the trial exhibits.  We just wanted to confirm what we think is automatically the case under Rule 65(a)(2), that that prior evidence that's already been received by the Court is part of the trial record that will be before the Court in this case.

THE COURT:  Okay.  Any objection, Mr. JT Morris, before ruling on that?

MR. MORRIS:  Sure.  Just one objection, your Honor.  As you know, the standard for evidentiary admissibility at the preliminary injunction stage is much more relaxed than it is at trial.  And just to be palms up here, I think the only dispute would be the video that Defendants submitted in their PI motion.  Mr. Rudovsky will handle the objections to that.  So I think we can take care of it there.  Otherwise, I don't have any objections to anything they introduced during the PI.

THE COURT:  So I'll carry forward the

Defendant's motion and then when we get to the exhibit where I need to hear argument, please flag that exhibit for my attention.  I'll consider Rule 65(a)(2) along with the written objections and responses, but please be careful to flag that because we have some -- you know -- 428 exhibits, so when we get to that one, I'll give you any ruling that you need for further appellate review.  Just be careful to flag it for the Court.  So I'll carry forward your motion pursuant to Rule 65(a)(2) and then I'll finally adjudicate that when we get to the relevant exhibit.  Is that acceptable?

MR. MORRIS:  That's fine, your Honor.

MR. BRYANT:  Yes, your Honor.

THE COURT:  Okay.  So let's move on to the procedures and the protocols that you can expect as we move into the trial on the merits which is really more like a final hearing on Preliminary Injunction. I will advise the parties that you can expect a ruling on the pending Motion for Summary Judgment before Wednesday, so we won't have any procedural or appellate confusion on the status of that motion. You can just prepare for a full trial on the merits and you'll have the benefit of the Court's ruling at least before we begin on Wednesday.  So you can

expect that, and please check ECF.  That'll be done before we begin on Wednesday morning.  So you'll have my ruling on that pending MSJ motion.  So as a snapshot of what I perceive to be the game plan for Wednesday, as I advised the parties at various hearings, I believe this trial should only consume one day.  That'll be adequate time for either side to present their case.  As I noted in my January 8, 2026, order in ECF number 157, the Court expects that three hours per side should be more than sufficient for both parties to present their case. Those three hours will not include your opening and closing statements, so you'll not be deducted for any time that you use for opening and closing.

So is there any objection to that basic framework on time?  And so you know, we will be using a chess clock system monitored by the clerks and CRD for recording time.

MR. MORRIS:  No objection from Plaintiff.

MR. BRYANT:  No objection, your Honor.

THE COURT:  Okay.  And I'll just note for the record this is consistent with the Court's November 14, 2025, order, ECF number 129, and also ECF number 117 where I repeatedly advised the parties and counsel that I thought this case could

be tried in one day.  And if we need to work late, I have advised the Court staff, the IT professionals, that they should be available should unseen or unforeseen delays require additional time.  So if we have to go past 5:00 o'clock, everybody in this courtroom is prepared to do so.  So you don't need to make extensive trial plans beyond Wednesday.  We will work late if necessary to get that done.  So you should be ready to proceed promptly at 9:00 o'clock a.m.  So this is a change.  I think I mentioned 10:00 o'clock a.m. at our last hearing, but I think to accommodate both parties and to allow for a lunch break, we're going to begin promptly at 9:00 o'clock a.m.  I will afford the parties a lunch break after Plaintiff presents its case and Defendant should use that time to also prepare the courtroom and any courtroom technology for their three-hour interval.

Now, regarding opening statements, and again, the Court is going to accommodate both Plaintiffs and Defendants and not deduct time from your three-hour substantive case.

How much time would Plaintiff request and any warning on Opening Statement?

MR. MORRIS:  I think we can do it in ten

to 15 minutes, your Honor.

THE COURT:  Okay.  And do you want a warning at any interval?

MR. MORRIS:  Three minutes.

THE COURT:  Okay.  And what would the Defendant request?

MR. BRYANT:  Your Honor, ten minutes will be sufficient for Defendant and a three-minute warning would be appreciated.

THE COURT:  Okay.  I'll advise the clerks and CRD to prepare accordingly, and they will be the timekeepers.  I will allow each side -- each side up to 15 minutes for Opening Statements, and then I'll announce a three-minute warning.

Now, regarding witnesses.  I want to be pellucidly clear that neither side intends to call an expert.  I believe those deadlines have passed and I did not recall seeing designations for experts; is that correct, from the Plaintiff's standpoint?

MR. MORRIS:  That's correct, your Honor.

THE COURT:  Is that correct for Defendants?

MR. BRYANT:  Yes, your Honor.

THE COURT:  Okay.  In the unlikely event

that either side deems it necessary to call a last-minute exit (sic), please flag that by written submission to the Court.  And if I do admit any expert testimony, remember even though this is a bench trial, if you have a witness that's testifying in both capacities as a fact witness and an expert, just to clearly delineate those lines of testimony. This is more relevant to jury trials.  But if we cross that bridge at any point, just keep those rules in mind, specifically *United States versus Haines,* 803 F.3d 713, which explains that this Court must keep those lines of testimony distinct when they're coming from a singular witness.  So if we have any scramble to call experts, just keep that rule book in mind.

Now, how many witnesses does Plaintiff intend to call?  I have identified six possible witnesses and two -- I'm sorry.  Six probable witnesses and two possible witnesses, and I want to make sure that our lists match and so I can plan breaks, if necessary.

MR. MORRIS:  Sure, your Honor.  So we do intend to call President Walter Wendler.  We are working with Mr. Barrett Bright to prevent his -- present his live testimony.  He is a graduate

student up in Wisconsin.  We have agreed with Defendant's counsel to let them know by tomorrow morning whether or not we will call him live.  If the Court would like us to advise it as well, we're happy to do so.  We also indicated on our witness list that Plaintiff will call Mr. Jonathan Jayce Fanelli; however, we have learned very recently that Mr. Fanelli has some medical issues going on.  I conferred with Mr. Bryant and his counsel, co-counsel this morning about that.  We've agreed to let them know by no later than this evening whether or not Mr. Fanelli will be able to come live.  If he is not, the parties have designated his deposition testimony and we've agreed to rely on that in the instance he's unavailable because of his medical concerns.

THE COURT:  Okay.  The Court will plan accordingly, and I do want to compliment parties on working in all collegiality to make these arrangements with witnesses.  I know we're working on an expedited schedule.  If you require any ruling from the Court on witnesses or summons or anything of that sort, please notify the Court by written submission.  I had as -- well, I'll just let Defendant speak for itself.  Any additional

witnesses the Court should anticipate?

MR. BRYANT:  From the Defendant's standpoint, we really expect to present only -- our Cross-Examination.  It could be in our case as well. Of Mr. Bright, Mr. Fanelli and, of course, Dr. Wendler.  In the event that some testimony comes up during the Plaintiff's presentation that requires other folks who have been deposed from West Texas A&M, we listed them in our witness list, to testify we -- we would reserve the right to do that, but we listed them as unlikely witnesses to be called because we don't currently anticipate that'll be necessary.  So from our standpoint, we really would expect this to be a three-live-witness case.  And it may be that Mr. Fanelli will not be able to testify live but only by his deposition designations.

THE COURT:  Okay.

MR. BRYANT:  There's also mention in the Plaintiff's witness list of the possibility that former Plaintiff Stovall could testify and we would -- we do not intend to subpoena or require former Plaintiff Stovall to testify, but of course, we'll cross-examine if the Plaintiff presents Mr. Stovall.

MR. MORRIS:  And I can represent to the

Court that Stovall is not going to appear for live testimony.  So any testimony we would offer would be through deposition designations.

THE COURT:  Okay.  Understood.  And I will go through other witnesses that appeared in the submission and just confirm that the parties do not intend to call these witnesses.  So I'll do it this way.  I'll list the other names that appeared in the submissions.  It's my understanding that these persons will not appear and then I'll just verify first with Plaintiff and Defendant that that's the case.  So I had Christopher Thomas, Vice President of Student Affairs at West Texas A&M University; Shawn Fouts, Dean of Career and Technical Training at West Texas A&M University; Chip Chandler, Director of University Communications at West Texas A&M University; Todd Rasberry, Vice President for Philanthropy at West Texas A&M University.  And then the previously mentioned Marcus Stovall, a former member of Spectrum WT and former student.  Am I correct that Plaintiff does not intend to call any of the aforementioned witnesses?

MR. MORRIS:  Not live, your Honor.  If any, testimony we will enter for those witnesses will be by deposition designation only.

THE COURT:  Okay.  Understood.  Am I correct that the Defendant does not intend to call any of the aforementioned witnesses through live testimony?

MR. BRYANT:  Yes, your Honor, subject to what I previously advised the Court, that if something comes up on Direct that changes our plans, we would reserve the right to call the -- those -- one or more of those individuals, but we think that is unlikely.

THE COURT:  Okay.  Understood.  And thank you for working so diligently with opposing counsel to narrow down the evidence that will be submitted and the witnesses who will appear.  So let's go through these binders of exhibits.  And my law clerks haven't slept since you have presented these voluminous evidentiary materials, so I thank you for the baptism of fire that every young lawyer needs to go through.  So just some ground rules.  I discern that there are really only a handful of Rules of Evidence and other rules applicable to the contested evidence, so let me just set the stage for adjudicating any contested evidence and objections. So as a reminder, because this is a bench trial, Rule 403 has no application.  I'll refer counsel to

Gulf States Utilities versus Ecodyne, 635 F.2d 517. There, the Court, the Fifth Circuit explains that Rule 403 has no logical application for bench trials, so please resist the urge to use your trial skill-set in making 403 objections. Also, I see that a lot of the objections sound in Rule 807 and other Rules of Evidence, specifically 401, which is a relevance rule. Obviously, the hearsay rules, the expert opinion rule, which I believe may be obviated by the deadlines that have passed on that. But that rule is 705. The Best Evidence Rule which applies to some of the documents that may not be in their original state or recording and then Rule 807, which allows the presiding judge, especially in a bench trial setting, to admit any evidence deemed trustworthy and more probative. And if any of these rules are not invoked in the Court's adjudication here or at trial, you may hear the Court use the following terminology which is something I learned from my nonprofit practice. I'll give the evidence the weight to which it is due. So should you hear that phrase at trial, know that you will have a final adjudication of an evidentiary objection for your appeal. So if at any point in the trial we get into an evidentiary fight about a particular line of

inquiry or exhibit, I may use the terminology in this bench trial setting; I'll give the evidence the weight to which it is due, and then you'll have -- if it is a material piece of evidence and it did affect the Court's final ruling, you'll have a written order from the Court.  So if you hear that terminology at the bench trial, just know that I'm carrying forward the objection.  At all times, I understand my role as trier of fact and law in a bench trial and I am simply moving the proceeding on, but you'll have a ruling if it is material to the case.

So it's my understanding that Defendant does not object to any of Plaintiff's proposed exhibits which would run from Exhibit 1 through -- it looks like Exhibit 78; is that correct?

MR. BRYANT:  Your Honor, mindful of the fact that the Court will give those exhibits the weight that it deems appropriate, Defendants decided to and do not lodge any objections to Plaintiff's exhibits.

THE COURT:  Okay.  And any additional ruling that Plaintiff would require before I preadmit for consideration at the bench trial Plaintiff's Exhibits 1 through 78?

MR. MORRIS:  Nothing from us on Plaintiff's exhibits, your Honor.

THE COURT:  Okay.  So this Court preadmits consistent with this Court's obligation as the presiding officer in a bench trial, this Court preadmits Plaintiff's Exhibits 1 through 78.  Those are in evidence.  They may be referenced by exhibit number and they may be used by either party and with any witness.  So let's turn to I think the only set of exhibits that may require an evidentiary ruling at today's pretrial conference.  So this would be Defendant's Exhibits 30, 37, 38, 80, 81, 84, 98, 123, 130, 141 through 144.  155 through 162, 179, 180, 185, 227, 251, 252.  And then a series; 291 through 318.  339 through 342.  363.  381 through 404.  408.  433 through 436 and 442.

And Mr. Morris, has the Court correctly inventoried those exhibits to which Defendant objects and requires a ruling from this Court?

MR. MORRIS:  That is correct, your Honor.

THE COURT:  Okay.  So let's take those up in sequence.  It's my practice to provide counsel with a tentative determination.  And then I'll allow any additional argument that is not cumulative of the written submissions.  So let's begin with

Defendant's Exhibit 30.  And this is a radio interview with Defendant Wendler, and I discern that this is potentially relevant to Defendant's argument -- I'm sorry, Plaintiff's argument on viewpoint discrimination and the purposes for event cancellation.  The primary objective here is that Defendant did not produce this document during discovery in violation of Rule of Civil Procedure 37(c)(1).  And here, Defendants have argued that this is potentially relevant to Wendler's state of mind.  The Court has tentatively determined that it should sustain this objection because of Rule 37(c)(1) and that it wasn't timely produced during the discovery schedule, but I'll invite any additional argument from the movant, Plaintiff, and then the Defendant as long as it's not cumulative.

MR. MORRIS:  Sure.  And just before we go down the list, your Honor, and we're happy obviously to proceed as the Court wants.  I just wanted to advise the Court that our objections, although they appear, you know, voluminous, they're really not. They sort of follow four buckets.  One is stuff Defendant did not produce.  Two are materials that we're just concerned about being used for hearsay or expert purposes.  Third are emails that involve

Plaintiff Stovall's personal life only and then the fourth is a category of documents; social media posts, videos, articles that involve drag shows and in our opinion have no relevance to the issues in this case. So I don't know if the Court wants to proceed in those buckets. We're certainly prepared to delineate those buckets on the record and argue our objections, but I just wanted to give the Court that option if it saves us some time.

THE COURT: Okay. Understood, and I think I had the same taxonomy that your objections could be categorized in those four buckets. So just for record purposes and because it will be a voluminous evidentiary record, I think we'll take them up in sequence and I'm prepared to do that. My law clerks have prepared the world's most glorious proof chart. So I'm ready to take those up one by one. We went through those last night. So on -- so let's do it that way just so we have a pellucidly clear record for the Court's reasons for admitting or denying each of those exhibits. And I do understand, especially on hearsay, that the Defendant's objection is in many instances more limited just as long as it's not -- many of those exhibits are not objectionable unless they are submitted for the

truth of the matter asserted.

MR. MORRIS:  Correct.  Or used to establish expert opinion.  We conferred about this this morning.  I'll let Mr. Bryant explain to the Court Defendant's intent with those exhibits.

MR. BRYANT:  Your Honor, first on Exhibit 30, I advised opposing counsel before the hearing that Defendant is withdrawing that exhibit.

THE COURT:  Okay.

MR. BRYANT:  So no ruling is necessary on that one.  There's a large number of exhibits that we'll get into either individually or otherwise that Plaintiff has objected to on a limited basis that -- they object to if it's offered for the truth of the assertion and they object to it if it is offered as an expert opinion.  None of those are offered as expert opinions and virtually none of them are offered for the truth of the matter asserted.  So I think that we'll be happy to put that on the record individually for the exhibits, but I think they obviate Plaintiff's objections to those exhibits and I just wanted to forecast that in general, that will apply to many of the exhibits.

THE COURT:  Okay.  So let's pick up some speed as Mr. Morris recommends.  So the Court

understands that Defendant's Exhibit 30 is withdrawn. And I don't expect to see that at the bench trial. Can the parties quickly confer and I'll order the microphones disabled on which exhibits may be admitted by ruling of this Court that they are pre-admitted on the condition that the Government will not offer the exhibit, excerpt or testimony for the truth of the matter asserted in violation of hearsay rules or as purported expert testimony in violation of this Court's discovery rule. Can you give me the sequence of exhibits that would correspond to that first bucket of hearsay, expert objections and we can make a ruling on that?

MR. RUDOVSKY: Your Honor, I believe I can give you that sequence of exhibits.

THE COURT: Please do so.

MR. RUDOVSKY: That's Exhibit 130. Exhibits 141 through 144. Exhibit 155. Exhibits 156 through 157. Exhibits 179 through 180. And Exhibit 227.

THE COURT: And Mr. Bryant, I take it from your prior comment to the Court that Defendant does agree with the conditional admission and understands if this Court admits these exhibits that the Defendant is not allowed to use these exhibits to

prove the truth of the matter asserted or as any form of expert testimony which would violate Rule 705 and also this Court's discovery rules.

MR. BRYANT: Yes, your Honor.

THE COURT: Okay.

MR. STEINBAUGH: Your Honor, if I may supplement that list as we are trying to figure out what is going into each bucket, there are a number of other exhibits that do have questions about whether or not they're being offered as hearsay or should be excluded under the hearsay rule. And those would include Exhibits 291 to 318. 339 to 342. Number 363. And I would flag for the Court that 363 is the video that we had discussed from the Motion for Summary Judgment. And then further on that list, 381 to 404. 408. And finally 433 to 436.

THE COURT: And does defense counsel agree that one catchall ruling as we've contoured would adequately cover also those exhibit ranges?

MR. BRYANT: Yes, your Honor. I think those are a little bit different in that they do include the objection about -- they object to it if it's being offered for the truth of the matter asserted. Many of those also have a relevance

objection. And so we think between the two of those, certainly Defendant is not offering them for the truth of the matters asserted, and we would like -- we think that the relevance point is covered by what the Court has already cited regarding relevance in a bench trial. So we agree that those objections can be obviated to the extent that Defendant is not offering any of those exhibits for the truth of the matters asserted.

THE COURT: Okay. So I understand your response, Mr. Bryant. So on the second list that includes documents in the 300 and 400 range, are you agreed with Plaintiffs that this Court's ruling on conditional admission that those exhibits are pre-admitted but may not be used for the truth of the matter asserted in violation of hearsay rules or as some sort of back door expert testimony? Do you agree that that second exhibit range could be covered by that ruling?

MR. BRYANT: Yes, your Honor. We agree.

THE COURT: Okay. Okay. So the Court agrees with counsel with one exception, and that would be exhibits 156 and 157. I'll give you a separate ruling for those.

MR. STEINBAUGH: Your Honor?

THE COURT: Yes, counselor?

MR. STEINBAUGH: Just to clarify, we do still object to the exhibits in the 300 to 400 range on relevance grounds and would like to be heard on that.

THE COURT: Oh, on relevance grounds. And so these are the ones that you just listed?

MR. STEINBAUGH: Yes. I think what we're agreeing to here is about whether or not there's an objection or whether or not Defendants will offer those to prove the truth of the matter asserted or as expert testimony. We're not -- I don't think we've resolved the question of whether or not they're relevant.

THE COURT: Okay. So let's do it this way. Taking that first list which I had as 130, 140 through 144. 155, 156, 157. 179 through 180, and 227. I think the Court can rule on those without further argument on relevance; is that correct, for the Defendant?

MR. BRYANT: Yes, your Honor.

THE COURT: And is that correct for the Plaintiff?

MR. RUDOVSKY: Yes, your Honor.

THE COURT: Okay. So regarding

Defendant's Exhibits 130, 141 through 144, 155, 179, 180 and 227, this Court hereby rules and finds that these exhibits are preadmitted and may be used at the bench trial subject to the following condition. Consistent with the Rule 801 definition of hearsay and various subsequent 800 Rules relevant thereto, Defendant may not use these aforementioned exhibits to prove the truth of the matter asserted and may not represent to the Court that any of these exhibits constitute expert opinion as governed by Daubert and other standards for expert testimony. Now, regarding rule one -- I'm sorry, Exhibit 156 and 157. Here, the Court tentatively overrules Defendant's objection. Here, the Court finds that Defendant's 156 and 157 are non-hearsay. Additionally, if it were hearsay, an exception applies under 803(17), an exception for other compilations generally relied upon by the public. This Court would also apply Federal Rule of Evidence 807, the catchall exception, because this is trustworthy material. It is probative, and the Court admits this exhibit in the interest of justice. And the parties have long had notice of this material because the PG-13 rating as has commonly appeared in the MPAA and MPAA rating scales

is in the public domain and falls within 803(17) for that reason.  This Court also would have exercised its authority to take judicial notice of the MPAA ratings given frequent references to PG-13 status in the exhibits and the arguments of counsel.  And most pointedly, Plaintiff's assertion that the PG-13 rating has some bearing on admissibility of the planned performance.  So for all those reasons, this Court has tentatively determined that Defendant's Exhibits 156 and 157 are admitted for those reasons and for those rules.  Does Plaintiff have any additional argument that would not be cumulative?

MR. RUDOVSKY:  No, your Honor.

THE COURT:  Any additional argument from the Government?

MR. BRYANT:  No, your Honor.

THE COURT:  The Court so rules and Defendant's Exhibits 156 and 157 are admitted.  They may be used by either party for presentation to the Court or witnesses.  And the Court admits them for all the reasons stated at the pretrial conference.  And let me quickly update my chart of exhibits to include those that were just admitted so that we don't repeat ourselves.

Okay.  And by the Court's inventory, the

next range of exhibits where objections apply and require adjudication are 37 and 38.  So this is Defendant's Exhibit 37 and 38.  Here, this is the West Texas Code of Conduct concerning Disorderly Conduct and Community Standards in Exhibit 37.  And Exhibit 38 includes various laws and policies, some under consideration of the Texas legislature.  Also, a letter from Governor Abbott and other materials.  So here, Defendant has argued in written submission that Exhibit 37 violates the Best Evidence Rule, because there is not an exact copy of that code as required by Federal Rule of Evidence 1002.  And specifically, Defendant objects if offered to prove the content of the writing.  Here, the Court has tentatively determined that it should overrule Defendant's objection pursuant to Federal Rule of Evidence 1006, which permits the admission of summaries as long as parties seeking admission make copies available to the other party or available publicly.  Because of the filed materials with the Court, the Court discerns that that rule is in effect as to Defendant's Exhibit 37.

I'll invite any responsive argument that is not cumulative of the written submissions. Mr. Morris, does Defendant -- does Plaintiff have

any additional argument to support that objection?

MR. RUDOVSKY:  No additional argument, your Honor.

THE COURT:  Any from the Defendant?

MR. BRYANT:  No, your Honor.

THE COURT:  The Court adopts its tentative determination as its final ruling and hereby admits Defendant's Exhibit No. 37 pursuant to Federal Rule of Evidence 1006, 1006.  And this Court would have also invoked its authority, particularly in a bench trial setting, pursuant to Rule 807, allowing the Court to consider evidence that is potential hearsay but is otherwise sufficiently trustworthy or probative.

Now, regarding Defendant's Exhibit 38. This is a similar objection for the same reasons, and the Court has the same tentative determination. Does Plaintiff have any additional argument to support its objection to Defendant's Exhibit 38?

MR. RUDOVSKY:  No additional argument, your Honor.

THE COURT:  Any from the Defendant?

MR. BRYANT:  No, your Honor.

THE COURT:  For the same reasons, this Court admitted Defendant's Exhibit 37.  The Court

admits Exhibit 38 and, again, the Court repeats. Here, the ruling is based primarily on Federal Rule of Evidence 1006, but the Court would have also invoked Rule 807 because the Court finds Exhibit 38 sufficiently trustworthy and more probative on the point and would have used that basis for admission even if the Court erred in its reading and application of Rule 1002 and 1006.

Next, Defendant's Exhibits 80 and 81.  I believe the original objection ran through 86, and I think what remains, Mr. Morris, is an objection to Defendant's Exhibits 80, 81 and 84; is that correct? So here, the range in the original objection stated Exhibits 80 through 86; but as I read the objections and hear from counsel today, I believe you only need a ruling on 80, 81 and 84; is that correct?

MR. STEINBAUGH:  I think that is correct, your Honor.  I would also add that within the same sort of bucket would be 123, 251, 252 and 442.  We can address those as they come up, but I think our arguments are going to be similar with respect to those.

THE COURT:  Okay.  So let me make a note. Okay.  With the understanding that this may apply with equal force to Defendant Exhibits 123, 251, 252

and 442.  Here, these exhibits in this range, specifically Defendant's Exhibits 80 through 86, but through the hard work of counsel, I believe the only remaining objections are specific to 80, 81 and 84. The Court has tentatively determined that it should sustain Plaintiff's objection pursuant to Federal Rule of Evidence 402.  The Court cannot discern the particular relevance of this email exchange between persons identified by the names Stovall, Thomas, Haugen and Fouts.  And from what the Court can discern, there was a death by choking that was allegedly a suicide episode.  We are a little far afield of the persons and parties necessary to the Court's adjudication of the claims pending, so I'll invite Plaintiff and Defendant to explain to the Court why Exhibits 80, 81 and 84 are relevant. Otherwise, this Court will sustain Defendant's objection pursuant to Rule 402.

So I'll allow Plaintiff as the movant to make any additional argument necessary to advocate that objection.

MR. STEINBAUGH:  Your Honor, I would just add that my read of the Defendant's interrogatory responses -- and I know -- recall that the Court had ordered Defendant to provide more specific responses

to those interrogatories.  I don't see any reference in those to Plaintiff Stovall's or former Plaintiff Stovall's mental health or family relationships, and former Plaintiff Stovall is not a party to this action anymore.  Plaintiff Stovall's not going to be testifying live in this court.  And I do not recall much, if any, designated testimony on this.  I think there may have been some reference to Mr. Stovall's mental health issues previously, but I don't really see the relevance here.

THE COURT:  Okay.  And the Court has tentatively agreed with that.  Mr. Bryant, any response that could persuade the Court to reverse itself on its tentative determination?

MR. BRYANT:  I can't warrant that it would persuade the Court of anything, but I did want to point out that Mr. Stovall not only was former plaintiff but -- and apparently as of today is not a live witness but is a witness through deposition designations.  We wanted to show through these exhibits the background and state of mind of Mr. Stovall and also to show that Dr. Wendler was contacted as well as Dr. Thomas regarding personal and financial problems of Stovall and that we wanted the Court to be aware of Dr. Wendler's attempts to

try to sensitively deal with those problems.  The truth is that this is only relevant to the extent the Court finds it relevant.  Either -- primarily not to Stovall's mental state but to Dr. Wendler's state of mind as well as an assistance in evaluating the credibility of any testimony that has been designated from Stovall.  So those are our arguments, and we think those are ones also that the Court should admit and give such relevance to it as the Court may deem appropriate at the end of the trial.

THE COURT:  Okay.  Understood.  So the Court hereby adopts its tentative determination as its final finding and ruling.  And this Court sustains Defendant's objection -- sorry.  This Court sustains Plaintiff's objections to Defendant's Exhibits 80, 81, 84, 123, 251, 252 and 442.  This Court on balance finds that this background information specific to a death that is allegedly a suicide does not have enough probative bearing on the causes of action and the elements that this Court must adjudicate in determining this case.  So those exhibits are not admitted, and they may not be referenced during the bench trial.  And for purposes of further appellate review, the Court did not

consider as a basis for any of its rulings or any final judgment those exhibits.  Specifically, 80, 81, 84, 123, 251, 252 and 442.  And the Court so rules.  Now, I believe the next contested exhibit is Defendant's Exhibit 98.  And this is a 2023 flier, and I understand from the parties' submissions that this was a preliminary proposed template and flier for one of the performances at issue.  Here, Plaintiff objects that it would constitute hearsay if used to show the truth of the matter asserted, specifically that the flier was sexually suggestive. Defendant responds that it is relevant and potentially an exception to hearsay because it represents Defendant's state of mind.  And the Court will now hear argument from the movant, Plaintiff, and then any response from the Defendant that would not be cumulative.

And just for reference, point because we have so many exhibits, this is an email exchange regarding a 2023 flier and I believe it starts with somebody named Fouts.

MR. RUDOVSKY:  Your Honor, Plaintiff would move to exclude Exhibit 98 as inadmissible hearsay to the extent Defendant is seeking to rely on the flier as proof of the actual content or

characteristics of Spectrum's planned drag performances or to the extent that the flier itself was sexually suggestive.

THE COURT:  Okay.  So this is one of those truth of the matter asserted, hearsay style objections.  If we have a conditional admission, is Plaintiff satisfied with that ruling?  I know we've made that ruling on another category and list of exhibits.  That's without prejudice to you making any other arguments, but could we use something like a conditional ruling that it's the Court's understanding it cannot be used to prove the performance would be sexually suggestive simply because it appears in an email exchange between faculty, sponsor, staff and the University?  Is that conditional ruling acceptable to the Plaintiffs?

MR. RUDOVSKY:  That's acceptable to the Plaintiffs, your Honor.

THE COURT:  Is that acceptable to the defense?

MR. BRYANT:  Yes, your Honor.

THE COURT:  The Court so rules.  Here, the Court in part overrules Defendant's objection to Defendant's Exhibit 98 on the following terms and conditions.  The Court will consider and allow the

parties to present Defendant's Exhibit No. 98 but only as relevant to the context of this case as admissible proof of Defendant Wendler's state of mind but not to prove or provide a basis for this Court's ruling that the proposed performance was, quote, sexually suggestive, simply because those determinations and assessments appear in an email exchange between faculty members and club sponsors and members.  The Court so rules.  It will be admitted into evidence on that condition.

          Now, I believe the next range of contested exhibits start with 158 and run through 162.  Is that consistent with the Plaintiff's inventory of objections that remain?

          MR. RUDOVSKY:  It is, your Honor.

          THE COURT:  Okay.  And does Defendant agree that that's the next series of exhibits that require ruling from the bench?

          MR. BRYANT:  Yes, your Honor.

          THE COURT:  Okay.  So here, I've grouped that range separately.  We'll take up Exhibit 158. And then because they are in a series, Exhibits 159 through 162.  So regarding first Defendant's proposed Exhibit 158, this is potentially relevant to Defendant Wendler's reason for cancellation.

Plaintiff has objected to relevance under Federal Rule of Evidence 401 and 402 but clarifies that that objection is narrowed to this category we've discussed often at the hearing, objecting only to the extent it's used for the truth of the matter asserted. Defendant also claims that it wasn't produced pursuant to the Court's discovery schedule. In general, the Defendant responds that it is relevant and material to Defendant's state of mind and a potential exception.

Here, I'll invite any additional argument from the Plaintiff and then I'll instruct the Defendant to respond to the Rule of Civil Procedure 37(c)(1) objection that Texas failed to produce this exhibit during the discovery schedule. So first from the Plaintiff.

MR. RUDOVSKY: Thank you, your Honor. You are correct. Plaintiff would just move to exclude as a matter of fairness any exhibit that was not produced during discovery that covers this range, 158 through 162. It also covers Exhibit 293, 297 and 306. That's eight exhibits in total. These exhibits were responsive to Plaintiff's discovery requests. We're not -- were not produced notwithstanding the Court's order compelling

Defendants to disclose responsive materials.

THE COURT:  A response from the Defendant and specifically address failure to produce and Rule 37(c)(1).

MR. BRYANT:  Your Honor, we of course, like Plaintiffs, had an extremely limited period in which to make discovery, and our discovery obligations ran to documents that were in our possession, custody or control.  The documents that we're talking about now did not fit within those categories because we only learned of them through public searches of the internet after the date for production of documents had closed.  So these are not documents that were within the possession, custody or control of Defendant, and we produced them as soon as we located them.  They're not of a nature that could have been the subject of significant deposition testimony during the discovery period, and we think that -- we wanted the Court to have as much relevant information as it could to consider in connection with what's a difficult task; namely, to determine or consider whether or not the 2023 and 2023 -- '24 drag show proposed performances that never occurred would have -- we know that they would have occurred before

minors, but to understand the nature of the types of drag show performances before minors that were being performed during that period.  Thank you.

THE COURT:  Understood.  I have your argument.  I'll include that alongside the written submissions.  Here, the Court adopts its tentative determination as its final ruling.  The Court sustains Defendant's objection pursuant to Federal Rule of Civil Procedure 37(c)(1).  And because the document was not produced and made available to Plaintiffs during the expedited discovery schedule, although I do understand the Government's good faith response and argument at the hearing that they were working on an expedited schedule, this was not material within care and custody and control of the State of Texas, and I don't find any neglect or gamesmanship in that process.  It's simply a function of the expedited schedule which this Court imposed.  Now, regarding 159, 162, it's basically the same analysis.  Any additional argument from Plaintiff?

MR. RUDOVSKY:  No additional argument from Plaintiff, your Honor.

THE COURT:  Any from the Defendant?

MR. BRYANT:  No, your Honor.

THE COURT:  This Court sustains Plaintiff's objection for the same reasons it sustained Defendant's -- Plaintiff's objection to Government's Exhibit 158.  Here, the Court finds that this material was produced outside the Court's discovery schedule and in potential violation of Federal Rule of Civil Procedure 37(c)(1), and the Court sustains Defendant's -- I'm sorry, Government's objection to -- I'm sorry.  You guys are sitting at tables that are different from my usual criminal trial setup.  And so as a former AUSA, I just default to certain tables for reasons of that history.  I apologize that I keep misidentifying parties, so strike the party references.  Here, I'll do one catchall ruling. Here, the Court sustains Defendant's -- Plaintiff's objections to Exhibits 158, 159 through 162, for the reasons stated at the hearing.  Specifically, Rule 37(c)(1) and a potential violation of the Court's expedited discovery rule.  They are not in evidence and they may not be referenced by either party or presented to witnesses.

Okay.  So I believe the next document where there's a remaining objection is Government's Exhibit 185, and this is an -- from what -- from

the -- from what the Court can ascertain from the corners of the document, this is an unsolicited letter submitted to Defendant Wendler discussing the writer's agreement with Wendler's decision-making. This is potentially relevant to Defendant Wendler's reasons for cancellation. Also his relative state of mind. Here, the objection sounds in Rule 401 and 402. Here, the Court has tentatively determined that it should sustain in part this objection as to relevance. Screenshots, commentary and notes not relevant to drag are likely inadmissible because they are irrelevant. And particular -- in particular, Bates stamped pages DEF_00042-43 and DEF_00045 through 46. So although this range of documents includes material that are specific to drag shows and the proposed performance by Plaintiff, these particular Bates ranges bear on issues that are immaterial and irrelevant to the Court's adjudication of this case. The Court would also sustain in part Defendant's objection that the remaining documents and Bates ranges within these exhibits cannot be used to prove the truth of the matter asserted.

Does Plaintiff have any additional argument that would not be cumulative?

MR. RUDOVSKY:  No, your Honor.

THE COURT:  Any from the Government?

MR. BRYANT:  No, your Honor.

THE COURT:  So here, the Court so rules. The Court sustains Plaintiff's objection in part to Government's Exhibit 185 and excludes in particular the following Bates stamped documents.  DEF_00042-43 and DEF_00045-46 because they are not relevant to this Court's adjudication of the causes of action pled by Plaintiff.  They, therefore, would violate Rule 401 and 402 even in this bench trial setting, and the Court further rules that none of the remaining materials, screenshots, commentaries or notes may be marshaled by Government to prove the truth of the matter asserted.  The remaining Bates ranges documents, screenshots, commentary may be presented to witnesses and the Court and they are in evidence.  So this is a partial ruling, and I'll just admonish counsel to work diligently together to make sure those Bates ranges that are in evidence are presented but at no time may either party reference the DEF_42-43, DEF_45-46 materials, and the Court so rules on Government's Exhibit 185.

So now I believe the next contested exhibit range begins at 230 through 273.  And by

agreement of the parties, I believe we've already discussed a series of documents in that range which are preadmitted by agreement of the parties without objection; 230 through 250, and 253 through 273, such that you only need rulings on 251 and 252.  Is that --

MR. BRYANT:  Your Honor, I believe you previously ruled on 251 and 252.  Those are also within the Stovall group.

THE COURT:  Okay.

MR. BRYANT:  And I believe you've excluded those exhibits.

THE COURT:  Okay.  And is that consistent with Plaintiff's inventory of your objections and the Court's rulings.

MR. STEINBAUGH:  Yes, your Honor.

THE COURT:  Okay.  So the Court so orders and consistent with that prior ruling, the Court sustains Plaintiff's objections to the aforementioned exhibits; 251 and 252, for the reasons previously stated.  I agree with counsel both for the Defendant and the Government that this is within this Court's ruling on various emails, text messages and exchanges regarding Stovall and how that is outside the scope of this case, and the

Court so rules.  251 and 252 are not in evidence. And for further appellate review, at no point did the Court rely on Government's Exhibits 251 and 252 in making any subsequent rulings either at the pretrial conference or the trial on the merits.

So I think up next in the cue, 291 to 318. And here are a series of Instagram posts by the proposed performer, Myss Myka.  Plaintiff objects to relevance under 401, 402 and hearsay.  And I believe there was in the written objection a suggestion that 293, 297 and 306 may have been omitted in the original production by the Government.

Do I read that correctly, or are you standing instead on your rule-based objections to relevance and hearsay?

MR. STEINBAUGH:  Your Honor, I think that the Court is correct that Exhibits 293, 297 and 306 were not produced in the discovery period.  I don't think there was any reason to discuss those particular exhibits' relevance or hearsay or any other issues if they're already being excluded on that basis.

THE COURT:  Okay.  I have your argument. Any response from the Government?

MR. BRYANT:  No, your Honor.

THE COURT:  Okay.  So here, the Court does strike and sustain Defendant's objection -- Plaintiff's objections to 293, 297 and 306.  For the same reasons similarly situated, exhibits were excluded.  Here, Rule 37(c)(1) and this Court's own discovery orders required pre-production of materials to be used at the bench trial.  These were not pre-produced, although the Court finds no deception or undue delay on part of the Government. This Court itself imposed the expedited schedule which both Defendant and Government operated under with all diligence and deliberation.  So although they weren't produced, the Court doesn't find any malfeasance in that failure, but by operation of the aforementioned rules, 293, 297 and 306 are not admitted and may not be presented to the Court or any witness in this case.  Regarding the remaining documents within that exhibit range, 291 through 318, the Court sustains Defendant's -- sustains Plaintiff's objection as to hearsay, specifically those remaining exhibits may not be used to prove the truth of the matter asserted, but the Court overrules Plaintiff's objection to relevance.  Here, the Court finds that these remaining documents in that range are relevant to Defendant Wendler's state

of mind, specifically his reasons for cancellation in 2023, 2024.  All right.  So I'm trying to gain too much speed here.  As my clerk reminded me, I do need to offer both the movant, Plaintiff, and Defendant, Government, an opportunity to further argue relevance as to the remaining exhibits in that range.  Specific to hearsay, I think it's the same recurring objection that you can't use these materials to prove the truth of the matter asserted.  But as to relevance, I'll just hear additional -- any additional reasons why Plaintiffs discern that the remaining exhibits are irrelevant?

MR. STEINBAUGH:  Sure, your Honor.  And I appreciate what -- the Court's observation that, you know, if there would be any relevance here, it would be on the potential state of mind.  But as the Court will recall when President Wendler in March of 2023 issued his lengthy meditation as to why he was canceling Plaintiff's drag show and prohibiting any drag show from happening at this university, he didn't mention Myss Myka at all.  And the reason for that is that he was not aware of her existence.  He didn't learn of Myss Myka's proposed involvement in the show until after he issued this public statement.  His testimony will show that he may have

seen Myss Myka on the news, but that's after he cancelled the show.  This became newsworthy because he cancelled it.  He didn't know about her when he cancelled the show.  So it could not have impacted his state of mind.

Now, whether or not Myss Myka is going -- would have been there or not didn't impact his decision.  And that's true in 2023.  That's true in 2024.  He would have made the same decision to cancel the show.  And importantly, the students here have decided that the proposed 2026 show is only going to be student performers.  Myss Myka is not going to be there.  To the extent Myss Myka would be there at all is because she can buy a ticket and sit in the audience.  She's not going to be a performer. She's not going to be an emcee.  So -- and I would also point out that performers, artists, musicians, comedians can tailor their performance to a particular audience, a particular venue, a particular show.

I don't know if the Court is familiar with Bob Saget, but for example, Bob Saget was famous as America's dad on the television show Full House. But in an adult comedy nightclub, he was one of the most raunchiest comedians alive and he was renowned

for that.  So the fact that a performer can give one performance in a particular venue does not mean that the same performance is going to be in a completely different venue before a completely different audience.  President Wendler quite eloquently said during his deposition:  Well, you know, you can't step in the same stream twice.  And what he meant by that was every performance is different.  And so a performer's performance in a completely different venue doesn't bear upon what this performance would have been.  Now, we're not objecting to every use of Myss Myka or references to Myss Myka.  I appreciate that Myss Myka was present at the off-campus show.  So we're not objecting to videos of that.  Because that is a show that Plaintiffs were actually involved in.  What they are submitting are exhibits of shows in Lubbock and, you know, places far away from the West Texas campus and venues that are not a university campus; venues that do not involve minors at all.

So let me just check my notes.  I'm sorry.

THE COURT:  Just for record purposes, it's sometimes confusing because West Texas is a geographic metonymy for this entire region of the State of Texas.  It's also the name of the

University.  So here you are referring to the University?

MR. STEINBAUGH:  Specifically the University, correct.

THE COURT:  Okay.  Any additional -- I know you were checking your notes.  I don't want to delay you or impede you in any way.  Having --

MR. STEINBAUGH:  I think that's it, your Honor.

THE COURT:  Okay.  Having reviewed your notes, no further argument, okay.

And from the Defendant Government?

MR. BRYANT:  Your Honor, these exhibits are relevant not only to Dr. Wendler's state of mind -- and my recollection of the testimony is that he does not remember when he first became aware of Myss Myka's involvement in the Plaintiff's proposed 2023 drag show -- but what is undisputed is that Plaintiff chose Myss Myka as well as other Amarillo drag queens to be participants in the 2023 proposed drag show at Legacy Hall as well as the 2024 proposed drag show at Legacy Hall.

Myss Myka and other Amarillo drag queens are listed in Plaintiff's Interrogatory Responses as persons who would have participated in that proposed

show at Legacy Hall, actually in both years, had the shows not been cancelled.  So we believe that in addition to the state of mind, knowing what Myss Myka's publicly available performances were is relevant for the Court's consideration of the nature of the show that would have been presented had President Wendler not cancelled the 2023 and 2024 drag shows.

I understand counsel's argument that -- that the proposed 2026 drag show would be entirely different, etc., but the Court's entitled to know what a Myss Myka drag performance consists of, and these exhibits tell that story.  Thank you.

THE COURT:  Okay.  I have your arguments at the hearing.  I'll consider them alongside the written submissions.

So here, the Court partially sustains Plaintiff's objections to the remaining exhibits in the aforementioned document range, specifically -- So here, these are Plaintiff's objections to proposed Exhibits 291 through 318.  By operation of prior rulings, many of those exhibits are admitted or adjudicated.  So what remains are Government's Exhibits 291, 292, 294, 295, 296, 298, 299, 300, 301, 302, 303, 304 and 305.  And then documents 307

through 318.

Here, the Court finally rules as follows: The Court partially sustains Defendant's objections consistent with Rule 802, and these aforementioned exhibits may not be used to prove the truth of the matter asserted in violation of that rule.  But the Court does find that the documents are relevant and that another rule of evidence and hearsay exception applies, specifically state of mind.  And also, this Court's discretion to invoke Rule 807 because the Court finds that those materials, those documents, that evidence is otherwise sufficiently trustworthy and probative on the point of law and fact; specifically, the context and basis for Defendant Wendler's decisions to deny the various performances at issue.

Also, the Court will note that whatever the merits and demerits of Myss Myka's performances, here, Plaintiffs explicitly invited the performer in the years 2023 and 2024, so there was a remaining relevance to those decision points, and Defendant Wendler's response thereto.  And also, as written to this Court in the submissions, the Plaintiff, Spectrum WT, does have plans for a 2026 show, but they are tentative.  I'm sure we'll hear additional

argument and facts at the bench trial, but as of the pretrial conference, any plans remain categorized as tentative.  So I know this is a lengthy case with a long chronology, but in all instances, those aforementioned exhibits are relevant, and the Court would also admit them under Rule 807.

So the next range of exhibits that are contested and require ruling of the Court are 339 and then 340 through 342.  Does Plaintiff agree that that's the next set of documents where you have lodged an objection and require a ruling of the Court?

MR. STEINBAUGH:  Yes, your Honor.

THE COURT:  And does Defendant Government agree that those are the next objections that require ruling?

MR. BRYANT:  Yes, your Honor.

THE COURT:  So let's take up 339 first and then you'll have in the cue 340 through 342.  So regarding the Defendant's proposed Exhibit 339, this is an 806 Coffee Instagram flier or advertisement for a drag show in 2023.  Defendant objects -- I'm sorry.  The Plaintiff objects to 401, 402 relevance and also raises a seriatim objection under 802, that that material may not be used to prove the truth of

the matter asserted.  So here, the Court has tentatively determined that it should sustain in part Plaintiff's objection that none of that flier, none of that material may be used to prove the truth of the matter asserted, but the Court otherwise overrules the objection as to relevance and does find for purposes of this bench trial that it is material and relevant and would admit the exhibit for that purpose and the Court's consideration of Defendant's state of mind, and this Court would also invoke Rule 807 because the Court finds Government's Exhibit 339 is sufficiently trustworthy and more probative on the relevant point of law and fact. Any additional argument from the Plaintiff?

MR. STEINBAUGH:  Your Honor, I would just -- I think our arguments are similar to what I previously said, but I would also point out that this -- the timestamp on this document is December 18th, 2025, very late in the discovery process.  It would not have been able to depose President Wendler, as to his state of mind about this because this was produced later in the discovery process.  I believe this is before the conclusion of the discovery period, so that is not the issue.  But we are being prejudiced here.  I

would just point that out as well.

THE COURT: Okay. I have that argument. I'll consider it alongside your written submission. A response from the Defendant?

MR. BRYANT: No, your Honor.

THE COURT: Here, the Court adopts its tentative determination as its final ruling, and this ruling is without prejudice to Plaintiff cross-examining Defendant Wendler who is a listed witness for the bench trial, and I'll afford Plaintiff maximal leverage to Direct or Cross-Examine Defendant Wendler as to the potential relevance and effect on state of mind, consist -- relative to Exhibit 339. So the Court overrules Plaintiff's objection as to relevance but sustains in part Plaintiff's objection as to hearsay and exhibit -- Defendant's Exhibit 339 may not be used to prove the truth of the matter asserted. And as to this exhibit, the Court would also invoke Rule 807 because it finds the exhibit is sufficiently trustworthy and more probative on the relevant point of law; specifically, Defendant Wendler's state of mind which is also an exception to hearsay.

So now, I believe although they're in a

different series, it's the same argument, same objection, to Defendant's Exhibits 340 through 342; is that correct, for the Plaintiff?

MR. STEINBAUGH:  We reiterate the same arguments, your Honor.  I would also add that for each of these, if you look at the dates on some of these submissions, they could not have had an impact on the state of mind of the students or President Wendler.  So taking Exhibit 340, this is dated August 7th.  There's no year there, but because this screenshot was taken on December 18th, 2025, we can assume that this was August 7th, 2025.  That is well after the 2023 and 2024 shows.  So this performance, this exhibit, could not have impacted the students' state of mind in determining who to invite, and it could not have impacted President Wendler's state of mind in evaluating that.  Similarly, on 341, this is dated September 19th, 2024.  That's after the March 2024 proposed drag show and of course the March 2023 show.  Likewise, on Exhibit 342, this is a photograph taken and posted at least on September 9th, 2024.

THE COURT:  Understood.  I have your argument, and I'll now invite any additional argument from the Defendant that would not be

cumulative.

MR. BRYANT:  Your Honor, Defendant only wants to add to the previous point which is that the Court is entitled to consider all available evidence of the types of performances by performers who Plaintiff specifically invited to and intended to have perform at the '23 and 2024 drag shows. Whether that evidence occurred in 2022 or 2025, it is still evidence as to what likely would have proceeded had Dr. Wendler not canceled those drag shows.  So we think they are relevant regardless of the chronology and would ask that the Court make a similar ruling with respect to these exhibits as with respect to 339.  Thank you.

THE COURT:  So I have your arguments. I'll consider Defendant's arguments at the pretrial conference alongside its written submissions.  Here, the Court adopts its tentative determination as its final finding and ruling, but I'll supplement the Court's ruling on 339, 340, 341 and 342.  At all times at the pretrial conference and also at the bench trial, the Court will give the evidence the weight to which it is due, and this ruling is without prejudice to the Plaintiff.  Continuing to argue various chronologies, the date-specific

arguments regarding state of mind, Wendler, and what he know -- or what he knew or didn't know at the time he made various decisions, the Court is apprized of all the evidence and testimony before the bench and will at all times give the evidence only the weight to which it is due and were necessary and material to the Court's ruling.  The Court will produce a written order explaining the weight, if it weighed at all on the Court's final judgment or ruling on any issue in the case.  So the Court sustains in part Plaintiff's objection to 340, 341 and 342.  Those exhibits may not be used to prove the truth of the matter asserted, but the Court overrules Plaintiff's objection on relevance and specifically notes that Plaintiffs continue to seek prospective relief for a 2026 show, the contours of which are still tentative.  And for that reason, the Court must consider and contextualize Exhibits 339 and also this range; 340, 341 and 342, as material to Defendant's -- Defendant Wendler's state of mind and also as relevant to the context of the entire case where various performances and performers are invited, disinvited and then denied access to campus.  So here, the Court would also invoke Rule 807 to admit 340, 341 and 342.

So I believe the next exhibit range is as follows: And this is a big chunk, so -- and it will bring us almost to the end. So 363. 381 through 404. 408 and 433 through 436. Here, Plaintiff objects to relevance under Rule 401 and 402 and then lodges a similar hearsay objection, and the Defendant responds that these materials are at all times relevant to the administration's expectations and understanding of future proposed drag show performances. They're also relevant to the reasonableness or unreasonableness of the administrator's belief about the nature of these programs. And for all of these reasons and arguments, the Court finds that the Defendant has the better argument, although the Court is tentatively inclined to sustain Plaintiff's objection as to hearsay and the truth of the matter asserted as it has done throughout the hearing.

Any additional argument from Plaintiff?

MR. STEINBAUGH: No, your Honor. We would just make the cumulative argument we've previously made that students weren't aware of this. There's no evidence that Wendler was aware of any of this, and we do not believe that same performance in a different venue is the same performance here.

THE COURT:  And you will be allowed to continue to make even -- if I overrule you here as to admission of evidence, you will be able to make those arguments to the Court at the bench trial as well.

MR. STEINBAUGH:  I appreciate that.

THE COURT:  Okay.  Any additional information or argument from the Defendant?

MR. BRYANT:  No, your Honor.

THE COURT:  So here, the Court sustains in part Plaintiff's objections to Government's Exhibits 363, 380 through 404, 408, 433 through 436. Consistent with Federal Rule of Evidence 802, those exhibits may not be used to prove the truth of the matter asserted, but the Court finds that it may be -- those exhibits may be admitted to prove various categories of hearsay exceptions, specifically Defendant Wendler's state of mind.  It is also relevant to various decision points for the '23, '24 and proposed and tentative 2026 show.  And the Court would also use Rule 807 as the presiding judge in a bench trial to admit these exhibits because it finds that they are sufficiently trustworthy and more probative on the relevant points of law and fact that the Court must decide

and elements of Plaintiff's causes of actions.  And at all times, the Court will give the evidence the weight to which it is due, and the Court so rules.

Now, my law clerk just reminded me.  I believe that last ruling and that last range of exhibits was the point of Defendant's statement at the outset of the hearing that you may need a specific ruling on Rule 65(a)(2), vis-a-vis Government's Exhibit 363.  Is this the time where we need to hear any additional argument or protect the record as to that exhibit and that rule?

MR. BRYANT:  Your Honor, my recollection of the exchange that occurred early in our conference today was that Defendant wanted to be sure that all of the exhibits that were considered by the Court in connection with the Preliminary Injunction back in 2023 were considered part of the trial record here as provided by Rule 65(a)(2).  Court provided an opportunity for Plaintiff to object to that if it wished to do so, and my recollection is that there was an objection as to the Myss Myka video that was part of that Preliminary Injunction record.  I think --

THE COURT:  And that's why I think we've arrived at this point because I believe that is

Government's Exhibit 363.

MR. BRYANT:  Okay.  Then Defendant understands and accepts the portion that -- as to which objection has been sustained and understands that otherwise the Preliminary Injunction record is part of the trial record.  Is that a correct understanding or did I --

THE COURT:  Just a brief response from the Plaintiff --

MR. BRYANT:  Okay.

THE COURT:  -- and I think we can tailor this to exactly the ruling you'll need for the bench trial and any further appellate review.

MR. MORRIS:  I think we're in agreement. Your Honor has made, you know, the final ruling at least in terms of trial, and I think we're certainly comfortable with the Court's statement that, you know, we haven't waived the right to re-argue those objections at the bench trial, particularly if Dr. Wendler's testimony tends to diminish the relevance of this video.

THE COURT:  Okay.  Understood.  So you have this Court's ruling on exhibit -- Government's Exhibit 363.  I do agree with the Government that any materials that were the basis of the Court's

preliminary injunction order and opinion in 2023 are part of the trial record. That's an additional basis for admission on 363, but that exhibit remains subject to the Court's ruling and condition that it may not be used for the truth of the matter asserted. It must be cabined to any specific hearsay exception. Thus far, it appears that state of mind is the most consistent basis for Defendant's submission of Government's Exhibit 363, but however this material is presented at the bench trial and through any examination of any witness, the Court at all times will give the evidence the weight to which it is due and if required, provide additional written basis explaining the weight given Government's Exhibit 363.

And I believe most people I know went to law school to avoid numbers. I know I did. My dad's an aerospace engineer. My mom's a microbiologist, and I'm the kid who couldn't do math. So I went to law school to avoid numbers, but I feel like we've just thrown numbers throughout this hearing. I think that we're down to the last exhibit, but I'll just ask the parties to flip through their notes and make sure that I am correct, but I believe we are down to Government's Proposed

Exhibit 442.  And this is a letter submitted by Mr. Bright seeking a dependency override.  It's essentially an appeal letter to the University.  I believe this Court has sustained Plaintiff's objection as to relevance and that exhibit is out.  Is that the recollection of the Plaintiff?

MR. STEINBAUGH:  That's our understanding, yes.

THE COURT:  Is that the understanding of Defendant?

MR. BRYANT:  Yes, your Honor.

THE COURT:  So if I haven't already done so, it is so ordered.  442 is not in evidence.  It's not admitted for the reasons previously argued and adjudicated.

I'll just momentarily break for five minutes so I can confer with my clerks.  You may confer amongst the parties and counsel to make sure that we have every objection and exhibit properly accounted for and then we'll briefly return for final instructions for the bench trial.  So I am just using this time to compare notes, make sure that everything's in that needs to be in, everything that's out needs to be out and that there's nothing else this Court can do to prepare this case for

bench trial.  The Court will briefly recess for five minutes and counsel are admonished to do the same.

[PROCEEDINGS RESUMED AFTER BREAK.]

THE COURT:  Okay.  So I think we're all on the same page about what's in, what's out.  I'll allow the parties to confer with my clerks and CRD at the outset of the bench trial on Wednesday to make sure everyone is on the same page just so we don't start off the hearing with -- this actually happened in a criminal trial where there was extensive motions in limine about various evidence that was in and out and the prosecutor's opening slide was one of the exhibits that we had adjudicated and litigated and decided but nonetheless there it was during opening statements. So as a matter of housekeeping, please confer with each other as counsel and co-counsel, make sure we have the right list.  You can check that list against the CRD's record and you can even confer with my clerks on the day of my trial that we all start with the same list.

Now, regarding demonstratives, there is practice in this Court of requiring pretrial conference to identify any potential objections to demonstrative exhibits.  This is mostly applicable

in multi-day trials where another set of witnesses are prepared and in the cue for the next day, and I just order parties to review any demonstratives so that we don't have that episode I described. There's an exhibit that's put on the screen. It's intended to be a demonstrative of some sort and it's just not in evidence; it's already been deemed out of evidence. I was surprised by that because it appeared in a demonstrative, not an actual exhibit. So you should prepare to just kind of compare notes, make sure you don't need any additional rulings on any materials that will be on that screen before the Court. Do that before the trial starts. That'll be reflected in the final pretrial order that'll be forthcoming.

So have counsel for the Plaintiff had an opportunity to use the courtroom technology or test that, or is that something you prepare to do on Wednesday?

MR. MORRIS: We have not, your Honor. I think we're prepared to do it either Wednesday morning or perhaps after this hearing concludes.

THE COURT: Okay. That's acceptable. So at all times, there's one portal to this courtroom It's my courtroom deputy, Victoria Shrewsbury.

Please coordinate with her.  We'll make the space available to test-drive any materials that you have. You can do that today.  You can also do that in a day before Wednesday at the start of trial.  So we'll make this space available beginning at 8:00 o'clock a.m. on Wednesday.  I'll just admonish the parties to coordinate closely with my CRD, arrange some time where you can test-drive your equipment because I know this is a document-intensive, even video-intensive case.  So test-drive the equipment to make sure that we don't have any delays for simple IT issues.  I've also requested that Dallas send -- the Dallas Division which is our headquarters send an IT professional to be present on Wednesday.  So we should have the use of all audio, ELMO, video technology, anything that projects on this screen will be available on this screen, also to my law clerks.  So you can preview that courtroom technology today or at any other time you schedule with my CRD.  So please do so since this is a video document intensive case.

         To the extent possible, try to agree between parties on start and stop times.  So as an AUSA, I had terrorism cases where we were dealing with Arabic language overhears and other FISA

material and we agreed as to exhibits but then the start and stop times weren't agreed and various rules of completion and Best Evidence were lodged because we weren't starting and stopping at exactly the moment the other side thought appropriate.  So to the extent possible, I know you've worked diligently to be trial-ready on Wednesday.  Try to confer on start, stop times just so you don't burn any of your three hours just fighting about where the video should stop and end.  So I think that's -- that work is mostly done because of the way the exhibits are collected for the Court; but if you think anything's going to be controversial between you, let's try to get start/stop times agreed to on video, audio excerpts and then also deposition excerpts.  Which line do you start.  Which line do you end.  How you intend to present that.  Maybe just preview that with opposing counsel and make sure there's nothing you need me to decide.  The evidence is in, but if we can sort of have those start/stop times ahead of time, that'll speed the presentation to the Court.

So I have down that each side will have three hours.  That's not including closing and opening.  So far you've identified the potential

witnesses.  Please have them at the ready so that you can call them in an efficient manner.  The only thing remaining on the list is closing and how much time you request and any time warning.

For the Plaintiff?

MR. MORRIS:  I certainly think we'll be able to wrap it up all ahead of time, but I would request maybe 30 minutes, your Honor, just to be on the safe side.

THE COURT:  And a three-minute warning?

MR. MORRIS:  That would be fine.

THE COURT:  And anything reserved for rebuttal?

MR. MORRIS:  Five minutes.

THE COURT:  Okay.  And for the Defendant?

MR. BRYANT:  Again, I doubt that we would use it, but we would like 30 minutes with a three-minute warning.

THE COURT:  Okay.  So we'll -- I'll instruct the timekeepers, my law clerks and CRD, to prepare a game plan for 30-minute closings with a three-minute warning.  The timekeeper will advise me when we are approaching that three minutes and then Plaintiff has reserved five minutes for rebuttal.  So with that, are there any other matters that I can

decide to speed this process through Wednesday?

MR. MORRIS:  The Court raised the issue of admitting deposition designations, and I think Mr. Bryant and I both wanted to bring that to the Court's attention.  The parties have agreed that if the Court's amenable to it, we just wholesale enter the highlighted deposition designated transcripts into evidence rather than us having to read them out line by line in open court.  I want to make sure that's representing Defendant's position as well, but that's certainly our proposition here.

THE COURT:  Does the Defendant agree?

MR. BRYANT:  The parties worked cooperatively together, agreed that we're not objecting to the deposition designations that each other had made; and therefore, we just want to get all of that into evidence the most efficient way possible --

THE COURT:  Okay.

MR. BRYANT:  -- to streamline the process.

THE COURT:  So this is a joint motion to admit the -- the deposition designations?

MR. MORRIS:  That's correct.

THE COURT:  So ordered.  The Court grants that motion.  It's always the best possible motion

when it can be joint.  So that's granted.  I'll just -- I know that we just took two blue binders of deposition designations, but if you could just provide my law clerks and my CRD exactly the materials that you're referencing.  I believe I know what they are because I saw them on my desk.  But all agreed deposition designations are in evidence.  They are admitted.  They may present -- be presented through demonstrative to a witness or to this Court.  Just coordinate with my CRD and court staff to make sure we all agree on what those materials should be and how they should be presented.  Anything else before we recess for the day?

MR. MORRIS:  Yes, your Honor.  Just one more thing.  It dovetails nicely with the deposition designations.  There are a handful of exhibits, and I believe Defendants have highlighted them on their list and a couple excerpts from the Jonathan Fanelli deposition they have designated that fall within the agreed protective order so Plaintiff, you know, wanted to raise that for the Court.  I know the parties are prepared to discuss, you know, an agreeable procedure to ensure that that stays within the agreed protective order and does not enter into the public record.

THE COURT:  Okay.  So if we're approaching -- so in criminal cases, we have to do this sometimes with child witnesses and things of that sort.  So if we're approaching a point where that evidence will be presented either to a witness or to the Court, please signal to the Court, and I can make an admonition to any persons assembled in the gallery.  We can take the evidence there.  Is that probably the best possible protocol?

MR. MORRIS:  I think that would work, your Honor, as long as obviously the court reporter reflects on the record that we're -- we're in a confidential period, subject to your protective order, and I assume that would -- you're talking about closing the courtroom in case there are non-parties here who don't fall within the APO scope.

THE COURT:  Right and then maybe a preliminary instruction at the outset of the bench trial to any persons assembled in the gallery that there may be testimony subject to protective order which requires sealing of the court.  At that point, I'll ensure that the marshals and the CSOs are aware that that gallery should be cleared of any nonparty personnel.  Is that acceptable?

MR. MORRIS:  That's acceptable to us.

MR. BRYANT:  Yes, your Honor.

THE COURT:  I'll instruct my clerks to make sure to remind me to make that announcement. This is pretty common in criminal cases.  Sometimes it occurs in intellectual property cases on the civil docket, but I'll instruct my clerks and CRD that I need to make that announcement to any persons assembled in the gallery.  And then if we're approaching that point, please approach the bench, and I'll make that instruction at that time. Agreed?

MR. MORRIS:  Agreed.

MR. BRYANT:  Agreed, your Honor.  And I think a number of the documents that were designated by Plaintiff as confidential are in that Stovall group and the Court's -- has --

THE COURT:  Mostly excluded that.

MR. BRYANT:  Right.  Hopefully we won't have that issue with respect to documents.

THE COURT:  Well, my sister's a psychologist and so I'm very adamant about protecting patient-client confidentiality and ensuring that this courtroom is never the place where that material is leaked in a way that would

harm any patients, any persons affected by that privilege, so I'm very sensitive to that.  So if we're approaching it, that's fine.  Let's just take it up at bench -- at a bench conference and then I'll quickly admonish the gallery and then I'll have the CSOs and the marshals ready to do that should that happen on Wednesday.  So anything further from the Plaintiff?

MR. MORRIS:  No, your Honor.

THE COURT:  Anything further from the Defendant?

MR. BRYANT:  No, your Honor.

THE COURT:  So you can expect my paper ruling on the summary judgment motion pending and then we'll be trial ready on Wednesday.  If at any time you need access to this courtroom to test-drive your IT equipment or you need this Court's inventory of all the exhibits that were admitted, you can do so through my CRD.

Also, are either party requesting an expedited transcript of this hearing so they can prepare for bench trial?

MR. MORRIS:  Not the Plaintiff, your Honor.

MR. BRYANT:  No, your Honor.

THE COURT:  Okay.  Understood.  And so I'll work with the court reporter to make the standard transcript for appellate purposes.  With that, the Court stands in recess and is adjourned for the remainder of the day.  You may use this space for your IT purposes.  Just coordinate with CRD and staff.

[PROCEEDINGS CONCLUDED AT 12:15 P.M.]


* * * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.  I further certify that the transcript fees format comply with those prescribed by the Court and the Judicial Conference of the United States.


*/s/ Christine M. Orr, RPR,*        2/2/26
 Official Court Reporter            Date